1  LAW OFFICES OF RONALD JASON PALMIERI, P.C.
2  Ronald Jason Palmieri (CA Bar No. 96953)
   1644 North Orange Grove Avenue
3  Los Angeles, CA 90046
4  Telephone:   (323) 882-8225
   Facsimile:   (323) 882-8208
5  lawofcsrjp@aol.com

6  WILDMAN, HARROLD, ALLEN & DIXON LLP
7  Michael Dockterman (*pro hac vice pending*)
   Richard M. Hoffman (*pro hac vice pending*)
8  225 West Wacker Drive, Suite 2800
9  Chicago, IL 60606-1229
   Telephone:   (312) 201-2000
10  Facsimile:   (312) 201-2555
11  dockterman@wildman.com
    hoffman@wildman.com
12
   WILDMAN, HARROLD, ALLEN & DIXON LLP
13  Dominique R. Shelton (CA Bar No. 157710)
    9665 Wilshire Boulevard, Suite 200
14  Beverly Hills, CA 90212
15  Telephone:   (310) 860-8705
    Facsimile:   (310) 860-3805
16  dshelton@wildman.com

17  Attorneys for Defendant
18  REUNION.COM, INC.

19              UNITED STATES DISTRICT COURT
20            NORTHERN DISTRICT OF CALIFORNIA

21
22  VIOLETTA HOANG, LIVIA HSIAO,          No. 3:08-cv-3518
    and MICHAEL BLACKSBURG,
23  individually and on behalf of all others   **NOTICE OF MOTION AND
    similarly situated,                   DEFENDANT'S MOTION TO DISMISS
24                                         PURSUANT TO RULE 12(B)(6) OF THE
                        Plaintiffs,        FEDERAL RULES OF CIVIL
25                                         PROCEDURE**
    vs.
26                                         **Hearing Date:** October 3, 2008
    REUNION.COM, INC., a California        **Time:**          9:00 a.m.
27  corporation,                           **Judge:**         Hon. Maxine M. Chesney
                                           **Courtroom:**     7, 19th Floor
    27                     Defendant.
28

                    NOTICE OF MOTION AND DEFENDANT'S MOTION TO DISMISS
1904813-1                              1

**To All Parties and Counsel of Record:**

**PLEASE TAKE NOTICE** that on the 3rd day of October, 2008, at the hour of 9:00 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Hon. Judge Maxine M. Chesney, or any judge sitting in her stead, in the courtroom usually occupied by her (Room 7, 19th Floor) at 450 Golden Gate Ave., San Francisco, California, and then and there present ***Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure***.

<u>STATEMENT OF RELIEF SOUGHT</u>

Defendant Reunion.com, Inc. ("Reunion.com") seeks dismissal of Plaintiffs' Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs' claims are barred in that they are preempted by the Controlling the Assault of Non-Solicited Pornography Act of 2003 ("CAN SPAM"), 15 U.S.C. § 7707(b)(1), *et seq*. Even if Plaintiffs' claims were not preempted, they would still fail as a matter of law in that the emails at issue do not violate Cal. Bus. & Prof. Code § 17529.5(a) (the "State Statute").

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

<u>INTRODUCTION</u>

Reunion.com is one of the most popular people search and social networking websites in the United States. Within the last half decade, it has grown to have more than forty five million (45,000,000) registered members. Reunion.com prides itself on helping friends, family, classmates, and colleagues find and reconnect with others, as well as help members stay close and in touch with the important people in their lives. The Reunion.com website attracts nearly twelve million monthly visitors, and, out of tens of thousands of internet sites, is ranked seventy two in the United States by comScore, the standard for Internet popularity measurement. Reunion.com's countless success stories have been featured nationally on television, in newspapers, and magazines, which often include members recommending the popular service. It is with this history that

Reunion.com has now been brought into this meritless lawsuit in an effort to shake it down for a monetary payoff by alleging transparently contrived and unfounded claims which, upon closer scrutiny, have no basis in fact nor law.[1]

The basis of Plaintiffs' Complaint is that they each allege that they received unsolicited e-mail invitations to join Reunion.com which were from their friends who joined Reunion.com. Plaintiffs complain that these forward-to-a-friend emails are "false" and "misleading," and, therefore, violate the State Statute, though Plaintiffs conspicuously fail to allege that they were actually misled or harmed in any way. Plaintiffs' claims, which are based on a fanciful mischaracterization of the emails, fail as a matter of law because they are preempted by CAN SPAM and because the emails do not violate the State Statute.

