**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

**SHAPIRO, HABER & URMY LLP**
Edward F. Haber (admitted *pro hac vice*)
Todd S. Heyman (admitted *pro hac vice*)
Robert E. Ditzion (admitted *pro hac vice*)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
theyman@shulaw.com
rditzion@shulaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **VIOLETTA HOANG, LIVIA HSIAO, MICHAEL BLACKSBURG, and MATTHEW HALL** individually and on behalf of a class of similarly situated persons,<br><br>        Plaintiffs,<br><br>    vs.<br><br>**REUNION.COM, INC.,** a California corporation,<br><br>        Defendant. | Case No. 3:08-CV-03518-MMC<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION**<br><br><u>**JURY TRIAL DEMANDED**</u> |

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

Plaintiffs Violetta Hoang, Livia Hsiao, Michael Blacksburg, and Matthew Hall bring this action on behalf of themselves and all similarly-situated individuals and allege as follows:

**INTRODUCTION**

1.      In enacting Section 17529.5 of the California Business and Professions Code, the California Legislature found and declared:

(a)   Roughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam.

(b)   The increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age.

(c)   Complaints from irate business and home-computer users regarding spam have skyrocketed…

(d)   According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000) this year, including lost productivity and the additional equipment, software, and manpower needed to combat the problem.  California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000).

(e)   Like junk faxes, spam imposes a cost on users, using up valuable storage space in e-mail inboxes … and discourages people from using e-mail. . . . . . . .

* * *

(h)   The "cost shifting" from deceptive spammers to Internet business and e-mail users has been likened to sending junk mail with postage due or making telemarketing calls to someone's pay-per-minute cellular phone.

(k)   The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements

* * *

(m)   Because of the above problems, it is necessary that spam be prohibited and that commercial advertising e-mails be regulated as set forth in this article.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.aw.com

1  (Cal. Bus. & Prof. C. §17529.).

2      2.      The United States Congress also has determined that unsolicited

3  commercial email is a problem that merits federal regulation, and enacted the

4  Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-

5  SPAM").  CAN-SPAM supplanted all state law regulation of commercial email spam,

6  except for the most egregious type of spam – false and deceptive emails.  With respect

7  to claims that prohibit "falsity or deception in any portion of a commercial electronic mail

8  message," Congress enlisted the assistance of state laws, such as California's Section

9  17529, which was already enacted at the time CAN-SPAM was passed, to eradicate

10  such practices from the marketplace.  Thus, false and deceptive emails may violate both

11  federal and state laws.

12      3.      The allegations contained herein and relating to the false and deceptive

13  email practices of Defendant Reunion.com, Inc. ("Reunion.com") paint the very picture of

14  the conduct that Section 17529 and CAN-SPAM were intended to prohibit and the harm

15  they were intended to prevent:  The use by an advertiser of false and deceptive email

16  headers and subject lines to deceive Internet users into opening and reading

17  commercial emails that such users would otherwise toss in their virtual trash.

18  Aggravating their deceptive emailing practices and further fueling consumer outrage,

19  Reunion.com obtains the email addresses for its deceptive email scheme by "hijacking"

20  its members' personal email address books, copying all of its members' email

21  addresses, and thereafter sending the deceptive bulk mail to all of those email

22  addresses.

23      4.      Reunion.com operates an Internet-based social networking website.

24  Reunion.com advertises itself as the leading social networking service for grown-ups to

25  reconnect and keep in touch with family, friends, lost loves and colleagues.

26      5.      During or prior to the spring of 2008, Reunion.com initiated a deceptive

27  email practice designed to boost Reunion.com's membership.  The campaign consists of

28  emails (the "Emails") sent by Reunion.com but appearing to come from individual

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.aw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.aw.com

1   Reunion.com registered members.  Each Email contains a subject line stating "Please

2   Connect With Me :-)" or "[Member Name] Wants to Connect with You" or something

3   substantially similar, with no reference to Reunion.com.  Those subject lines – which are

4   written by Reunion.com without the member's approval, review, or authorization – are

5   false because the member has not made a request that the recipient connect with them

6   on Reunion.com.  Moreover, the subject lines falsely and deceptively indicate that the

7   email is of a personal nature and not an unsolicited commercial email from

8   Reunion.com.  The body text of each Email states, "I looked for you on <u>Reunion.com</u>,

9   but you weren't there.  Please connect with me so we can keep in touch," or a

10   substantially similar statement, even though no such search has been conducted.

11        6.      The Emails, as received by Plaintiffs Violetta Hoang, Livia Hsiao, Michael

12   Blacksburg, Matthew Hall, and others similarly situated, violate California Business and

13   Professions Code Section 17529.5(a)(2) and (a)(3), in that each Email:  (i) contains

14   falsified, misrepresented and/or forged header information in the "From" line, which

15   falsely represents that the Email has been sent from an individual, rather than from

16   Reunion.com; and (ii) contains a subject line that Reunion.com knows would be likely to

17   mislead a recipient acting reasonably under the circumstances into believing that the

18   Email is a personal request to connect with an individual, rather than a commercial email

19   advertisement from Reunion.com.

20        7.      On information and belief, many of the Emails, such as those received by

21   Plaintiffs Blacksburg and Hall, also violate Section 17529.5(a)(1), in that they are

22   deceptively accompanied in the "From" lines by a third-party's domain name without the

23   permission of that third party.

24        8.      Taken as a whole, the Emails represent a clear attempt by Reunion.com to

25   disguise the fact that the Emails are unsolicited commercial email advertisements, and

26   to deceive recipients into opening the Emails on the mistaken belief that they are

27   personal requests by a single individual to "connect" with them.  On information and

28   belief, Reunion.com has sent, and continues to send, millions of the Emails in the

1  regular course of its business, resulting in this Complaint and accompanying requests

2  for damages and injunctive relief.

3      9.    "The header information and subject lines of the Emails were false in

4  numerous ways:

5      • The "From" line falsely states that a Reunion.com member sent the Emails

6         when Reunion.com actually sent them.  Specifically, the Emails could not

7         have been "from" Reunion.com members because the members never

8         authorized the false content of the Emails.  For example, the Emails state

9         that the member "looked for" the recipient on Reunion.com, but the

10        members never conducted any such search.  This is a far cry from what

11        Reunion.com promises in its privacy policy, which is that Reunion.com "will

12        automatically send your friend a[n] email inviting him or her to visit the

13        site."  The email sent does not appear to come from Reunion.com nor is it

14        an invitation from Reunion.com – in accordance with the statements in the

15        privacy policy.  Instead, Reunion.com disguises the email as being from

16        one of its members.  In many cases, Reunion.com even falsely signed the

17        emails using its members' names.  Not only are the statements contained

18        in the Emails false, but also the member never authorized any such false

19        statement to be conveyed to the recipient.  In fact, the member never

20        reviewed, commented on, authored or in any way otherwise assisted in the

21        creation of the Emails.  Nor did the member even have an opportunity to

22        review, edit, or approve the content of the email.  Because the member

23        neither authored nor authorized the false statements contained in the

24        emails, the emails were not "from" the member, but were instead "from"

25        Reunion.com.

26      • The "Subject" line falsely requests that the recipient "Please connect with

27         me :)," i.e. please connect with the Reunion.com member, when the emails

28         are not in fact requests from an individual to "connect", but instead

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.aw.com

commercial e-mail advertisements from Reunion.com soliciting the recipients to join Reunion.com.  The Subject lines are plainly false because the member who appears in the From line did not ask the recipient to "connect."  On the contrary, that content was generated by Reunion.com without providing that member any input or opportunity to review or approve the message before it was sent.   The statement was both unauthorized and false.  Moreover, the subject line omits any mention of Reunion.com or of the fact that the email is commercial in nature – which would certainly mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

10.   The numerous complaints received by the FTC about Reunion.com illustrate the impact of Reunion.com's deceptive emails.  A typical example of the FTC complaints is as follows:

"Apparently, reunion.com sent out emails to EVERYONE IN MY ADDRESS BOOK inviting them to join on the pretense they're from me!  This includes business contacts, old boyfriends, ex-husbands, etc.  THIS IS INTERNET FRAUD!"   (Exhibit B, attached hereto, p.43).

