**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
hank@kronenbergerlaw.com
karl@kronenbergerlaw.com
jeff@kronenbergerlaw.com
margarita@kronenbergerlaw.com

**SHAPIRO, HABER & URMY LLP**
Edward F. Haber (admitted *pro hac vice*)
Todd S. Heyman (admitted *pro hac vice*)
Ian J. McLoughlin (admitted *pro hac vice*)
Robert E. Ditzion (admitted *pro hac vice*)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
theyman@shulaw.com
imcloughlin@shulaw.com
rditzion@shulaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **VIOLETTA HOANG, LIVIA HSIAO, MICHAEL BLACKSBURG, and MATTHEW HALL**, individually and on behalf of a class of similarly situated persons<br><br>        Plaintiffs,<br><br>   vs.<br><br>**REUNION.COM, INC.**, a California corporation,<br><br>        Defendant. | Case No. 08-CV-03518-MMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenbergerlaw.com

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................... 1

II. FACTUAL ALLEGATIONS ............................................................................. 1

III. PROCEDURAL BACKGROUND .................................................................. 3

IV. ARGUMENT .................................................................................................. 4

    A. The Court can and should review its reading of *Mummagraphics* and apply its limited holding - that claims under state law regarding immaterial errors and inaccuracies are preempted ............................................................. 4

    B. Plaintiffs' claims are not expressly preempted by CAN-SPAM ........................ 5

        1. CAN-SPAM exempts Plaintiffs' claims from federal preemption ........... 5

        2. The allegations in the FAC satisfy the *Mummagraphics* standard ........ 8

    C. The FAC's allegations regarding the Emails' false and deceptive "from" and "subject" lines satisfy section 17529.5 and CAN-SPAM's preemption clause 10

        1. The Emails' "from" lines falsely and deceptively represented that the Emails were sent by individuals and not by Reunion.com ................... 11

        2. The Emails' "subject" lines falsely and deceptively represented that the Emails were personal requests to "connect" independent of Reunion.com ....................................................................... 12

        3. The Emails' "subject" lines falsely and deceptively represented that the Emails were personal requests to "connect" independent of Reunion.com ....................................................................... 13

        4. The FTC, industry groups, Email recipients, and Reunion.com members agree that the Emails' "from" and "subject" lines are false and deceptive. ......................................................................... 14

    D. Reunion.com's members neither initiated nor agreed to the contents of the Emails ....................................................................................... 16

        1. Reunion.com's website printouts cannot be considered on a motion to dismiss ................................................................................ 17

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

2. Reunion.com's website printouts could only be considered by converting Reunion.com's motion to dismiss into a motion for summary judgment ............................................................................................. 18

3. Even if considered, Reunion.com's printouts demonstrate that its members did not agree to-and could not have known about-the contents of the Emails......................................................................... 19

E. Reunion.com knew the Emails were false and deceptive, and initiated them with the specific intention that they mislead recipients ................................. 21

V. CONCLUSION ......................................................................................................... 22

1

## TABLE OF AUTHORITIES

2

3

*Ali v. Federal Bureau of Prisons*, 128 S. Ct. 831 (2008)................................... 6

4

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) .............................................. 17

5

*Foresberg v. Fidelity Nat'l Credit Serv's Ltd.*, Civ. A. No. 03-2193, 2004 WL 3510771

6

    (S.D.Cal. Feb. 26, 2004) .......................................................... 10

7

*Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)............................... 17

8

*Golden West Refining Co. v. Sun Trust Bank*, 538 F.3d 1233 (9th Cir. 2008)................. 8

9

*Guzman v. Shewry*, 544 F.3d 1073 (9th Cir. 2008) ......................................... 6

10

*Hart v. McLucas*, 535 F.2d 516 (9th Cir. 1976) .............................................. 7

11

*Hurlic v. Southern California Gas Co.*, 539 F.3d 1024 (9th Cir. 2008)............................ 7

12

*Hydranautics v. FilmTec Corp.*, 306 F. Supp. 2d 958 (S.D. Cal. 2003) ......................... 5

13

*International Audiotext Network, Inc. v. AT & T Co.*, 62 F3d 69 (2nd Cir. 1995) ........... 17

14

*Kleffman v. Vonage Holding Corp.*, No. 07-2406, 2007 WL 1518650

15

    (C.D. Cal. May 23, 2007) ....................................................... 6, 8

16

*Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (2007) ...... 10

17

*Marbled Murrelet v. Babbitt*, 182 F.3d 1091 (9th Cir. 1999) ............................. 5

18

*Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006).*passim*

19

*Padash v. INS*, 358 F.3d 1161 ....................................................... 7

20

*Sec. & Exch. Comm'n. v. McCarthy*, 322 F.3d 650 (9th Cir. 2003)................................. 8

21

*Shouse v. Ljunggren*, 792 F.2d 902 (9th Cir. 1986)........................................... 5

22

*Slack v. Fair Isaac Corp.*, 390 F.Supp.2d 906 (N.D. Cal. 2005) ......................... 10

23

*Spencer Enterprises, Inc. v. U.S.A.¸*345 F.3d 683 (9th Cir. 2003) ......................... 7

24

*United States v. Fuller*, 531 F.3d 1020 (9th Cir. 2008) ................................. 7

25

*United States v. Houser*, 804 F.2d 565 (9th Cir. 1986).................................... 5

26

*United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000)................................. 5

27

28

*United States v. Smith*, 389 F.3d 944 (9th Cir. 2004) .................................................... 5

*Warre v. Commissioner of the Social Security Administration*, 439 F.3d 1001 (9th Cir. 2005) ................................................................................................................... 6-7

*Williams ex rel. Tabiu v. Gerber Products Co.,* 523 F.3d 934, 939 (9th Cir. 2008)........ 10

**Statutes**

15 U.S.C. §7702(12). .................................................................................................. 7

15 U.S.C. §7704(a)(2). ................................................................................................ 7

15 U.S.C. §7707(b)(1). .............................................................................................. 6-8

15 U.S.C. §7707(b)(2). .............................................................................................. 7-8

15 U.S.C. §7706 *et seq.* .......................................................................................*passim*

28 U.S.C. §1927 ..................................................................................................*passim*

FED. R. CIV. P. 11.................................................................................................*passim*

FED. R. CIV. P. 12(d) .............................................................................................. 18-19

FED. R. CIV. P. 56(f) ................................................................................................. 19

Bus. & Prof. C. §17529.5.......................................................................................*passim*

Bus. & Prof. C. §§22575 *et seq.* ................................................................................ 19

Local Rule 7-9 ............................................................................................................ 5

**Other Authorities**

Federal Trade Commission, Final Rule, Definitions and Implementation under the CAN-
     SPAM Act, 70 Fed. Reg. 3115, n.55 (Jan. 19, 2005). ............................................. 15

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.aw.com

## I.    INTRODUCTION

Both Congress and the California legislature have recognized that false and misleading emails are a drain on commerce, causing individuals and businesses to waste valuable time and resources (particularly in the aggregate).  To combat the effects of such emails, Congress enacted the "Controlling the Assault of Non-Solicited Pornography Act of 2003" ("CAN-SPAM"), in which Congress set up a detailed scheme to exclusively regulate commercial email, except that it expressly permitted parallel state law regulation of commercial email to the extent such laws prohibit "falsity and deception" in commercial emails.

