United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   VIOLETTA HOANG, et al.,                    No. C-08-3518 MMC

12              Plaintiffs,                     **ORDER GRANTING DEFENDANT'S**
                                                **MOTION TO DISMISS; DISMISSING**
13      v.                                      **FIRST AMENDED COMPLAINT WITH**
                                                **LEAVE TO AMEND**
14   REUNION.COM, INC.,

15              Defendant
     _____/

16

17        Before the Court is defendant Reunion.com, Inc.'s motion, filed November 7, 2008,

18   to dismiss plaintiffs' First Amended Complaint ("FAC").  Plaintiffs Violetta Hoang ("Hoang"),

19   Livia Hsiao ("Hsiao"), Michael Blacksburg ("Blacksburg"), and Matthew Hall ("Hall") have

20   filed opposition, to which defendant has replied.  Having read and considered the papers

21   filed in support of and in opposition to the motion, the Court rules as follows.[1]

22        By order filed October 6, 2008, the Court dismissed plaintiffs' initial complaint, by

23   which plaintiffs alleged claims under § 17529.5(a) of the California Business & Professions

24   Code.  Specifically, the Court found that plaintiffs' claims, as alleged, were barred by the

25   preemption clause set forth in 15 U.S.C. § 7707(b)(1), which preempts state laws

26   regulating commercial emails, except to the extent such state laws prohibit "falsity or

27   deception in any portion of a commercial electronic mail message or information attached

28

     _____

        [1]By order filed December 16, 2008, the Court took the matter under submission.

thereto." <u>See</u> 15 U.S.C. § 7707(b)(1).  The Court afforded plaintiffs leave to amend to allege a common law fraud claim and/or § 17529.5(a) claims that occurred under circumstances involving falsity or deception.  Plaintiffs thereafter filed the FAC, and allege therein three claims under § 17529.5(a).  Defendant argues that the FAC is subject to dismissal, for the reason plaintiffs have failed to allege a § 17529.5(a) claim that is not preempted by § 7707(b)(1).

**A.  First Cause of Action**

In the First Cause of Action, plaintiffs allege, on behalf of plaintiffs Blacksburg and Hall, a violation of § 17529.5(a)(1), which prohibits the sending of a commercial email advertisement that "contains or is accompanied by a third-party's domain name without the permission of the third party." <u>See</u> Cal. Bus. & Prof. Code § 17529.5(a)(1).

Plaintiffs allege that defendant sent an email to Blacksburg and an email to Hall, each of which included, at the end of the "From" line, a third-party domain name, and that neither the referenced third-party nor its licensee had given defendant permission to use the domain name in the email.  (<u>See</u> FAC ¶¶ 7, 47, 52.)  Specifically, according to plaintiffs, defendant sent Blacksburg an email that stated it was from "edmorphic@yahoo.com", (<u>see</u> FAC ¶ 43), and sent Hall an email that stated it was from "mikeklumpp@yahoo.com," (<u>see</u> FAC ¶ 48).

Contrary to defendant's argument, plaintiffs have sufficiently alleged, for purposes of § 7707(b)(1), that defendant's inclusion of a third-party's domain name in the subject emails was a false representation and that defendant knew such emails would convey a false representation, in that, according to plaintiffs, the emails were not sent by the yahoo.com addressees identified in the email or with their permission, but, rather, were sent by defendant, which authored the entirety of the language in the email.  (<u>See</u> FAC ¶¶ 7, 9, 33, 45, 50.)  Further, plaintiffs have sufficiently alleged the above-referenced representations were material and defendant intended the recipients to rely thereon, in that, according to plaintiffs, defendant intended the recipients to believe the emails had been authored and sent by the individuals whose yahoo.com email addresses were

1   identified and to act on such belief by "opening and reading" the emails, which, in fact,

2   contained a commercial advertisement for defendant's services.  (See FAC ¶¶ 45, 47, 51,

3   52.)

