**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Margarita Calpotura (CA Bar No. 244711)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
hank@KBInternetLaw.com
karl@KBInternetLaw.com
jeff@KBInternetLaw.com
margarita@KBInternetLaw.com

**SHAPIRO, HABER & URMY LLP**
Edward F. Haber (admitted *pro hac vice*)
Todd S. Heyman (admitted *pro hac vice*)
Ian J. McLoughlin (admitted *pro hac vice*)
Robert E. Ditzion (admitted *pro hac vice*)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
theyman@shulaw.com
imcloughlin@shulaw.com
rditzion@shulaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VIOLETTA HOANG, LIVIA HSIAO, MICHAEL BLACKSBURG, and MATTHEW HALL**, individually and on behalf of a class of similarly situated persons<br><br>Plaintiffs,<br><br>vs.<br><br>**REUNION.COM, INC.**, a California corporation,<br><br>Defendant. | Case No. 08-CV-03518-MMC<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION** |

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

# PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION

In its March 11, 2009 Order ("Order"), the Court granted Plaintiffs leave to file this supplemental brief to address "the issue of whether plaintiffs have sufficiently alleged standing." (Order at 4). Moreover, the Court specifically requested that three issues be addressed: (1) whether Plaintiffs are making an "implicit" argument that California's Business & Profession Code section 17529.5 does not require a plaintiff to establish an injury; (2) whether Plaintiffs are prepared to allege an injury that was caused by the Defendant's alleged violation of section17529.5; and (3) whether Plaintiffs have standing to seek injunctive relief. (Order at 4-6).

## I. Plaintiffs Agree that they Must Allege Injury to Have Article III Standing.

Plaintiffs have argued that they need not plead all elements of common law fraud, including reliance and injury, to avoid preemption. However, Plaintiffs did not intend to suggest that section 17529.5 obviated the injury requirement for Article III standing. To the extent there was any ambiguity in Plaintiffs' previous submissions, Plaintiffs herein explicitly state that they did not and do not assert implicitly or otherwise that no injury is required to have Article IIII standing (or even statutory standing to assert a claim under section 17529.5). On the contrary, as the Court observed in its Order, Plaintiffs have argued that they suffered injuries, just not the type of injuries that were "previously recognized at law." (Order at 5, n.4) (quoting Plaintiffs' motion). Indeed, Plaintiffs repeatedly argued in their motion for leave to file a motion for reconsideration that they had suffered the types of injuries that caused the California legislature to enact section 17529.5, which are sufficient for Article III standing. (Docket No. 56 at 5, 7) ("These injuries are significant particularly when viewed in the aggregate, even if not the type of injury that ordinarily amounts to monetary loss to any individual as a result of a single incident."; "Statutes like those discussed above, and at issue here, are specifically designed to address inchoate injuries that result from undesirable business practices."; "in circumstances like the present case, where the plaintiff is himself an object of the

action . . . at issue . . . there is ordinarily little question that the action or inaction has caused him injury …") (internal citations and quotations omitted). Plaintiffs are in full agreement with the Court that an injury is required for Article III standing.

II. **Plaintiffs Are Prepared to Allege that they Suffered the Injuries that the California Legislature Sought to Prevent as a Result of the Defendant's Violation of Section 17529.5.**

As this Court held in its December 23, 2008 Order, Plaintiffs have adequately alleged that Reunion.com sent each of the four Plaintiffs an unsolicited false and deceptive commercial email. (Docket No. 55 at 8-9.) Plaintiffs also alleged that the emails were received by the Plaintiffs. (Docket No. 36, First Amended Complaint ("FAC") ¶¶34-52). The California legislature has recognized that the receipt of such spam email "imposes a cost on users, using up valuable storage space in e-mail boxes, as well as costly computer band width, and on networks and the computer servers that power them . . . " Cal. Bus. & Prof. C. §17529(e). And the California legislature enacted section 17529.5 to prevent recipients of emails from being injured by having those costs imposed upon them by spam email.[1] Cal. Bus. & Prof. C. §17529(m). Plaintiffs respectfully submit that the First Amended Complaint adequately alleges facts from which it can be reasonably inferred that Plaintiffs have suffered those injuries as a result of their receipt of the emails from the Defendant, for motion to dismiss purposes. *See Walter v. Drayson*, 538 F.3d 1244, 1247 (9th Cir. 2008) (on motion to dismiss, "we take the allegations and reasonable inferences as true"). Although these factual allegations were not specifically included in the FAC, they would be true of any recipient of the Defendant's false and deceptive emails. However, if the Court does not think that such facts can be fairly inferred from the facts alleged in the FAC, as it is currently drafted, to establish standing, Plaintiffs are prepared to allege in a second amended

---

[1] In enacting CAN-SPAM, Congress also found the diminution of storage space was sufficiently injurious to warrant the creation of specific legal rights for internet service providers. *See Hypertouch, Inc. v. Kennedy-Western University*, Civ. No. 04-05203, 2006 WL 648688, *3 (N.D.Cal. Mar. 8, 2006) (discussing legislative history of CAN-SPAM and noting that one of the "justifications" for the act was that the volume of spam adversely affected storage capacity).

