**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile:  (415) 955-1158
hank@KBInternetLaw.com
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

**SHAPIRO, HABER & URMY LLP**
Edward F. Haber (admitted *pro hac vice*)
Todd S. Heyman (admitted *pro hac vice*)
Ian J. McLoughlin (admitted *pro hac vice*)
Robert E. Ditzion (admitted *pro hac vice*)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
theyman@shulaw.com
imcloughlin@shulaw.com
rditzion@shulaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VIOLETTA HOANG, LIVIA HSIAO, MICHAEL BLACKSBURG, and MATTHEW HALL**, individually and on behalf of a class of similarly situated persons<br><br>Plaintiffs,<br><br>vs.<br><br>**REUNION.COM, INC.**, a California corporation,<br><br>Defendant. | Case No. 08-CV-03518-MMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>**DATE:** July 17, 2009<br>**TIME:** 9:00 a.m.<br>**CTRM:** 7, 19th Floor<br>**JUDGE:** The Hon. Maxine Chesney |

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL ALLEGATIONS .............................................................................. 2

III. RELEVANT PROCEDURAL BACKGROUND ............................................. 4

IV. ARGUMENT ..................................................................................................... 7

    A. The Plaintiffs Have Article III Standing ................................................... 7

    B. Plaintiffs Have Statutory Standing ........................................................... 10

    C. Plaintiffs' Claims Are Not Expressly Preempted by CAN-SPAM .................... 12

V. CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

*Asis Internet Services v. Consumer Bargaingiveaways, LLC*, No. 08-04856, 2009 WL 1035538 (N.D.Cal. Apr. 17, 2009) .......................................................... 2, 12, 14, 15

*Asis Internet Services v. Vistaprint USA, Inc.,* No. 08-05261, 2009 WL 1258351 (N.D.Cal. May 5, 2009) ........................................................................................ 2

*Baker v. C.G. Services Corp*, 677 F.2d 775 (9th Cir. 1982) ...................................... 8, 10

*Beam v. Mukasey*, Case No. 07-1227, 2008 WL 4614324 (N.D. Ill. Oct. 15, 2008) ........ 9

*DeMando v. Morris*, 206 F.3d 1300 (9th Cir. 2000) ................................................... 8, 10

*Hillblom v. County of Fresno*, 539 F.Supp.2d 1192 (E.D.Cal. 2008) ......................... 11-12

*Linda R.S. v. Richard D.*, 410 U.S. 614 (1973) ........................................................ 7, 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................. 9-10

*Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006) . *passim*

*Ramirez v. Midwest Airlines, Inc.* 537 F.Supp.2d 1161 (D. Kan. 2008) ........................... 9

*Valley Forge v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982) ....................................................................................... 12

*Warth v. Seldin,* 422 U.S. 490, 500 (1975) ............................................................ 7, 8, 10

## Statutes

15 U.S.C. §7701, *et seq.* ............................................................................... *passim*

15 U.S.C. §7704(a)(2) ..................................................................................... 13, 15

15 U.S.C. §7707(a)(2) ..................................................................................... 14, 15

15 U.S.C. §7707(b)(1). ............................................................................................. 14

15 U.S.C. §7707(b)(2). ............................................................................................. 13

Bus. & Prof. C. §17529.5 ............................................................................... *passim*

## I.   INTRODUCTION

Defendants have moved to dismiss Plaintiffs' second amended complaint ("Complaint" or "SAC").  As this Court has already found, the Complaint adequately alleges that Defendant intentionally sent false and misleading emails to Plaintiffs (and others) that suggested the emails were personal correspondence seeking to "connect" with the recipient, when in reality, Reunion.com authored and sent a commercial email message designed to inflate its membership numbers.  (Docket No. 55 at 8-9.) Reunion.com has never denied that it authored and sent the emails, and that the persons whose names appear in the "From" line of the emails had no opportunity to review, edit, or approve the content of the messages sent by Defendant.  As a result of Plaintiffs' receipt of these false and deceptive emails, Plaintiffs seek to recover statutory damages under California Business and Professions Code, §17529.5(b)(1)(B)(ii).

