LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
1644 North Orange Grove Avenue
Los Angeles, CA 90046
TELEPHONE: (323) 882-8225
FACSIMILE:  (323) 882-8208
lawofcsrjp@aol.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Carole E. Handler (CA Bar No. 129381)
9665 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90212
TELEPHONE: (310) 860-8705
FACSIMILE:  (310) 860-3805
handler@wildman.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Peter N. Moore (admitted *pro hac vice*)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
TELEPHONE: (312) 201-2000
FACSIMILE:  (312) 201-2555
pmoore@wildman.com

Attorneys for Defendant
REUNION.COM, INC.

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLETTA HOANG, LIVIA HSIAO, and MICHAEL BLACKSBURG, individually and on behalf of a class of similarly situated persons,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>REUNION.COM, INC., a California corporation,<br><br>　　　　Defendant. | No. 3:08-cv-3518 MMC<br><br>**NOTICE OF MOTION AND DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 IN THE MINIMUM SUM OF $300,000, JOINTLY AND SEVERALLY AGAINST COUNSEL FOR PLAINTIFFS, HENRY M. BURGOYNE, III, KARL S. KRONENBERGER, JEFFREY M. ROSENFELD, EDWARD F. HABER, TODD S. HEYMAN, IAN J. MCLOUGHLIN, AND ROBERT E. DITZION**<br><br>**Date:**　September 25, 2009<br>**Time:**　9:00 AM<br>**Judge:**　Hon. Maxine Chesney<br>　　　　Courtroom 7 (19th Floor) |

**NOTICE OF MOTION**

**TO ALL PARTIES AND ATTORNEYS OF RECORD**:

    **PLEASE TAKE NOTICE** that on the 25th day of September, 2009, at the hour of 9:00 a.m., or as soon thereafter as counsel may be heard, Defendant shall appear, by and through its counsel of record, before the Honorable Judge Maxine Chesney, or any judge sitting in her stead, in the courtroom usually occupied by her (Room 7, 19th Floor) at 450 Golden Gate Avenue, San Francisco, California, and then and there present Defendant's Motion for Sanctions Pursuant to 28 U.S.C. § 1927 in the Minimum Sum of $300,000,[1] Jointly and Severally Against Counsel for Plaintiffs, Henry M. Burgoyne, III, Karl S. Kronenberger, Jeffrey M. Rosenfeld, Edward F. Haber, Todd S. Heyman, Ian J. McLoughlin, and Robert E. Ditzion, as each of said counsel were counsel of record for Plaintiffs during the pendency of this case and attached their names to the offensive pleadings filed in connection therewith.

    Defendant Reunion.com, Inc. ("Reunion.com" or "Defendant") shall seek monetary sanctions pursuant to 28 U.S.C. § 1927 against Plaintiffs' counsel in the form of reasonable attorney fees incurred in responding to Plaintiffs' unwarranted and dilatory pleadings, in addition to any other punitive sanction this Court deems appropriate.  Defendant's grounds for this Motion are fully set forth in the Memorandum of Points and Authorities submitted herein.

**DATED:** July 31, 2009          Respectfully submitted,

                                      s/ Ronald Jason Palmieri
                                      One of the Attorneys for Defendant

LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
1644 North Orange Grove Avenue
Los Angeles, CA 90046
TELEPHONE: (323) 882-8225

---

[1] As set forth in the Declarations of Peter N. Moore and Ronald Jason Palmieri filed herewith, the total amount of attorney expense since the outset of this case has exceeded the sum of $300,000, but this amount represents a duly considered conservative sum of the amount of sanctions which Defendant respectfully submits should be awarded in this case.  Should the Court grant Defendant's Motion, Defendant intends to submit to the Court detailed records of Defendant's complete legal bills for *in camera* review to allow the Court to fix the amount of any award.

FACSIMILE:   (323) 882-8208
lawofcsrjp@aol.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Carole E. Handler (CA Bar No. 129381)
9665 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90212
TELEPHONE: (310) 860-8705
FACSIMILE:   (310) 860-3805
handler@wildman.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Peter N. Moore (admitted *pro hac vice*)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
TELEPHONE: (312) 201-2000
FACSIMILE:   (312) 201-2555
pmoore@wildman.com

Attorneys for Defendant
REUNION.COM, INC.

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................v

ISSUES TO BE DECIDED ...................................................................................1

STATEMENT OF FACTS ....................................................................................5

ARGUMENT ......................................................................................................10

    I.     Legal Standards ..................................................................................10

    II.    Plaintiffs' Counsel Have Egregiously Violated Sec. 1927 .................13

          A.    Plaintiffs' Counsels' Conduct Since the Inception of this Case Has Been Unreasonable and Thus Warrants Sanctions ................................................................................ 13

          B.    Plaintiffs' Counsel's Dilatory Filings Subsequent to the First Dismissal are Sanctionable ......................................... 15

          C.    The Second Amended Complaint and Plaintiffs' Opposition to Defendant's Motion to Dismiss the SAC Violated Sec. 1927 ...................................................... 16

    III.    The Court Can Also Issue Sanctions Sua Sponte Pursuant to Fed.R.Civ.P. 11(c)(3) .........................................................................17

    IV.    Defendant is Entitled to, at a Minimum, Reasonable Attorney's Fees...................................................................................18

CONCLUSION ...................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975)..........................................11

*Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir.1997) ..............................................11

*Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030 (9th Cir. 1985)....................................11

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063-64 (9th Cir. 2004)......................17

*Estate of Blas*, 792 F.2d 858, 860 (9th Cir.1986) ......................................................11

*Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) ..................................................................................................................13

*Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985)...................................12, 16

*G.C. and K.B. Investments v. Wilson*, 326 F.2d 1096, 1110 (9th Cir. 2003) ................................................................................................................11, 16, 18