As more fully set forth below, CAN SPAM, which undeniably preempts most state laws regulating commercial emails, expressly permits "routine conveyances" such as the forward-to-a-friend emails sent via the Reunion.com tool at issue here. In addition, the Federal Trade Commission ("FTC"), tasked by Congress with setting regulations governing CAN SPAM, has also definitively ruled that these forward-to-a-friend emails are not fraudulent, but, rather, are permitted "routine conveyances" for which the website facilitating the sending of the emails is not responsible. The express terms of CAN SPAM and the FTC's ruling preempt any claim brought under the State Statute relating to such forward-to-a-friend emails.

Plaintiffs' claims appear to be just another "get rich quick" scheme by the Plaintiffs' bar designed to extort settlements from honest companies employing legitimate business practices. As will be evidenced below, based upon Plaintiffs' own allegations, it is abundantly clear that the emails at issue fall squarely within

---

[1] It is worth noting that out of 45 million registered members, Plaintiffs' counsel was able to recruit only three Plaintiffs, two of whom received emails on a single day in May 2008 and a third who received a single email in July 2008, just six days before Plaintiffs filed their Complaint.

the categories of emails that Congress and the FTC have determined are legally permitted. As such, because CAN SPAM preempts state law, including state laws that conflict with CAN SPAM, Plaintiffs' allegations cannot support a state law claim of liability either.

Finally, even if Plaintiffs' claims were not preempted by CAN SPAM, as they clearly are, they would still fail as a matter of law because the emails are not false or deceptive and Plaintiffs fail to allege facts that would support a violation of the State Statute. As a result, on application of any legal theory, Plaintiffs' Complaint fails as a matter of law to state a claim upon which relief can be granted and should be dismissed, with prejudice.

## FACTUAL BACKGROUND

Plaintiffs allege that "Reunion.com operates a social networking internet website. The Reunion.com website allows members to search for old friends, classmates and colleagues. A member of the Reunion.com website can add other members to his or her 'Friends' list, thereby creating a social network of Reunion.com members." (Complaint, ¶ 16)

Plaintiffs each allege that they received one or more emails via Reunion.com which included the name of a friend or colleague in the "from" line. (Complaint, ¶ 24, 27, 30-31) Plaintiffs' Complaint, however, is devoid of any allegations: that their friends and colleagues did not join Reunion.com; that their friends and colleagues did not voluntarily provide Plaintiffs' email addresses to Reunion.com for purposes of sending email invitations; or that Plaintiffs were actually misled by the emails they received.[2]

---

[2] Nor do Plaintiffs allege that Reunion.com paid Plaintiffs' friends for the email addresses they provided.

Plaintiffs allege that Reunion.com maintains a Privacy Policy, accessible from its webpage.[3] (Complaint, ¶ 19) The Reunion.com Privacy Policy expressly advises members that, by registering as a member of Reunion.com, they are agreeing to accept the terms of the Privacy Policy. (Ex. A, p. 1 of Declaration of Larry Baird ["Baird Decl."]) The Privacy Policy gives Reunion.com members the option to provide Reunion.com with names and e-mail addresses of selected contacts and to have Reunion.com "automatically send your friend a one-time email inviting him or her to visit the site." (*Id.*)

The emails which Plaintiffs Hoang and Hsiao allegedly received are virtually identical in format. For each email, the "from" line bears the name of a person Plaintiffs acknowledge is a friend or colleague followed by "<verify@relay05.reunion.com>." The subject line on each of these emails reads "_____ wants to connect with you!," with the names of the Reunion.com member initiating the email (*i.e.,* Plaintiffs' friends) inserted in the blank. In addition, each email states in its text: "You have received this email because a Reunion.com Member sent an invitation to this e-mail address." (Complaint, ¶¶ 24, 27)

Plaintiff Blacksburg claims to have received his email through a Google electronic mailing list referred to as "FOOLD@GOOLGEGROUPS.COM." Plaintiff Blacksburg alleges that the electronic mailing list is "comprised of a program that enables a person to subscribe to a list by supplying his or her e-mail address. Thereafter, any subscriber may send an email to a single email address … and the electronic email address program re-sends that email to all the other subscribers on the list." (Complaint, ¶ 30) Blacksburg alleges that the email he

---

[3] While the versions of the Reunion.com Privacy Policy in effect at the time of the emails at issue in this action are not attached to the Complaint, the Privacy Policy and its contents are expressly referenced in the Complaint. (Complaint, ¶ 19) As a result, this Court may consider the contents of the Privacy Policy in ruling on Reunion.com's motion to dismiss. *Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002); *The Missing Link v. eBay, Inc.,* 2008 U.S. Dist. LEXIS 40593, *8 (N.D. Cal. May 5, 2008) (taking judicial notice of eBay's User Agreement "because the Complaint relies extensively" upon it).