11.   The Better Business Bureau, which has given Reunion.com a "D" rating, which is reserved for a company with such a troubling record that the Better Business Bureau recommends "caution in doing business with it."  The Better Business Bureau, like the FTC, has received many complaints about Reunion.com, including many similar to the following:

I received an email today that said so and so was searching for me, i followed the links to reunion.com, signed up and next thing I know, without warning or asking me a similar email was sent to my entire gmail address book. I would have NEVER sent an email to anyone inferring i was searching for them, let alone sent it to my entire address book. (Exhibit C,

1    attached hereto).

2        12.    The FTC itself has instituted legal action to challenge the same types of

3    false and deceptive email headers, From lines, and Subject lines as Reunion.com uses.

4    In that case, the company also improperly attempted to cloak the false emails as merely

5    "forward to a friend" emails.  *See United States of America v. Jumpstart Technologies,*

6    *LLC*, Civil Action No. C-06-2079 (MHP), (N.D.Cal.).  The FTC's Complaint which is

7    attached hereto as Exhibit A, the United States and the FTC took the position that "send

8    to a friend" emails are false and deceptive when such emails:

9        a.    Contain in the "from" line the name and personal email address of

10            the referrer instead of the website owner;

11        b.    Contain a subject line that is a personal invitation or greeting from

12            the consumer identified in the "from" line, when, in fact, the email is

13            an unsolicited advertisement, and the advertiser's name is not in the

14            subject line; and

15        c.    Purport to be authored by the person in the "from" line, when, in

16            fact, it is authored by the website owner.

17        13.    The FTC entered into a consent decree that was widely publicized

18    regarding this matter, in which Jumpstart agreed to pay $900,000 in fines.   Upon

19    information and belief, Reunion.com knew of the FTC's action against Jumpstart and

20    chose to use the same types of headers, Subject lines, and From lines as did Jumpstart

21    notwithstanding Reunion.com's knowledge.

22        14.    After the publicity received from the FTC action against Jumpstart, many

23    law firms and industry associations put out guidelines and advisories to help companies

24    avoid violations like those alleged by the FTC.   As an example, a company called

25    EmailLabs, an internet marketing consultant, provided this public guidance:

26    If you give users a forward-to-a-friend form or other mechanism to forward your

27    emails, offers or Web pages, make it clear the message comes from your company.

28    List your company or brand name in the "from" and subject lines, and avoid message

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenbergerlaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenbergerlaw.com

1   text that looks as if the friend generated it.

2       **Wrong**: From line: "John Doe." Subject line: "Hey Jane, Check this out!"

3   Message copy: "I found this great deal at XYZ.com"

4       **Right**: From line: "XYZ.Co." Subject line: "Your friend John Doe recommended

5   us."  Message Text: "John Doe visited our site at XYZ.com and thought you would be

6   interested in receiving this great deal.  We respect your privacy and will not add your

7   address to our database unless you opt in."  Add a similar privacy statement on your

8   Web site's forwarding form, and then honor it.

9   See     http://www.emaillabs.com/email_marketing_articles/can_spam_violations.html.

10   (emphasis added).

11                  **PARTIES**

12       15.   Reunion.com, Inc. is a Delaware corporation, registered to conduct

13   business in California.   On information and belief Reunion.com maintains its

14   headquarters at 2118 Wilshire Blvd., Santa Monica, CA 90403.

15       16.   Plaintiff Violetta Hoang ("Hoang") is an individual who resides in San

16   Francisco, California.

17       17.   Plaintiff Livia Hsiao ("Hsiao") is an individual who resides in Foster City,

18   California.

19       18.   Plaintiff Michael Blacksburg ("Blacksburg") is an individual who resides in

20   San Francisco, California.

21       19.   Plaintiff Matthew Hall ("Hall") is an individual who resides in Dripping

22   Springs, Texas.

23            **JURISDICTION AND VENUE**

24       20.   This Court has subject matter jurisdiction over this matter pursuant to 28

25   U.S.C. §1332(d) because the amount in controversy in this matter exceeds the sum or

26   value of $5,000,000 exclusive of interest and costs, and this matter is a class action in

27   which a member of the class of plaintiffs is a citizen of a state different from the

28   Defendant, and less than two-thirds of the members of the proposed plaintiff classes in

1    the aggregate are citizens of California.

2        21.    This Court has personal jurisdiction over Reunion.com because

3    Reunion.com is registered with the California Secretary of State to conduct business

4    within California, maintains its headquarters and employees within California, and

5    conducts substantial business within California, such that Reunion.com has significant

6    continuous and pervasive contacts with the State of California.

7        22.    Venue is proper in this Court because Plaintiffs Hoang and Blacksburg

8    reside in San Francisco, California.   Furthermore, Reunion.com's User Agreement

9    contains a forum selection clause specifying "venue in the federal and state courts

10   located in San Francisco County, California, U.S.A. in all disputes arising out of or

11   relating to the Service."

12                        **INTRADISTRICT ASSIGNMENT**

13       23.    Pursuant to Local Rules 3-5(b) and 3-2(c), this action should be assigned

14   to the San Francisco division of the Northern District of California, because Plaintiffs

15   Hoang and Blacksburg reside in San Francisco, and because the forum selection clause

16   contained in Reunion.com's User Agreement specifies San Francisco as the appropriate

17   venue.

18                          **GENERAL ALLEGATIONS**

19              **Reunion.com's Business Practices and the Emails**

20       24.    Reunion.com operates a social networking Internet website.   The

21   Reunion.com website allows members to search for old friends, classmates, and

22   colleagues.  A member of the Reunion.com Website can add other members to his or

23   her "Friends" list, thereby creating a social network of Reunion.com members.

24       25.    Reunion.com boasts that it has more than 32 million registered members,

25   a number that it claims is increasing by one million members a month.

26       26.    In order to become a registered member of Reunion.com, a person must

27   provide his or her first name, last name, email address, gender and date of birth.

28   Additionally, Reunion.com asks registered members to provide the password to the

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

1    registered member's email account.

2        27.    When a person registers to become a member of Reunion, Reunion.com

3    automatically preselects, in the form of a pre-checked box, its "Auto-invite" field.  This

4    marketing technique is known as a "negative option," in that the person registering as a

5    member of Reunion.com must notice the pre-selection and go to the trouble of de-

6    selecting the field to avoid its effect.  "Negative options" are lucrative marketing tools

7    because people often fail to notice that the field or box has been pre-selected.

8    Numerous consumer watchdog groups have condemned "negative options" as unfair

9    business practices.

10       28.    Where a member does not de-select the "Auto-invite" field, Reunion.com

11   uses the registered member's email password to access the registered member's

12   personal email contacts.  As set forth in Reunion.com's Privacy Policy, Reunion.com

13   purports to access the registered member's contacts for the purpose of sending emails

14   "from Reunion.com" to certain or all of those contacts and inviting those contacts to join

15   Reunion.com.

16       29.    The emails sent by Reunion.com to registered members' email contacts

17   (as defined above, the "Emails"), however, are disguised so as not to appear to come

18   from Reunion.com, but from registered members personally, in that registered members'

19   names appear in the Emails' "From" lines.  In some cases, the "From" lines consist of

20   registered members' personal email addresses, including the domain names of the

21   registered members' email services providers, and, on information and belief, without

22   any authorization from such email services providers.  This is contrary to Reunion.com's

23   privacy policy, which states that Reunion.com "will automatically send your friend a[n]

24   email inviting him or her to visit the site."   In some of the Reunion.com emails,

25   Reunion.com even "signs" the email on behalf of the member, reinforcing the perception

26   that the email if from the member and not Reunion.com.