Consistent with CAN-SPAM's savings clause for state laws prohibiting falsity or deception, the California legislature enacted Business and Professions Code section 17529.5 to prevent email marketers like Reunion.com from tricking consumers into opening emails that they otherwise would toss in their virtual trash.  The California legislature, like the U.S. Congress, understood that in deciding whether to open an email, consumers consider two primary pieces of information:  the email's "from" line (presumed to reflect the email's sender) and the email's "subject" line (presumed to describe the email's contents).  As alleged in detail in the First Amended Complaint (the "FAC"), and as explained below, Reunion.com unlawfully exploited that behavior by creating false and deceptive "from" lines and "subject" lines that tricked recipients into believing that Reunion.com's email advertisements were personal requests from personal acquaintances to "connect" with them.  In doing so, and as alleged in the FAC, Reunion.com violated Business and Professions Code section 17529.5, and Plaintiffs' claims for that violation are not preempted by CAN-SPAM.

## II.    FACTUAL ALLEGATIONS

During or prior to the spring of 2008, Reunion.com initiated an email marketing program consisting of emails (the "Emails") sent by Reunion.com to the electronically harvested email contacts of its new members.  (FAC ¶¶5, 28.)  Reunion.com disguised the Emails—in particular, the Emails' "from" lines, "subject" lines, and initial body text—to

appear as personal requests from one individual to "connect" with another.  (FAC ¶¶5-9.)

The Emails' "from" lines, "subject" lines, and initial body text gave no indication that the

Emails were actually commercial advertisements by, and for, Reunion.com.  (FAC ¶9.)

The Emails, five examples of which appear in the FAC, contained a variety of

false and deceptive content:

- The Emails' "from" lines contained the names of the individual Reunion.com members from whose email contacts the recipients' email addresses were harvested, giving the false and deceptive impression that the Emails were from those individuals and not from Reunion.com (FAC ¶¶29, 36, 40, 45, 51);

- In some cases, the Emails' "from" lines also contained the personal email addresses of individual Reunion.com members, including the domain name of the individual members' third party email services providers, giving the false and deceptive impression that the Emails were sent from such members' personal email accounts and not by Reunion.com (FAC ¶29, 47, 52);

- The Emails' "subject" lines stated "Please Connect With Me :-)" or "[Member Name] Wants to Connect with You" or something substantially similar, giving the false and deceptive impression that the Emails were personal invitations to "connect" independent of Reunion.com, rather than commercial advertisements by and for Reunion.com (FAC ¶¶30, 37, 41, 46, 51);

- The Emails' body text stated, "Hi, I looked for you on Reunion.com, but you weren't there …" or something substantially similar, giving the false and deceptive impression that the Emails were personal correspondence and not commercial email advertisements by, and for, Reunion.com.  The body text also falsely and deceptively represented that the Reunion.com members whose names appeared in the "from" lines had searched for the recipients, even though no searches had been, or could have been, conducted (FAC ¶¶34, 38, 42, 48 (showing images of Emails received by Plaintiffs));

- Reunion.com authored the Emails, the contents of which were not only false, but differed materially from Reunion.com's disclosures to its members, including as incorporated into Reunion.com's privacy policies.  Rather than discard the addresses to which the Emails were sent, Reunion.com kept those addresses for the explicit purposes of monitoring the effectiveness of Reunion.com's email marketing program and of sending follow up "reminder" emails.  (FAC ¶¶28-29, 33, 63-64).

The false and deceptive nature of the Emails spawned widespread criticism by

Reunion.com members and recipients alike.   (FAC ¶65.)   The Federal Trade

Commission ("FTC") alone received hundreds of complaints about Reunion.com's email

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

marketing practices in general and the Emails in particular.  (FAC ¶65.)  As a result of complaints sent to the Better Business Bureau, that organization assigned Reunion.com a "D" rating, which is reserved for a company with such a troubling record that the Better Business Bureau recommends "caution in doing business with it."  (FAC ¶67.)

Reunion.com knew of the widespread criticism regarding the Emails.  (FAC ¶¶54-55.)  Nevertheless, it continued, and still continues, to send them, for the very reason that it knows that the Emails' false and deceptive "from" lines, "subject" lines and body text deceive recipients into believing the Emails to be personal invitations from friends to "connect."  (FAC ¶55.)  Reunion.com monitors the rates at which recipients open and respond to its various email advertisements, and knows that recipients are much more likely to open what they believe to be personal correspondence.   (FAC ¶64.) Reunion.com sent, and continues to send, the Emails because it intends to trick recipients into opening the Emails, rather than discarding them as one more piece of junk commercial email advertising.  (FAC ¶¶8, 32.)

### III.    PROCEDURAL BACKGROUND

Plaintiffs filed their initial complaint on July 23, 2008, alleging violations of California Business & Professions Code section 17529.5.  Defendant moved to dismiss the complaint on the grounds that, *inter alia*, the claims were expressly preempted by CAN-SPAM.    Defendant's argument contained two components.    First, Defendant argued that the statute's language established that state law claims, such as those asserted under section 17529.5, are preempted.  Second, Defendant argued that CAN-SPAM exempts from liability an email that is forwarded by a third party as a "routine conveyance," and that Reunion.com's Emails fell within the definition of a "routine conveyance" as interpreted by the FTC.  On October 6, 2008, the Court granted Reunion.com's motion to dismiss, but afforded Plaintiffs leave to amend.  In its order (the "Prior Order"), the Court concluded that:

- Defendant's "routine conveyance" defense raised questions of fact that cannot be resolved on a motion to dismiss (Prior Order at 4:23-5:11); and

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

- Plaintiffs' claims were expressly preempted by CAN-SPAM's express preemption provision, as interpreted by *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006), which the Court interpreted to stand for the proposition that only state law claims that allege all five elements of common law fraud are not preempted. (Prior Order at 3:12-22.)

The Court issued its opinion "on the papers submitted" and vacated the hearing set for oral argument. (Prior Order at 1:19-22.) Significantly, neither Plaintiffs nor Reunion.com discussed the *Mummagraphics* decision in their briefs in support of and in opposition to the Defendant's motion to dismiss the initial complaint. Accordingly, the Court did not have the benefit of the parties' argument regarding that decision.

On October 24, 2008, Plaintiffs filed their FAC, again alleging violations of section 17529.5. Reunion.com again moved to dismiss, arguing that Plaintiffs failed to plead all elements of common law fraud, and therefore their claims were preempted under this Court's interpretation of *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). Plaintiffs respectfully submit that a careful analysis of both *Mummagraphics* and the new allegations of the FAC demonstrate that the FAC more than adequately pleads claims for violations of section 17529.5, which claims are not preempted by CAN-SPAM.