4   　　　　As defendant points out, however, plaintiffs fail to allege that either Blacksburg or

5   Hall, the plaintiffs on whose behalf the claim is brought, incurred any damage as a result of

6   having relied on such asserted false statement.  Plaintiffs, essentially conceding the FAC

7   fails to include any such allegation(s), argue the Court should reconsider its October 6,

8   2008 order to the extent the Court found therein that each of the plaintiffs, in order to state

9   a claim, must allege that he or she suffered damage as a result of his or her having relied

10   on a false or misleading statement made by defendant.

11   　　　　Plaintiffs do not dispute that a common law claim for misrepresentation or fraud

12   requires a plaintiff to establish he suffered some injury or incurred damage as a result of his

13   having relied on a false or misleading statement.  Rather, plaintiffs argue, § 7707(b)(1)

14   exempts from preemption state statutes prohibiting the making of false or misleading

15   statements in a commercial email, irrespective of whether the plaintiff incurred damage as

16   a result of his having relied on such a statement.[2]  In support of such argument, plaintiffs

17   point to the text of § 7707(b)(1), which does not explicitly refer to "misrepresentation" or

18   "fraud" but, rather, to "falsity or deception."  Courts that have considered the issue,

19   however, have interpreted "falsity or deception," as used in § 7707(b)(1), to refer to the

20   common law tort of misrepresentation or fraud.  See, e.g., Omega World Travel, Inc. v.

21   Mummagraphics, Inc., 469 F. 3d 348, 354 (4th Cir. 2006) (interpreting preemption clause in

22   § 7707(b)(1) as referring to "torts involving misrepresentations"); Ferron v. Echostar

23   Satellite, LLC, 2008 WL 4377309, *6 (S.D. Ohio 2008) (finding, in action where plaintiff

24   alleged violation of state statute regulating commercial email, defendant entitled to

25   summary judgment where plaintiff failed to offer evidence "to support a fraud claim" and

26   thus failed to avoid preemption under § 7707(b)(1)); ASIS Internet Services v. Optin Global,

27   

28   　　　　[2]Plaintiffs fail to explain why § 17529.5(a) is properly interpreted as providing a
remedy even where the plaintiff has incurred no damage.

1    Inc., 2008 WL 1902217, *19 (N.D. Cal. 2008) (holding § 7707(b)(1) "permits state law to

2    regulate the use of electronic messages only to the extent those regulations are based on

3    traditional principles of fraud"); Kleffman v. Vonage Holdings Corp., 2007 WL 1518650, *3

4    (C.D. Cal. 2007) (holding Congress, in enacting § 7707(b)(1), "left states room only to

5    extend their traditional fraud prohibitions to the realm of commercial emails"; finding claim

6    for violation of § 17529.5(a) preempted, where claim not based on "traditional tort theory" of

7    "fraud and deceit" and plaintiff failed to allege he was "at any point mislead").

8          The findings in such cases are supported by the relevant legislative history.  In

9    particular, the Senate Report on the "CAN-SPAM Act of 2003" describes the purpose of §

10   7707(b)(1) as follows:

11         Section [7707] (b)(1) sets forth the general rule concerning the preemption of
           State law by the legislation.  The legislation would supersede State and local
12         statutes, regulations, and rules that expressly regulate the use of e-mail to
           send commercial messages except for statutes, regulations, or rules that
13         target fraud or deception in such e-mail.  Thus, a State law requiring some or
           all commercial e-mail to carry specific types of labels, or to follow a certain
14         format or contain specified content, would be preempted.  By contrast, the
           State law prohibiting fraudulent or deceptive headers, subject lines, or content
15         in commercial e-mail would not be preempted.  Given the inherently interstate
           nature of e-mail communications, the Committee believes that this bill's
16         creation of one national standard is a proper exercise of the Congress's
           power to regulate interstate commerce that is essential to resolving the
17         significant harms from spam faced by American consumers, organizations,
           and businesses throughout the United States. This is particularly true
18         because, in contrast to telephone numbers, e-mail addresses do not reveal
           the State where the holder is located.  As a result, a sender of e-mail has no
19         easy way to determine with which State law to comply.  Statutes that prohibit
           fraud and deception in e-mail do not raise the same concern, because they
20         target behavior that a legitimate business trying to comply with relevant laws
           would not be engaging in anyway.
21
22   See S. Rep. No. 108-102, at 21-22 (2003), reprinted in 2004 U.S.C.C.A.N. 2348, 2365

23   (emphasis added).