Case No. 08-CV-03518-MMC     2     **PLAINTIFFS' SUPPLEMENTAL BRIEF ISO MTN FOR RECONSIDERATION**

complaint that the receipt of the Defendant's emails caused Plaintiffs to lose valuable storage space in their inboxes and computers (and/or required their personal time to delete such emails from their inboxes).  With respect to causation, there can be no dispute that Plaintiffs would not have suffered such injuries if Defendant had not sent the false and deceptive emails.  And hence there is a causal connection between Plaintiffs' injuries and the Defendant's conduct.  Once again, Plaintiffs submit that this causation can be reasonably inferred from the facts alleged in the FAC.  However, If the Court does not think that causation can be fairly inferred from the facts alleged in the FAC, as it is currently drafted,  Plaintiffs are prepared to allege in a second amended complaint the causal connection between the Defendant's conduct and the Plaintiffs' damages, as described in the preceding paragraph.[2]  To protect Plaintiffs from this type of conduct, the California legislature provided its residents with a legally protected interest to be free from the receipt of such emails, and deprivation of that interest (through the receipt of the emails) without more, is sufficient injury to confer Article III standing on them:

> The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . . *Warth v. Seldin*, 422 U.S. 490, 500 (1975). (citations omitted); *see also Linda R.S. v. Richard D.*¸ 410 U.S. 614, 617, n3. (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.").

---

[2] Plaintiffs maintain that the relevant injuries under both section 17529.5 and CAN-SPAM need not be injuries stemming from detrimental reliance on false statements in the emails, but the injuries identified by Congress and the California legislature, which focus on the consequences of email spam, which is largely independent of the actions of the recipient, and, perhaps more importantly, outside the recipient's control.  Both CAN-SPAM and section 17529.5 are, first and foremost, anti-spam statutes, though they do contain anti-deception provisions.  CAN-SPAM regulates all email spam and also limits California's police powers to regulate only deceptive email spam.  However, in exempting emails containing "falsity or deception" from the preemption provision of CAN-SPAM (15 U.S.C. §7701(b)(1)), Congress placed no  restrictions on the manner in which California can regulate such deceptive emails because Congress was not concerned about conflicting or overlapping state law regulations as applied to senders of deceptive emails.  As a result, Plaintiffs would allege a causal connection between Defendant's violation of the section 17529.5—sending the Plaintiffs the false and deceptive emails—and the Plaintiffs' sustaining the types of injuries that section 17529.5 was enacted to prevent as a result of the sending of the false and deceptive emails..

Case No. 08-CV-03518-MMC               3               **PLAINTIFFS' SUPPLEMENTAL BRIEF ISO MTN FOR RECONSIDERATION**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Whether the statute can confer standing turns on a simple inquiry: "whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500. Here, there can be no question that section 17529.5 granted any recipient of false and deceptive emails a right to judicial relief. The statute on its face establishes that recipients may bring a private right of action to recover "[l]iquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement. . . ." Cal. Bus. & Prof. C. §17529.5(B)(ii). To be a "recipient" under the statute requires only that the person be the "addressee of an unsolicited commercial email advertisement." *Id*. at §17529.1(m). Thus, Plaintiffs have both Article III standing and statutory standing to bring their claims.

The Ninth Circuit has dealt with similar statutory regimes in *DeMando v. Morris*, 206 F.3d 1300 (9th Cir. 2000) and *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982). In *DeMando*, the court held that a credit card holder who had received a letter in the mail that did not accurately disclose the terms of the legal obligations of the parties violated the Truth in Lending Act. *DeMando* at 1303. Even though the credit card holder did not suffer any actual damages, the Ninth Circuit found that she had "suffered the loss of a statutory right to disclosure and has therefore suffered injury in fact for purposes of Article III standing." *Id*. In *Baker*, a debtor was not provided statutorily required information about his right to contest a portion of his debt owed under the Fair Debt Collection Practices Act. *Baker,* 677 F.2d at 778. Although the debtor did not suffer any actual damages, the Court affirmed an award of statutory damages under the statute, and held that the debtor had standing to prosecute his claim. *Id*. at 777, 780 (debtor "has standing to assert any violations of this Act, . . . [and] [t]here is no indication in the statute that award of statutory damages must be based on proof of actual damages").