Aside from a series of vitriolic attacks on Plaintiffs, the Defendant's motion to dismiss the Complaint frames a good faith legal dispute between the parties.  Defendant maintains that any California state law claim must include allegations of detrimental reliance and some injury other than a violation of Plaintiffs' statutory rights.  Defendant also argues that an injury is required for standing under Article III of the Constitution and to fall outside the ambit of the preemption provision of the "Controlling the Assault of Non-Solicited Pornography Act of 2003" ("CAN-SPAM").

Plaintiffs disagree.  Plaintiffs respectfully submit that allegations of detrimental reliance causing some injury beyond a violation of statutory rights are unnecessary for standing under the statute or the Constitution, and such allegations are not required to escape the reach of CAN-SPAM's preemption provision.  As Plaintiffs demonstrate herein, California defined the injury required in the statute, being a <u>recipient</u> of a false and deceptive email, and California was well within its power to grant recipients of such deceptive spam emails the standing to assert their right to recover statutory damages.

While Defendant expresses significant outrage with Plaintiffs' legal position, it should be noted that two other judges of this Court have issued thoughtful opinions

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

1  which, if applied here, would find that Plaintiffs' claims are not preempted for the very
2  reasons articulated by Plaintiffs throughout this litigation. *See ASIS v. Internet Services*
3  *v. Consumer Bargaingiveaways, LLC*, No. 08-04856, 2009 WL 1035538 at *5-8
4  (N.D.Cal. Apr. 17, 2009) (Alsup, J.) (holding that a claim under Section 17529.5 which
5  does not allege the elements of common law fraud is not preempted by CAN-SPAM and
6  explaining why district courts dismissing such complaints on preemption grounds have
7  incorrectly interpreted Section 17529.5, the applicable legislative history, and *Omega*
8  *World Travel v. Mummagrpahics*, 469 F.3d 348, 349 (4th Cir. 2006)); *ASIS v. Internet*
9  *Services v. Vistaprint USA, Inc.*, No. 08-5261, 2009 WL 1258351 (N.D.Cal. May 5, 2009)
10 (Armstrong, J.) (adopting Judge Alsup's reasoning in denying motion to dismiss on
11 preemption grounds) ("the ASIS Decisions"). Plaintiffs' original complaint, First
12 Amended Complaint, and the current Second Amended Complaint all would have
13 survived Defendant's preemption based motion to dismiss under the reasoning
14 articulated by Judges Alsup and Armstrong in the ASIS Decisions.[1]

15 Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss
16 for the reasons articulated in the ASIS Decisions with respect to preemption. If,
17 however, this Court concludes that the ASIS Decisions are erroneous, then Plaintiffs
18 respectfully submit that dismissal with prejudice would be appropriate here so that this
19 "split" of legal interpretations among the judges in this district can be resolved on appeal
20 by the Ninth Circuit. Likewise, Plaintiffs' request that this Court find Plaintiffs have Article
21 III and statutory standing for the reasons discussed herein. If, however, Plaintiffs fail to
22 so persuade the Court, then dismissal with prejudice would be appropriate so that the
23 issue also can be decided by the Court of Appeals.

## II. FACTUAL ALLEGATIONS

25 During or prior to the spring of 2008, Reunion.com initiated an email marketing
26 program consisting of emails (the "Emails") sent by Reunion.com to the electronically

---

[1] Defendant never argued that the Plaintiffs did not have standing until the Court raised the issue *sua sponte*.

Case No. 08-CV-0358-MMC     2     **PLAINTIFFS' OPP. TO DEFENDANT'S MOTION TO DISMISS SAC**

harvested email contacts of its new members. (SAC ¶¶5, 28). Reunion.com disguised the Emails—in particular, the Emails' "from" lines, subject lines and initial body text—to appear as personal requests from one individual to "connect" with another. (SAC ¶¶5-9). The Emails' "from" lines, subject lines and initial body text gave no indication that the Emails were actually commercial advertisements by, and for, Reunion.com. (SAC ¶9).