*In re HPL Technologies, Inc. Securities Litigation*, 366 F Supp 2d 912, 919 (N.D.Cal.2005) .....................................................................................18

*In re Peoro*, 793 F.2d 1048, 1051 (9th Cir. 1986)......................................................10

*Maddox v. Shroyer*, 302 F.2d 903, 904 (D.C. Cir. 1962) ...............................12, 16, 18

*Montgomery v. City of Ardmore*, 365 F.3d 926, 943 (10th Cir. 2004).......12, 15, 16, 18

*Roundtree v. United States*, 40 F.3d 1036, 1040 (9th Cir. 1994) ................................11

*Trulis v. Barton*, 107 F.3d 685, 692 (9th Cir. 1997)..............................................10, 11

*Wages v. Internal Revenue Svc.*, 915 F.2d 1230, 1235 (9th Cir. 1990)............12, 15, 16

*Willis v. City of Oakland*, 231 F.R.D. 597, 600 (N.D. Cal. 2005)...............................17

*Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986) ...........................11

*Zimmerman v. Bell*, 800 F.2d 386, 388-89 (4th Cir. 1986) ....................................6, 14

**Statutes**

15 U.S.C. § 7707 ...........................................................................................................5

28 U.S.C. § 1927 ...................................................................................................passim

**Rules**

Fed. R. Civ. P. 23 .....................................................................................................6, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## ISSUES TO BE DECIDED[2]

Civil litigation is supposed to be about seeking redress from the judicial system for injuries suffered.  This case has been about wrongfully prosecuting an action on specious grounds that have been rejected by Congress, since those grounds would cripple electronic commerce and result in nothing but windfalls for class action plaintiffs' lawyers.  Accordingly, Plaintiffs' counsel have tried at any cost to avoid having to show actual reliance by, and injury to, their individual clients, notwithstanding the fact that these are the very allegations this Court has repeatedly said were essential to avoid dismissal, yet ones they have known from the beginning would preclude class certification and a large contingency award.

In pleading after pleading, Plaintiffs' counsel have advanced the same flawed arguments in support of their personal agenda.  Each time, their pleadings have been shown to be legally defective under established law, and each time this Court has properly ruled against them and refused to reconsider its well reasoned and legally sound past rulings and Orders.  Their intransigence has served no purpose but to harass Defendant and vexatiously and unnecessarily multiply these proceedings at Defendant's and this Court's expense.  Plaintiffs' counsel should thus be sanctioned pursuant to 28 U.S.C. § 1927.

Plaintiffs' counsel, knowing from day one what they could and could not plead in this case, expressed their original intent clearly in the October 29, 2008 Case Management Statement (Docket No. 41).  Their own words were a clear signal of that intent, and are worthy of note here: "If Defendant's motion to dismiss the amended complaint is allowed, Plaintiffs intend to appeal that ruling."  (*Id.*)  The Court is reminded that at the time Plaintiffs' counsel made that threat to the Court,  Defendant

---

[2] Because this Motion, and Defendant's Motion for Involuntary Dismissal (Docket No. 86) arise from essentially the same operative facts, both the "Issues to be Decided" and "Statement of Facts" in this Motion are largely identical to those in the former Motion, and are accordingly reprinted for the Court's convenience.

had not even made a motion to dismiss, and Plaintiffs had received no ruling from the Court. Plaintiffs' counsels' statement nonetheless signaled that regardless what this Court's reasoning might be as to a future decision, and without even knowing the grounds therefor, that reasoning would be rejected by Plaintiffs' counsel and an appeal would be taken. Believing this to be a bizarre, and frankly inappropriate, threat to make upon the Court, Defendant's counsel stated his own position, noting:

> Defendant objects to Plaintiff including in this Case Management statement what Defendant believes is a veiled threat directed to this Court that Plaintiff will appeal any Order this Court may make dismissing their First Amended Complaint without having seen Defendant's Motion, much less this Honorable Court's future ruling. Despite Defendant's request to remove what counsel believes is inappropriate and disrespectful language directed toward this Court, Plaintiffs' counsel has refused to strike said statement.

(*Id.* at 4-5). In any event, despite not doing what they promised to do (*i.e.* appeal), and failing to intimidate this Court with the possibility that its rulings might be appealed, Plaintiffs' counsel chose to continue to try to wear down Defendant and this Court with innumerable meritless, improper and, in at least one case, deceitful pleadings, including, but not limited to, the following:

- Filing a First Amended Complaint ("FAC") (Docket No. 36) which did not address the defects identified by the Court in the First Dismissal but instead pled paragraphs of legal argument in attempt to persuade the Court to reconsider its First Dismissal Order;

- After the FAC was rightly dismissed, seeking reconsideration of the Second Dismissal Order based upon no new relevant authority and repeating past arguments, violating L.R. 7-9(c);

- Filing numerous so-called statements of supplemental authority (which, in fact, were not relevant) without a pending motion, violating L.R. 7-3(d);

- Arguing issues in their Supplemental Brief in Support of their Motion for Reconsideration (Docket No. 68) ("Supplemental Brief") that they were *not* given leave to argue (namely federal preemption), violating L.R. 7-9(a);

- Misrepresenting in said Supplemental Brief that they would file a second amended complaint that would cure the defects the Court had identified in the FAC, violating, *inter alia*, Fed.R.Civ.P. 11(b);

- After being given leave to do so based upon a false promise, filing a Second Amended Complaint that contained **none** of the promised changes, forcing Defendant to prepare and file yet a third motion to dismiss (Docket No. 75) ("Third MTD.") at Defendant's expense, clearly violating Fed.R.Civ.P. 11(b), 28 U.S.C. § 1927, and the Court's prior Orders;

- Not dismissing the Second Amended Complaint upon receiving Defendant's Third MTD, clearly violating Fed.R.Civ.P. 11(b) and 28 U.S.C. § 1927, and ignoring the mandates in this Court's prior Orders;

- Filing a frivolous and legally defective Opposition to Defendant's Third MTD, again clearly violating Fed.R.Civ.P. 11(b) and 28 U.S.C. § 1927, and once again repudiating the mandates in this Court's prior Orders, forcing Defendant to expend significant time and money preparing and Reply thereto (Docket No. 79); and

- Ignoring **all** of Defendant's numerous informal warnings, summarized at p.13, *infra*, given in the spirit of the Rule 11 advisory committee notes which encourage informal cooperation amongst counsel, asking them to, amongst other things, not oppose the Third MTD and to voluntarily dismiss their case.