received appeared to have been sent by Erick Dunn, admittedly a member of Blacksburg's Google electronic mailing list. (Complaint, ¶ 30) The "from" line of the Blacksburg email reads: "Erick Dunn <[redacted]@yahoo.com>." (*Id.,* ¶ 31) The subject line reads "[Fool'd] Please connect with me :)." (*Id.*) Like the other emails, the Blacksburg email indicates in the body: "You have received this email because a <u>Reunion.com</u> Member sent an invitation to this email address." (*Id.*)

Based on these facts, Plaintiffs allege three separate and distinct violations of the State Statute:

- Plaintiffs allege that Reunion.com violated § 17529.5(a)(1) in that "the Emails received . . . deceptively contained or were accompanied by third-party domain names without the permission of the third parties." (Complaint, ¶ 42) In particular, Plaintiffs point to the presence of "yahoo.com" in the email address of the Reunion.com member who initiated the invitation using Reunion.com's invitation tool. (*Id.,* ¶ 33)

- Plaintiffs allege that Reunion.com violated § 17529.5(a)(2) in that "the Emails contained or were accompanied by falsified, misrepresented, or forged header information . . . . in the 'From' line, which falsely represented that the Email had been sent from an individual, rather than from Reunion.com." (Complaint, ¶ 48)

- Plaintiffs allege that Reunion.com violated § 17529.5(a)(3) in that the "Emails contained subject lines that Reunion.com knew were likely to mislead the recipients, acting reasonably under the circumstances, about a material fact regarding the contents of the subject matter of the messages. To wit, each Email contained a subject line stating 'Please Connect With Me :-)', '[Member Name] Wants to Connect With You', or something substantially similar, with no reference to Reunion.com." (Complaint, ¶ 53)

1
2
3

As set forth more fully below, even if Plaintiffs' claims were not preempted by CAN SPAM, as they are, Reunion.com has not violated any of the provisions of the State Statute as a matter of law.

4

## ARGUMENT

5
6
7
8
9
10
11
12
13
14
15

Federal Rule of Civil Procedure 12(b)(6) requires the dismissal of a Complaint that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). While the allegations of the Complaint are taken as true for purposes of a Rule 12(b)(6) motion, *Moore v. City of Costa Mesa,* 886 F.2d 260, 262 (9th Cir. 1989), the Supreme Court has held that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). It is not enough for the plaintiff to allege some set of facts that could conceivably give rise to a cause of action; rather, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. As explained below, Plaintiffs fall woefully short of this standard.

16
17

## I.   PLAINTIFF'S CLAIMS ARE BARRED AS A MATTER OF LAW BECAUSE THEY ARE PREEMPTED BY CAN SPAM.

18
19
20

CAN SPAM does not give rise to a private right of action. 15 U.S.C. § 7706. In a transparent effort to overcome this fatal hurdle, Plaintiffs base their claims on the State Statute, which provides:

21
22
23

a)   It is unlawful for any person or entity to advertise in a commercial email advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

24
25
26

(1)   The email advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.

27
28

(2)   The email advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third

party who has been lawfully authorized by the advertiser to use that information.

(3)    The email advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

Cal. Bus. & Prof. Code § 17529.5(a).   Although there is nothing at all false or misleading about the emails in question, Plaintiffs' claims fail, *ab initio*, as a matter of law because they are preempted by CAN SPAM.

   A. *CAN SPAM Provides A National Standard For Commercial Emails That Preempts State Law.*

When Congress enacted CAN SPAM, it determined that there was a substantial governmental interest in regulating commercial emails, and that a multitude of state laws purporting to regulate such emails created an ineffective patchwork of regulations.   15 U.S.C. § 7701(A)(11), (B).   As a result, Congress provided that CAN SPAM "**supersedes any statute, regulation, or rule of State or political subdivision of a state that expressly regulates the use of electronic mail to send commercial messages**, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial or electronic mail message or information attached thereto."   15 U.S.C. § 7707(b)(1) (emphasis added).

CAN SPAM makes it "unlawful for any person to **initiate** the transmission, to a protected computer, of a commercial electronic mail message, or a transactional or relationship message, that contains, or is accompanied by, header information that is materially false or materially misleading."   15 U.S.C. § 7704(a)(1) (emphasis added).[4]   Under CAN SPAM, initiate "means to originate

---

[4] CAN SPAM also provides that "[i]t is unlawful for any person to initiate the transmission to a protected computer of a commercial email message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message. . . ." 15 U.S.C. § 7704(a)(2).

or transmit such message or to procure the origination or transmission of such message, **but shall not include actions that constitute routine conveyance** of such message." 15 U.S.C. § 7702(9) (emphasis added). "Routine conveyance" is defined as "the **transmission, routing, relaying,** handling, or storing, through **an automatically technical process,** of an electronic mail message for which **another person** has identified the recipient or provided **the recipient addresses**." 15 U.S.C. § 7702(15) (emphasis added). Per the above definitions, routine conveyances do not create liability under CAN SPAM and are expressly permitted. As a matter of law, a party merely engaging in a routine conveyance initiated by a third party is not acting in a fraudulent or misleading manner. As a matter of undisputed fact, this is the case here.