27       30.    Furthermore, the subject lines of the Emails do not invite recipient contacts

28   to join Reunion.com.  Instead, they state, "Please Connect with Me :-)" or "[Member

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1   Name] Wants to Connect with You" or something substantially similar, with neither

2   making any reference to Reunion.com, or any indication that that the message contains

3   an unsolicited commercial advertisement, or concerns a commercial subject matter.

4       31.    Additionally, the body text of the Emails states, "I looked for you on

5   Reunion.com, but you weren't there.  Please connect with me so we can keep in touch,"

6   or something substantially similar, even though individuals registering with Reunion.com

7   do not conduct searches as part of the registration procedure, and no such searches

8   were conducted.

9       32.    The Emails' headers and subject lines create the deception of a personal

10  request from the registered member to "connect" with the recipient, rather than an

11  unsolicited commercial email advertisement sent from Reunion.com.  That deception is

12  intended by Reunion.com to encourage recipients to open and read the Emails, when

13  recipients might otherwise ignore the Emails as one more piece of junk commercial

14  email advertising.

15      33.    The Emails are authored in whole by Reunion.com.  Members do not

16  assist in creating the content or the subject lines of the Emails.  Nor can members edit or

17  add content to the subject lines or content of the Emails.  Nor are members provided

18  with the opportunity to review or approve the Emails before Reunion.com sends them.

19  Reunion.com does not serve as a technical intermediary in the transit of the Emails, but

20  rather as the author of the Emails, and as sender of the Emails even though the various

21  aspects of the Emails as described above were unauthorized, unreviewed, and false.

22                          **Emails Received by Plaintiff Hoang**

23      34.    On or around May 5, 2008 Plaintiff Violetta Hoang received an Email (the

24  "Hoang Email") from Reunion.com that appeared to have been sent by a former

25  professor, T. Truong.  A graphical depiction of the Hoang Email appears below:

26

27

28  //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

From: **Truong Tran** <verify@relay05.reunion.com>
Date: Mon, May 5, 2008 at 6:41 PM
Subject: Truong wants to connect with you!
To: loveeloisa@gmail.com

Hi,

I looked for you on Reunion.com, but you weren't there. I use Reunion.com to search for lost friends and contacts, and to stay connected with people I know, so please connect with me.

—Truong

**RESPOND TO TRUONG:**
Connect with Truong Now! - You'll also find out if anyone else is searching for you.

Or go to http://www.reunion.com/showInviteRegistration.do?uid=258485053

Error! Filename not specified.
Reunion.com - Life Changes. Keep in Touch.™
You have received this email because a Reunion.com Member sent an invitation to this email address. For assistance, please refer to our FAQ or Contact Us.
Our Address: 2118 Wilshire Blvd., Box 1008, Santa Monica, CA 90403-5784

35.     The Hoang Email was false and deceptive.  Truong had not authored the Hoang Email. The Hoang Email was not, in fact, "From" Truong, as the Hoang Email indicates.  Truong had not looked for Hoang on Reunion.com, as the Hoang Email falsely states.  And, Truong had not requested that Hoang connect with him, as the Hoang Email falsely states.  Reunion.com drafted and sent the Hoang Email to Hoang, knowing that these statements were false and unauthorized, with the intent to mislead Hoang into opening the Email and becoming a member of Reunion.com.

36.     The "From" line of the Hoang Email was false and/or misrepresentative because it created the deception that the Hoang Email was from Truong and not from Reunion.com, and that Truong had authored or otherwise assisted in the creation of the Hoang Email.  However, the Hoang Email was not sent by Truong but by Reunion.com, and Truong had not authored or otherwise assisted in the creation of the Hoang Email.  Rather, the Hoang Email had been wholly authored by Reunion.com.  As a result, the "From" line of the Hoang Email was false and misleading.  Reunion.com intended to deceive Hoang by sending the Hoang Email with this "From" line in order to lure Hoang into opening and reading the Hoang Email.  Reunion.com intended for Hoang to falsely believe that the Hoang Email had been sent by Truong and not by Reunion.com.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

37.     The subject line of the Hoang Email was false and misleading because it created the deception that the Hoang Email was a personal request by Truong to connect with Hoang, and not the unsolicited commercial email advertisement from Reunion.com, which it in fact was.  The subject line in the Hoang Email falsely indicated that Truong had made an affirmative effort to connect with Hoang through the Reunon.com website.  In fact, Truong had not done so.  Instead, the subject line in the Hoang Email had been created automatically by Reunion.com without regard to any effort by Truong to "connect" with Hoang.   As a result, the subject line of the Hoang Email was false and deceptive.  Reunion.com intended to deceive Hoang by sending the Hoang Email with this subject line in order to lure Hoang into opening and reviewing the Hoang Email.  Reunion.com  intended for Hoang to falsely believe that Truong had been looking for her on the Reunion.com website, and to become a member of Reunion.com under this mistaken belief.

**Emails Received by Plaintiff Hsiao**

38.     On or around May 5, 2008 Plaintiff Livia Hsiao received three Emails (the "Hsiao Emails") from Reunion.com that purported to have been sent from three of Hsiao's friends, E. Kang, V. Yeh, and A. Wong.   Graphical depictions of the Hsiao Emails appear below:

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14  //

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerlaw.com

From: **Esther Kang** <verify@relay05.reunion.com>
Date: Mon, May 5, 2008 at 8:46 PM
Subject: Esther wants to connect with you!
To: liviahsiao@gmail.com

Hi,

I looked for you on Reunion.com, but you weren't there. I use Reunion.com to search for lost friends and contacts, and to stay connected with people I know, so please connect with me.

—Esther

**RESPOND TO ESTHER:**
Connect with Esther Now! - You'll also find out if anyone else is searching for you.

Or go to http://www.reunion.com/showInviteRegistration.do?uid=258498145

**Error! Filename not specified.**
Reunion.com - Life Changes. Keep in Touch.™
You have received this email because a Reunion.com Member sent an invitation to this email address. For assistance, please refer to our FAQ or Contact Us.
Our Address: 2118 Wilshire Blvd., Box 1008, Santa Monica, CA 90403-5784

From: **Vivian Yeh** <verify@relay05.reunion.com>
Date: Mon, May 5, 2008 at 8:56 PM
Subject: Vivian wants to connect with you!
To: liviahsiao@gmail.com

Hi,

I looked for you on Reunion.com, but you weren't there. I use Reunion.com to search for lost friends and contacts, and to stay connected with people I know, so please connect with me.

—Vivian

**RESPOND TO VIVIAN:**
Connect with Vivian Now! - You'll also find out if anyone else is searching for you.

Or go to http://www.reunion.com/showInviteRegistration.do?uid=258500422

**Error! Filename not specified.**
Reunion.com - Life Changes. Keep in Touch.™
You have received this email because a Reunion.com Member sent an invitation to this email address. For assistance, please refer to our FAQ or Contact Us.
Our Address: 2118 Wilshire Blvd., Box 1008, Santa Monica, CA 90403-5784

From: **Andrea Wong** <verify@relay05.reunion.com>
Date: Mon, May 5, 2008 at 10:06 PM
Subject: Andrea wants to connect with you!
To: liviahsiao@gmail.com

    Hi,

    I looked for you on Reunion.com, but you weren't there. I use Reunion.com to search
    for lost friends and contacts, and to stay connected with people I know, so please
    connect with me.