## IV.     ARGUMENT

**A.     This Court can and should review its reading of *Mummagraphics* and apply its limited holding—namely, that claims under state law regarding immaterial errors are preempted.**

As discussed in detail below, in *Mummagraphics* the Fourth Circuit held only that CAN-SPAM preempts state laws that regulate commercial emails containing immaterial errors or inaccuracies. Plaintiffs respectfully submit that the Court's expansive interpretation of *Mummagraphics* in its Prior Order—requiring state law claims to include all five elements of fraud to avoid preemption—cannot be reconciled with the *Mummagraphics* decision. Plaintiffs would have argued this very point in the original motion to dismiss briefing, but neither party even cited, let alone discussed, *Mummagraphics* in those papers. As demonstrated herein, the FAC more than adequately pleads facts which support section 17529.5 claims, which are not preempted

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1   under *Mummagraphics*.

2   Defendant argues that this Court must adhere to its previous ruling under the law

3   of the case doctrine.   However, this Court is obviously free to revisit any issue at any

4   time before the entry of judgment.   *United States v. Houser*, 804 F.2d 565, 567 (9th Cir.

5   1986).   The law of the case doctrine does not apply to court decisions preceding entry of

6   judgment, including orders granting motions to dismiss but permitting leave to amend.

7   *See United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004); *Shouse v. Ljunggren*,

8   792 F.2d 902, 904 (9th Cir. 1986); *Hydranautics v. FilmTec Corp.* 306 F. Supp. 2d 958,

9   968 (S.D. Cal. 2003).   Even assuming the doctrine could be applied here, Plaintiffs note

10  that the very case cited by Reunion.com, *United States v. Lummi Indian Tribe*, 235 F.3d

11  443, 452 (9th Cir. 2000), explicitly states that "application of the doctrine is

12  discretionary."   *Id.*   Because the parties did not previously address *Mummagraphics*, and

13  because "the law of the case doctrine is 'wholly inapposite' to circumstances where a

14  district court seeks to reconsider an order over which it has not been divested of

15  jurisdiction," *Smith,* 389 F.3d at 949 (citations omitted), Plaintiffs respectfully submit that

16  the Court should re-examine the preemption issue as it applies to the allegations of the

17  FAC.[1]

18  **B.    Plaintiffs' claims are not expressly preempted by CAN-SPAM.**

19       **1.    CAN-SPAM exempts Plaintiffs' claims from federal preemption.**

20  Reunion.com argues that Plaintiffs' claims are preempted by CAN-SPAM

21  because of Plaintiffs' failure to plead the five elements of common-law fraud.   That

22  position is contradicted by the plain language of the statute:

23       This chapter supersedes any statute, regulation, or rule of a State or
         political subdivision of a State that expressly regulates the use of
24       electronic mail to send commercial messages, **except to the extent that**
         **any such statute, regulation, or rule prohibits falsity or deception in**

25  

26  [1]  Defendant also chides Plaintiffs for not filing a motion to reconsider the Court's
     dismissal Order.   However, Civil Local Rule 7-9 requires that such a motion is proper
27  only if there is a material difference in fact or law than what was previously presented to
     the Court.   Here, neither the facts nor the law had changed.   The parties had not
28  addressed that already existing legal decision.   Thus, seeking reconsideration of the
     Court's Order, pursuant to Rule 7-9 would have been inappropriate.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1    **any portion of a commercial electronic mail message or information attached thereto**.  15 U.S.C. §7707(b)(1) (emphasis added).

2    Nothing in the express preemption provision of the statute even hints that the state law

3    must do anything beyond prohibit "falsity or deception" to survive the preemption inquiry.

4    *Id.*  There certainly is no language stating that state law claims must include elements of

5    reliance and actual damages.  The Court should not expand the scope of the express

6    preemption provision beyond its plain language, especially given the long-standing

7    presumption against preemption.  *Guzman v. Shewry*, 544 F.3d 1073, 1079 (9th Cir.

8    2008) ("In preemption cases, we begin with the presumption that the 'historic police

9    powers of the States' are not superseded by federal law unless such result was the

10   'clear and manifest purpose of Congress.'") (citations omitted); *Ali v. Federal Bureau of*

11   *Prisons,* 128 S. Ct. 831, 841 (2008) (courts are not at liberty to interpret statutes to

12   include terms that Congress did not include).  Even if there were any ambiguity in the

13   statute's language, which there is not, there can be no question that Congress did not

14   clearly and manifestly intend to preempt any state law claims which do not include

15   elements of reliance and damages.

16   Indeed, the legislative history supports Plaintiffs' interpretation of the preemption

17   provision.  Congress never intended to require state law plaintiffs to plead and prove

18   fraud.  The Senate Committee Report on CAN-SPAM makes clear that Congress sought

19   to preempt only those state law claims that regulate email form and format.  *Kleffman v.*

20   *Vonage Holdings Corp.*, No. 07-2406, 2007 WL 1518650, at *3 (C.D. Cal. May 23, 2007)

21   (quoting Senate Committee Report:  "[A] State law requiring some or all commercial e-

22   mail to carry specific types of labels, or to follow a certain format or contain specified

23   content, would be preempted.").

24   Reunion.com's statutory interpretation argument also contravenes long-standing

25   principles of statutory construction.  As the Ninth Circuit has held:

26   It is a well-established canon of statutory interpretation that the use of
     different words or terms within a statute demonstrates that the drafter
27   intended to convey a different meaning for those words.  (*Warre v.*
     *Commissioner of the Social Security Administration*, 439 F.3d 1001, 1005
28   (9th Cir. 2005) (internal quotations and citations omitted) (refusing to

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

incorporate different statutory language from a section in close proximity, finding the choice of different language was a reflection of the drafter's intent).)[2]

Congress certainly knew how to include language that would have preempted any state laws short of full-blown fraud, had that been Congress's intent.

One need look no further than other provisions in CAN-SPAM to demonstrate this point.  Congress included language in CAN-SPAM that describes a variety of both mental state elements and species of state law, including "falsity and deception," "actual knowledge," "intentionality," and "fraud;" and, with respect to types of state law, "trespass, contract, . . . tort law, . . . [and state laws] that relate to acts of fraud or computer crime."  *See*, e.g., 15 USC §7704(a)(2) (incorporating "actual knowledge"), §7702(12) (incorporating "intentionally"), and §7707(b)(2) (incorporating "fraud"); §7707(b)(2) (identifying various types of state law).  The explicit reference to "fraud" occurs in §7707(b)(2)—just one paragraph after §7707(b)(1).  Had Congress intended CAN-SPAM to preempt all state law claims save common law fraud, it would have explicitly said "fraud" in §7707(b)(1)—the word it used in close proximity to that provision in the statute.  *See Hurlic v. Southern California Gas Co.*, 539 F.3d 1024, 1030 (9th Cir. 2008); *United States v. Fuller*, 531 F.3d 1020, 1027 (9th Cir. 2008).