24         In any event, even assuming, arguendo, Congress did not intend to preempt state

25   laws that provide a cause of action for false emailed statements upon which the plaintiff did

26   not rely to his detriment, a claim based on such a state law could not be brought in federal

27   court.  For purposes of federal standing, a plaintiff must allege, and thereafter prove, that

28   he incurred an injury as a result of the defendant's conduct.  See Lujan v. Defenders of

4

1   Wildlife, 504 U.S. 555, 560-61 (1992) (holding "standing is an essential and unchanging

2   part of the case-or-controversy requirement of Article III"; further holding that a plaintiff, to

3   establish standing, "must have suffered an injury in fact").[3]

4          Accordingly, plaintiffs cannot proceed with their claim under § 17529.5(a)(1) on

5   behalf of plaintiffs Blacksburg and Hall, in the absence of an allegation that each such

6   plaintiff incurred some type of injury or damage as a result of his having taken action in

7   reliance on defendant's assertedly false use of a third-party domain name in the email.

8   Because plaintiffs fail to make such an allegation, the First Cause of Action is subject to

9   dismissal.

10         The Court next considers whether further leave to amend the First Cause of Action

11  is appropriate.  The FAC includes allegations by which plaintiffs suggest that a person who

12  receives a commercial email that falsely uses a third-party domain name, and who opens

13  and reads such email in reliance on the sender's use of the third-party domain name, as

14  opposed to having summarily deleted it as junk mail, has incurred damage in the form of

15  his having expended time to read the email and consider its content.  (See FAC ¶ 3, 46, 49,

16  51.)  Although plaintiffs do not allege that either Blacksburg or Hall in fact relied on the

17  emails in question, the Court will afford plaintiffs one further opportunity to amend, to allege

18  facts that each plaintiff on whose behalf the First Cause of Action is brought incurred such

19  injury or other assertedly cognizable injury as a result of his having relied on defendant's

20  //

21  //

22

23         [3]Hart v. McLucas, 535 F. 2d 516 (9th Cir. 1976), on which plaintiffs rely, is
    distinguishable.  In that case, the government sought to suspend a flight instructor's
24  certificate in light of the instructor's alleged violation of a regulation prohibiting instructors
    from making an "intentionally false statement" on a specified government form.  The issue
25  presented was whether the government had to prove the instructor had "knowledge of [the]
    falsity" of the statement.  See id. at 519.  In answering that question in the affirmative, the
26  Ninth Circuit also observed that the government need not prove the government acted "in
    reliance upon the representation."  See id.  Hart contains no language suggesting,
27  however, that a private party seeking to establish a claim based on a false statement need
    not establish an injury.  Indeed, any such interpretation would be wholly at odds with
28  Supreme Court precedent.  See Lujan, 504 U.S. at 560.

1   allegedly false use of a third-party's domain name.[4]

2   **B. Second Cause of Action**

3       In the Second Cause of Action, plaintiffs allege, on behalf of each named plaintiff, a

4   violation of § 17529.5(a)(2), which prohibits the sending of a commercial email

5   advertisement that "contains or is accompanied by falsified, misrepresented, or forged

6   header information."  See Cal. Bus. & Prof. Code § 17529.5(a)(2).