Statutes like those discussed above, and at issue here, are specifically designed by the legislatures to address inchoate injuries that result from undesirable business

practices. Absent the creation of a statutory regime that incentivizes potential plaintiffs and deters potential wrongdoers, those business practices would continue unabated. The case law is replete with examples of legislative enactments that provide redress for an injury that was not previously recognized at law.[3]

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), cited by this Court in its previous order finding Plaintiffs lacked standing (Docket No. 55 at 4-5) affirms the holdings and principles applied in the cases discussed above. In *Lujan*, the Court found that the plaintiffs lacked standing because they were complaining about the government's regulation (or lack of a regulation) of a third party, not themselves, which renders the hurdle for standing much higher:

> Thus, when the plaintiff is not himself the object of the [defendant's] action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish. *Id.* at 562.

By contrast, as the Supreme Court explained in *Lujan,* in circumstances like the case at bar, where the plaintiff "is himself an object of the action . . . at issue . . . there is ordinarily little question that the action or inaction has caused him injury . . ." *Id*.

Indeed, the *Lujan* Court made clear that "[n]othing in [its decision] contradicts the principle that '[t]he . . . injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id*. at 578. The Court recognized that statutes can confer standing on individuals, and simply distinguished *Lujan* because the statutory rights that were violated there were those of a third party, not the individuals who brought suit:

> [Statutory] broadening [of] the categories of injury that may be alleged in

---

[3] *See e.g., Beam v. Mukasey*, No. 07-1227, 2008 WL 4614324 at *6 (N.D.Ill. Oct. 15, 2008) (finding plaintiff has standing to assert a claim under the Right to Financial Privacy Act against the Federal Elections Commission for obtaining financial records in violation of the act because the statute "creates for private citizens a right to sue and recover actual or statutory damages for violations; the statute thus by its own terms creates a legally-protected interest."); *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1166 (D. Kan. 2008) (plaintiff had standing to prosecute Fair and Accurate Credit Transactions Act claim for defendant's printing of a credit card receipt with plaintiff's expiration date on it, even without suffering actual harm, because defendant's conduct "invaded the legal rights statutorily conferred on plaintiff . . .").

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury. *Id.*

Because there is no dispute that the plaintiffs here were the recipients of emails that allegedly violated section 17529.5, and the receipt of such emails caused them to suffer precisely the same type of injuries the California legislature sought to prevent when it enacted the statute, in which recipients of the emails were expressly provided with a private right of action to seek redress for being recipients of such emails, they have Article III standing to assert their claims in this Court.

**III. Because Plaintiffs Have Alleged an Ongoing Scheme to Send False and Misleading Emails to the Entire Contacts List of any Person Who Registers with Reunion.com, there Is a Real and Immediate Threat of Repeated Injury, and Such Injury Has Already Been Repeated with Respect to One of the Named Plaintiffs.**

In the FAC, Plaintiffs allege that Reunion.com uses its deceptive practices to grow its registered members and obtain access to more and more email addresses, and that it continues to send millions of the deceptive emails to these email addresses, resulting in registered membership growth of more than one million members each month. (FAC ¶¶3, 5, 8.) It is also alleged in the FAC that Defendant engages in deceptive conduct so that it can obtain and use all of the email addresses contained in the contacts list of each newly registered email member. (FAC ¶¶26-28, 59-62). Indeed, one complainant to the FTC astutely surmised and described the nature of Reunion.com's deceptive email spam scheme:

> When I created an account on this [website], . . . [i]t harvested my address book at gmail.com, and sent emails to everyone in it saying [that I wanted to] "Connect with You!" *giving them the impression that I had lost contact with them and wanted them to create an account at reunion.com.* When my contacts received this, *it appeared to them to have come directly from my email address at gmail.com. I had created my account at reunion.com in response to a similar illegitimate message sent to me by reunion.com when a friend created an account there, which appeared to come directly from him, and one or two of my contacts created an account after receiving the message that appeared to be from me*, and their address books were raided as well. I was especially embarrassed when I realized that these messages had been sent to people I didn't even know, such as any

Case No. 08-CV-03518-MMC        6        **PLAINTIFFS' SUPPLEMENTAL BRIEF ISO MTN FOR RECONSIDERATION**

person I had ever emailed, from my gmail account, about an internet order, at the UC Davis Extension Office, and other places of business. (FAC ¶65 (emphasis added)).