The Emails, five examples of which appear in the FAC, contained a variety of false and deceptive content:

- The Emails' "from" lines contained the names of the individual Reunion.com members from whose email contacts the recipients' email addresses were harvested, giving the false and deceptive impression that the Emails were from those individuals and not from Reunion.com (SAC ¶¶29, 36, 40, 45, 51);

- In some cases, the Emails' "from" lines also contained the personal email addresses of individual Reunion.com members, including the domain name of the individual members' third party email services providers, giving the false and deceptive impression that the Emails were sent from such members' personal email accounts and not by Reunion.com (SAC ¶¶29, 47, 52);

- The Emails' subject lines stated "Please Connect With Me :-)" or "[Member Name] Wants to Connect with You" or something substantially similar, giving the false and deceptive impression that the Emails were personal invitations to "connect" independent of Reunion.com, rather than commercial advertisements by and for Reunion.com (SAC ¶¶30, 37, 41, 46, 51);

- The Emails' body text stated, "Hi, I looked for you on Reunion.com, but you weren't there …" or something substantially similar, giving the false and deceptive impression that the Emails were personal correspondence and not commercial email advertisement by, and for, Reunion.com. The body text also falsely and deceptively represented that the Reunion.com members whose names appeared in the "from" lines had searched for the recipients, even though no searches had been, or could have been, conducted (SAC ¶¶34, 38, 42, 48) (showing images of Emails received by Plaintiffs);

- Reunion.com authored the Emails, the contents of which were not only false, but differed materially from Reunion.com's disclosures to its members, including as incorporated into Reunion.com's privacy policies. Rather than discard the addresses to which the Emails were sent, Reunion.com kept those addresses for the explicit purposes of monitoring the effectiveness of Reunion.com's email marketing program and of sending follow up "reminder" emails (SAC ¶¶28-29, 33, 63-64).

The emails were all designed to appear as personal correspondence from a third party,

Case No. 08-CV-0358-MMC 3 **PLAINTIFFS' OPP. TO DEFENDANT'S MOTION TO DISMISS SAC**

but were in fact authored and sent by Reunion.com without the third party having an opportunity to review, edit or approve them. (SAC ¶¶32-33). The third party could not even add content to the subject line or the body of the message. (SAC ¶33).

The false and deceptive nature of the Emails spawned widespread criticism by Reunion.com members and recipients alike. (SAC ¶65). The Federal Trade Commission ("FTC") alone received hundreds of complaints about Reunion.com's email marketing practices in general and the Emails in particular. (SAC ¶65). As a result of complaints sent to the Better Business Bureau, that organization assigned Reunion.com a "D" rating, which is reserved for a company with such a troubling record that the Better Business Bureau recommends "caution in doing business with it." (SAC ¶67).

Reunion.com knew of the widespread criticism regarding the Emails. (SAC ¶¶54-55). Nevertheless, it continued, and still continues, to send them, for the very reason that it knows that the Emails' false and deceptive "from" lines, subject lines and body text deceive recipients into believing the Emails to be personal invitations from friends to "connect." (SAC ¶55). Reunion.com monitors the rates at which recipients open and respond to its various email advertisements, and knows that recipients are much more likely to open what they believe to be personal correspondence. (SAC ¶64). Reunion.com sent, and continues to send, the Emails because it intends to trick recipients into opening the Emails, rather than discarding them as one more piece of junk commercial email advertising. (SAC ¶¶8, 32).

## II. RELEVANT PROCEDURAL BACKGROUND

The Court dismissed Plaintiffs' First Amended Complaint on December 23, 2008, finding that Plaintiffs' claims were preempted and that Plaintiffs lacked standing, but the Court also granted Plaintiffs leave to amend to allege facts that each plaintiff "incurred a cognizable injury as a result having relied on defendant's" deceptive statements. (Docket No. 55 at 5, 7, 9). On January 15, 2009, Plaintiffs moved for leave to file a motion seeking reconsideration of that order. (Docket No. 56). The Court granted the motion, adhered to its ruling on federal preemption, but granted Plaintiffs leave to file a

supplemental brief on the standing issue. (Docket No. 64). The Plaintiffs filed that brief on March 27, 2000 and later supplied the Court with notice of the ASIS Decisions, which held that claims similar to those of Plaintiffs were not preempted by CAN-SPAM. (Docket Nos. 66, 69 and 70).