Plaintiffs' counsel would have the Court believe that all of the foregoing, especially the filing of an SAC which mimicked the FAC, was simply a reflection of Plaintiffs' good faith change of strategy following their "threat" to appeal in the October 2008 Case Management Statement and their false promises in the Supplemental Brief to cure their pleading defects.   The claim makes no sense, especially in light of the claim by Plaintiffs' counsel that they are experts in Internet litigation[3] and, thus, presumably have known from the outset that their case could

---

[3] *See, e.g.*, http://www.kbinternetlaw.com/firm_profile.html (last accessed July 29, 2009).

1    never stand in light of the Court's consistent requirement that they plead cognizable

2    injury.[4]

3          There was no change of heart, there was no epiphany, there was no revelation.

4    Plaintiffs' counsels' decisions have been calculated since the beginning of this case,

5    from their early attempts to intimidate Defendant's business partners with purported

6    document preservation notices containing baseless threats of discovery sanctions,[5] to

7    their most recent request to conditionally revert to the FAC and strike every pleading

8    since is just the last in this series.  Plaintiffs' counsel have been given every benefit of

9    every possible doubt; however, the record is clear that all of the proceedings since the

10   dismissal of the Original Complaint have been nothing more than a total waste of the

11   Court's time and energy, not to mention Defendant's time and money.  Such conduct

12   not only has substantially injured Defendant, but it also burdens the Court with

13   frivolous litigation and undermines the integrity of these judicial proceedings.

14         Further, contrary to Plaintiffs' counsels' current and anticipated future

15   arguments that they were presumptively acting in good faith, they are not entitled to

16   any such presumptions, because their own statements and the history of this case belie

17   their arguments.  Indeed, prior to being served with a Motion for Sanctions pursuant

18   to Fed.R.Civ.P. 11(c)(2) (the "Rule 11 Motion"), Plaintiffs unapologetically told the

19   Court in their Opposition to Defendant's Third Motion to Dismiss that they had

20   simply reconsidered the need to make the allegations the Court had instructed, and

21   once again arrogantly told the Court instead that its prior decisions were wrong.  (*See*

22   Plaintiffs' Opposition to Defendant's Motion to Dismiss the SAC (Docket No. 77) at

23   2, 6 n.2)).  This argument itself proves that their Opposition should never have been

24   filed, and Defendant should not have been burdened with even more expense in

25

26   _____

27   [4] Defendant's counsel's October 23, 2008 e-mail recounts his first meeting with Plaintiffs' counsel on August 8, 2008, just after this case had been filed, in which Mr. Palmieri asked Plaintiffs' counsel not to proceed with this case for the very same reasons the Court ultimately dismissed both the Original and First Amended Complaints.  (*See* Ex. A, Decl. of Ronald Jason Palmieri in Support of Defendant's Motion to Dismiss ("Palmieri Decl.") filed concurrently with this Motion).

28   [5] (*See* Palmieri Decl. at ¶¶ 9-10).

1

crafting a Reply to Plaintiffs' recycled arguments.

2

The facts are undisputed that, ***only after being served with the Rule 11 Motion***,

3

and wasting months of the Court's and Defendant's time, did Plaintiffs' counsel, on

4

the eve of the due date of Defendant's reply brief, purportedly attempt to conditionally

5

"withdraw" their Second Amended Complaint, but only on the terms they decided to

6

dictate to this Court.  Even the offer to withdraw that pleading was, as they knew, not

7

permissible, as the proper procedure would have been to unconditionally "withdraw"

8

their improper and unfounded Opposition to the Third MTD (Docket No. 77) and

9

allow the Court to enter an Order dismissing the Second Amended Complaint on the

10

grounds stated in Defendant's Third MTD.

11

Though Defendant addresses the procedural posture of this case in a separate

12

Motion, Defendant here asks the Court to impose monetary sanctions pursuant to 28

13

U.S.C. § 1927 to compensate Defendant for the inordinate time and money that has

14

been wasted by Plaintiffs' counsel since the First Dismissal.  Plaintiffs' counsel have

15

had more than their fair share of this Court's consideration and the tolerance of the

16

judicial system, and have proven time and again that they have no valid cause of

17

action against Defendant.  They have repeatedly spurned their opportunities to cure

18

the defects the Court has identified.  It is time for this case to end decisively, with full

19

compensation to Defendant for the injury it has suffered.

20

<u>**STATEMENT OF FACTS**</u>

21

The facts of this case are well known to the Court and will not be repeated here

22

in detail.  Plaintiffs' Original Complaint (Docket No. 1) (the "Original Complaint")

23

was dismissed on Defendant's Rule 12(b)(6) Motion because Plaintiffs had failed to

24

plead a cause of action that was not preempted by the CAN SPAM Act (15 U.S.C. §

25

7707(b)(1)), which preempts any state law cause of action that is not based on the tort

26

of fraud or deception.  In dismissing the Original Complaint, the Court held that

27

Plaintiffs failed to state such a cause of action because they **"fail[ed] to allege**

28

**plaintiffs relied to their detriment on any misrepresentation and that, as a result**

1    **of such reliance, they incurred damage.**" (10/26/2008 Order at 3 (Docket No. 33)

2    (emphasis added) ("First Dismissal")).