There can be no question that the email process alleged by Plaintiffs and described in Reunion.com's Privacy Policy, which is incorporated into Plaintiffs' Complaint, involves the "transmission, routing [or] relaying" of emails through "an automatically technical process." 15 U.S.C. § 7702(15). Moreover, it cannot be disputed, nor is it, that the "recipient addresses" were provided not by Reunion.com, but by "another person," in this case Plaintiffs' friends. *Id.* Plaintiffs' own allegations place the emails in question squarely within the definition of routine conveyances, and thus outside of the limited area which Congress left for the states to regulate. CAN SPAM expressly recognizes that there are circumstances in the online world where one party is simply engaging in a routine conveyance of emails between parties and those emails are expressly permitted. Plaintiffs may disagree with Congress, but they cannot substitute their judgment for that of Congress, which has given clear directive that CAN SPAM preempts these types of claims.

Congress also recognized that further guidance regarding the scope of CAN SPAM was necessary and so it authorized the FTC to "issue regulations to

implement the provisions of this Act."  15 U.S.C. § 7711.  Consistent with this mandate, in the spring of 2008, the FTC released its Definitions and Implementation under the CAN-SPAM Act (the "Final Rule"), in which it provided further clarification on the scope, meaning and construction of CAN SPAM.  This Final Rule was open to public comment and under consideration for approximately three years.  The resulting Final Rule reflects a carefully considered and fully informed interpretation on the scope and implementation of CAN SPAM.[5]

Within the context of the Final Rule, the FTC expressly considered the applicability of CAN SPAM to "forward-to-a-friend" emails, which it defined as including scenarios "in which a seller's web page enables visitors to the seller's website to provide the email address of a person to whom the seller should send a commercial email."(Final Rule; Ex. A, p. 65 of Shelton Declaration)  Significantly, the FTC concluded in the Final Rule that forward-to-a-friend emails are routine conveyances and do not violate CAN SPAM in situations exactly such as the one found here:  a "seller that transmits a message through an automatic technical process to an email address provided by a forwarder, absent more, is engaged in 'routine conveyance' and **is exempt from liability under the State Statute**." (Final Rule, p. 73, emphasis added).

There is no doubt that the emails at issue here were sent as part of a forward-to-a-friend campaign.  Plaintiffs allege that Reunion.com's "web page enables visitors to the seller's website to provide the email address of a person to whom the seller should send a commercial email."  (Final Rule, p. 65)  Plaintiffs expressly allege that the purpose behind Reunion.com's social networking website

---

[5] As the Final Rule was issued in the spring of 2008, long before Plaintiffs filed their Complaint, it is clear that Plaintiffs and their counsel either didn't bother to conduct the necessary research into CAN SPAM and the FTC's interpretation thereof or they elected to proceed with their claims knowing that the FTC had already conclusively ruled that their claims are baseless.  Either explanation is inexcusable.

is to allow members to "search for old friends, classmates and colleagues." (Complaint, ¶ 16)  Plaintiffs also allege that this is accomplished, in part, when "Reunion.com asks registered members to provide the password to the registered member's email account" so that Reunion.com can "access the registered member's contacts for the purpose of sending emails 'from Reuion.com' to certain or all of those contacts and 'inviting them to join' Reunion.com." (*Id.,* ¶¶ 18-19)

The provision of a member's contacts is entirely voluntary; the member decides whether or not they want Reunion.com to send emails to their friends and contacts, inviting them to join the network. (Ex. A, p. 1 of Baird Decl.)  Members are unambiguously advised that emails will be sent out by Reunion.com on their behalf should they elect to invite their friends and contacts to join. (*Id.*)  Plaintiffs do not, and cannot, allege that Reunion.com provides consideration for these emails.  Thus, the emails fall precisely within the FTC's definition of permitted forward-to-a-friend communications:  "[Reunion.com's] web page enables visitors to [Reunion.com's] website to provide the e-mail address of a person to whom [Reunion.com] should send a commercial email [the invitation to join the network]." (Final Rule, p. 65)