    —Andrea

    **RESPOND TO ANDREA:**
    Connect with Andrea Now! - You'll also find out if anyone else is searching for you.

    Or go to http://www.reunion.com/showInviteRegistration.do?uid=229123621

    **Error! Filename not specified.**
    Reunion.com - Life Changes. Keep in Touch.™
    You have received this email because a Reunion.com Member sent an invitation to
    this email address. For assistance, please refer to our FAQ or Contact Us.
    Our Address: 2118 Wilshire Blvd., Box 1008, Santa Monica, CA 90403-5784

39.     The Hsiao Emails were false and deceptive.  Kang, Yeh, and Wong had not authored the Hsiao Emails, as the Hsiao Emails indicate.  Nor, on information and belief, had Kang, Yeh, or Wong looked for Hsiao on Reunion.com, as the Hsiao Emails state.  Nor did Kang, Yeh, or Wong request that Hsiao connect with them, as the Hsiao Emails state.  Reunion.com drafted the Hsiao Emails knowing that these statements were not true, with the intent to mislead Hsiao into opening and reading the Hsiao Emails.

40.     The "From" line of the Hsiao Emails were false and deceptive  because they stated that they had been sent by Kang, Yeh, and Wong, when in fact they had been written and sent by Reunion.com.  The Hsiao Emails were also false and deceptive because they implied that Kang, Yeh, and Wong had authored or otherwise assisted in the creation of the Hsiao Emails, when, in fact, Kang, Yeh, and Wong had not authored or otherwise assisted in the creation of the Hsiao Emails.  Rather, the Hsiao Emails had been wholly authored and created by Reunion.com.  As a result, the "From" line of the Hsiao Emails were false and deceptive.  Reunion.com intended to deceive Hsiao by sending the Hsiao Emails with the above-described "From" lines in order to deceive

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenbergerlaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

1  Hsiao into opening and reading the Hsiao Emails.  Reunion.com intended for Hsiao to

2  falsely believe that the Hsiao Emails had been sent by Kang, Yeh, and Wong and not by

3  Reunion.com

4      41.    The subject line of the Hsiao Emails were false and deceptive because

5  they created the false impression that the Hsiao Emails were personal requests by

6  Kang, Yeh, and Wong for Hsiao to connect with them, and not the unsolicited

7  commercial email advertisements from Reunion.com that they were.  The subject lines in

8  the Hsiao Emails indicated that Kang, Yeh, and Wong had made affirmative efforts to

9  connect with Hsiao through the Reunon.com website.  In fact, Kang, Yeh, and Wong had

10 made no such affirmative efforts.  Instead, the subject lines in the Hsiao Emails had

11 been created automatically by Reunion.com without regard to any effort by Kang, Yeh,

12 and Wong to "connect" with Hsiao.   As a result, the subject lines of the Hsiao Emails

13 were false and deceptive.  Reunion.com intended to deceive Hsiao by sending the Hsiao

14 Emails with these subject lines in order to lure Hsiao into opening and reviewing the

15 Hsiao Email.  Reunion.com intended for Hsiao to falsely believe that Kang, Yeh, and

16 Wong had been looking for her on the Reunion.com website.

17                    **Email Received by Plaintiff Blacksburg**

18     42.    On or around July 17, 2008 Plaintiff Michael Blacksburg received an Email

19 (the "Blacksburg Email") from Reunion.com that purported to have been sent by E.

20 Dunn,  a  member  of  a  Google  electronic  mailing  list  referred  to  as:

21 FOOLD@GOOGLEGROUPS.COM.  An electronic mailing list is comprised of a program

22 that enables a person to subscribe to a list by supplying his or her email address.

23 Thereafter, any subscriber may send an email to a single email address (often referred

24 to as a "reflector"), and the electronic email address program re-sends that email to all of

25 the other subscribers on the list.  An electronic mailing list is not a natural person.

26     43.    A graphical depiction of the Blacksburg Email, along with the reflector,

27 FOOLD@GOOGLEGROUP.S.COM, appear below:

28 //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

--- On **Thu, 7/17/08, Erick Dunn <_edmorphic@yahoo.com_>** wrote:

From: Erick Dunn <edmorphic@yahoo.com>
Subject: [Fool'd] Please connect with me :)
To: foold@googlegroups.com
Date: Thursday, July 17, 2008, 11:45 AM

**I looked for you on Reunion.com, but you weren't there.
Please connect with me so we can keep in touch.**

## Do you know Erick?

Yes     No

Tell us, and see who's searching for you!

**Reunion.com** - Find Everyone from Your Past.™
You have received this email because a Reunion.com Member
sent an invitation to this email address.
For assistance, please refer to our FAQ or Contact Us.
Our Address: 2118 Wilshire Blvd., Box 1008, Santa Monica, CA 90403-5784

Post: foold@googlegroups.com
Unsubscribe: foold-unsubscribe@googlegroups.com
Visit: http://groups.google.com/group/foold?hl=en

44.    The Blacksburg Email was sent to the entire electronic mailing list membership because the mailing list address was listed as one of Dunn's email contacts.

45.    The content of the Blacksburg Email was false and deceptive. Dunn had not authored the Blacksburg Email, as the Blacksburg Email indicates. Dunn had not looked for Blacksburg on Reunion.com, as the Blacksburg Email states. Nor had Dunn requested that Blacksburg "keep in touch" with him, as the Blacksburg Email states. Reunion.com drafted the Blacksburg Email knowing that these statements were not true, with the intent to mislead Blacksburg into opening and reading the Blacksburg Email. The "From" line of the Blacksburg Email was false and deceptive because it created the false impression that the Blacksburg Email was from Dunn and not from Reunion.com, and that Dunn had authored or otherwise assisted in the creation of the Blacksburg

1   Email.   However, the Blacksburg Email had not been sent by Dunn but, rather, by

2   Reunion.com, and Dunn had not authored or otherwise assisted in the creation of the

3   Blacksburg Email.   In fact, the Blacksburg Email had been wholly authored by

4   Reunion.com.   As a result, the "From" line of the Blacksburg Email was false and

5   deceptive.   Reunion.com intended to deceive Blacksburg by sending the Blacksburg

6   Email with this "From" line in order to deceive Blacksburg into opening and reviewing the

7   Blacksburg Email.   Reunion.com intended for Blacksburg to falsely believe that the

8   Blacksburg Email had been sent by Dunn and not by Reunion.com.

9        46.   The subject line of the Blacksburg Email was false and/or misleading

10  because it created the false impression that the Blacksburg Email was a personal

11  request by Dunn to connect with Blacksburg, and not the unsolicited commercial email

12  advertisement from Reunion.com that it was.   The subject line in the Blacksburg Email

13  indicated that Dunn had made an affirmative effort to connect with Blacksburg through

14  the Reunon.com website.   In fact, Dunn had made no such affirmative effort.   Instead,

15  the subject line in the Blacksburg Email had been created automatically by Reunion.com

16  without regard to any effort by Dunn to "connect" with Blacksburg.    As a result, the

17  subject line of the Blacksburg Email was false and deceptive.   Reunion.com intended to

18  deceive Blacksburg by sending the Blacksburg Email with this subject line in order to

19  deceive Blacksburg into opening and reviewing the Blacksburg Email.   Reunion.com

20  intended for Blacksburg to falsely believe that Dunn had been looking for her on the