Here, Congress did not use the term "fraud," let alone mention "reliance" or "actual damages."  Instead, it exempted state laws from preemption that prohibit "falsity or deception" without *any* further restrictions.  Significantly, as the Ninth Circuit has explained, there is a material difference between even "intentional falsity" and "fraud."  *See Hart v. McLucas*, 535 F.2d 516, 519 (9th Cir. 1976) (holding that the elements of a claim for "intentional false statement" are the "first three elements of fraud" only, mainly: "falsity, materiality, and knowledge").  The fact that the words falsity and deception may have "remarkably similar definitions" to "fraud" does not give the courts license to

---

[2] *See also Padash v. Immigration & Naturalization Serv.*, 358 F.3d 1161, 1170, n.7 (9th Cir. 2004) (courts "must assume that the difference in usage is legally significant" and "demonstrates that Congress intended to convey a different meaning for those words[.]") (internal quotations omitted); *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003) (same).

1  override "Congress's explicit decision to use one word over another in drafting a statute."

2  *Sec. & Exch. Comm'n v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003).

3       Indeed, if Reunion.com's interpretation of §7707(b)(1) were correct, it would be

4  rendered entirely superfluous by the next section of the preemption provision,

5  §7701(b)(2).  Section 7701(b)(2) describes two additional forms of state law that survive

6  preemption: a) "State laws that are not specific to electronic mail, including State

7  trespass, contract, or tort law; or b) **other State laws to the extent that those laws**

8  **relate to acts of fraud** or computer crime."  15 U.S.C. §7701(b)(2) (emphasis added).

9  The first subsection expressly preserves any state law of general applicability, such as

10 tort (which obviously includes common law fraud), and the second subsection reaches

11 beyond that to "other state laws" that merely "relate to acts of fraud."  *Id*.  If

12 Reunion.com's argument were accepted, any state law that would survive preemption

13 under §7701(b)(1)—including all five elements of common law fraud—would by

14 definition already survive preemption under the more expansive language of

15 §7701(b)(2)(B), which preserves "other State laws . . . that relate to acts of fraud."  *Id.*

16 As a result, §7701(b)(1) would be rendered entirely superfluous contrary to the most

17 basic principles of statutory construction.  *Golden West Refining Co. v. Sun Trust Bank*,

18 538 F.3d 1233, 1239 (9th Cir. 2008).

19       **2.     The allegations in the FAC satisfy the *Mummagraphics* standard.**

20       The Court of Appeals for the Fourth Circuit has interpreted CAN-SPAM's

21 preemption provision to preempt state law actions prohibiting only "immaterial errors."

22 *Mummagraphics*, 469 F.3d at 353; *see also Kleffman* 2007 WL 1518650, at *3

23 (explaining that *Mummagraphics* "stands for the simple [] proposition[] that [] the CAN-

24 SPAM preemption clause does not allow states to create strict liability for inaccuracies in

25 commercial email").  Indeed, the Fourth Circuit made the point repeatedly that it was

26 rejecting an interpretation of the term "falsity" that could encompass simple errors or

27 inaccuracies.  *Mummagraphics,* 469 F.3d at 354-55 (rejecting: a) "bare-error reading of

28 'falsity'"; b) "falsity in a mere error sense"; c) "strict liability for insignificant inaccuracies"

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.aw.com

1    or "isolated error").

2          The reason the court made such repeated references to mere errors or

3    inaccuracies is because the defendants' emails in that case were deemed materially

4    accurate and incapable of deceiving.   Accordingly, the court set out to interpret the

5    meaning of the word "falsity," and whether it could include any statement "not

6    conforming to the truth or facts," or if it was limited to those instances involving a

7    material misrepresentation. *Mummagraphics*, 469 F.3d at 354-55.   The court never

8    stated that the term "falsity" encompassed all five elements of common law fraud, and

9    did not even mention the elements of reliance or damages.   Rather, the court looked to

10   other provisions of CAN-SPAM and concluded that the definition of "falsity" was limited

11   to instances in which the defendant had made a material misstatement, rather than a

12   mere error or inaccuracy.   *Id.* at 354-55.   Even Reunion.com concedes that

13   *Mummagraphics* merely held that state law claims survive preemption if they are "based

14   on *material* falsehood."   (Opening Br. at 22:5-7 (emphasis in original) (explaining

15   *Mummagraphics*' holding "that for a state law claim not to be preempted by CAN SPAM,

16   it must be based on *material* falsehood, and not merely impose strict liability for

17   immaterial errors or omissions").)

18         Here, Plaintiffs have alleged, with specificity, more than what *Mummagraphics*

19   requires, mainly, that Reunion.com intentionally and knowingly made false and

20   deceptive statements that it knew were likely to mislead a recipient about a material fact

21   regarding the contents or subject matter of the message.   (FAC ¶¶5-8.)   In short,

22   Plaintiffs' allegations are that the "from" lines and the "subject" lines of the Emails at

23   issue disguise the real sender (and author) of the Emails, Reunion.com, by: 1) using the

24   names of its members in the "from" lines (and in some cases, the members' email

25   addresses with their associated domain names); and 2) omitting any reference to

26   Reunion.com in the "subject" lines.   In addition, Plaintiffs allege that the "subject" lines of

27   the Emails were likely to materially mislead the recipients, because they falsely stated

28   that the Reunion.com member was looking to connect with the recipient, as opposed to

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger Law.com

identifying the true subject matter and content of the message—a commercial advertisement inviting the recipient to join Reunion.com.  Unlike *Mummagraphics*, the Emails were likely to mislead as to both the sender of the Emails and the subject matter of the Emails, both highly material facts according to Congress and the California legislature.

As the FAC fully alleges, the misrepresentations were not simple errors or inaccuracies.  On the contrary, the statements were part of a carefully designed and monitored deceptive email marketing campaign, on which Reunion.com continues to depend on to grow its business.  In the face of numerous complaints about these practices to the FTC, the Better Business Bureau, and elsewhere, Reunion.com nevertheless refuses to identify itself as the sender (and author) of the Emails or accurately disclose in the "subject" lines that the message is a commercial invitation to join Reunion.com, precisely because it benefits from the deceptive nature of the Emails.

**C.     The FAC's allegations regarding the Emails' false and deceptive "from" and "subject" lines satisfy section 17529.5 and CAN-SPAM's preemption clause.**

Reunion.com contends that Plaintiffs have not adequately pled that the Emails were false or deceptive, and accordingly, do not survive a preemption analysis.  However, the FAC alleges with specificity and supporting allegations, intent, falsity, deception, and materiality, and therefore readily satisfies the pleading requirements for both section 17529.5 and CAN-SPAM's preemption provision.  Indeed, Reunion.com's arguments read like arguments to a jury about why its conduct is not deceptive, an issue "that cannot be resolved on a motion to dismiss."   *See Williams ex rel. Tabiu v. Gerber Products Co.*, 523 F.3d 934, 939 (9th Cir. 2008).[3]  That consideration alone compels the

---

[3]  *See also*, *Slack v. Fair Isaac Corp.*, 390 F.Supp.2d 906, 913 (N.D.Cal. 2005) ("determining whether defendants' conduct amounts to a fraudulent or deceptive practice . . . involves questions of fact that are not properly addressed on a motion to dismiss."); *Foresberg v. Fidelity Nat'l Credit Serv's Ltd.*, Civ. A. No. 03-2193, 2004 WL 3510771, at *5 (S.D.Cal. Feb. 26, 2004) ("determination of whether . . . statements were false, deceptive or misleading . . . is a factual question and would be inappropriately resolved on a motion to dismiss."); *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer.").