7       Plaintiffs allege defendant sent each plaintiff an email that "falsely represented" such

8   email "had been sent from an individual, rather than from [defendant]."  (See FAC

9   ¶ 79.)  Specifically, plaintiffs allege that Hoang received from defendant an email stating it

10  was "From: Truong Tran," (see ¶ FAC 34), Hsiao received from defendant three emails

11  stating they were, respectively, "From: Esther Kang," "From: Vivian Yeh," and "From:

12  Andrea Wong," (see FAC ¶ 38), Blacksburg received from defendant an email stating it

13  was "From: Erick Dunn," (see FAC ¶ 43), and Hall received from defendant an email stating

14  it was "From: Mike Klumpp," (see FAC ¶ 48).

15      Contrary to defendant's argument, plaintiffs have sufficiently alleged, for purposes of

16  § 7707(b)(1), that defendant's inclusion of an individual's name, immediately next to the

17  word "From" in each of the above-referenced emails was a false representation and that

18  defendant knew it would convey a false representation, in that, according to plaintiffs, the

19  emails were not sent by the named individuals, but were actually sent by defendant, which

20  authored the entirety of the language in the e-mail.  (See FAC ¶¶ 9, 33, 35, 40, 45, 51.)

21  Further, plaintiffs have sufficiently alleged the above-referenced asserted false

22  representations were material and defendant intended the recipients to rely thereon, in that,

23  according to plaintiffs, defendant intended the recipient to believe the email had been

24  authored and sent by the named individual and to act on such belief by "opening and

25  reading" the emails, which, in fact, contained a commercial advertisement for defendant's

26

27      [4]Because plaintiffs have neither alleged their actual theory of damages, nor identified
28  it in their opposition, the Court does not consider whether any particular claim of loss or
    harm, if alleged, would be sufficient for pleading purposes.

1 services.  (See FAC ¶¶ 35, 40, 45, 51.)

2      Plaintiffs, however, have failed to allege that any of the four plaintiffs actually

3 incurred an injury as a result of his or her having taken some action in reliance on

4 defendant's asserted use of false header information; for the same reasons as discussed

5 above, plaintiffs must include such allegation(s) in order to state a claim.

6      Accordingly, the Second Cause of Action is subject to dismissal.

7      Again, the Court will afford plaintiffs one further opportunity to amend, in this

8 instance, to allege facts that each plaintiff on whose behalf the Second Cause of Action is

9 brought incurred a cognizable injury as a result of his or her having relied on defendant's

10 use of assertedly false header information.

11 **C.  Third Cause of Action**

12      In the Third Cause of Action, plaintiffs allege, on behalf of each named plaintiff, a

13 violation of § 17529.5(a)(3), which prohibits the sending of a commercial email

14 advertisement that "has a subject line that a person knows would be likely to mislead a

15 recipient, acting reasonably under the circumstances, about a material fact regarding the

16 contents or subject matter of the message."  See Cal. Bus. & Prof. Code § 17529.5(a)(3).

17      Plaintiffs allege defendant sent each plaintiff an email with a subject line defendant

18 knew was likely to lead each plaintiff to believe he/she was receiving a communication

19 from an individual known to such plaintiff, rather than a commercial email authored and

20 sent by defendant.  Specifically, plaintiffs allege (1) the email Hoang received, which stated

21 it was "From: Truong Tran," also stated "Subject: Truong wants to connect with you!," (see

22 FAC ¶ 34), (2) the emails Hsiao received, which stated they were, respectively, "From:

23 Esther Kang," "From: Vivian Yeh," and "From: Andrea Wong," also stated, respectively,

24 "Subject: Esther wants to connect with you!," "Subject: Vivian wants to connect with you!,"

25 and "Subject: Andrea wants to connect with you!," (see FAC ¶ 38), (3) the email

26 Blacksburg received, which stated it was "From: Erick Dunn," also stated "Subject: [Fool'd]

27 //

28 //

7

1   Please contact with me :),” (see FAC ¶ 43),[5] and (4) the email Hall received, which stated it

2   was “From: Mike Klumpp,” also stated “Subject: Please connect with me :),” (see FAC

3   ¶ 47).