Another complainant to the Better Business Bureau website had an exchange with Reunion.com on the Better Business Bureau's website, which further substantiates the extensive reach and effectiveness of Reunion.com's deceptive email campaign:

> **Complainant**: They deceptively mined my address book and sent an email allegedly from me to thousands of contacts without my express permission. Resolution Sought: Send an apology letter to everyone in my address book, clarifying that I do not endorse their company or service, and that I did not authorize them to send an email in my name.
>
> **Reunion.com's Response**: Dear Customer, We understand that you are concerned about what happened. However, the only way that your address book is imported onto your Reunion.com account is for you to elect to do so. This is an option that is clearly stated on our site at the time of registration. If you wish to have everyone in your contact list removed so that they do not receive any further correspondence from your Reunion.com account you may do so simply by clicking on the "Friends" tab at the top of the page. Should you need further assistance please feel free to contact us at 1-888-704-1900. Best Regards, Reunion.com
>
> **Complainant's Rebuttal**: The only thing that's clear in hindsight is that Reunion.com is attempting to fool people into furnishing their address book password so they can spam in other people's name. NO ONE would EVER knowingly allow a company to send an email to EVERYONE in their address book, sight unseen, signed from themselves, endorsing ANYTHING. I have almost 2000 names in my Yahoo address book, and I'M not allowed to send a message to MY OWN entire contact list, because it's disallowed by Yahoo as SPAM. How can you tell me that when YOU do it (in my name and without my knowledge no less), it ISN'T spamming? It's OUTRAGEOUS to pretend otherwise. I can't wait to hear why Reunion.com doesn't provide users a preview of the letter they send in the user's name! This business should be shut down. I deserve an apology, and frankly, as recompense, I would like to send an email to everyone in Reunion.com's address book. You KNOW what it would say. (all emphasis in original).
>
> **Reunion.com's Final Response**: Dear Customer, We sincerely apologize for any inconvenience this incident may have cause [sic] you or any of your contacts. We will make sure that your suggestions and concerns are forwarded to the appropriate department. Should you have additional questions you may contact us at 1-888-704-1900. Thank you and have a fantastic day! Best Regards, Reunion.com (FAC ¶ 55).

As Reunion.com's registered membership growth continues and it literally sends as many as a thousand emails based on a single new member's contact list, it is probable that a person who has received a false and deceptive email from Defendant

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

will receive more such emails since there is likely to be significant overlap between the contacts lists of registered members. For example, assume Jane, Sally, and Susan are all friends and use each other's respective email addresses. Jane gets an email from Reunion.com disguised as an email from John, an old college friend who has no connection to Sally or Susan. Believing the email to have been authored and sent by John, as opposed to Reunion.com, Jane joins Reunion.com and then Reunion.com sends emails to all of Jane's contacts, including Sally and Susan. If Sally also wrongly believes the email to be personally from Jane as opposed to Reunion.com, and then joins Reunion.com, the Defendant will then send its false and deceptive email to everyone in Sally's address book**, including, once again, Susan**. Hence, due to Reunion.com's continuing unlawful practices, Susan receives a second false and deceptive email from Reunion.com. The likelihood of repeated injury is not pure speculation. Plaintiff Hsiao has already received at least three distinct such emails from Reunion.com. (FAC ¶38-41). Given there is not only a threat of repeated harm, but repeated incidents have already occurred with respect to Plaintiff Hsiao, Plaintiffs have standing to assert a claim for injunctive relief.

## IV. Conclusion

For the foregoing reasons, Plaintiffs respectfully move the Court to grant Plaintiffs' motion for reconsideration, and withdraw its previous order dismissing the First Amended Complaint and grant Plaintiffs leave to file a second amended complaint which would contain the additional factual allegations described herein.

//
//
//

| | |
|---|---|
| | Respectfully submitted, |
| DATED: March 27, 2009 | **SHAPIRO HABER & URMY LLP** |
| | By: /s/ Todd S. Heyman |
| | Edward F. Haber (admitted *pro hac vice*)<br>Todd S. Heyman (admitted *pro hac vice*)<br>Ian J. McLoughlin (admitted *pro hac vice*)<br>Robert E. Ditzion (admitted *pro hac vice*)<br>53 State Street<br>Boston, MA 02109<br>Telephone: (617) 439-3939<br>Facsimile: (617) 439-0134 |