The Court denied Plaintiffs' motion for reconsideration on May 14, 2009, but granted Plaintiffs' leave to amend the complaint because "plaintiffs may be able to amend to allege a cognizable injury or injuries." (Docket No. 73). Plaintiffs filed their Second Amended Complaint on May 29, 2009. (Docket Nos. 74). Plaintiffs added allegations in the SAC that were precisely designed to demonstrate their standing to bring the Section 17529.5 claims asserted in the SAC. Specifically, Plaintiffs alleged in paragraphs 68-70:

**Plaintiffs Have Standing to Assert Their Claims Here Under**

**Cal. Bus. & Prof. C. §17529**

68. The California legislature has recognized that the receipt of an unsolicited email advertisement, including an unsolicited email advertisement that:

(a)(1) . . . contains or is accompanied by a third-party's domain name without the permission of the third party.

(2) . . . contains or is accompanied by falsified, misrepresented, or forged header information . . .

(3) . . . has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

"imposes a cost on users, using up valuable storage space in e-mail boxes, as well as costly computer band width, and on networks and the computer servers that power them . . ." Cal. Bus. & Prof. C. §17529(e).

69. In enacting section 17529.5, the California legislature declared it unlawful to send such emails, and it gave each recipient of such emails the right not to receive them. Furthermore, the California legislature gave each recipient of such emails a remedy for receiving such emails, whether or not they sustained "actual damages."

70. Defendant's sending of the emails described herein to Plaintiffs specifically caused Plaintiffs to be deprived of the statutory rights secured to them by the California legislature through Cal. Bus. & Prof. C. section 17529.5. Accordingly, the Plaintiffs have standing under Article III of the United States Constitution and under Cal. Bus. & Prof. C. section 17529.5 to bring the claims against the Defendant asserted herein in this Court.

SAC ¶¶68-70.[2]

On June 12, 2009, Defendant filed its motion to dismiss the SAC arguing that Plaintiffs' claims are preempted and that Plaintiffs lack standing under Article III of the Constitution and under Section 17529.5. Defendant's preemption argument is essentially based on the previous rulings of this Court. Defendant does not address the well-reasoned conclusion of Judge Alsup, which was adopted by Judge Armstrong, in the ASIS Decisions. Both of the ASIS Decisions were decided after this Court's previous rulings in this action. Defendant's virtual silence regarding on point decisions from other judges of this Court is deafening. With respect to the standing argument, Defendant

---

[2] Defendant repeatedly observes that Plaintiffs did not specifically allege that Defendant's emails took up space in the Plaintiffs' inboxes and/or that Plaintiffs spent time to remove them from their inboxes. Based upon further analysis of the jurisprudence and the statute, Plaintiffs ultimately decided not to plead such allegations, concluding they were not necessary to establish standing. Instead, Plaintiffs have included additional allegations that the deceptive emails sent by Defendant were among the targets of the California legislature in enacting Section 17529.5. Plaintiffs respectfully submit that these additional allegations are sufficient to establish their standing to sue, because the California legislature exercised its authority to expand the category of cognizable injuries to include being a recipient of such emails, as explained further herein.

Case No. 08-CV-0358-MMC     6     **PLAINTIFFS' OPP. TO DEFENDANT'S MOTION TO DISMISS SAC**

argues that the deprivation of statutory rights alone is not enough, and that Plaintiffs must allege something beyond receipt of the emails as defined by the statute. As demonstrated herein, Defendant is wrong on both points.