3          Based on this clear, concise and detailed first ruling alone, for at least the last

4    nine (9) months, the following cannot be denied: (1) Plaintiffs' counsel have

5    indisputably known what was required to be pled; (2) Plaintiffs' counsel knew they

6    could not plead those elements because they did not exist for each of their individual

7    clients; (3) Plaintiffs' counsel knew they could never plead common injury for each

8    named plaintiff since such an individual allegation would preclude class action

9    certification;[6] and, (4) Plaintiffs' counsel knew that they would appeal any adverse

10   ruling this Court would ultimately make based upon those defects.

11         Instead of acknowledging the foregoing, and either dismissing their action or

12   filing an immediate appeal, Plaintiffs' counsel filed a First Amended Complaint

13   (Docket No. 36) (the "FAC"), which, rather than correcting the defects the Court

14   identified, added paragraphs of *legal argument*, block printed in their entirety from

15   Plaintiffs' Opposition to Defendant's Amended (first) Motion to Dismiss (Docket No.

16   25) and rejected by this Court, while including mere generalized accusations of

17   fraudulent intent on the part of Defendant.  This time, though, even before Defendant

18   had filed a second motion to dismiss, Plaintiffs' counsel bizarrely threatened in an

19   October 29, 2008 Case Management Statement (Docket No. 41) that they "intend[ed]

20   to appeal" if the Court granted such a motion, which of course it did in its December

21   23, 2008 Second Dismissal (Docket No. 55).  In that Order, the Court again expressly

22   found Plaintiffs' claims preempted by CAN SPAM, and also based on a lack of

23   Article III standing, as Plaintiffs had refused to plead any specific injury to them.  (*Id.*

24   at 3-9).  However, the Court again graciously and generously granted leave to amend

25   and specifically told Plaintiffs' counsel exactly what they should plead to avoid a third

26

27   [6] The Court's First Dismissal notes that Plaintiffs had to show that they "relied to their detriment on
     [a] misrepresentation and that, as a result of such reliance, they incurred damage."  (First Dismissal

28   at 3).  *But see* Fed. R. Civ. P. 23(b)(3); *Zimmerman v. Bell*, 800 F.2d 386, 388-89 (4th Cir. 1986)
     (denying class certification where question of actual deception or reliance on deception varied
     among putative class members).

dismissal, when it admonished them to "allege facts that each plaintiff on whose behalf [each] Cause of Action is brought incurred such injury or other assertedly cognizable injury as a result of having relied on defendant's allegedly false [statements]."  (Second Dismissal at 5-6).

Given the clarity of the Court's detailed instructions, and the relative ease by which they could have been followed if such injuries had actually occurred, Plaintiffs' counsels' subsequent failure to follow them is shocking.  In fact, Plaintiffs' counsel at first did not even try, initially spurning their opportunity to timely file a second amended pleading, and instead filing a Motion for Leave to File Motion for Reconsideration (Docket No. 56) ("Motion for Leave").[7]  This is when Plaintiffs' counsels' improper conduct once again materialized, perhaps this time in its clearest form.

The Motion for Leave sought reconsideration based upon no relevant authority or other issue that was not before the Court when it issued its Second Dismissal order. Instead, Plaintiffs' counsel argued that the Ninth Circuit's certification of an unrelated issue – whether the use of multiple domain names is "deceptive" conduct – somehow controlled the question in this case whether CAN SPAM preempts the State Statute. (Motion for Leave at 2).  The Court correctly recognized that this certification order was not "authority" at all, let alone relevant to the questions raised by this case.  (*See* Order Partially Granting Leave at 2-3 (Docket No. 64)).  Plaintiffs' Motion for Leave also cited no new authority with respect to Article III standing, arguing instead that the Court was simply wrong under *established* authority.  (Motion for Leave at 5-8). Nevertheless, the Court permitted Plaintiffs to file a supplemental brief on the

---

[7] Plaintiffs' Motion for Leave sought reconsideration of the Court's decision both with respect to the issue of preemption of their claims by CAN SPAM, as well as Plaintiffs' lack of Article III standing. (Docket No. 56).  The Court granted leave for Plaintiffs to file their Motion for Reconsideration based on the standing issue *only* and ordered the parties to submit supplemental briefing on that issue and the question whether Plaintiffs could seek injunctive relief.  (*See* Order re: Plaintiffs' Motion for Leave (Docket No. 64); Plaintiffs' Supplemental Brief (Docket No. 66); Defendant's Supplemental Brief (Docket No. 68)).  The Court ultimately denied the motion in full, but granted further leave to amend, specifically noting that Plaintiffs had represented in their motion that they could allege cognizable damage of the type the Court required.  (Docket No. 73).

standing issue only.  (Order Partially Granting Leave at 4-6).

Notwithstanding the Court's explicit instructions, which they ignored, Plaintiffs' counsel rehashed their previous preemption arguments, even though the Court denied them leave to argue this issue, and arrogantly argued once again that the Court was wrong in its prior two dismissal orders.  (Supplemental Brief at 3 n.2).  Plaintiffs also filed two "Statement[s] of Recent Decision" (Docket Nos. 69 and 70) on the preemption issue, even though there was no pending motion regarding that issue, itself a violation of local rule.  *See* L.R. 7-3(d).

Most importantly, however, Plaintiffs' counsel also made a critical statement which, at the time, seemed like a concession, to wit: in the event that the Court still found that allegations of specific substantive injury were required to state a claim that is not preempted (which, of course, the Court had already said twice before), Plaintiffs' counsel represented, as officers of this Court, that they were:

> ***prepared to allege*** in a second amended complaint that the receipt of the Defendant's emails ***caused Plaintiffs to lose valuable storage space in their inboxes and computers*** (and/or required their personal time to delete such emails from their inboxes).