To the extent Plaintiffs complain that the "From" lines on the emails are false and misleading, CAN SPAM again says otherwise.  Specifically, CAN SPAM provides that a "From" line that "accurately identifies **any person who initiated the message** shall not be considered false or materially misleading."  15 U.S.C. § 7704(a)(1)(B) (emphasis added).  For the reasons explained above, and the law previously cited, Reunion.com did not "initiate" the emails in question, but, in fact, the Reunion.com member and friend of the recipient was the person initiating the emails as a matter of law.  As such, under any analysis, Plaintiffs' friends, each of whom is identified accurately in the "From" lines of the emails,

were initiators. As a result, the emails cannot, as a matter of law, be "considered false or materially misleading," and Plaintiffs' claim fails, as a matter of law. *Id.*

    *B. Plaintiffs' Claims Are Preempted By CAN SPAM.*

    In order to ensure that there is a uniform standard governing commercial emails in the United States, CAN SPAM includes a broad preemption of state law. 15 U.S.C. § 7707(b)(1). While Congress permitted the states to regulate commercial emails that are false or deceptive, *Id.*, "it is clear that it meant these terms to refer to traditional, tort-type concepts and not to innovative theories." *Kleffman v. Vonage Holdings Corp.*, 2007 U.S. Dist. LEXIS 40487, *7-8 (C.D. Cal. May 23, 2007).

    For example, in *Kleffman*, the plaintiff alleged that Vonage violated the State Statute by sending unsolicited commercial emails to the plaintiff from a variety of email addresses, thus avoiding spam filters which flag emails from high volume senders. The trial court granted Vonage's motion to dismiss with prejudice, holding that the plaintiff's claims were preempted by CAN SPAM. In so doing, the court held that Congress intended to narrowly limit the types of practices that states could continue to regulate:

> In short, Congress intended that legitimate businesses would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace. It thus left states room only to extend their ***traditional*** fraud prohibitions to the realm of commercial emails because it was confident that legitimate businesses would not unwittingly transgress such well-established prohibitions.

*Kleffman*, 2007 U.S. Dist. LEXIS 40487 at *8-9 (emphasis in original). Because *Kleffman's* claim went beyond traditional tort theory, the court held that it was preempted by CAN SPAM. *Id.* Here, Plaintiffs do not allege a traditional fraud. In fact, Plaintiffs do not even allege that they were misled.

Instead, Plaintiffs' claim appears to be just another "get rich quick" scheme by the Plaintiffs' bar designed to extort settlements from honest companies employing legitimate business practices. Based upon Plaintiffs' own allegations, however, it is abundantly clear that the emails at issue fall squarely within the categories of emails that Congress and the FTC have determined are legally permitted. Because CAN SPAM preempts state law, including state laws that conflict with CAN SPAM, Plaintiffs' allegations cannot support a state law claim of liability either.

The FTC has concluded that forward-to-a-friend emails such as the Reunion.com emails at issue in this litigation are not fraudulent or misleading, but rather permitted "routine conveyances." (Final Rule, pp. 71-76) That determination, authorized by Congress, as well as the express provisions of CAN SPAM, preempts any attempt to restrict or penalize forward-to-a-friend emails under state law. 15 U.S.C. § 7707(b)(1); *Hall v. North American Van Lines,* 476 F.3d 683, 689 (9th Cir. 2007) (finding state law claims preempted by Carmack Amendment); *Kleffman*, 2007 U.S. Dist. LEXIS 40487 at *9.

Plaintiffs are trying to turn what Congress and the FTC have already held to be permissible forward-to-a-friend emails into something they are not. Because Congress and the FTC have already determined that these emails are not false or materially misleading, but rather are appropriate and lawful routine conveyances, they cannot fall within the limited exception to CAN SPAM's preemption of state law.

### C. Plaintiffs' Conclusory Allegations Of Deception Are Not Enough To Save Plaintiffs' Complaint.

In an apparent attempt to salvage their claims in the face of their own factual allegations, Plaintiffs assert a series of conclusory allegations and characterizations designed to portray the emails in a nefarious light. Those efforts, however, are unavailing.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Although Plaintiffs complain that the emails they received were "disguised so as to appear to come not from Reunion.com, but from registered members personally" (Complaint, ¶ 20), their own allegations demonstrate that it was the registered members who requested that Reunion.com send the emails to Plaintiffs. Significantly, Plaintiffs offer no allegations regarding what their friends did when they joined Reunion.com or what they did or did not ask Reunion.com to do with their contacts. Thus, it is clear that the emails were exactly what they purported to be, invitations initiated by Plaintiffs' friends to join Reunion.com.

Plaintiffs also allege that the emails were misleading because the subject lines do not expressly use "invitational" language, but instead say something "colloquial" such as "Please Connect with me : )." (Complaint, ¶¶ 21, 53) Plaintiffs complain that these subject lines are misleading because they would lead the recipient to believe "that the Email was a personal request to connect with an individual." (*Id.*) But that is exactly what the emails were, requests by members that Reunion.com invite Plaintiffs to join.