21  Reunion.com website.

22       47.   On information and belief, the Blacksburg Email was deceptively

23  accompanied by and/or contained a third party's domain name, "Yahoo.com," without

24  the permission of that third party.   This created the deception that Yahoo, or Yahoo's

25  licensee, had authorized the sending of the Blacksburg Email.   In fact, the Blacksburg

26  Email was sent out automatically by Reunion.com without Yahoo's or Yahoo's licensee's

27  consent.   Reunion.com intended to create this deception to make the Blacksburg Email

28  appear more like a personal request as opposed to an automatic email advertisement.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger Law.com

1    Through this deception, Reunion.com intended for Blacksburg to falsely believe that

2    Dunn had been looking for her on the Reunion.com website.

3    <center>**Email Received by Plaintiff Hall**</center>

4    48.    On or around July 25, 2008 Plaintiff Matthew Hall received an Email (the

5    "Hall Email") from Reunion.com that appeared to have been sent by Mike Klump.   A

6    graphical depiction of the Hall Email appears below:



From: **Mike Klumpp** <mikeklumpp@yahoo.com>
Date: Tue, Jul 22, 2008 at 11:09 AM
Subject: Please connect with me :)
To: matthallart@gmail.com

**I looked for you on Reunion.com, but you weren't there.
Please connect with me so we can keep in touch.**

**Do you know Mike?**

Yes    No

Tell us, and see who's searching for you!

Error! Filename not specified.

**Reunion.com** - Find Everyone from Your Past.™
You have received this email because a Reunion.com Member
sent an invitation to this email address.
For assistance, please refer to our FAQ or Contact Us.
Our Address: 2118 Wilshire Blvd., Box 1008, Santa Monica, CA 90403-5784

20    49.    Mike Klump is Hall's former minister, who at the time the Hall Email was

21    sent, was in the process of relocating to another state and leaving his position as the

22    minister of Hall's religious congregation.   Prior to Klump's relocation, Hall had

23    maintained a relationship with Klump as Hall's minister, and occasionally communicated

24    with Klump both inter-personally and by way of email.  Prior to receiving the Hall Email,

25    Hall was unsure whether Klump intended to stay in touch following Klump's relocation.

26    50.    The content of the Hall Email was false and deceptive.   Klump had not

27    authored the Hall Email, as the Hall Email indicates.  Klump had not looked for Hall on

28    Reunion.com, as the Hall Email states.  Nor did Hall request that Hall "keep in touch"

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger-Law.com

1  with him through Reunion.com, as the Hall Email states.  Reunion.com drafted the Hall

2  Email knowing that these statements were not true, with the intent to mislead Hall into

3  opening and reading the Hall Email.

4       51.    The "From" line of the Hall Email was false and misrepresentative because

5  it created the deception that the Hall Email was from Klump and not from Reunion.com,

6  and that Klump had authored or otherwise assisted in the creation of the Hall Email.

7  However, the Hall Email was not sent by Klump but by Reunion.com, and Klump had not

8  authored or otherwise assisted in the creation of the Hall Email.  Rather, the Hall Email

9  had been wholly authored by Reunion.com.  As a result, the "From" line of the Hall Email

10  was false and misrepresentative.  Reunion.com intended to deceive Hall by sending the

11  Hall Email with this "From" line in order to lure Hall into opening and reviewing the Hall

12  Email.  Reunion.com intended for Hall to falsely believe that the Hall Email had been

13  sent by Klump and not by Reunion.com. The subject line of the Hall Email was false

14  and/or misleading because it created the deception that the Hall Email was a personal

15  request by Klump to connect with Hall, and not an unsolicited commercial email

16  advertisement from Reunion.com.  The subject line in the Hall Email indicated that

17  Klump had made an affirmative effort to connect with Hall through the Reunion.com

18  website.  In fact, Klump had made no such affirmative effort.  Instead, the subject line in

19  the Hall Email had been created automatically by Reunion.com without regard to any

20  effort by Klump to "connect" with Hall.   As a result, the subject line of the Hall Email was

21  false and misrepresentative.  Reunion.com intended to deceive Hall by sending the Hall

22  Email with this subject line in order to lure Hall into reviewing the Hall Email.

23  Reunion.com intended for Hall to falsely believe that Klump had been looking for her on

24  the Reunion.com website.

25       52.    On information and belief, the Hall Email was deceptively accompanied by

26  and/or contained a third party's domain name, "Yahoo.com," without the permission of

27  that third party.  This created the deception that Yahoo, or Yahoo's licensee, had

28  authorized the sending of the Hall Email.   In fact, the Hall Email was sent out

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

1  automatically by Reunion.com without Yahoo's or Yahoo's licensee's consent.

2  Reunion.com intended to create this deception to make the Hall Email appear more like

3  a personal request as opposed to an automatic email advertisement.   Through this

4  deception, Reunion.com intended for Hall to falsely believe that Klump had been looking

5  for her on the Reunion.com website. Upon receiving the Hall Email, Hall believed and

6  relied on the false representations that Klump had personally sent the Hall Email to Hall,

7  and that Klump had made an affirmative effort to contact Hall in order to preserve their

8  relationship following Klump's relocation.

9  **The Plaintiffs' Claims Are Not Expressly Preempted by CAN-SPAM**

10  53.    In enacting CAN-SPAM, Congress explicitly intended to preserve state

11  laws that regulated commercial emails that prohibit "falsity or deception in any portion of

12  commercial electronic email message…"   Congress did preempt all other state laws

13  regulating commercial emails because it would be difficult for a sender of email to know

14  the various states in which its recipients resided with just an email address, and,

15  accordingly, it would be extremely difficult to comply with various state regulatory

16  regimes.  Senate Report No. 109-102, P.L. 108-807, CAN-SPAM Act of 2003 (July 16,

17  2003).    However, in the Senate Report which explains the rationale behind the

18  preemption provision, Congress was careful to qualify that general proposition, and

19  stated that it specifically intended to deny preemptive protection to senders of false or

20  deceptive emails "because they target behavior that a legitimate business trying to

21  comply with relevant laws would not be engaging in anyway." *Id.*   Accordingly,

22  Congress not only did not foresee difficulties of permitting state law regulation of false or

23  deceptive emails, it chose as a matter of policy to expressly permit such state laws.

24  54.    Various courts have examined the express preemption clause contained in

25  CAN-SPAM, 15 U.S.C. §7707(b)(1).   The words "falsity or deception" have been

26  interpreted by the Fourth Circuit Court of Appeals looking to 15 U.S.C. §7704(1)(a),

27  which permits a federal cause of action for sending false emails if the sender "has *actual*

28  *knowledge, or knowledge fairly implied on the basis of objective circumstances,* that a

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger Law.com

1   subject heading of the message would be *likely to mislead a recipient*, acting reasonably

2   under the circumstances, about a *material* fact regarding the contents or subject matter

3   of the message…"   *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348,

4   355 (4th Cir. 2006) (emphasis in original).  Plaintiffs allege that Reunion.com had actual

5   knowledge, or knowledge fairly implied on the basis of objective circumstances, that the

6   Subject lines, headers and From lines of the Emails it sent to Plaintiffs were likely to

7   mislead Plaintiffs acting reasonably under the circumstances about a material fact

8   regarding the contents or subject matter of the Emails.  As grounds for those allegations,

9   among other reasons, Plaintiffs state that hundreds, if not thousands, of consumers

10  have complained to the Better Business Bureau, the FTC, and to others, as well as

11  publicly on the Internet about Reunion.com's deceptive email scheme.  Reunion.com

12  knows of the consumer complaints and the complaint asserted in this lawsuit and

13  refuses to change its practices, even though it would be relatively easy to do so,

14  precisely because it relies on the effectiveness of its deceptive email scheme to grow its

15  business.