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

denial of Reunion.com's motion to dismiss.  As explained below, the FAC more than

satisfies all pleading standards.

**1.    The Emails' "from" lines falsely and deceptively represented that the Emails were sent by individuals and not by Reunion.com.**

The FAC alleges in detail that the Emails' "from" lines falsely and deceptively

represented that the Emails were sent by individuals, rather than by Reunion.com itself.

For example, as relevant to Plaintiffs' section 17529(a)(2) claim, the FAC alleges:

- "The 'From' line falsely states that a Reunion.com member sent the Emails when Reunion.com actually sent them. . . .   The email sent does not appear to come from Reunion.com nor is it an invitation from Reunion.com—in accordance with the statements in the privacy policy.  Instead, Reunion.com disguises the email as being from one of its members.  In many cases, Reunion.com even falsely signed the emails using its members' names. . . .  Because the member neither authored nor authorized the false statements contained in the emails, the emails were not 'from' the member, but were instead 'from' Reunion.com."  (FAC ¶9 (additional allegations omitted); *see also* FAC ¶29 (alleging same).)

- "The Emails' headers . . . create the deception of a personal request from the registered member . . . rather than an unsolicited commercial email advertisement sent from Reunion.com. . . .  The Emails are authored in whole by Reunion.com. . . .  Reunion.com does not serve as a technical intermediary in the transit of the Emails, but rather as the author of the Emails, and as sender of the Emails even though the various aspects of the Emails as described above were unauthorized, unreviewed, and false."  (FAC ¶¶32-33.)

- "Hoang, Hsiao, Blacksburg, Hall and each member of the Class, were recipients of unsolicited commercial email advertisements sent by Reunion.com which contained falsified, misrepresented and/or forged header information in the 'From' line, which falsely represented that the Email had been sent from an individual, rather than from Reunion.com, in violation of Cal. Bus. & Prof. Code §17529.5(a)(2)."  (FAC ¶79).

Contrary to Reunion.com's representations, the FAC also alleges, on an Email-by-Email

basis, the falsity and deception of the "from" lines in the Emails received by each

Plaintiff, and even attaches graphical depictions demonstrating those Emails' false and

deceptive "from" lines.  (FAC ¶¶34-36, 38-40, 43, 45, 48, 50-51.)

In sum, the FAC alleges in detail and by example that Reunion.com authored and

sent the Emails but nevertheless inserted its members' names in the "from" lines.  It is

difficult to imagine what additional description Plaintiffs might provide.  Because the FAC

sufficiently alleges that the Emails contained "falsified, misrepresented or forged header

information" in the form of false and deceptive "from" lines, the Court should deny

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.com

1   Reunion.com's motion as relates to Plaintiffs' section 17529.5(a)(2) claim.

2       **2.    The Emails' "subject" lines falsely and deceptively represented that
            the Emails were personal requests to "connect" independent of
3           Reunion.com.**

4       The FAC alleges in detail that the Emails contained false and deceptive "subject"

5   lines that were likely to mislead a reasonable recipient about a material fact concerning

6   the contents of the Emails, as relevant to Plaintiffs' section 17529(a)(3) claim.   For

7   example, the FAC alleges:

8   • "The 'Subject' line falsely requests that the recipient 'Please connect with me :),'
      i.e. please connect with the Reunion.com member, when the emails are not in
9     fact requests from an individual to 'connect', but instead commercial e-mail
      advertisements from Reunion.com soliciting the recipients to join Reunion.com.
10    The Subject lines are plainly false because the member who appears in the "from"
      line did not ask the recipient to 'connect.'   On the contrary, that content was
11    generated by Reunion.com without providing that member any input or
      opportunity to review or approve the message before it was sent.  The statement
12    was both unauthorized and false.  Moreover, the subject line omits any mention of
      Reunion.com or of the fact that the email is commercial in nature—which would
13    certainly mislead a recipient, acting reasonably under the circumstances, about a
      material fact regarding the contents or subject matter of the message."  (FAC ¶9);

14  • "[T]he subject lines of the Emails do not invite recipient contacts to join
      Reunion.com.  Instead, they state, 'Please Connect with Me :-)' or '[Member
15    Name] Wants to Connect with You' or something substantially similar, with neither
      making any reference to Reunion.com, or any indication that that the message
16    contains an unsolicited commercial advertisement, or concerns a commercial
      subject matter. . . .   Additionally, the body text of the Emails states, 'I looked for
17    you on Reunion.com, but you weren't there. Please connect with me so we can
      keep in touch,' or something substantially similar, even though individuals
18    registering with Reunion.com do not conduct searches as part of the registration
      procedure, and no such searches were conducted. . . .   The Emails' . . . subject
19    lines create the deception of a personal request from the registered member to
      "connect" with the recipient, rather than an unsolicited commercial email
20    advertisement sent from Reunion.com." (FAC ¶¶30-32);

21  • "Hoang, Hsiao, and Blacksburg, Hall, and each member of the Class, were
      recipients of unsolicited commercial email advertisements sent by Reunion.com
22    which contained subject lines that Reunion.com knew were likely to mislead the
      recipients, acting reasonably under the circumstances, about a material fact
23    regarding the contents of the subject matter of the messages. Specifically, each
      email contained a subject line stating 'Please Connect With Me :-)' or '[Member
24    Name] Wants to Connect with You' or something substantially similar, with no
      reference to Reunion.com. Reunion.com knew these subject lines would be likely
25    to mislead a recipient acting reasonably under the circumstances into believing
      that the email was a personal request by an individual that the recipient of the
26    email connect with that individual, rather than a commercial email advertisement
      from Reunion.com."  (FAC ¶83).

27      As in the case of the "from" lines, and contrary to Reunion.com's representations,

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1   the FAC also alleges, on an Email-by-Email basis, the false and deceptive nature of the

2   "subject" lines in the Emails sent to each Plaintiff, and attaches graphical depictions of

3   those Emails.  (FAC ¶¶34, 3-38, 41, 43, 46, 48, 51.)

4       Plaintiffs' allegations regarding those "subject" lines are thus sufficient to satisfy

5   both section 17529.5(a)(3) and CAN-SPAM's express preemption clause.