4          Contrary to defendant’s argument, plaintiffs have sufficiently alleged, for purposes of

5   § 7707(b)(1), that the above-quoted subject lines were false representations, because,

6   according to plaintiffs, none of the individuals identified wanted to “connect” with the plaintiff

7   to whom defendant sent the email, (see FAC ¶¶ 9, 35, 39, 46, 51), and defendant knew its

8   representation was false because defendant “generated” the subject line “without  providing

9   the [individual identified in the email] any input or opportunity to review or approve the

10  message before it was sent,” (see FAC ¶ 9).  Rather, according to plaintiffs, such

11  individuals provide defendant with the passwords to their email accounts, (see FAC ¶¶ 26-

12  28), and defendant, in its “Privacy Policy,” has disclosed only that defendant would

13  “access” that “member’s [email] contacts for the purpose of sending emails ‘from

14  Reunion.com’ to certain or all of those contacts and ‘inviting those contacts to join’

15  Reunion.com,” (see FAC ¶ 28).[6]  At this stage of the proceedings, the Court cannot find

16  that the scope of the authorization set forth in the Privacy Policy is or is not sufficiently

17  broad to encompass the particular communications at issue herein.

18         Further, plaintiffs have sufficiently alleged the above-referenced asserted false

19  representations were material and defendant intended the recipients to rely thereon, in

20  that, according to plaintiffs, defendant intended the recipients to believe, based on the

21

22         [5]According to plaintiffs, “FOOLD” is the name of a “Google electronic mailing list” to
    which both Blackburg and Erick Dunn are “subscribers.”  (See FAC ¶ 42.)

23         [6]Defendant requests the Court take judicial notice of “screen captures” that,
    according to defendant, its members who provided email contacts to defendant would have
24  seen on particular dates.  For example, according to defendant, on May 5, 2008, such
    members were advised that if they provided email contacts, defendant would “let anyone
25  who isn’t a [m]ember know that [the member] looked for them,” (see Baird Decl., filed
    November 7, 2008, Ex. 1), and that, between July 17, 2008 and July 25, 2008, such
26  members were advised, “We’ll let your contacts who aren’t [m]embers know that you want
    to connect,” (see id. Ex. 2).  Because the FAC does not purport to rely on the contents of
27  those “screen captures,” and does not allege that the members identified in the subject
    emails provided email contacts on May 5, 2008 or between July 17, 2008 and July 25,
28  2008, the Court declines to take judicial notice of such evidence at the pleading stage.

1   content of the subject line, that the emails were of a "personal nature and not an unsolicited

2   commercial email from [defendant]," (see FAC ¶ 5), and to act on such belief by "opening

3   and reading" the emails, which, in fact, contained a commercial advertisement for

4   defendant's services, (see FAC ¶¶ 32, 37, 41, 46, 51.)

5          Plaintiffs, however, have again failed to allege that any of the four plaintiffs actually

6   incurred an injury as a result of his or her having taken some action in reliance on

7   defendant's asserted use of a misleading subject line, and, as discussed above, plaintiffs

8   must include such allegation(s) in order to state a claim.

9          Accordingly, the Third Cause of Action is subject to dismissal.

10         As with plaintiffs' other claims, the Court will afford plaintiffs one further opportunity

11  to amend, in this instance to allege facts that each plaintiff on whose behalf the Third

12  Cause of Action is brought incurred a cognizable injury as a result of his or her having

13  relied on defendant's use of an assertedly misleading subject line.

14                                    **CONCLUSION**

15         For the reasons stated above, defendant's motion to dismiss is hereby GRANTED,

16  and the First Amended Complaint is hereby DISMISSED with leave to amend to cure the

17  deficiencies identified above.  Any such Second Amended Complaint shall be filed no later

18  than January 16, 2009.

19         **IT IS SO ORDERED.**

20

21  Dated:  December 23, 2008

22                                              MAXINE M. CHESNEY
                                                United States District Judge

23

24

25

26

27

28

                                           9