### III. ARGUMENT

#### A. The Plaintiffs Have Article III Standing.

As this Court held in its December 23, 2008 Order, Plaintiffs have adequately plead in the First Amended Complaint that Reunion.com sent each of the four Plaintiffs an unsolicited false and deceptive commercial email. (Docket No. 55 at 8-9 (citing ¶¶32, 37, 41, 46, 51)). Those same allegations remain unchanged in the SAC. (SAC, ¶¶ 32, 37, 41, 46, 51). Plaintiffs also alleged that Plaintiffs were the recipients of the emails. (SAC ¶¶34-52). The California legislature has recognized that the receipt of such spam email "imposes a cost on users, using up valuable storage space in e-mail boxes, as well as costly computer band width, and on networks and the computer servers that power them . . . " Cal. Bus. & Prof. C. §17529(e). And the California legislature enacted section 17529.5 to prevent recipients of emails from being injured by having those costs imposed upon them by spam email. Cal. Bus. & Prof. C. §17529(m). To protect Plaintiffs from this type of conduct, the California legislature provided its residents with a legally protected interest to be free from the receipt of such emails, and deprivation of that interest (through the receipt of the emails) without more, is sufficient injury to confer Article III standing on them. As the Supreme Court has established:

> The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . .

*Warth v. Seldin*, 422 U.S. 490, 500 (1975) (citations omitted); *see also Linda R.S. v. Richard D.,* 410 U.S. 614, 617, n3. (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.").

Whether the statute can confer standing turns on a simple inquiry: "whether the … statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500. Here, there can be no question that section 17529.5 granted any recipient of false and deceptive emails a right to judicial relief. The statute on its face establishes that recipients may bring a private right of action to recover "[l]iquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement. . . ." Cal. Bus. & Prof. C. §17529.5(b)(1)(B)(ii). To be a "recipient" under the statute requires only that the person be the "addressee of an unsolicited commercial email advertisement." *Id.* at §17529.1(m). Thus, Plaintiffs have Article III standing to bring their claims.

The Ninth Circuit has dealt with similar statutory regimes in *DeMando v. Morris*, 206 F.3d 1300 (9th Cir. 2000) and *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982). In *DeMando*, the court held that a credit card holder who had received a letter in the mail that did not accurately disclose the terms of the legal obligations of the parties violated the Truth in Lending Act. *DeMando* at 1303. Even though the credit card holder did not suffer any actual damages, the Ninth Circuit found that she had "suffered the loss of a statutory right to disclosure and has therefore suffered injury in fact for purposes of Article III standing." *Id*. In *Baker*, a debtor was not provided statutorily required information about his right to contest a portion of his debt owed under the Fair Debt Collection Practices Act. *Baker,* 677 F.2d at 778. Although the debtor did not suffer any actual damages, the Court affirmed an award of statutory damages under the statute, and held that the debtor had standing to prosecute his claim. *Id.* at 777, 780 (debtor "has standing to assert any violations of this Act, . . . [and] [t]here is no indication in the statute that award of statutory damages must be based on proof of actual damages"). Statutes like those discussed above, and at issue here, are specifically designed by the legislatures to address inchoate injuries that result from undesirable business practices. Absent the creation of a statutory regime that incentivizes potential plaintiffs and deters

1 potential wrongdoers, those business practices would continue unabated. The case law
2 is replete with examples of legislative enactments that provide redress for an injury that
3 was not previously recognized at law.[3]

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), cited by this Court in its previous order finding Plaintiffs lacked standing (Docket No. 55 at 4-5) affirms the holdings and principles applied in the cases discussed above. In *Lujan*, the Court found that the plaintiffs lacked standing because they were complaining about the government's regulation (or lack of a regulation) of a third party, not themselves, which renders the hurdle for standing much higher:

> Thus, when the plaintiff is not himself the object of the [defendant's] action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish.

*Id.* at 562. By contrast, as the Supreme Court explained in *Lujan,* in circumstances like the case at bar, where the plaintiff "is himself an object of the action . . . at issue . . . there is ordinarily little question that the action or inaction has caused him injury . . ." *Id*. Indeed, the *Lujan* Court made clear that "[n]othing in [its decision] contradicts the principle that '[t]he . . . injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id.* at 578. The Court recognized that statutes can confer standing on individuals, and simply distinguished *Lujan* because the statutory rights that were violated there were those of a third party, not the individuals who brought suit:

---

[3] *See e.g., Beam v. Mukasey*, No. 07-1227, 2008 WL 4614324 at *6 (N.D.Ill. Oct. 15, 2008) (finding plaintiff has standing to assert a claim under the Right to Financial Privacy Act against the Federal Elections Commission for obtaining financial records in violation of the act because the statute "creates for private citizens a right to sue and recover actual or statutory damages for violations; the statute thus by its own terms creates a legally-protected interest."); *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1166 (D. Kan. 2008) (plaintiff had standing to prosecute Fair and Accurate Credit Transactions Act claim for defendant's printing of a credit card receipt with plaintiff's expiration date on it, even without suffering actual harm, because defendant's conduct "invaded the legal rights statutorily conferred on plaintiff . . .").