(Supplemental Brief at 2-3) (emphasis added).  Remarkably, and irrespective of the fact that such an injury is not cognizable under the law, this was nonetheless the first instance in the case's then nearly year-long history that Plaintiffs' counsel had even hinted that they could allege that any of their clients had individually suffered as a result of Defendant's alleged conduct.  And it was this seemingly reluctant concession (which, again, is bizarre considering how simple an allegation it would have been to make – ***if it were true***) that led the Court to grant Plaintiffs a third opportunity to amend their complaint.  (*See* Order re: Plaintiffs' Motion for Reconsideration at 2-3 (Docket No. 73) ("Reconsideration Order") ("it appears plaintiffs may be able to amend to allege a cognizable injury or injuries")).

Nonetheless, and almost certainly because such individualized allegations of

reliance and injury would clearly preclude the possibility of class certification,[8] and with it a substantial contingency award to Plaintiffs' counsel, when the time came they refused to follow through on this promise.

As detailed in Defendant's Motion to Dismiss the SAC ("Third MTD") (Docket No. 75), Plaintiffs' statement turned out not to be a concession at all, but only another false promise which they utterly failed to honor.  Nowhere in the SAC's 34 pages and 88 paragraphs did Plaintiffs state that they had lost so much as a byte of storage space, or expended so much as a fraction of a second of time, due to anything contained in the Reunion.com invitation e-mails initiated by their friends.  (Third MTD at 6-9). The only new content in the SAC whatsoever came in the form of three paragraphs that did not even contain factual allegations, but repeated instead the flawed argument made in the Supplemental Brief, that Plaintiffs were deprived of a "statutory right" by receiving an e-mail containing an allegedly false statement.  (Third MTD at 2-3).  But the Court had already ruled on three different occasions that this alone is insufficient to avoid preemption absent an allegation of a *concrete* injury *to Plaintiffs* resulting from *reliance on* the supposedly false statement.   (First Dismissal at 3; Second Dismissal at 3-5; Reconsideration Order at 2-3).  In short, Plaintiffs' promises were false, making the SAC an exercise in futility and its dismissal a foregone conclusion.

Nonetheless, because Plaintiffs had refused to take their disagreement with this Court to the Court of Appeals where it belonged in a timely fashion, Defendant was forced to choose between fully briefing yet a *third* motion to dismiss, or answering and thereby submitting to a protracted class certification and discovery process. Either path would continue to waste Defendant's (and the Court's) resources, consistent with the war of attrition Plaintiffs' counsel had now clearly declared.

---

[8] Plaintiffs' counsel have been repeatedly reminded of this fact, and have never disputed it.  (*See, e.g.*, First MTD Reply at 14 n.8 (Docket No. 31); Second MTD at 16, 18 (Docket No. 46); Def.'s Supp. Br. in Opp. to Motion for Reconsideration at 7 (Docket No. 68)).  Indeed, the fear of losing class certification and being left with nothing but a series of small claims, with no possibility of a large contingent award to Plaintiffs' counsel, is the single most likely motivation for their abject refusal to make the simple and straightforward allegations of injury the Court instructed them to plead.

Defendant ultimately chose to file its Third MTD, and argue, *yet again,* the merits of issues already litigated, believing fully in the propriety of the Court's previous orders and confident that it would prevail if Plaintiffs appealed from a dismissal with prejudice.  What cannot be denied as one reviews this history is that this and every other step Defendant has taken since the First Dismissal, and even before, has been necessitated not by the merits of Plaintiffs' claims, but solely by their counsels' tactics of protraction and harassment.

Plaintiffs' counsel have now wasted more than nine months' worth of time and Defendant's money extending and multiplying proceedings that they knew, based on this Court's rulings and instructions, they could not win and that should have ended after the First Dismissal, if not earlier.  The time has come at long last for this litigation to end decisively and for Plaintiffs' counsel to be held accountable for their improper and vexatious actions.

## ARGUMENT

## I.   LEGAL STANDARDS

Federal law provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Maintenance of a suit even after confirmation that a party's position is legally wrong is "*reckless as a matter of law and vexatiously multipl[ies] the proceedings in violation of § 1927.*"  *Trulis v. Barton*, 107 F.3d 685, 692 (9th Cir. 1997) (emphasis added) (reversing district court for denying § 1927 motion without consideration of attorney's abuses); *In re Peoro*, 793 F.2d 1048, 1051 (9th Cir. 1986) (affirming award of § 1927 against party for re-litigating the validity lien previously held void).[9]

---

[9] As early as the First Dismissal, the Court held that Plaintiffs failed to state such a cause of action because they "**fail[ed] to allege plaintiffs relied to their detriment on any misrepresentation and that, as a result of such reliance, they incurred damage.**"  (10/26/2008 Order at 3 (Docket No.

1   Sanctions under § 1927 must be supported by a "subjective finding of bad

2   faith." *Trulis*, 107 F.3d at 694.  Bad faith is present, *inter alia*, "when an attorney

3   knowingly or recklessly raises a frivolous argument or argues a meritorious claim for

4   the purpose of harassing an opponent."  *Estate of Blas*, 792 F.2d 858, 860 (9th

5   Cir.1986).  While "[d]istrict courts enjoy much discretion in determining whether and

6   how much sanctions are appropriate," (*Trulis*, 107 F.3d at 694) "[d]iscretionary

7   choices are not left to a court's inclination, but to its judgment; and its judgment is to

8   be guided by sound legal principles."  *Id.* (reversing denial of sanctions for failing to

9   address attorney's improper conduct) (quoting *Albemarle Paper Co. v. Moody*, 422

10   U.S. 405, 416 (1975)).

11   "Whether a paper is filed for an improper purpose is 'tested by objective

12   standards.'"  *G.C. and K.B. Investments v. Wilson*, 326 F.2d 1096, 1110 (9th Cir.