Plaintiffs must do more than plead conclusions of deception; they must plead facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1965. In addition to all of the legally fatal flaws discussed above, even this they fail to do. In *Bell Atlantic*, the plaintiff alleged a violation of § 1 of the Sherman Act based solely on allegations of parallel conduct and conclusory allegations of a conspiracy. The Court, noting that parallel conduct in and of itself is not illegal, held that plaintiffs "have not nudged their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S. Ct. at 1974. Similarly, Plaintiffs' conclusory allegations that these legal and legitimate emails were "deceptive" or "misleading," without more factual allegations, fail to "nudge their claims across the line from conceivable to plausible." *Id.*

In enacting CAN SPAM, Congress set out to provide uniform regulation of commercial emails in a manner designed to prevent fraudulent and abusive practices, while permitting legitimate and routine conveyances. Plaintiffs cannot use artful pleading to circumvent this Congressional intent. *Cleghorn v. Blue Shield of California,* 408 F.3d 1222, 1226 (9th Cir. 2005) ("Artful pleading does not alter the potential for this suit to frustrate the objectives of ERISA"); *Kleffman,* 2007 U.S. Dist. LEXIS 40487 at *7-9.

Permitting Plaintiffs' claims to stand not only threatens to defeat Congressional intent, it also presents a serious threat to the host of legitimate business and government websites, including popular and growing social networking websites (LinkedIn, FaceBook, etc.) that operate under and rely on CAN SPAM.

To even further dramatically highlight the absurdity of Plaintiffs' claims, even the FTC's own website uses forward-to-a-friend technology. News releases on the FTC website offer viewers the opportunity to "E-mail this News Release" to third parties. *See, e.g.,* http://www.ftc.gov/opa/2008/08/tsr.shtm. If Plaintiffs are correct in their theory, then the FTC is also routinely sending "fraudulent" and "misleading" emails, a ridiculous conclusion which can only be reached if Plaintiffs' Complaint is not dismissed as prayed for herein.

## II. EVEN IF PLAINTIFFS' CLAIMS WERE NOT PREEMPTED, THEY WOULD STILL FAIL AS A MATTER OF LAW BECAUSE THE EMAILS DO NOT VIOLATE THE STATE STATUTE.

While Reunion.com believes that preemption disposes of Plaintiffs' claims for the reasons set forth above, even if the Court were to apply the State Statute, the end result would be the same. The emails are simply not misleading and do not violate the State Statute.

The State Statute was originally passed in 2003, shortly before the enactment of CAN SPAM, and provided broad restrictions relating to commercial

emails.  After the enactment of CAN SPAM in 2003, the California Legislature amended the State Statute in order "to avoid confusion as to what parts of existing state law are preempted by federal law and what parts remain viable."  California SB 1457, Assembly Committee, August 11, 2004.  The author of the revisions to the bill stated that "it is not his intent to penalize legitimate business for email advertisements that are within their normal course of correspondence."  California SB 1457, Assembly Committee, June 22, 2004.

The two underlying principals that resonate from the legislative history are that the State Statute was intended to apply only to those actions which are not preempted by CAN SPAM and that it be used to prevent only truly fraudulent and misleading emails, not legitimate communications.  Significantly, the California Legislature has reaffirmed its intent through AB 2950, a bill that amends the State Statute.  AB 2950, which has passed both the Senate and the Assembly,[6] adds a new subsection (a) which provides:

> It is the intent of the Legislature that this section, which prohibits all types of **falsity and deception** in commercial e-mail messages, shall operate **within the exception to federal preemption** to the full extent permitted by the CAN-SPAM Act of 2003 (15 U.S.C. Sec. 7707(b)) and any other provision of federal law.

AB 2950, Cal. Bus. & Prof. Code § 17529.5(a) (2008) (emphasis added).  The California Legislature's goals, as reflected in its legislative history and AB 2950, dovetail with Congressional intent in passing CAN SPAM.  In light of this clear expression of legislative intent, it is beyond question that Plaintiffs' claims seek to stretch the State Statute far beyond what the legislature intended and far beyond what *Kleffman* holds is permitted.

---

[6] AB 2950 has been enrolled by the Legislature.  Reunion.com understands that the bill will be tendered to the Governor for his signature once a state budget has been passed.