16       55.    For example consider this exchange between Reunion.com and this Better

17  Business Bureau complainant (attached hereto as Exhibit C along with two other

18  complaints made to the Better Business Bureau):

19

20       **Complainant**:  They deceptively mined my address book and sent an
         email allegedly from me to thousands of contacts without my express

21       permission.  Resolution Sought: Send an apology letter to everyone in my
         address book, clarifying that I do not endorse their company or service,
         and that I did not authorize them to send an email in my name.

22

23       **Reunion.com's Response**: Dear Customer, We understand that you are
         concerned about what happened.   However, the only way that your

24       address book is imported onto your Reunion.com account is for you to
         elect to do so.  This is an option that is clearly stated on our site at the

25       time of registration.  If you wish to have everyone in your contact list
         removed so that they do not receive any further correspondence from your

26       Reunion.com account you may do so simply by clicking on the "Friends"
         tab at the top of the page.  Should you need further assistance please feel
         free to contact us at 1-888-704-1900.  Best Regards, Reunion.com

27

28       **Complainant's Rebuttal**: The only thing that's clear in hindsight is that
         Reunion.com is attempting to fool people into furnishing their address

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.aw.com

book password so they can spam in other people's name. NO ONE would EVER knowingly allow a company to send an email to EVERYONE in their address book, sight unseen, signed from themselves, endorsing ANYTHING. I have almost 2000 names in my Yahoo address book, and I'M not allowed to send a message to MY OWN entire contact list, because it's disallowed by Yahoo as SPAM. How can you tell me that when YOU do it (in my name and without my knowledge no less), it ISN'T spamming? It's OUTRAGEOUS to pretend otherwise. I can't wait to hear why Reunion.com doesn't provide users a preview of the letter they send in the user's name! This business should be shut down. I deserve an apology, and frankly, as recompense, I would like to send an email to everyone in Reunion.com's address book. You KNOW what it would say. (all emphasis in original).

**Reunion.com's Final Response**: Dear Customer, We sincerely apologize for any inconvenience this incident may have cause [sic] you or any of your contacts. We will make sure that your suggestions and concerns are forwarded to the appropriate department. Should you have additional questions you may contact us at 1-888-704-1900. Thank you and have a fantastic day! Best Regards, Reunion.com

The above exchange took place in April of this year, and Reunion.com continues to knowingly engage in conduct that is not only likely to mislead a reasonable person, but is frequently misleading reasonable people. Reunion.com continues to do so notwithstanding how easy it would be to change the procedures by which its Emails are sent, and to conform the content of the Emails to the true facts. For example, Reunion.com could refrain from using the deceptive practices described below, such as using pre-clicked boxes to purportedly obtain consumer consent. Its adamant refusal to do so more than satisfies the *Mummagraphics* standard.

56.     The *Mummagraphics* decision of the Fourth Circuit did not hold that state law claims prohibiting falsity or deception are preempted unless they also require that the plaintiff plead and prove reliance and actual damages. It merely found that state laws that would prohibit emails containing immaterial inaccuracies on a strict liability standard, without any knowledge or intent on the part of the sender, were preempted. The Ninth Circuit has differentiated between claims that challenge intentionally false statements and claims that challenge fraudulent statements – acknowledging there is a difference between the terms fraudulent and falsity. In *Hart v. McLucas*, 535, F.2d 516, 519 (9th Cir. 1976), the court held that the elements of a claim for an "intentional false

1    statement" are the "first three elements of fraud" only, mainly: "falsity, materiality, and

2    knowledge."  This interpretation of the elements for an intentionally false statement claim

3    is essentially identical to the elements that a claim would require to survive preemption

4    according to *Mummagraphics*.  Plaintiffs herein allege that the From lines, Subject lines,

5    and headers of the Emails were false, knowingly and intentionally made by

6    Reunion.com, and material.

7    **The Emails Were Not Routine Conveyances as That Term is Used in CAN-SPAM**

8         57.    Reunion.com's emails, dispatched in its email scheme, do not constitute a

9    "routine conveyances" pursuant to the CAN-SPAM final rule, 16 C.F.R. §316.1 to 316.6,

10   for a variety of reasons.   Most importantly, Reunion.com was not engaged in the

11   transmission, routing, relaying, handling, or storing, through an automatically technical

12   process, of an electronic mail message for which another person has identified the

13   recipient or provided the recipient address.

14        58.    Instead, Reunion.com, as part of its scheme, creates the content of the

15   Emails at issue, without any ability of the consumer to review, edit or approve the

16   content.

17        59.    Reunion.com obtains the email addresses from consumers in a deceptive

18   manner.   Specifically, Reunion.com uses a pre-checked box during the registration

19   process, which is a technique that the FTC has specifically criticized as an insufficient

20   manner in which to obtain consent from consumers.   *See* Privacy Online: Fair

21   Information Practices in the Electronic Marketplace, A Report to Congress, May 2000 at

22   26 (http://www.ftc.gov/reports/privacy2000/privacy2000text.pdf)(criticizing sites that state

23   information will not be shared without consent, but then consent is deemed provided by

24   the provision of the information, or by "pre-checked 'click boxes'" buried at the end of a

25   registration form.").  As the FTC noted, the use of such practices "undercuts the value of

26   offering such choice in the first instance."

27        60.    Reunion.com engages in both deceptive practices outlined by the FTC.   It

28   combines the registration process by which one provides the information (email

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1   addresses) with the actual practice of sending the emails – so that consumers who click

2   the "next" button soon discover, much to their surprise, that they have simultaneously

3   consented to two distinct acts: (a) register with the Reunion.com and (b) consent to have

4   their contacts spammed with the deceptive Emails, with no separate, intermediate step

5   permitting the consumer to choose who would be contacted by Reunion.com.   By

6   combining the steps of registration and consent to send the emails, Reunion.com

7   misleads consumers into thinking that their personal information will not be used by

8   Reunion.com without their consent, when the very act of registering is deemed to

9   provide the consent that would be required.

10      61.     Even more deceptive is Reunion.com's practice of using a pre-checked

11  "click box" at the bottom of its registration form that must be noticed and unclicked if the

12  registering member is to avoid having all their contacts spammed.  This "negative option"

13  marketing practice has been widely condemned beyond the FTC by consumer watch

14  dog groups.  Indeed, in the FTC negative options workshop, FTC attorney Leslie Fair

15  explicitly advised companies that to meet the FTC's "deception policy statement," a

16  company              should              "Avoid              Pre-Checked              Boxes."

17  http://www.ftc.gov/bcp/workshops/negativeoption/presentations/Fair.pdf

18      62.     Given the FTC's criticisms of negative options, pre-checked boxes, and the

19  means by which consumers are deemed to provide consent merely by providing the

20  information, it is clear that Reunion.com's conduct is so at odds with the FTC's definition

21  of a forward to a friend, that it does not constitute a routine conveyance.

22      63.     Furthermore, as part of its unlawful scheme, Reunion.com retains the

23  email addresses of those who register to become members of Reunion.com.

24  Reunion.com retains these email addresses to track the success of its email referral

25  scheme and to engage in future email campaigns targeted at the retained email

26  addresses, including the sending of additional "reminder e-mails."  Reunion.com thereby

27  retains the email for a "purpose other than relaying the . . . message" purportedly from

28  the Reunion.com member, and therefore, according to the FTC, "the seller would not fall

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.aw.com

1    within the routine conveyance exemption."