6       **3.    The Emails' "from" lines falsely and deceptively represented that the
            Emails were sent from third-party email providers and not from
7            Reunion.com.**

8       Similarly, as relates to Plaintiffs Blacksburg and Hall's section 17529(a)(1) claim,

9   the FAC alleges in detail that the "from" lines falsely, deceptively, and without

10  authorization incorporated third party domain names.  For example, the FAC alleges:

11  • "In some cases, the 'From' lines consist of registered members' personal email
       addresses, including the domain names of the registered members' email
12      services providers, and, on information and belief, without any authorization from
       such email services providers."  (FAC ¶29 (additional allegations omitted));
13

14  • "The Third Party Domain Subclass Emails received by Blacksburg, Hall, and the
       members of the Third Party Domain Subclass deceptively contained or were
15      accompanied by third-party domain names without the permission of the third
       parties. To wit, the 'From' line of the Third Party Domain Subclass Emails
16      received by Blacksburg, Hall, and members of the Third Party Domain Subclass
       contained an individual email address incorporating a third-party domain name,
17      creating the deception that the Third Party Domain Subclass Email was from the
       individual user of that email address and/or the third party and not Reunion.com."
18      (FAC ¶75);

19  • "On information and belief, the Third Party Domain Subclass Emails received by
       Blacksburg, Hall, and the members of the Third Party Domain Subclass were sent
20      without the permission of the third party that appeared in the 'From' line, and in
       violation of that third-party's terms of use as relate to that third-party's email
21      services."  (FAC ¶76).

22      Again contrary to Reunion.com's representations, the FAC sets forth, on an

23  Email-by-Email basis, Reunion.com's false and deceptive use of third-party domain

24  names in the Emails sent to Blacksburg and Hall, and attaches graphical depictions of

    those Emails.  (FAC ¶¶43, 47-48, 52.)
25
       Reunion.com argues—without reference to authority or the FAC—that its
26
    members have a sub-licensable ownership in their email addresses, including the
27
    (usually trademarked) domain names contained therein.  That is an unsupported and
28

irrelevant red herring because the Emails were sent not from the identified email addresses or accounts but from Reunion.com. (FAC ¶¶5, 29.) Thus, and notwithstanding any presumed sublicense, Reunion.com's use in the "from" line of any domain name other than "reunion.com" falsely and deceptively misrepresented the Emails' origins. Accordingly, the FAC fully pleads a claim under section 17529.5(a)(1).

### 4. The FTC, industry groups, Email recipients, and Reunion.com members agree that the Emails' "from" and "subject" lines are false and deceptive.

Reunion.com argues that, as a matter of law, no reasonable consumer could have been misled by the Emails' "from" lines and "subject" lines. The FAC is replete with factual allegations that demonstrate that numerous reasonable people, entities, and government regulators have in fact been misled by Reunion.com's "from" lines and "subject" lines, and believe that they are misleading. This includes the Federal Trade Commission, the Better Business Bureau, email marketing industry experts and countless Email recipients and Reunion.com members.

In *U.S. v. Jumpstart Technologies, LLC*, Case No. 3:06-cv-02079-MHP (N.D. Cal.), the FTC sued an Internet marketing company under provisions of CAN-SPAM that are analogous to those of section 17529.5. (FAC Ex. A ("*Jumpstart*") ¶¶30, 32.) The FTC's suit alleged that the emails at issue were false and deceptive because: 1) in the headers they purported to be "from" the consumer who provided the recipient's email address and not from Jumpstart; and 2) they contained "subject" lines in the form of personal invitations or greetings, with no reference to Jumpstart or to the commercial nature of the emails. (*Id.*) As the *Jumpstart* complaint explained:

> A recipient of one of Defendant's emails viewing the "from" line would reasonably believe that it contains a personal message from a friend or colleague. . . . As a result, recipients are induced to open messages they otherwise would have deleted without opening. [¶] 'Many senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages.' [Citation.] A recipient of one of Defendant's emails containing subject lines such as 'Hiya,' 'Happy Valentine's Day,' 'Invite,' or '[John] has sent you complimentary movie tickets - Certificate #29936,' would be misled into opening it under the reasonable belief that the email

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

was personal rather than commercial in nature.  (*Jumpstart* ¶¶30, 32)[4].

Reunion.com attempts to distinguish *Jumpstart* by arguing that the individuals who registered at *Jumpstart*'s website—supposedly unlike Reunion.com's members— were "duped" into providing recipients' email addresses.  Even if that were true, it entirely misses the point.  The FTC was not concerned with the duping of Jumpstarts' registrants when it sought to prosecute the company for its deceptive email scheme. Rather, the FTC believed that the recipients of the emails were duped by false and deceptive "from" lines and "subject" lines that made those emails appear to be personal correspondence, rather than commercial advertisements.  Plaintiffs target the very same deceptive practices in their complaint here.

Reunion.com also attempts to distinguish *Jumpstart* by arguing that the FTC's claims were based on CAN-SPAM.  Reunion.com cites no authority, however, for the proposition that the same false and deceptive techniques cannot violate both federal and state law.  Indeed, it would be difficult to imagine a representation that violated section 17529.5 that did not likewise violate CAN-SPAM.  *Compare* 15 U.S.C. §7704 *with* Cal. Bus. & Prof. C. §17529.5.  To be sure, had CAN-SPAM given standing to individual recipients, Reunion.com would be facing claims under that statute as well.

The FTC and Plaintiffs are not alone in their belief that the Emails' "from" lines and "subject" lines were false and deceptive.  As alleged in the FAC, countless consumers have complained to the FTC, industry groups, and Reunion.com itself—not just about the Emails, but also about Reunion.com's supposedly "consensual" use of its members' email address books.  (FAC ¶¶10-11, 55, 65-66.)   The Better Business Bureau gave Reunion.com a "D" rating, reserved for companies with such troubling records that consumers should use "caution in doing business with [them]."  (*Id.* ¶67.) And at least one email marketing consultancy has promulgated email marketing

---

[4]  Similarly, the FTC's Final Rule on Definitions and Implementation Under the CAN-SPAM Act explained that in deciding whether to open an email, consumers look to two primary sources of information:  the email's "from" line and the email's "subject" line. Federal Trade Commission, Final Rule, Definitions and Implementation under the CAN-SPAM Act, 70 Fed. Reg. 3115, n.55 (Jan. 19, 2005).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1   guidelines urging member companies to eschew the very tactics that underlie Plaintiffs'

2   claims.  (*Id.* ¶14.)   Reunion.com urges that the cacophony of complaints be viewed

3   against the backdrop of its millions of members.   But that misses the point, which is

4   whether, as Reunion.com asks this Court to find, the allegations in the FAC could not, as

5   a matter of law, support the claim that the "from" and "subject" lines of Reunion.com's

6   Emails were false and deceptive.   The substantial allegations in the FAC that so many

7   people and entities and government regulators found them deceptive puts an end to the

8   argument that the FAC fails in this regard as a matter of law.