> [Statutory] broadening [of] the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury.

*Id.* Because there is no dispute that the plaintiffs here were the recipients of emails that allegedly violated Section 17529.5, and that the statute grants such recipients a private right of action to seek redress for being recipients of such emails, they have Article III standing to assert their claims in this Court.

Notwithstanding Plaintiffs' submission of these points to the Court in connection with their motion for reconsideration, Defendant's memorandum in support of its motion to dismiss the SAC does not attempt to deal with the explicit language in *Warth, Linda R.S,* and *Lujan* that a violation of a statutory right, without more, is sufficient to create Article III standing. Instead, it cites to other cases reciting inapplicable platitudes, and ignores the relevant sections of the opinions in the cases cited by Plaintiffs.

Moreover, Defendant ignores the Ninth Circuit's decision in *Baker* entirely, and makes a futile effort to distinguish the Ninth Circuit's decision in *DeMando*. Defendant suggests that *DeMando* is distinguishable because the Truth in Lending Act created an explicit requirement of notice of increased credit card rates, and deprivation of that notice constituted a "tangible injury." (Def. Memo. At 14). Defendant does not argue, and cannot argue, that the plaintiff in *DeMando* suffered an additional, distinct, or separate harm as a result of his failure to receive the statutorily required notice. On the contrary, the only harm was the violation of the statutory right, and the Ninth Circuit expressly found the plaintiff had standing to sue. Similarly, here, Plaintiffs have been deprived of their statutory right, created by Section 17529.5, not to receive deceptive email spam. Under the controlling jurisprudence of the Supreme Court and Ninth Circuit discussed above, they need not allege any additional, distinct, or separate harm beyond deprivation of that statutory right in order to have Article III standing.

**B.     Plaintiffs Have Statutory Standing.**

Defendant also argues that Plaintiffs lack statutory standing notwithstanding its

concession that the plain language of the statute states that a "'recipient of an unsolicited commercial email advertisement' can sue for a violation of th[e] statute." (Def. Memo. at 17). Recognizing that the statute "on its face, permits a plaintiff to sue even if he suffers no injury," Defendant asserts that California state courts would not respect the plain, unambiguous language of the statute, but rather would flout the legislature's decision to treat the deprivation of a statutory right as cognizable injury. (Def. Memo. at 17). Defendant asks this Court to similarly ignore the unambiguous statutory text.

Defendant's arguments in support of its position rest on cases that are materially distinguishable, because the plaintiff in the Defendant's cases did not suffer the statutory violation at issue, and therefore did not suffer any injury "greater than the interest of the public at large." (Def.Memo. at 16). Obviously, the Plaintiffs here have suffered an injury distinct from the public at large, because they were the recipients of the false and deceptive emails. Plaintiffs are in full agreement that members of the general public who never received deceptive email spam from Reunion.com would lack statutory standing (as well as Article III standing) to challenge Defendant's conduct at issue here. To have statutory standing, it should go without saying, a plaintiff must satisfy the requirements of the statute. Here, the statute requires the person to be a recipient of an unlawful email, a requirement that Defendant concedes Plaintiffs have met here. (Def. Memo. at 17; SAC ¶¶34-52).

Defendant's only other argument in support of its position that Plaintiffs lack statutory standing is that Plaintiffs did not suffer an injury based on the false and deceptive statements, which, according to Defendant, is the only type of injury the California legislature intended to prevent. The argument is nonsensical in light of the unambiguous statutory language. If the legislature sought to restrict the right to sue to those who relied on false content in the emails, it would have said so. On the contrary, it unquestionably provided the right of action to all recipients of deceptive spam emails.