13   2003).  The Ninth Circuit has held that, "[w]ithout question, ***successive complaints***

14   ***based upon propositions of law previously rejected*** may constitute harassment…."

15   *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986) (emphasis added);

16   *see also Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir.1997).  In *G.C. and K.B.*, for

17   example, the respondent repeated the same rejected argument in pleading after

18   pleading, just as Plaintiffs have done here, leading the court to affirm an award of

19   sanctions granted *sua sponte* under Rule 11(c)(3).  326 F.2d at 1110.  Indeed, the

20   filing of serial defective lawsuits or pleadings appears to be one of the most common

21   grounds upon which sanctions are imposed.  *See, e.g.*, *Roundtree v. United States*, 40

22   F.3d 1036, 1040 (9th Cir. 1994) (affirming sanctions where "each time [the plaintiff]

23   has forced courts to adjudicate essentially the same issues.");  *Cook v. Peter Kiewit*

24   *Sons Co.*, 775 F.2d 1030 (9th Cir. 1985) (same).

25   Under Sec. 1927 (and Rule 11, for that matter), bad faith conduct has been

26   expressly found to include "attempting to file an amended complaint ***that did not***

27

28

---

33) (emphasis added)).  Plaintiffs' counsels' every move since that Order has been to attempt to
persuade the Court to change its mind.

*materially differ from one which the district court had already concluded did not state a claim*, and [] continually *moving for alterations in the district court's original judgment despite that court's clear unwillingness to change its mind*." *Wages v. Internal Revenue Svc.*, 915 F.2d 1230, 1235 (9th Cir. 1990) (emphasis added) (affirming award of § 1927 sanctions and accordingly declining to reach issue of Rule 11 sanctions).[10]

Thus, amended complaints are just as susceptible to abuse as initial pleadings, if not more so, and bad faith in connection with such filings is grounds for sanctions.  In *Montgomery v. City of Ardmore*, 365 F.3d 926, 943 (10th Cir. 2004), for example, the court affirmed an award of Rule 11 sanctions against an attorney who claimed to have *inadvertently* filed an amended pleading that differed from the one attached to his motion for leave to amend.  The district court nonetheless found that the attorney "was deliberately misleading the Court and Defendants as to the intended amendment" and that "Plaintiff's bad faith in the manner in which he sought the amendment preclude[d] permitting the Amended Complaint to stand."  *Id.*

Repeated failure or refusal to follow court orders in subsequent pleadings – particularly when the court is explicit in identifying prior defects – is also grounds for sanctions and dismissal with prejudice.  *See, e.g.*, *Maddox v. Shroyer*, 302 F.2d 903, 904 (D.C. Cir. 1962); *Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir. 1985) ("A district court may dismiss a case for failure to comply with the pleading rules….  It is difficult to imagine how the district court could have been more explicit in expressing its concern over the complaint's deficiencies and in recommending the changes necessary to correct them.").[11]

---

[10] Defendant has twice shown graphically through computer-generated comparison how Plaintiffs' counsels' "amended" pleadings fail to materially differ from the ones that have been dismissed. Between the Original Complaint and the FAC, Plaintiffs' counsels' added little but block-copied legal argument from their prior brief, not the concrete allegations called for in the First Dismissal Order. (*See* Second MTD at 12-13).  For the SAC, Plaintiffs added but three short paragraphs summarizing the legal argument made in their Supplemental Brief.  (Third MTD at 2-3).  Defendant has never been witness to a clearer example of vexatious pleading practices.

[11] Again, this Court three times told Plaintiffs' counsel precisely what they needed to plead to avoid a dismissal.  (*See* First Dismissal at 3 (Plaintiffs' counsel "fail[ed] to allege plaintiffs relied to their

## II. PLAINTIFFS' COUNSEL HAVE EGREGIOUSLY VIOLATED SEC. 1927

### A. <u>Plaintiffs' Counsels' Conduct Since the Inception of this Case Has Been Unreasonable and Thus Warrants Sanctions</u>

Plaintiffs' conduct since the First Dismissal, in particular their refusal to make factual allegations relating to cognizable injury, belies their motives for the entire case since its inception. Plaintiffs have committed themselves to the argument that the mere receipt of an allegedly false e-mail, without any actual damage resulting therefrom, can give rise to a cause of action and entitle them to massive statutory damages. This self-serving policy – strict liability in the use of commercial e-mail – is simply not the law. It has already been expressly rejected by Congress as a matter of policy and *three times* by this Court as a matter of law. At best, their arguments have been unreasonable. At worst, their suit was motivated by nothing other than the hopes of a windfall settlement, also a clearly improper purpose. *See, e.g.*, *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) ("malice" element required for malicious prosecution action is present when "the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.").

This is by no means the first time Plaintiffs' counsel have been made aware of their case's flaws. Since this case began, Defendant's counsel has been urging Plaintiffs' counsel to withdraw their case or cease their incessant borage of frivolous filings:

- In their first meeting on August 8, 2008, Defendant's counsel "raised, and cited to [Plaintiffs' counsel], case law that clearly evidenced that the entire action was preempted by the CAN-SPAM Act of 2003," and informed them "we will

---

detriment on any misrepresentation and that, as a result of such reliance, they incurred damage"); Second Dismissal at 5-6 ("allege facts that each plaintiff on whose behalf [each] Cause of Action is brought incurred such injury or other assertedly cognizable injury as a result of having relied on defendant's allegedly false [statements]"); Reconsideration Order at 2-3 ("allege a cognizable injury or injuries")). Obviously all of these directives were ignored.

not succumb to such tactics.  If you are so inclined to continue this type of practice, seek another, less principled, victim." (Palmieri Decl. at ¶ 3).