Plaintiffs allege that Reunion.com violated § 17529.5(a)(1) by including a third-party domain name in the email, relying specifically on the email address of the Reunion.com member whose name appears in the email's "from" line. Section 17529.5(a)(1) was intended to address schemes in which defendants misappropriate a third party's domain name surreptitiously, such as when a defendant hacks into an Internet Service Provider's network and uses its email addresses to send emails. Thus, for example, during legislative debate on the State Statute, concerns were expressed that the State Statute could be read to go beyond prohibiting "false domain name[s] or falsification of a header." California SB 1457, Assembly Committee, June 22, 2004. In response, the author's office indicated that the State Statute was intended to deal only with "truly falsified, misleading and deceptive spammers, not legitimate business communications with customers." *Id.*

The State Statute is not intended to prohibit the inclusion of a domain name from the email address of the person "initiating" the email, here the Reunion.com member. This is confirmed by the Legislature's recent passage of AB 2950 which would also amend what is now § 17529.5(a)(1) -- and what will become § 17529.5(b)(1) -- to read as follows:

> The e-mail advertisement contains or is accompanied by a third party's domain name **or e-mail address** without the permission of the third party, provided that nothing in this section shall be construed to affect comparative advertising that references domain names **or e-mail addresses**.

AB 2950, Cal. Bus. & Pro. Code § 17529.5(b)(1) (2008) (emphasis added).

By adding "or e-mail addresses" to the State Statute, the Legislature has made clear that the existing prohibition against using third-party domain names was not intended to cover references to another person's email address; if the existing provision were that broad, there would be no need for the amendment. As amended, § 17529.5(b)(1) will include two prohibitions: (1) it will prohibit the use

of a third party's email address without that party's permission; and (2) it will prohibit the use of a third party's domain name outside the context of an email address without the permission of the owner of the domain name. Reunion.com is not alleged to have violated either prohibition. It used its members' email addresses with their permission, and did not use a domain name outside of the context of the email addresses.

Plaintiffs' broad reading of § 17529.5(a)(1) would lead to absurd results; it would make <u>any</u> person liable for forwarding <u>any</u> commercial email because the originating party's email address (including their domain name) would be contained in the body of the email. Since the forwarder presumably will not have obtained approval from the owner of the domain name reflected in the originator's email address, the forwarder would, under Plaintiffs' interpretation, be in violation of the State Statute.[7]  Clearly, that is not what the California Legislature had in mind.

Plaintiffs also allege that Reunion.com violated § 17529.5(a)(2) because the emails contained "falsified, misrepresented, or forged header information in the 'From' line, which falsely represented that the Email had been sent by an individual rather than Reunion.com." (Complaint, ¶ 48)  As noted above, the Reunion.com members identified by Plaintiffs did, in fact, as a matter of law, initiate the emails, and all of the emails identify the Reunion.com member who requested that the invitation be sent. (*Id.*, ¶¶ 24, 27, 31)  As such, once again, this contention fails as a matter of law and is fatal to Plaintiffs' claims.

All of the header fields in the Reunion.com emails – the "To," "From," "Sender," "Subject," "Message-ID," "Date" and "Received" fields – are truthful and are not in any way falsified, misrepresented, or forged, as spammers do in

---

[7]  In reality, yahoo.com effectively granted Mr. Dunn the right to use its domain name as part of his email address, and Mr. Dunn has, in turn, granted permission to Reunion.com when he joined Reunion.com and elected to invite his contacts to join.

order to hide their identity. Section 17529.5(a)(2) is designed to prohibit the type of manipulations of email header information engaged in by criminal spammers, not industry-standard forward-to-a-friend invitations sent by legitimate companies. California SB 1457, Assembly Committee, June 22, 2004.

Finally, Reunion.com did not violate § 17529.5(a)(3) because the subject line is not misleading. The conclusion Plaintiffs claim they could have been led to – that they were being asked by their friends to join Reunion.com – is precisely what took place. These subject lines simply are purely descriptive as utilized by Reunion.com and virtually every other social networking site and are clearly not likely to mislead, as evidenced by Plaintiffs' failure to allege that they were, in fact, misled.

## CONCLUSION

Plaintiff's Complaint effectively asks this Court to find that the FTC, which spent years analyzing the issue, is absolutely wrong, and to ignore the express terms of CAN SPAM, the FTC's rulings interpreting CAN SPAM, and the California Legislature's clearly-expressed intention to regulate consistent with CAN SPAM. Moreover, to allow Plaintiffs' Complaint to stand, the Court would also have to reject existing precedent holding that these types of claims are preempted by CAN SPAM. There is simply no justification for such an unsupportable outcome. For all the foregoing reasons, Reunion.com prays that the Court dismiss Plaintiffs' claims with prejudice and grants such other relief as the Court deem just and proper.

1

**DATED:** August 25, 2008.

Respectfully submitted,

2

3

REUNION.COM, INC.