2        64.     Reunion.com also retains the emails for other purposes, in addition to the

3 improper purposes described above. After Reunion.com sends the emails purportedly

4 "from a friend," Reunion.com, on information and belief, tracks information regarding the

5 recipients of each email and the particular email sent, for purposes wholly unrelated to

6 the mere transmission, routing or relaying of the email. On information and belief, the

7 information collected by Reunion.com includes: whether a recipient opens an email;

8 whether a recipient clicks on any link in the email; whether a recipient starts the

9 registration process after clicking on a link in the email; whether a recipient finishes the

10 registration process after clicking on a link in the email; which email resulted in clicking

11 and registering (i.e. the initial email or any follow up email); the subject lines and content

12 of each email, compared to open rates, click-through rates and registration rates; and

13 revenue generated from recipients organized by subject line, specific email version, etc.

14               **Defendant's Conduct Has Caused Extensive Consumer Outrage**

15        65.     The deceptive nature of Reunion.com's email practices has fueled

16 widespread consumer outrage. The Federal Trade Commission has received hundreds

17 of consumer complaints about Reunion.com's deceptive email scheme and other

18 business tactics. Many of those complaints, which are attached hereto as Exhibit B,

19 mirror the factual allegations set forth herein. In describing Reunion.com's misconduct,

20 one consumer astutely described exactly how the deceptive email scheme works:

21       When I created an account on this [website], . . . [i]t harvested my address

22       book at gmail.com, and sent emails to everyone in it saying [that I wanted to]

23       "Connect with You!" ***giving them the impression that I had lost contact***

24       ***with them and wanted them to create an account at reunion.com.*** When

25       my contacts received this, ***it appeared to*** them to ***have come directly from***

26       ***my email address at gmail.com. I had created my account at***

27       ***reunion.com in response to a similar illegitimate message sent to me by***

28       ***reunion.com when a friend created an account there, which appeared to***

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerlaw.com

1  **come directly from him, and one or two of my contacts created an**

2  **account after receiving the message that appeared to be from me**, and

3  their address books were raided as well.  I was especially embarrassed when I

4  realized that these messages had been sent to people I didn't even know,

5  such as any person I had ever emailed, from my gmail account, about an

6  internet order, at the UC Davis Extension Office, and other places of business.

7  (emphasis added).  (Exhibit B, p. 22)

8        66.      Other examples of consumer outrage over Reunion.com's false and

9  deceptive email practices, all of which are contained in Exhibit B hereto, include the

10  following:

11      •   "I received invitation from reunion.com that appeared to be sent from a friend

12          inviting me to join site. . . .   Email has subject line that is misleading,

13          suggesting a friend has invited me to join reunion.com.   That friend never

14          invited me and had 400 people spammed from her contacts list." (Exhibit B, p.

15          15)

16      •   "Everyone from my email address book has received a fraudulent email from

17          what appears to be my email address, but is derived from reunion.com"

18          (Exhibit B, p. 53)

19      •   "Apparently, reunion.com sent out emails to EVERYONE IN MY ADDRESS

20          BOOK inviting them to join on the pretense they're from me!  This includes

21          business contacts, old boyfriends, ex-husbands, etc.   THIS IS INTERNET

22          FRAUD!" (Exhibit B, p. 43)

23      •   "False emails were sent out to all of my email contacts (over 1000 email

24          contacts) stating that I was looking for them thru Reunion.com.   Resolution

25          Sought:  I would like Reunion.com to cease and desist from false claims . . ."

26          (Exhibit B, p. 31)

27      •   "A friend I knew sent an email inviting me to join her on www.reunion.com

28          Because I like my friend and had not heard from her in a while I went on the

site www.reunion.com.  It prompted me to look in my addressbook to see who else was contacting me.  Once I did that their site downloaded my entire addressbook and sent out the same misleading email inviting my own friends to join me.  Once the site downloaded my email addresses there was no way to stop this process even though there was a big button: Next below it." (Exhibit B, p. 10)

- "Reunion.com tricks you into going to website because 'somebody is looking for you' . . ." (Exhibit B, p. 11)

- "This company [reunion.com] hacked my email system, falsely telling my contacts that I was 'looking for them' on their social networking website." (Exhibit B, p. 46)

- When you join for free these folks (reunion.com) pull thousands of email addresses from other people and they send emails to them in my name (as if) I'm send[ing] it to them telling these folks I'm trying to contact them.  It's a new spam. (Exhibit B, p. 23)

- "Reunion.com sent me an email saying that a friend was trying to contact me. When you click on their link, they somehow download all of your own addressbook contacts and send the same email to these new contacts using YOUR name, as if you want to contact them. . . .  It is a scam that is going around, and it is—or should be—illegal!!!"   (Exhibit B, p. 25)

67.    As a consequence of these types of consumer complaints, including the one attached hereto as Exhibit C, the Better Business Bureau has assigned Reunion.com a "D" rating, which is reserved for a company with such a troubling record that the Better Business Bureau recommends "caution in doing business with it." Indeed, the Better Business Bureau's report on Reunion.com states that "[c]omplaints contain a pattern of allegations that the company uses the email address book of those who sign up to deceptively email their contacts that they are searching for them."

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger Law.com

**CLASS ACTION ALLEGATIONS**

68.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs Hoang and Hsiao bring this action on their own behalf and as representatives of all individuals who, at a time when they were not registered as members of Reunion.com, received one or more Emails described herein from Reunion.com within the period beginning three years prior to the filing of this action up to and including the date of final judgment ("the Class"). The period beginning three years prior to the filing of this action up to and including the date of final judgment is hereinafter referred to as the "Class Period" or the "Relevant Period."

69.     Pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs Blacksburg and Hall bring this action on their own behalves and as representatives of all individuals, who at a time when they were not registered members of Reunion.com during the Class Period, received one or more Emails from Reunion.com that specified in the "From" line a non-Reunion.com domain name ("the Third Party Domain Subclass" or "Subclass").

70.     A class action is proper under Federal Rule of Civil Procedure 23 because: a) the Class and Subclass are so numerous that joinder of all members is impracticable, b) there are questions of law and fact that are common to the Class and Subclass, c) the claims of the representative Plaintiffs are typical of the claims of the Class and Subclass, and the representative Plaintiffs will fairly and adequately protect the interests of the Class and Subclass.   A class action is the superior method of adjudicating this controversy because under Rule 23(b)(3), questions of law and fact common to the Class and Subclass members predominate over any question affecting only individual members.

71.     The common questions of law and fact include:

•     Whether Reunion.com advertised in the Emails within the meaning of Cal. Bus. & Prof. C. §§17529.1 and 17529.5;

•     Whether the Emails were sent from California and/or sent to California electronic mail addresses, within the meaning of Cal. Bus. & Prof. C.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerlaw.com

1    §§17529.5(a);

2    •    Whether the Emails constitute unsolicited commercial email

3         advertisements within the meaning of Cal. Bus. & Prof. C. §§17529.1(c) &

4         (o);

5    •    Whether the Emails contain falsified, misrepresented and/or forged header

6         information in violation of California Business and Professions Code

7         Section 17529.5(a)(2);

8    •    Whether the Emails contain a subject line that Reunion.com knew would

9         be likely to mislead a recipient, acting reasonably under the circumstances,

10        about a material fact regarding the contents or subject matter of the

11        message in violation of California Business and Professions Code Section

12        17529.5(a)(3); and

13   •    Whether the Emails that were sent from third party email accounts

14        deceptively contain or are accompanied by a third-party's domain name

15        without the permission of the third party in violation of California Business

16        and Professions Code Section 17529.5(a)(1) (on behalf of the Third Party

17        Domain Subclass only).

18   72.  Plaintiffs can and will fairly and adequately represent and protect the

19   interests of the Class and Subclass because:

20   •    All of the questions of law and fact regarding the liability of Reunion.com are

21        common to the Class and Subclass and predominate over any individual

22        issues that may exist, such that by prevailing on their own claims, Plaintiffs will

23        necessarily establish the liability of Reunion.com to all Class and Subclass

24        members;

25   •    Without the representation provided by Plaintiffs, it is unlikely that any Class or

26        Subclass members would receive legal representation and/or obtain recourse

27        for the misconduct carried out by Reunion.com; and

28   •    Plaintiffs have retained competent attorneys who are experienced both in the

conduct of class actions and the law governing commercial email advertising. Plaintiffs and their counsel have the necessary resources to litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the Class and Subclass members and are determined to discharge those duties to obtain the best possible recovery for the Class and Subclass.