9   **D.   Reunion.com's members neither initiated nor agreed to the contents of the Emails.**

10      In its first motion to dismiss, Reunion.com argued that the Emails were forward-

11  to-a-friend communications initiated not by Reunion.com but by Reunion.com's

12  members.   The Court rejected that argument, reasoning that the forward-to-a-friend

13  determination was extremely fact specific, and that the FAC's allegations could not be

14  construed as suggesting that anyone but Reunion.com initiated the Emails.  (Prior Order

15  at 4:11-5:7.)[5]   Now, in a thin re-tread of that position, Reunion.com argues that the

16  Emails were "indisputably" initiated by its new members, and that those members "were

17  offered, and accepted, an opportunity to 'connect' with the individuals in their electronic

18  contact lists."   (Opening Br. 18:3-8.)   Like its forward-to-a-friend predecessor,

19  Reunion.com's "offer and acceptance" argument contradicts both the FAC's allegations

20  and the website printouts that Reunion.com impermissibly foists on the Court.

21  Accordingly, that argument, like Reunion.com's forward-to-a-friend argument, should be

22  disregarded.

23

24  [5] The Court further observed:  '[I]f a seller retains the email address of the person to
25  whom the message is being forwarded for a reason other than relaying the forwarded
    message (such as for use in future marketing efforts),' then the seller would not be
26  exempt from liability."  (Prior Order 4:19-22 (citing FTC Final Rule at 73, n.192)   As
    further discussed below, and as alleged by the FAC, Reunion.com retains the addresses
27  to which it sends Emails for the explicit purposes of tracking response rates and sending
    follow-up unsolicited commercial emails.  (FAC ¶¶63-64.)  Thus, as a matter of law, the
28  forward-to-a-friend defense is unavailable to Reunion.com.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

1   Again, it is important to remember that this case arises not from Reunion.com's

2   disclosures to or agreements with its members, but from the Emails initiated by

3   Reunion.com and received by Plaintiffs.  To place Reunion.com's argument in context,

4   however, it should not be lost on the Court that its members have no opportunity to edit,

5   or even view, the Emails that Reunion.com sends to their email contacts.  (FAC ¶33.)

### 1.   Reunion.com's website printouts cannot be considered on a motion to dismiss.

In purported support for its motion to dismiss the FAC, Reunion.com proffers various website printouts that it has cherry picked from its computers.  Those self-selected documents may not be considered in evaluating the sufficiency of the FAC on a motion to dismiss.  A document not physically attached to the complaint may only be considered by the court on a motion to dismiss if:  1) the complaint specifically refers to the document; 2) no party questions the authenticity of the document; and 3) the document is central to plaintiff's claim.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  At the pleading stage, all ambiguities in alleged documents <u>must</u> be resolved in the plaintiff's favor.  *International Audiotext Network, Inc. v. AT & T Co.*, 62 F3d 69, 72 (2nd Cir. 1995).

The website printouts proffered by Reunion.com run afoul of every aspect of the above-cited rule, and therefore cannot be considered in connection with Reunion.com's motion to dismiss:

- <u>The FAC does not allege the particular website printouts at issue</u>:  The FAC alleges certain elements of Reunion.com's sign-up process, and even describes Reunion.com's use of pre-checked boxes ("negative options," as they are referred to by the FTC).  The FAC does not, however, make detailed reference to particular website pages, mostly because Plaintiffs have no record of or access to those pages, including as they existed in months past.  Reunion.com cherry-picks just two of its supposed sign-up pages, omitting any reference to other sign-up pages or other aspects of its website.  To accept Reunion.com's hand-picked samples would be to deny Plaintiffs discovery of Reunion.com's sign-up process.

- <u>The authenticity of the website pages proffered by Reunion.com is highly suspect</u>: Reunion.com represents that the website printouts it proffers were in effect on the dates that Plaintiffs received the alleged Emails.  Reunion.com does not state, however, that those were the pages viewed by the individuals who provided

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.com

Plaintiffs' email addresses. Furthermore, Reunion.com itself does not appear to know which website pages were actually in effect. For example, the description on page seven of Reunion.com's motion contains a reference to "reminder" emails; the website page appearing immediately above that description contains no such language. Absent discovery, it is impossible to know how many sign-up pages existed, or whether different Reunion.com members were exposed to different pages. The only sure thing is that Reunion.com's sign-up process changed so much and so frequently that even Reunion.com can't keep track of it.

- <u>Reunion.com's sign-up screens are not central to Plaintiffs' claims</u>: As explained above in greater detail, this lawsuit arises not out of Reunion.com's sign-up process but out of the false and deceptive Emails. Reunion.com's members had no authority to excuse Reunion.com's violation of section 17529.5. Thus, the specific contours of Reunion.com's hand-picked webpages are immaterial.

Essentially, with these self-selected website printouts, Reunion.com is attempting to present unauthenticated evidence, which has not been subjected to adversary review and cross-examination to paint a picture of the sign-up process different than alleged in the FAC. However, the complaints to the FTC and Better Business Bureau alleged in the FAC demonstrate that the sign-up process did not function as Reunion.com claims. (FAC ¶¶10-11, 55, 65-66.)

    **2.** **Reunion.com's website printouts could only be considered by converting Reunion.com's motion to dismiss into a motion for summary judgment.**

Rule 12 (d), F. R. Civ. P., provides:

    **(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

And, Rule 56(f), F. R. Civ. P. provides:

    **(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

    **(1)** deny the motion;

    **(2)** order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken;

Reunion.com's effort to inject its website printouts into the motion to dismiss directly implicates these rules. As the Court knows, this action is at its early stage. No discovery has been conducted. Plaintiffs have not had access to any of the relevant paper and electronic evidence in the possession of Reunion.com.

                18              **PLAINTIFFS' OPP. TO DEFENDANT'S MOTION TO DISMISS FAC**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

At issue here is the sufficiency of the FAC, not whether Reunion.com's selective and misleading website printouts could in any way "help" Reunion.com with respect to some of this case's most highly contested factual issues.  Accordingly, this Court should, pursuant to Federal Rule 12(d), "exclude" Reunion.com's website printouts, since they are "matters outside of the pleadings."  Furthermore, if the Court chose to consider those filings, then the Court would be converting the motion into a summary judgment motion.  If the Court did so, Plaintiffs would promptly file an affidavit pursuant to Rule 56(f), to obtain substantial discovery in order to fully respond to the motion for summary judgment.  However, again, since we are only at the pleading stages of this case, the better course would be for the Court to exclude consideration, on the motion to dismiss, of Reunion.com's submissions which are outside of the pleadings.

**3.    Even if considered, Reunion.com's printouts demonstrate that its members did not agree to—and could not have known about—the contents of the Emails.**

Reunion.com argues that the website printouts in its motion demonstrate that its members consented to and, in fact, agreed to initiate the Emails.  Those printouts, however, utterly fail to disclose—and in most cases mislead as to—the contents of the Emails.   Furthermore, those printouts materially and repeatedly contradict Reunion.com's privacy policies, which by law, must fully and truthfully disclose Reunion.com's uses of its members' personal information.[6]  Accordingly, even if the Court considers Reunion.com's proffered printouts—as explained above, it should not— those printouts only emphasize the false and deceptive nature of Reunion.com's marketing tactics in general and the Emails in particular.