In support of this argument, Defendant cites a portion of the opinion in *Hillblom v.*

1 *County of Fresno*, 539 F.Supp.2d 1192, 1212 (E.D.Cal. 2008) that does not address statutory standing at all, but rather whether a "torts in essence" claim can be based on statutory violations that do not grant private rights of actions. Not surprisingly, the *Hillblom* court held that a plaintiff cannot bring a tort claim for violation of a statute which does not grant a private right of action – a proposition that could not be more irrelevant to the issue at bar. Plaintiffs do not assert a "torts in essence" claim and there is no dispute here that the statute at issue grants Plaintiffs the right to sue by its express terms, as Defendant concedes. (Def. Memo. at 17).[4] Moreover, the ASIS Decisions, which deal with the statutory framework at issue in this case, find that the plaintiffs in those cases had standing even in the absence of detrimental reliance on the false statements contained in the emails. *See e.g., Consumer Bargaingiveaways,LLC*, 2009 WL 1035538 at *3-4.

### C. Plaintiffs' Claims Are Not Expressly Preempted by CAN-SPAM.

Defendant's final argument is that Plaintiffs' claims are expressly preempted by CAN-SPAM because Plaintiffs must allege a common law fraud theory in order to escape preemption. (Def. Memo. at 19). Plaintiffs recognize that this Court previously so ruled in this case. However, Plaintiffs respectfully ask this Court to follow the subsequently decided ASIS Decisions, which have rejected the Defendant's arguments and were ignored entirely in the preemption section of Defendant's brief. *See e.g., Consumer Bargaingiveaways, LLC*, 2009 WL 1035538 at *8 ("Plaintiffs' claims are not preempted merely because the complaint fails to plead, or Section 17529.5 fails to

---

[4] The only other case Defendant cites in support of this position is *Valley Forge v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982). That case is equally irrelevant to the dispute at hand. Indeed, the case addressed Article III standing, not statutory standing. In *Valley Forge*, the Supreme Court held that an organization which advocated for separation of church and state could not bring suit against the government for giving property to a religious institution in violation of the Establishment Clause of the First Amendment. No statute was even at issue. Obviously, the First Amendment did not grant standing to members of the general public to sue absent some injury to the individual's First Amendment rights. Mere taxpayer standing has been rejected.

require, reliance and/or damages.").

As Judge Alsup cogently explained:

> This order rejects the preemption challenge. The text and structure of the provision indicate that defendants interpret the savings clause too narrowly: "falsity or deception" is not limited *just* to common-law fraud and other similar torts. Statutory interpretation begins with the text of the statute. On its own terms, the savings clause exempts from preemption not only "fraud" claims but rather laws that proscribe "falsity or deception" in email advertisements. The Act does not define the words "falsity" and "deception." Congress, however, is certainly familiar with the word "fraud" and choose not to use it; the words "falsity *or* deception" suggest broader application. In fact, as plaintiffs emphasize, Congress utilized the word "fraud" in the very next subsection but not in the savings clause. *See* 15 U.S.C. 7707(b) (2).
>
> The structure of the Act also indicates that the phrase "falsity or deception" does not refer *just* to common-law fraud. The CAN-SPAM Act refers to falsity and deception not only in its preemption provision but also in its substantive provisions governing commercial electronic mail. One of those provisions expressly directs that the word "deceptive," for its part, should be understood not as referencing common-law fraud (nor the *tort* of deception) but rather deception as utilized in the FTC Act. U.S.C. 7704(a)(2) (prohibition on "deceptive subject headings" therein should be understood "consistent with the criteria used in enforcement of section 45 of this title [ *i.e.,* the FTC Act]"). A word used in different places within the same statute is generally given a consistent meaning. In fact, the section containing the preemption provision itself similarly references the FTC Act: "[n]othing in this chapter shall be construed to affect in any way the Commission's authority to bring enforcement actions under FTC Act for

1   materially *false or deceptive representations* or unfair practices in
2   commercial electronic mail messages." 15 U.S.C. 7707(a)(2). The
3   subsection immediately thereafter contains the savings clause here at
4   issue. The CAN-SPAM Act's repeated references to the FTC Act definition
5   of "deceptive" practices strongly suggest that Congress intended the
6   phrase "falsity or deception" in Section 7707(b)(1) to refer to, or at least
7   encompass, that definition, not *just* state tort law.