- After the First Dismissal, Defendant's counsel urged on October 23, 2008 that "[a]lthough the Court gave you leave to amend to state a common law claim for fraud, we all know you cannot state such a claim honestly, and certainly cannot state it in such a manner that would permit this case to proceed as a Class Action properly filed before a federal court." (Palmieri Decl. at ¶ 4).

- Then, while Plaintiffs' Motion for Leave to File a Motion for Reconsideration was pending, Defendant's counsel urged Plaintiffs' counsel to "cease any activity" in this case pursuant to Rule 11.  (Palmieri Decl. at ¶ 6).

- And finally, after Defendant was forced to file a *Third* Motion to Dismiss, Defendant's attorney pleaded Plaintiffs' counsel not to file an opposition thereto, since they had, through the SAC, "again failed to state a claim upon which relief can be granted and, for the third time, have ignored the Court's direct admonitions and instructions as to what was required to proceed with this case." (Palmieri Decl. at ¶ 8).

There can thus be no doubt that Plaintiffs' counsels' refusal to plead the necessary elements that this Court and Defendant time and again reminded were required of them was intentional, likely motivated by the fear of losing class certification.  Fed. R. Civ. P. 23(b)(3); *Zimmerman v. Bell*, 800 F.2d 386, 388-89 (4th Cir. 1986) (denying class certification where question of actual deception or reliance on deception varied among putative class members).  Despite knowing this flaw from the outset, and accordingly knowing precisely what they were and were not willing to plead, Plaintiffs pressed forward trying to wear down Defendant and the Court with the same recycled arguments each time, to no avail.  *But see Wages*, 915 F.2d at 1235 (holding such intransigence sanctionable under § 1927).  Accordingly, the Court can and should award attorneys fees for the *entire* case, given the unreasonableness of Plaintiffs' positions and the fact that they continued in multiple pleadings to advance a

legal theory that has each time been shown to be wrong.

### B. Plaintiffs' Counsel's Dilatory Filings Subsequent to the First Dismissal are Sanctionable

Ever since the Original Complaint was dismissed, Plaintiffs' counsel have submitted a veritable deluge of filings intended to keep their case alive – and out of the appellate stage – as long as possible, many of which were procedurally improper. This is not simply zealous advocacy; it is dilatory conduct which goes well beyond any technical noncompliance with local rules.  *Wages*, 915 F.2d at 1235 (filing repeated identical complaints and requests for reconsideration held sanctionable under § 1927).

Even more than that, though, it is Plaintiffs' counsels' specific ***misrepresentation*** in their Supplemental Brief, regarding the scope of an intended second amended complaint, that most clearly begs for relief under § 1927.  Their false promise to plead the injury the Court directed – if only the Court would indulge them one final time! – was cast aside as soon as that indulgence was given.  That misrepresentation belies Plaintiffs' counsels' motives for their entire course of conduct following the First Dismissal, if not from the start of this case.  It shows that their "keep it alive" strategy would be pursued at any cost, and has been.

Whether Plaintiffs' counsel rethought their tactics after making the commitment to plead injury as they now claim (Third MTD Opp. at 6 n.2), or whether they never intended to follow through with their promise at all, is irrelevant.  *See Montgomery*, 365 F.3d at 943 (even claimed inadvertent departure from promised amendment held sanctionable).  The fact is that the Court ***relied*** on Plaintiffs' counsels' promise to plead an injury, and as a result, Defendant was forced to file and brief a motion to dismiss a complaint which should never have been brought, as well as to respond to a Motion for Reconsideration which was clearly nothing but a cog in Plaintiffs' "keep it alive" strategy.

And regardless of their purported change of heart in advance of the SAC, Plaintiffs' counsel knew since the ***First Dismissal*** precisely what they needed to plead

to survive subsequent motions to dismiss. Even after being told to do so in advance of the FAC, and *promising* to do so in advance of the SAC, they nonetheless have consistently refused to let this case end. Their conduct has been an abuse of the judicial process, and thus objectively unreasonable. *G.C. and K.B. Investments*, 326 F.2d at 1110; *Montgomery*, 365 F.3d at 943. Plaintiffs' counsel should thus be sanctioned for all their activity following the First Dismissal.

## C.   The Second Amended Complaint and Plaintiffs' Opposition to Defendant's Motion to Dismiss the SAC Violated Sec. 1927

At the very minimum, the Court should grant this Motion for Sanctions based upon the indisputable lack of merit of Plaintiffs' SAC and Third MTD Opp. in light of this Court's previous explicit orders. As Defendant has fully established, and as Plaintiffs now admit, the SAC contained absolutely no new factual allegations addressing the Court's prior dismissal orders and the specific defects it identified in those orders. (*See, e.g.*, Third MTD Opp. at 6 n.2 ("Plaintiffs ultimately decided not to plead [the] allegations [they promised to plead]"). Yet the Court could not have been *more* explicit in identifying Plaintiffs' prior pleading defects, which Plaintiffs ignored. *See Friedlander*, 755 F.2d at 813. Plaintiffs' counsels' refusal to comply with the Court's clear directions itself proves an intent to harass and multiply the proceedings, warranting attorney fees. *Id.*; *see also Maddox*, 302 F.2d at 904; *Wages*, 915 F.2d at 1235.

But the SAC and Third MTD Opp. did not merely fail to follow the Court's instructions; they also asserted *precisely* the identical legal theories that the Court previously rejected in its First Dismissal, Second Dismissal, and Reconsideration Order, namely Plaintiffs' erroneous belief that they are not required to show any cognizable injury resulting from reliance on a false statement in an e-mail in order to avoid preemption under CAN SPAM. (Third MTD Opp. at 1-2). This point of law has been argued in virtually every single one of Plaintiffs' pleadings, including their Supplemental Brief in which the issue was not even supposed to be addressed, and a host of supplemental submissions, at least two of which were not even compliant with

local rules.