4

5

6

7

By: RONALD JASON PALMIERI
One of Its Attorneys

8

9

LAW OFFICES OF RONALD JASON PALMIERI, P.C.

10

Ronald Jason Palmieri (CA Bar No. 96953)

1644 North Orange Grove Avenue

11

Los Angeles, CA 90046

12

Telephone:  (323) 882-8225

Facsimile:   (323) 882-8208

13

lawofcsrjp@aol.com

14

WILDMAN, HARROLD, ALLEN & DIXON LLP

15

Michael Dockterman *(pro hac vice pending)*

Richard M. Hoffman *(pro hac vice pending)*

16

225 West Wacker Drive, Suite 2800

17

Chicago, IL 60606-1229

Telephone:  (312) 201-2000

18

Facsimile:   (312) 201-2555

19

dockterman@wildman.com

hoffman@wildman.com

20

WILDMAN, HARROLD, ALLEN & DIXON LLP

21

Dominique R. Shelton (CA Bar No. 157710)

22

9665 Wilshire Boulevard, Suite 200

Beverly Hills, CA 90212

23

Telephone:  (310) 860-8705

24

Facsimile:   (310) 860-3805

dshelton@wildman.com

25

26

27

28

1904813-1

1  LAW OFFICES OF RONALD JASON PALMIERI, P.C.
2  Ronald Jason Palmieri (CA Bar No. 96953)
   1644 North Orange Grove Avenue
3  Los Angeles, CA 90046
   Telephone:  (323) 882-8225
4  Facsimile:  (323) 882-8208
5  lawofcsrjp@aol.com

6  WILDMAN, HARROLD, ALLEN & DIXON LLP
   Michael Dockterman *(pro hac vice pending)*
7  Richard M. Hoffman *(pro hac vice pending)*
8  225 West Wacker Drive, Suite 2800
   Chicago, IL 60606-1229
9  Telephone:  (312) 201-2000
10 Facsimile:   (312) 201-2555
11 dockterman@wildman.com
   hoffman@wildman.com
12
   WILDMAN, HARROLD, ALLEN & DIXON LLP
13 Dominique R. Shelton (CA Bar No. 157710)
   9665 Wilshire Boulevard, Suite 200
14 Beverly Hills, CA 90212
15 Telephone:  (310) 860-8705
   Facsimile:   (310) 860-3805
16 dshelton@wildman.com
17 Attorneys for Defendant
18 REUNION.COM, INC.

19          UNITED STATES DISTRICT COURT
20         NORTHERN DISTRICT OF CALIFORNIA

21
22 VIOLETTA HOANG, LIVIA HSIAO,      No. 3:08-cv-3518
   and MICHAEL BLACKSBURG,
   individually and on behalf of all others  **(PROPOSED) ORDER GRANTING**
23 similarly situated,               **DEFENDANT'S MOTION TO DISMISS**
                                     **PURSUANT TO RULE 12(B)(6) OF THE**
24                    Plaintiffs,    **FEDERAL RULES OF CIVIL**
                                     **PROCEDURE**
25 vs.
                                     **Hearing Date:** October 3, 2008
26 REUNION.COM, INC., a California   **Time:**        9:00 a.m.
   corporation,                      **Judge:**       Hon. Maxine M. Chesney
27                                   **Courtroom:**   7, 19th Floor
                    Defendant.
28

                    PROPOSED ORDER
                           1
1905175-1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

The Court, the Honorable Maxine Chesney, District Judge for the Northern District of California, presiding, has read and considered Defendant Reunion.com, Inc.'s ("Reunion.com") *Motion To Dismiss Pursuant To Rule 12(B)(6) Of The Federal Rules Of Civil Procedure* and the other papers filed by the parties. Based on such consideration, the Court rules as follows:

Defendant Reunion.com's *Motion to Dismiss* is GRANTED and Plaintiffs' Complaint is dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court finds that Plaintiffs' claims are barred in that they are preempted by the Controlling the Assault of Non-Solicited Pornography Act of 2003 ("CAN SPAM"), 15 U.S.C. § 7707(b)(1), *et seq*. *See, Kleffman v. Vonage Holdings Corp.*, 2007 U.S. Dist. LEXIS 40487, *7-8 (C.D. Cal. May 23, 2007). Even if Plaintiffs' claims were not preempted, the Court finds that they would still fail as a matter of law in that the emails at issue do not violate Cal. Bus. & Prof. Code § 17529.5(a). As a result, Plaintiffs' Complaint is dismissed, with prejudice.

## ORDER

IT IS SO ORDERED.

Dated: _____, 2008          ENTERED:

By: _____
    Maxine M. Chesney, United
    States District Court Judge

1905175-1