<div align="center">

**FIRST CAUSE OF ACTION**

**Violation of Cal. Bus. & Prof. Code §17529.5(a)(1)**

**(Brought by Blacksburg and Hall, individually and on behalf**

**of the Third Party Domain Subclass)**

</div>

73.     Plaintiffs repeat and incorporate by reference all of the allegations set forth above. Blacksburg, Hall, and each member of the Third Party Domain Subclass were recipients of unsolicited commercial email advertisements sent by Reunion.com, referred to herein as the "Third Party Domain Subclass Emails" during the relevant time period.

74.     On information and belief, the Third Party Domain Subclass Emails were either sent from California and/or sent to California electronic mail addresses.

75.     The Third Party Domain Subclass Emails received by Blacksburg, Hall, and the members of the Third Party Domain Subclass deceptively contained or were accompanied by third-party domain names without the permission of the third parties. To wit, the "From" line of the Third Party Domain Subclass Emails received by Blacksburg, Hall, and members of the Third Party Domain Subclass contained an individual email address incorporating a third-party domain name, creating the deception that the Third Party Domain Subclass Email was from the individual user of that email address and/or the third party and not Reunion.com.

76.     On information and belief, the Third Party Domain Subclass Emails received by Blacksburg, Hall, and the members of the Third Party Domain Subclass were sent without the permission of the third party that appeared in the "From" line, and in violation of that third-party's terms of use as relate to that third-party's email services.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerlaw.com

77.    Reunion.com's conduct, as described herein, violated and continues to violate Cal. Bus. & Prof. C. §17529.5 (a) (1).  As a result of that violation, Reunion.com is liable to Blacksburg, Hall, and each member of the Third Party Domain Subclass and, pursuant to Cal. Bus. & Prof. C. §17529.5(b)(1)(B)(ii), Blacksburg, Hall, and each member of the Third Party Domain Subclass are entitled to liquidated damages of one thousand dollars for each unsolicited commercial email advertisement transmitted to them in violation of Cal. Bus. & Prof. C. §17529.5 (a).

## SECOND CAUSE OF ACTION

### Violation of Cal. Bus. & Prof. Code §17529.5(a)(2)

### (Brought by All Plaintiffs individually and on behalf of the Class)

78.    Plaintiffs repeat and incorporate by reference all of the allegations set forth above.

79.    Hoang, Hsiao, Blacksburg, Hall and each member of the Class, were recipients of unsolicited commercial email advertisements sent by Reunion.com which contained falsified, misrepresented and/or forged header information in the "From" line, which falsely represented that the Email had been sent from an individual, rather than from Reunion.com, in violation of Cal. Bus. & Prof. Code §17529.5(a)(2).

80.    On information and belief, the emails described in the preceding paragraph were either sent from California and/or sent to California electronic mail addresses.

81.    As a result of Reunion.com's violation of Cal. Bus. & Prof. Code §17529.5(a)(2). Reunion.com is liable to Plaintiffs and the Class and, pursuant to Cal. Bus. & Prof. C. §17529.5(b)(1)(B)(ii), Plaintiffs and the Class are entitled to liquidated damages of one thousand dollars for each unsolicited commercial email advertisement transmitted in violation of Cal. Bus. & Prof. C. §17529.5 (a)(2).

//

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.aw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerlaw.com

**THIRD CAUSE OF ACTION**

**Violation of Cal. Bus. & Prof. Code §17529.5(a)(3)**

**(Brought by All Plaintiffs on behalf of the Class)**

82.     Plaintiffs repeat and incorporate by reference all of the allegations of fact set forth above.

83.     Hoang, Hsiao, and Blacksburg, Hall, and each member of the Class, were recipients of unsolicited commercial email advertisements sent by Reunion.com which contained subject lines that Reunion.com knew were likely to mislead the recipients, acting reasonably under the circumstances, about a material fact regarding the contents of the subject matter of the messages.  Specifically, each email contained a subject line stating "Please Connect With Me :-)" or "[Member Name] Wants to Connect with You" or something substantially similar, with no reference to Reunion.com.  Reunion.com knew these subject lines would be likely to mislead a recipient acting reasonably under the circumstances into believing that the email was a personal request by an individual that the recipient of the email connect with that individual, rather than a commercial email advertisement from Reunion.com.

84.     On information and belief, the emails described in the preceding paragraph were either sent from California and/or sent to California electronic mail addresses.

85.     As a result of Reunion.com's violation of Cal. Bus. & Prof. Code §17529.5(a)(3). Reunion.com is liable to Plaintiffs and the Class and, pursuant to Cal. Bus. & Prof. C. §17529.5(b)(1)(B)(ii), Plaintiffs and the Class are entitled to liquidated damages of one thousand dollars for each unsolicited commercial email advertisement transmitted in violation of Cal. Bus. & Prof. C. §17529.5 (a)(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request relief as follows:

A.     That the Court enter a judgment against Reunion.com that it has:

a. Violated Cal. Bus. Cal. Bus. & Prof. C. §17529.5(a)(1) and hence is liable therefore to Plaintiffs Blacksburg and Hall, and members of the Third Party Domain Subclass;

b. Violated Cal. Bus. Cal. Bus. & Prof. C. §17529.5(a)(2) and (a)(3) and hence is liable therefore to Plaintiffs Hoang, Hsiao, Blacksburg, Hall and members of the Class;

B. That the Court enter a preliminary and permanent injunction enjoining Reunion.com and its agents, employees, representatives, and successors and predecessors in interest from violating Cal. Bus. & Prof. C. §17529.5(a)(1), (2) and (3).

C. That the Court enter a judgment against Reunion.com in favor of Plaintiffs' and the Class members as follows:

a. Statutory damages in the amount of $1000 for each email advertisement received by Plaintiffs Blacksburg and Hall and each member of the Third Party Domain Subclass Class pursuant to Cal. Bus. & Prof. C. §17529.5(b)(1)(B)(ii);

b. Statutory damages in the amount of $1000 for each email advertisement received by Plaintiffs and each member of the Class pursuant to Cal. Bus. & Prof. C. §17529.5(b)(1)(B)(ii);

c. Plaintiffs' costs and attorneys' fees incurred by Plaintiffs in prosecuting this action, pursuant to Cal. Bus. & Prof. C. §17529.8(B)(2);

d. Interest, including prejudgment interest, on the foregoing sums.

D. That the Court grant to Plaintiffs such additional relief as is just and proper.

DATED: October 24, 2008            SHAPIRO, HABER & URMY LLP


                                   By:  /s/ Todd S. Heyman
                                      Todd S. Heyman
                                      Attorneys for Plaintiffs

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.com

1

**REQUEST FOR JURY TRIAL**

2

3   Plaintiffs hereby demand a trial of this action by jury.

4

5

6   DATED:  October 24, 2008                    SHAPIRO, HABER & URMY LLP

7

8                                               By:  /s/ Todd S. Heyman

9                                                    Todd S. Heyman
                                                     Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger-Law.com