Reunion.com represents that the website printout appearing on page six of its opening brief (the "Page Six Printout") was in effect on the dates of the Hoang and Hsiao

---

[6] Bus. & Prof. C. §§22575 *et seq.* (requiring all commercial websites that collect personal information from California residents to conspicuously post their privacy policies on their websites and comply with those posted policies).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger.Law.com

1    Emails.  That printout, however, doesn't mention the word "connect."  To the contrary, it

2    simply states that Reunion.com will "invite [contacts who aren't members] to join."  Nor

3    does the Page Six Printout disclose that Reunion.com would send emails (much less

4    emails "from" the member).    Most importantly, the Page Six Printout contradicts

5    Reunion.com's privacy policy in effect on May 5, which disclosed that no "referral" emails

6    would be sent unless and until Reunion.com "ask[ed] you for your friend's name and

7    email address."  (Baird Decl. Ex. 3.)  As relevant to Reunion.com's claim that the Emails

8    were forward-to-a-friend transmissions, the relevant privacy policy further represented

9    that Reunion.com "stores this information for the sole purpose of sending this one-time

10   email and tracking the success of our referral program,"  *Id.*, when it fact Reunion.com

11   retained the email addresses in order to send repeat commercial solicitations, disguised

12   as personal emails.    Far from demonstrating consent, the Page Six Printout flat out

13   misled members both as to Reunion.com's email marketing scheme and as to

14   Reunion.com's planned use of its members' personal email contacts.    The website

15   printout appearing on page seven of Reunion.com's opening brief (the "Page Seven

16   Printout") is to the same effect.  It does not disclose that the Emails will be disguised as

17   personal invitations to connect, or that the Emails will be sent "from" the member. *To the*

18   *contrary, it specifically states that Reunion.com will send the Emails.*  The Page Seven

19   Printout also fails to disclose that the Emails will contain a statement that the member

20   "looked for" recipients on Reunion.com.

21        The only thing to be gleaned from Reunion.com's selective website printouts is

22   that Reunion.com made no effort to ensure that its sign-up screens tracked its privacy

23   policy, or that the Emails tracked either of those documents.  As alleged by the FAC:

24        [Reunion.com m]embers do not assist in creating the content or the
          subject lines of the Emails. Nor can members edit or add content to the
25        subject lines or content of the Emails. Nor are members provided with the
          opportunity to review or approve the Emails before Reunion.com sends
26        them. Reunion.com does not serve as a technical intermediary in the
          transit of the Emails, but rather as the author of the Emails, and as sender
27        of the Emails even though the various aspects of the Emails as described
          above were unauthorized, unreviewed, and false.  (FAC ¶33.)

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.Kronenberger Law.com

1   Absent consistent and truthful disclosures about the contents of the Emails and

2   Reunion.com's planned uses of its members' personal email contacts, it is impossible,

3   on this record, to reach any reliable factual conclusion, contrary to the allegations in the

4   FAC, that Reunion.com's members agreed to the contents of, much less to initiate, the

5   Emails.  Reunion.com's consent argument is belied by the fact that Reunion.com does

6   not permit its members to edit, let alone view, the Emails before Reunion.com sends the

7   Emails to their contacts.

8   **E.   Reunion.com knew the Emails were false and deceptive, and initiated them with the specific intention that they mislead recipients.**

9   Reunion.com's extended discussion of fraud omits any reference to the second

10  and third elements—namely, Reunion.com's knowledge (of the Emails' falsity) and intent

11  (to deceive the Emails' recipients).  Likely, that is because the FAC alleges both in great

12  detail, and Reunion.com has no basis on which to challenge those allegations.

13  The FAC specifically alleges that Reunion.com knew of the false and deceptive

14  nature of the "from" lines and "subject" lines incorporated into each and every Email

15  received by Plaintiffs.  (FAC ¶¶35-37, 39-41, 45-47, 50-52.)  The FAC also specifically

16  alleges, again with respect to each and every Email received by Plaintiffs, that

17  Reunion.com intended such falsity and deception to mislead recipients into believing

18  that the Emails were personal requests to "connect" as received from the recipient's

19  friends.   (*Id.*)   Those allegations alone are sufficient to satisfy any mental state

20  requirement imposed by section 17529.5 or CAN-SPAM's express preemption clause.

21  Reunion.com cannot deny its knowledge that the Emails' "from" lines and

22  "subject" lines were false and deceptive.  As further discussed above, Reunion.com

23  authored and initiated the Emails, and engineered the process by means of which

24  members' email contacts were harvested.   Furthermore, countless Reunion.com

25  customers and Email recipients have complained about the Emails' falsity and deception

26  to Reunion.com, the FTC, the Better Business Bureau, and untold other organizations

27  and Internet chatrooms.  (FAC ¶66 points i, iv, vi, ix.)

28

1    Nor can Reunion.com deny that it intended the Emails' falsity and deception to

2    mislead Email recipients.  As a sophisticated Internet marketing company, Reunion.com

3    tracks the rates at which recipients open and respond to various iterations of the Emails.

4    (FAC ¶¶63-63.)   Reunion.com is quite aware—as are the FTC, California legislature,

5    and U.S. Congress—that recipients are far more likely to open an email that they believe

6    to be personal correspondence from a friend, rather than a commercial advertisement.

7    (FAC ¶¶3, 8.)   Reunion.com could easily have taken remedial action, as have other

8    social networking companies, to alleviate the chance that its marketing emails are

9    mistaken for personal correspondence.   It has not done so because it profits from

10   perpetuating the deception.

11       The "Emails represent a clear attempt by Reunion.com to disguise the fact that

12   the Emails are unsolicited commercial email advertisements, and to deceive recipients

13   into opening the Emails on the mistaken belief that they are personal requests by a

14   single individual to 'connect' with them."   (FAC ¶8.)   Because the FAC specifically

15   alleges as much, it satisfies any mental state requirement under section 17529.5 or

16   CAN-SPAM's express preemption provision.

17                                 **V.  CONCLUSION**

18       For all of the reasons set forth above, the Court should deny Reunion.com's

19   motion to dismiss.

20                                          Respectfully submitted by the attorneys
                                            for the Plaintiffs,

21

22   DATED:  November 21, 2008         **SHAPIRO HABER & URMY LLP**

23                                     By:___/s/ Todd S. Heyman_____

24                                     Edward F. Haber (admitted *pro hac vice*)
                                       Todd S. Heyman (admitted *pro hac vice*)
25                                     Ian J. McLoughlin (admitted *pro hac vice*)
                                       Robert E. Ditzion (admitted *pro hac vice*)
26                                     53 State Street
                                       Boston, MA 02109
27                                     Telephone: (617) 439-3939
                                       Facsimile: (617) 439-0134

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.kronenberger.law.com

1

**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III
2
Karl S. Kronenberger
Jeffrey M. Rosenfeld
3
Margarita Calpotura
150 Post Street, Suite 520
4
San Francisco, CA 94108
Telephone:  (415) 955-1155
5
Facsimile:   (415) 955-1158

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com