*Consumer Bargaingiveaways,LLC*, 2009 WL 1035538 at *6 (emphasis in original; footnotes omitted).

Judge Alsup also rejected the argument that the Senate Report discussing the reasons for the preemption provision could support Defendant's position:

> [The] report referred to *"fraudulent* or deceptive" conduct rather than "falsity or deception." Although this arguably suggested that the Senate intended to equate "falsity" with "fraud," as some district courts have suggested, it does not account for the additional reference (in the disjunctive) to "deception." Nor do the report's policy concerns necessitate limiting the phrase to fraud alone: a "legitimate business trying to comply with relevant laws" would not be engaged in "deceptive" practices in contravention of the FTC Act or state law.

*Consumer Bargaingiveaways,LLC*, 2009 WL 1035538 at *8.

Finally, Judge Alsup rejected Defendant's arguments that authority from the Fourth Circuit supported its expansive reading of the preemption provision:

> Defendants rely on the only appellate decision to have addressed the scope of CAN-SPAM's preemption provision. *Omega World Travel v. Mummagrpahics, 469 F.3d 348, 349 (4th Cir. 2006).* Most or all of the district court decisions that have equated "falsity or deception" with fraud have relied on this decision ( *see* note 5 above). *Omega,* however, merely held that state laws were preempted insofar as they permitted claims for

Case No. 08-CV-0358-MMC   14   **PLAINTIFFS' OPP. TO DEFENDANT'S MOTION TO DISMISS SAC**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KronenbergerLaw.com

*immaterial* errors. *Id.* at 353-54. It did not hold, at least not expressly, that *all* elements of common-law fraud were required or that any particular element other than materiality was required to survive preemption. False advertising claims (at least under the FTC Act) also require materiality, and plaintiff has pled materiality (Compl.¶¶ 11-18, 21-22).

Granted, as defendants emphasize, *Omega* did look to tort law for its materiality requirement [quoting a passage from *Mummagraphics*]. District courts limiting the savings clause to fraud claims have generally relied on this passage. This order disagrees. The savings clause refers to "falsity or deception." This order finds no reason to define *deception* differently from how it is used in other subsections of the CAN-SPAM Act such as Sections 7704(a)(2) and 7707(a)(2). Nor do *Omega's* policy rationales for the materiality requirement extend to all elements of fraud. The decision found it inconsistent with congressional intent to allow states to proscribe otherwise innocent actions which may create a patchwork of state standards and excessively inhibit the use of commercial email. *Id.* at 355-56. Such concerns are inapplicable, however, to conduct proscribed by other national laws-as the below-discussed legislative history recognized. In all respects, this order declines to interpret "falsity or deception" *only* in accordance with state tort law.

*Consumer Bargaingiveaways,LLC*, 2009 WL 1035538 at *6-7. Judge Alsup's well-reasoned decision fully demonstrates that Plaintiffs' claims are not preempted here. For these reasons, and the reasons articulated in Plaintiffs' previous submissions addressing preemption, Plaintiffs respectfully submit their claims are not preempted.

## IV. CONCLUSION

For all of the reasons set forth above, the Court should deny Reunion.com's motion to dismiss.

Respectfully submitted by the attorneys for the Plaintiffs,

DATED: June 26, 2009

**SHAPIRO HABER & URMY LLP**

By: /s/ Todd S. Heyman

SHAPIRO HABER & URMY LLP
Edward F. Haber (admitted *pro hac vice*)
Todd S. Heyman (admitted *pro hac vice*)
Ian J. McLoughlin (admitted *pro hac vice*)
Robert E. Ditzion (admitted *pro hac vice*)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
theyman@shulaw.com
imcloughlin@shulaw.com
rditzion@shulaw.com

KRONENBERGER BURGOYNE, LLP
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@KBInternetLaw.com
karl@KBInternetLaw.com
jeff@KBInternetLaw.com