If Plaintiffs' intent was merely to preserve the issue for appeal, they could have easily petitioned the Court to enter a final and appealable order after they lost their Motion for Reconsideration. In fact, the Ninth Circuit expressly laid out the path that Plaintiffs could and should have followed following the First (or even Second) Dismissal, namely to file timely a notice of intent to stand on the dismissed pleading and request the entry of an appealable order. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1063-64 (9th Cir. 2004).

But this was not done. Instead, Plaintiffs filed virtually the same pleading as before, and refused to withdraw it until Defendant had spent the time and money to file the Third MTD and draft a Rule 11(c)(2) Motion. Plaintiffs cannot turn back the clock and now pretend that they had followed *Edwards* and had not caused Defendant massive expense in the interim. 28 U.S.C. § 1927. The SAC and Third MTD Opp. are inexcusable on their face, and all costs incurred by Defendant since their filing can and should be awarded as a sanction.

## III. THE COURT CAN ALSO ISSUE SANCTIONS SUA SPONTE PURSUANT TO FED.R.CIV.P. 11(C)(3)

Rule 11(c)(3) provides the Court with the inherent power to sanction attorneys for misconduct and improper pleadings at any time – even outside the "safe harbor" notice period – on its own motion, via an order to show cause. Fed.R.Civ.P. 11(c)(3). Plaintiffs' counsels' recent conduct leading up to and including the SAC and Third MTD Opp. reflects upon their motives for bringing this case in the first instance, and they should thus be held accountable for their conduct since the case's inception.

An order to show cause under these circumstances is well within the Court's discretion. *See Willis v. City of Oakland*, 231 F.R.D. 597, 600 (N.D. Cal. 2005) (district court could impose sanctions outside of 21-day safe harbor period based upon "the burden that was unjustifiably imposed upon defendants by the filing of a frivolous" lawsuit, *i.e.*, attorney fees); *G.C. and K.B. Investments*, 326 F.2d at 1110. Clearly this is true where Plaintiffs' counsel have acted in bad faith by

misrepresenting their intent with respect to a second amended complaint and consistently refusing to follow the Court's instructions.  *Montgomery*, 365 F.3d at 943; *Maddox*, 302 F.2d at 904.  Thus, the Court should issue an order to show cause why Plaintiffs' counsel should not be sanctioned for the entire amount of Defendant's fees and expenses since the start of this case.

## IV.   DEFENDANT IS ENTITLED TO, AT A MINIMUM, REASONABLE ATTORNEY'S FEES

The Declaration of Defendant's outside counsel accompanying this Motion establishes that Defendant's fees incurred since the start of this case, at least $300,000, have been fair and reasonable consistent with lodestar standards.   *In re HPL Technologies, Inc. Securities Litigation*, 366 F.Supp.2d 912, 919 (N.D. Cal. 2005). Appropriate considerations include: (1) counsel's reasonable hours; (2) counsel's reasonable hourly rate; and (3) a multiplier thought to account for various subjective factors. *Id.*

Defendant has been represented in this action by several highly experienced attorneys in the regulatory and privacy law fields, who are well published in the area of CAN SPAM, as well as experienced litigation counsel.  (*See* Decl. of Peter N. Moore in Support of Def.'s Motion for Sanctions ("Moore Decl.") at ¶ 6).  Each of these attorneys bills at rates comparable to market, if not lower.  (*Id.*).  The number of hours expended in this case to-date has also been reasonable in light of the extremely aggressive pleading practice Plaintiffs' counsel have undertaken, namely the filing of three complaints warranting fully briefed motions to dismiss, as well as a motion for reconsideration.  Plaintiffs' tactics have also necessitated Defendant's counsel staying constantly abreast of even non-precedential developments in the law that could bear on the issues in this case.  In short, Plaintiffs' own "keep it alive" strategy has had its intended effect – to force Defendant to incur substantial legal fees.  Plaintiffs' counsel must be held accountable for this abuse.

## CONCLUSION

For all the foregoing reasons, the Court should GRANT Defendant's Motion for

Sanctions pursuant to 28 U.S.C. § 1927, based on Plaintiffs' counsels' violations of the rules and this Court's orders, and their vexatious and improper conduct. The Court should also consider *sua sponte* issuing an order to show cause why Plaintiffs' counsel should not be sanctioned under Rule 11(c)(3). Plaintiffs' counsel brought this suit in bad faith at the outset, and prosecuted it relentlessly despite knowing its futility for more than nine months. Their conduct warrants the full extent of monetary sanctions available under federal law, and accordingly Defendant asks for all its attorney fees since the inception of this case, in an amount which exceeds $300,000, but can be determined more precisely by *in camera* review of Defendant's legal bills if the Court grants this Motion.

DATED:  July 31, 2009                                    Respectfully submitted,

                                                         s/ Ronald Jason Palmieri
                                                         One of the Attorneys for Defendant

LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
1644 North Orange Grove Avenue
Los Angeles, CA 90046
TELEPHONE: (323) 882-8225
FACSIMILE:  (323) 882-8208
lawofcsrjp@aol.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Carole E. Handler (CA Bar No. 129381)
9665 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90212
TELEPHONE: (310) 860-8705
FACSIMILE:  (310) 860-3805
handler@wildman.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Peter N. Moore (admitted *pro hac vice*)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
TELEPHONE: (312) 201-2000
FACSIMILE:  (312) 201-2555
pmoore@wildman.com

Attorneys for Defendant
REUNION.COM, INC.