**KRONENBERGER BURGOYNE, LLP**

Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@KBInternetLaw.com
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

**SHAPIRO, HABER & URMY LLP**

Edward F. Haber (admitted *pro hac vice*)
Todd S. Heyman (admitted *pro hac vice*)
Ian J. McLoughlin (admitted *pro hac vice*)
Robert E. Ditzion (admitted *pro hac vice*)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
theyman@shulaw.com
imcloughlin@shulaw.com
rditzion@shulaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VIOLETTA HOANG, LIVIA HSIAO, MICHAEL BLACKSBURG,** and **MATTHEW HALL**, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>**REUNION.COM, INC.**, a California corporation,<br><br>Defendant. | Case No. 08-CV-03518-MMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PLAINTIFFS' NOTICE AND FOR INVOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. P. 41(B)**<br><br>DATE:      September 25, 2009<br>TIME:       9:00 a.m.<br>DEPT:      Courtroom 7, 19th Floor<br>JUDGE :   The Hon. Maxine M. Chesney |

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

**TABLE OF CONTENTS**

I. INTRODUCTION...................................................................................... 1

II. STATEMENT OF ISSUES TO BE DECIDED............................................. 3

III. STATEMENT OF FACTS AND PROCEDURAL HISTORY......................... 3

IV. ARGUMENT ......................................................................................... 8

    A. Reunion.com's Motion to Strike Has No Legal Basis and Directly Conflicts

    with the Withdrawal Procedures Established in Rule 11 ................................ 8

    B. Reunion.com's Rule 41(b) Arguments Are Frivolous ..................................... 11

        1. Rule 41(b) Is Only To Be Used in Extreme Circumstances Which

        Are Not Present Here ........................................................................ 11

        2. The Five Factors Considered in Rule 41(b) Decisions Favor

        Plaintiffs ......................................................................................... 12

        3. Reunion.com's Rule 41(b) Motion Is Untimely ..................................... 14

        4. Reunion.com's *Nunc Pro Tunc* Argument Is Frivolous......................... 16

V. CONCLUSION ...................................................................................... 19

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**PLAINTIFFS' OPP. TO MOT. TO STRIKE AND FOR INVOLUNTARY DISMISSAL**

1

## TABLE OF AUTHORITIES

2   *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1412 (9th Cir.1990) .............................. 14

3   *Ash v. Cvetkov,* 739 F.2d 493, 496 (9th Cir.1984) ........................................................ 14

4   *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 386 (1978) ................................................. 17

5   *Barber v. Miller,* F.3d 707, 710 (9th Cir. 1998) ............................................................. 8

6   *C.f. Gwaduri v. Immigration and Naturalization Services,* 362 F.3d 1144,

7       1146-47 n.3 (9th Cir. 2004) ................................................................................. 9-10

8   *Chambers v. American Trans Air, Inc.,* 990 F.2d 317, 318 (7th Cir. 1993) .................... 18

9   *Chatham Partners, Inc. v. Fidelity And Deposit Co. of Maryland,* 2001 WL 1262960,

10      at *2 (S.D.N.Y. Oct. 19, 2001) .............................................................................. 16

11  *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1065 (9th Cir. 2004) ........................... 1, 14

12  *Ferdik v. Bonzelet,* 963 F.2d 1258 (9th Cir. 1992) ......................................................... 13

13  *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir. 1986) ......................................... 11

14  *In re Eisen,* 31 F.3d 1447 (9th Cir. 1994) ..................................................................... 13

15  *Industrial Bldg. Materials, Inc. v. Interchemical Corp.,* 278 F. Supp. 938, 949

16      (C.D. Cal. 1967) ................................................................................................... 15

17  *McHenry v. Renne,* 84 F.3d 1172, 1178 (9th Cir. 1996) ............................................... 11

18  *O'Brien v. Sinatra,* 315 F.2d 637 (9th Cir. 1963) ......................................................... 11

19  *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006) .......... 4

20  *Pimentel v. Orloff,* No. C-08-0249 MMC, 2008 WL 4963049, at *2 (N.D. Cal.

21      Nov. 19, 2008) ....................................................................................................... 15

22  *Reid v. White Motor Corp.,* 886 F.2d 1462 (6th Cir. 1989) ........................................... 18

23  *Ruby v. Sec'y of United States Navy*, 365 F.2d 385, 388 (9th Cir. 1966) ....................... 17

24  *Shumye v. Felleke,* No. C-06-3322 MMC, 2008 WL 4679920, at *7 (Oct. 21, 2008

25      N.D. Cal.) .............................................................................................................. 14

26  *Smith v. Simmons,* No. 1:05-CV-01187, 2009 WL 1835187 (E.D. Cal.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

June 23, 2009) ................................................................................. 10, 11

*Singh v. Mukasey,* 533 F.3d 1103, 1110 (9th Cir. 2008) ................................. 18

*Star Navigation Systems Group Ltd. v. Aeromechanical Services Ltd.,* No. C-07-4820

   MMC, 2008 WL 962150, at *1 (N.D. Cal. Apr. 8, 2008) ........................... 15

*Transamerica Ins. Co. v. South,* 975 F.2d 321, 325-26 (7th Cir. 1992) ........................ 18

*United States v. Sumner,* 226 F.3d 1005, 1009-10 (9th Cir.2000) ................................ 18

*Von Poppenheim v. Portland Boxing and Wrestling Comm'n,* 442 F.2d 1047

   (9th Cir. 1971) ....................................................................................... 11

*Walker v. Mueller Industries, Inc.,* No. 05 C 2174, 2006 WL 2024338, at *4

   (N.D. Ill. July 13 2006) .......................................................................... 16

*WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997) ................. 16, 17

*Yourish v. Cal. Amplifier,* 191 F.3d 983 (9th Cir. 1999) ......................................... *passim*

### Federal Statutes and Other Authorities

15 U.S.C. §7707(b)(1). ................................................................................ 4

28 U.S.C. §1927 ............................................................................................ *passim*

N.D. CA Local Rule 7-8, *et seq.* ..................................................................... 2, 14, 15

N.D. CA Local Rule 7-9, *et seq.* ..................................................................... 5

Truth in Lending Act ...................................................................................... 6

Fair Debt Collection Practices Act ................................................................ 6

Right to Financial Privacy Act ....................................................................... 6

Fair and Accurate Credit Transactions Act ................................................... 6

Advisory Committee Notes to 1993 Amendments to Rule 11, Subdivisions (b)& (c) ..... 10

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

iii

**PLAINTIFFS' OPP. TO MOT. TO STRIKE
AND FOR INVOLUNTARY DISMISSAL**

# I. INTRODUCTION

As the Court is well aware, the Defendant's pending motions for sanctions arise out of Defendant's serving a draft Rule 11 motion on Plaintiffs, and the Plaintiffs' subsequent withdrawal of the Second Amended Complaint ("SAC") pursuant to Rule 11's safe harbor provision. (D.E. No. 78). In response, Defendant contended such withdrawal was improper, final judgment should therefore not enter, and that it should be granted leave to file its motions for sanctions, including under Rule 11, notwithstanding Plaintiffs' exercise of their safe harbor rights.

For a litigant that claims its adversary has assumed a frivolous legal position, Reunion.com is willing to go to great lengths to avoid any appellate review of the actual merits of the parties' legal dispute. Defendant presumably believes that – however erroneously – dismissal by sanction under Rule 41(b) will limit appellate review to non-merits issues using an abuse of discretion standard – unlike the applicable *de novo* review for 12(b)(6) dismissal orders on the merits. Specifically, by this motion, Defendant seeks to re-litigate the propriety of filings dating back to October of last year with the hope of obtaining dismissal by sanction through Rule 41(b), instead of the dismissal on the merits that this Court already found appropriate under Rule 12(b)(6). *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004) ("[A] Rule 41(b) dismissal is deemed a sanction for disobedience . . . .").

However, none of the five factors the Court is to consider in determining whether to dismiss pursuant to Rule 41(b) favor dismissal, and the Ninth Circuit has expressly cautioned against converting a 12(b)(6) dismissal order into a Rule 41(b) dismissal when the plaintiff informs the Court that he or she will stand on a previous complaint. (*Id.*) ("demanding conversion of a 12(b)(6) dismissal into one under Rule 41(b) even when the plaintiff has informed the court of her decision not to amend, would . . . unjustly deny plaintiffs … who exercise their right to stand on a complaint[,] their right to an appeal on the merits of the question whether the complaint is adequate as a matter of law."). Quite simply, Rule 41(b) dismissals are an extreme sanction. Because the

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Court has allowed the Plaintiffs' filings in this case over Defendant's objections without suggesting that such filings were improper, Defendant's argument here, which is premised on repeating those same objections, is simply misplaced.

Not content to obtain such an extreme sanction, Defendant also makes the extraordinary (and frivolous) request that its proposed 41(b) dismissal be back-dated, or made effective *nunc pro tunc*, as of May 29, 2009 – the deadline for Plaintiffs to amend the First Amended Complaint ("FAC").  This outlandish request makes no sense and is unsupported by any authority.  Instead, it constitutes a transparent and misguided effort to argue that Plaintiffs' 30 day period to appeal has already expired.  All the courts that have considered the precise issue of back-dating dismissal orders, including several Courts of Appeals, have rejected Reunion.com's arguments.  Though such cases are readily available to any reasonably competent first year associate with a Westlaw password, and must have been located by Defense Counsel, Defendant fails to bring such contrary authority, or any authority even remotely on point, to the Court's attention.

Moreover, if Defendant genuinely believed such extreme sanctions were appropriate here, it certainly would have filed its motion before now.  Instead, since the inception of this litigation, Reunion.com relentlessly threatened sanctions in an (unsuccessful) effort to bully Plaintiffs into dropping their claims.  The Rule 11 Advisory Notes expressly state that such threats are improper, and this Court's Local Rule 7-8(c) precludes such tactics by requiring sanctions motions to be filed as soon as practicable after the party learns the basis for such a motion.  To put it mildly, Reunion.com's recent filing of two sanctions motions flagrantly violate this local rule.

Finally, Defendant moves to strike Plaintiffs' withdrawal of the SAC.  That pleading was filed in conformity with Rule 11(c)'s safe harbor provision, pursuant to its express and unambiguous language.  Without citation to any supporting authority, Defendant argues that Plaintiffs' withdrawal was improper, and that Plaintiffs instead should have withdrawn their opposition to the dismissal of the SAC.  However, Plaintiffs' opposition memorandum could not conceivably violate Rule 11, and Defendant

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  identifies no basis to conclude otherwise.  If Defendant sincerely believed its argument,

2  it would have filed a Rule 11 motion for Plaintiffs' failure to withdraw the opposition

3  memorandum.  Notably, it chose not to do so, and instead filed this motion to strike.

4  Unlike the prevailing party on a motion to strike, Rule 11(c)(2) affords the prevailing

5  party, including the non-moving party, the possibility of recovering attorneys' fees.

## II.   STATEMENT OF ISSUES TO BE DECIDED

7   The issues to be decided are:

8   (1)   whether the Court should strike Plaintiffs' withdrawal of the SAC, which

9        conforms to the requirements of Rule 11(c) and does not violate any rule

10       or other authority;

11  (2)   whether the Court should convert its previous Rule 12(b)(6) dismissal

12       order into a Rule 41(b) dismissal order as a sanction against Plaintiffs,

13       when all of their filings in this case have been both timely and allowed by

14       the Court without even a hint of impropriety; and

15  (3)    whether such a dismissal order should be back-dated to months before

16       the date on which the Court actually does enter final judgment in a manner

17       calculated to divest Plaintiffs of their right to appeal.

## III.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

19   Plaintiffs filed the initial Complaint in this case on July 23, 2008.  (D.E. No. 1).

20  That Complaint alleges that Reunion.com sent Plaintiffs unsolicited commercial e-mail

21  in violation of Cal. Bus. & Prof. Code §17529.5. (*See Id.* at ¶¶40-54).  Specifically,

22  Plaintiffs received e-mails claiming to be from friends or acquaintances which were in

23  fact merely solicitations by Reunion.com to sign up for its services. (*Id.* at ¶¶16-34).

24  Plaintiffs are hardly alone in being angry at this offensive practice.  Hundreds of people

25  have filed complaints with the FTC about Reunion.com's e-mail practices.  (FAC (D.E.

26  No. 36) at ¶65).  Because of these practices, the Better Business Bureau has assigned

27  Reunion.com a "D" rating, indicating that the Better Business Bureau recommends

28  "caution in doing business with it." (*Id.* at ¶67).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Reunion.com filed a motion to dismiss the Complaint, arguing that it was preempted by the Controlling the Assault of Non-Solicited Pornography Act of 2003 ("CAN SPAM"), 15 U.S.C. §7707(b)(1), *et seq.* (D.E. No. 17). The Court granted that motion, without a hearing, on October 6, 2008. (D.E. No. 33). The Court's decision was based not on Reunion.com's arguments (some of which it rejected), but on the grounds that Plaintiffs were required to plead all elements of common law fraud to escape preemption, relying primarily on *Omega World Travel, Inc. v. Mummagraphics*, *Inc.,* 469 F.3d 348 (4th Cir. 2006). Defendant did not cite that case or raise that argument so Plaintiffs had no occasion to address that basis for the Court's holding in their brief. Although Reunion.com stated that Plaintiffs' claim lacked any merit and asked that the Complaint be dismissed with prejudice, (D.E. No. 17 at 19), the Court granted Plaintiffs leave to amend. (D.E. No. 33).

Plaintiffs filed the FAC on October 24, 2008 (D.E. No. 36). Plaintiffs did not believe, and still do not believe, that they are required to plead common law fraud to avoid preemption. Instead, Plaintiffs believe their allegations of falsity, materiality, and knowledge are more than sufficient to survive dismissal. Because Plaintiffs had no opportunity to address the *Mummagraphics* case prior to the dismissal of the Complaint, the FAC included allegations about the legislative history of the preemption provision which sought to clarify the basis for Plaintiffs' argument that this Court had read *Mummagraphics* too expansively, a view later expressly articulated by Judges Alsup and Armstrong in opinions declining to follow the decision of this Court. (D.E. Nos. 69, 70).

Reunion.com moved to dismiss the FAC, again arguing preemption, though this time adopting the preemption arguments articulated by the Court in its previous dismissal order. (D.E. No. 46). On December 16, 2008, the Court again granted Defendant's motion without a hearing. (D.E. Nos. 53, 54). While the Court rejected Reunion.com's arguments that Plaintiffs had not adequately pled falsity, knowledge, and materiality, the Court adhered to its view that Plaintiffs were required to plead reliance

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    and resulting harm to avoid preemption. (*Id.*)  In addition, the Court found dismissal

2    would be appropriate on an alternative basis not briefed by either party, that Plaintiffs

3    were also required to demonstrate reliance and resulting harm in order to meet the

4    standing requirements of Article III.  (*Id.*)  Although Reunion.com specifically asked the

5    Court to dismiss the First Amended Complaint without leave to amend because

6    Plaintiffs had allegedly violated the Court's previous dismissal order (an argument once

7    again re-hashed by the present motion), (D.E. No. 46 at 23), the Court granted leave for

8    Plaintiffs to amend. (D.E. No. 55).

9        On January 15, 2009, Plaintiffs moved for leave to file a motion for

10   reconsideration of the Court's December 23, 2008 order dismissing the FAC on two

11   grounds.   (D.E. No. 56).   First, Plaintiffs believed that the Ninth Circuit's recent

12   certification of a question to the California Supreme Court in *Kleffman v. Vonage*

13   *Holdings Corp.* shed light on the Ninth Circuit's interpretation of the preemption and

14   standing issues in this case. (D.E. No. 56 at 2-5).  Second, Plaintiffs sought leave to

15   address the standing issue because they had never had an opportunity to brief this

16   issue.  Reunion.com opposed this motion, arguing (as it does again now) that Plaintiffs'

17   motion somehow violated Local Rule 7-9, and that the case should have been

18   dismissed without leave to amend. (D.E. No. 58).  Rejecting Reunion.com's arguments,

19   on March 11, 2009, the Court granted Plaintiffs leave to file a motion for

20   reconsideration. (D.E. No. 64). As part of its reconsideration, the Court considered

21   Plaintiffs' arguments on the *Kleffman* case and rejected them, but granted Plaintiffs

22   leave to file additional briefing on standing. (*Id.*)

23       Plaintiffs' supplemental briefing argued that the FAC included allegations that

24   were adequate to establish standing, but that Plaintiffs were also prepared to allege that

25   "the receipt of Defendant's emails caused Plaintiffs to lose valuable storage space in

26   their inboxes and computers (and/or required their personal time to delete such emails

27   from their inboxes)." (D.E. No. 66 at 3).  Plaintiffs also argued that Cal. Bus. & Prof.

28   Code §17529.5 itself provided standing to recipients of e-mails that violated this statute,

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   without need to allege any additional injury. (D.E. No. 66 at 3-5).  In support of this

2   position, Plaintiffs pointed to a number of cases where courts made similar findings with

3   respect to the Truth in Lending Act, the Fair Debt Collection Practices Act, the Right to

4   Financial Privacy Act, and the Fair and Accurate Credit Transactions Act. (*Id.* at 4-5).

5   As before (and as again now), Reunion.com argued that no reconsideration should be

6   given, that Plaintiffs were violating earlier Court orders, and that the FAC should be

7   dismissed with no leave to amend. (D.E. No. 68).  While the Court was considering

8   Plaintiffs' motion for reconsideration, Plaintiffs notified the Court in Statements of

9   Recent Decision of two new opinions issued by Judges Alsup and Armstrong also of the

10  Northern District of California. (*See* D.E. Nos. 69, 70).  Both of these cases specifically

11  disagreed with this Court's holding on preemption of Cal. Bus. & Prof. Code §17529.5

12  and agreed with Plaintiffs' arguments.  *Id.*

13       On May 14, 2009, once again without a hearing, the Court denied Plaintiffs'

14  motion for reconsideration. (D.E. No. 73).  However, the Court found that Defendant had

15  not demonstrated that amendment would be futile, and granted Plaintiffs leave to

16  amend.  Plaintiffs filed the SAC on May 29, 2009. (D.E. No. 74).  Although Plaintiffs had

17  previously indicated to the Court that they were prepared to make allegations regarding

18  loss of storage space and/or time wasted deleting e-mails, Plaintiffs ultimately

19  reconsidered and decided not to do so, believing their existing allegations concerning

20  those subject matters were sufficient, and that such additional allegations would still be

21  challenged by Defendant thereby rendering the litigation more expensive and

22  complicated.  This conclusion was bolstered significantly by the two intervening

23  decisions of two other judges of this Court that adopted Plaintiffs' view of the

24  preemption issue, and that there has never been any express ruling of this Court

25  explaining why the statutory damages cases cited by Plaintiffs on the standing issue are

26  not controlling.  In sum, Plaintiffs' counsel's analysis of the ramifications of making such

27  allegations as well as intervening case law preceding the filing of the SAC caused

28  Plaintiffs to re-evaluate both their litigation strategy and their chances of success on

1  appeal.  Quite simply, Plaintiffs changed their mind.  As a result, Plaintiffs included

2  different allegations in the SAC than what they had originally contemplated, and those

3  allegations expressly and unequivocally explained why they believed that they had

4  suffered injury sufficient for standing purposes.  (D.E. No. 74 at ¶¶68-70).

5      Contrary to Reunion.com's assertions, Plaintiffs' earlier statements that they

6  were prepared to include additional allegations about storage space and/or time spent

7  deleting emails were entirely truthful.  The fact that Plaintiffs changed their minds in no

8  way reflects any earlier attempt to deceive or mislead the Court.  As the Court noted at

9  the most recent telephonic Case Management Conference, Plaintiffs would have no

10 motive whatsoever to lie about intended future pleadings, since the Court would

11 obviously see the actual inconsistent pleadings that were later filed.  Indeed, until

12 Defendant actually served its draft Rule 11 motion on Plaintiffs, Plaintiffs were prepared

13 to argue that their view of the standing issue, as articulated in the SAC, was legally

14 correct and should be adopted by the Court.  Plaintiffs adhere to that view.

15     Defendant did not serve its draft Rule 11 motion on Plaintiffs immediately after

16 the filing of the SAC – despite having all of the information it then needed to mount its

17 sanctions motion.  It instead waited until June 26, 2009, after: (1) it filed its motion to

18 dismiss the SAC (on June 12, 2009), and (2) Plaintiffs had filed their opposition to that

19 motion.  (D.E. No. 75, 77[1]).  Within five days of receipt of the draft Rule 11 motion,

20 Plaintiffs notified the Court that they were withdrawing the SAC, the document which

21 purportedly was sanctionable for not including allegations that Plaintiffs had previously

22 indicated would be included.  (D.E. No. 78).  Plaintiffs did not think that their decision

23 not to include such allegations in the SAC would ever support an award of sanctions

24 under Rule 11, Rule 41(b), 28 U.S.C. §1927, or any other authority.  Rather, Plaintiffs'

25 decision to withdraw the SAC was motivated exclusively by a desire to avoid collateral

26

27 ————————————
   [1] Reunion.com's argument that it unnecessarily had to engage in motion practice on the
28 SAC, *see, e.g.,* Def.'s Mot. at 12, thus rings hollow.  Reunion.com could, and should,
   have served its draft Rule 11 motion (and filed its other sanctions motions) before any
   briefing took place on the SAC.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   litigation over disputes unrelated to the merits and expedite appellate review of the

2   merits.   Obviously, Plaintiffs' effort to avoid pointless litigation over collateral issues has

3   failed as Defendant has filed the present motion for sanctions under Rule 41(b).

### IV.   ARGUMENT

### A. Reunion.com's Motion to Strike Has No Legal Basis and Directly Conflicts with the Withdrawal Procedures Established in Rule 11.

7   On June 26, 2009, Reunion.com served a Rule 11 Motion for Sanctions on

8   Plaintiffs (Declaration of Todd S. Heyman in Support of Plaintiffs' Oppositions to

9   Defendant's Motion to Strike and For Involuntary Dismissal and Motion for Sanctions

10  ("Heyman Decl.") ¶8 & Ex. 1).   This motion challenged, *inter alia*, the propriety of

11  Plaintiffs' filing the SAC. (*Id.)*  In accordance with Rule 11(c)(2), this motion could not be

12  filed with the Court "if the challenged paper, claim, defense, contention, or denial is

13  *withdrawn* or appropriately corrected within 21 days after service . . . ." Fed. R. Civ. P.

14  11(c)(2) (emphasis in original).  Although Plaintiffs saw no merit in Defendant's Rule 11

15  motion, Plaintiffs took advantage of Rule 11's "safe harbor" provision and withdrew the

16  SAC in an (unfortunately unsuccessful) attempt to avoid unnecessary and unpleasant

17  sanctions motion practice, and expeditiously get this case to the Court of Appeals.  This

18  was entirely proper.  The withdrawal of a pleading is precisely the kind of action that the

19  1993 safe harbor amendment to Rule 11 was intended to encourage.  *See Barber v.*

20  *Miller,* 146 F.3d 707, 710 (9th Cir. 1998) (quoting Advisory Committee notes indicating

21  that safe harbor provision was added to prevent sanctions litigation by providing parties

22  who withdrew challenged pleadings protections from sanctions).

23  Despite the specific and unambiguous language of Rule 11 authorizing and

24  promoting the use of pleadings withdrawals to avoid sanctions disputes, Reunion.com

25  suggests, without any relevant authority, that Plaintiffs' withdrawal was somehow

26  inappropriate, and that Plaintiffs instead should have withdrawn their opposition to

27  Defendant's motion to dismiss the SAC.  Def. Mot. at 5 ("the proper procedure would

28  have been to unconditionally 'withdraw' their improper and unfounded Opposition" to the

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  motion to dismiss the SAC).  However, Plaintiffs' opposition to the motion to dismiss the

2  SAC does not even arguably violate Rule 11 (and Defendant fails to identify any

3  plausible reason how it could).  On the contrary, Plaintiffs' opposition memorandum

4  advances legal arguments which can only be described as reflecting a good faith legal

5  dispute concerning the preemption and standing issues at issue here, particularly in

6  light of the split in authority on the preemption issue.[2]  Notably, Defendant had the

7  option to move for Rule 11 sanctions for Plaintiffs' failure to withdraw that pleading.  Its

8  failure to do so speaks volumes.  Moreover, by withdrawing the SAC, the motion to

9  dismiss pleadings, including the opposition memorandum, became moot.

10      Why does the Defendant care which of the two pleadings was withdrawn?  Either

11  way, judgment would enter (either on the FAC or the SAC), and the appellate

12  proceedings would commence.  And if there is no difference between the SAC and the

13  FAC as Defendant adamantly contends, the Plaintiffs' chances of success on appeal

14  would not change.   The reason is because Defendant had hoped to dictate the

15  procedural posture of this case – something it accuses Plaintiffs of doing – so that it

16  could argue to the Court of Appeals – whether erroneously or not – that Plaintiffs waived

17  their rights to appeal the dismissal order.[3]   *C.f. Gwaduri v. Immigration and*

18  _____

19  [2] Indeed, the only pleading which could have conceivably violated Rule 11 was the SAC itself, but even that potential violation had nothing to do with whether the SAC states a

20  colorable claim on the merits.  Rather, the alleged Rule 11 violation was that it contains standing allegations that differ from the standing allegations that Plaintiffs indicated they would include in a previous pleading to the Court.  Thus, the potential Rule 11 violation

21  concerned litigation conduct, not the substance of the contentions contained in the pleading itself.  Defendant contended that the SAC constituted fraud on the Court.

22  Those are the most serious accusations made against Plaintiffs, even if there is no evidence to support them.  Plaintiffs obviously would have no incentive to lie about

23  future pleadings as the Court would eventually view those pleadings when filed. Regardless of the merits of Defendant's accusation, Plaintiffs were entitled to, and

24  appropriately did, withdraw that pleading.  While Defendant complains that Plaintiffs should have withdrawn their opposition memorandum instead, it identifies no legitimate

25  defect in the withdrawal of the SAC.  Rule 11's safe harbor provision was intended to facilitate the avoidance of sanctions motion practice.  The rule should not be construed

26  in an overly stringent or technical manner as evidenced by the fact that Rule 11 motions are not to be filed even where the pleading is only withdrawn "informally."  Advisory

27  Notes, 1993 Amendments, Subdivisions (b) and (c).
   [3] Indeed, Defense Counsel's efforts to obtain Plaintiffs' withdrawal of their opposition

28  memorandum have been extraordinary.  Just one week after this Court granted Defendant leave to file its Rule 41(b) sanction motion seeking a back-dated dismissal

1   *Naturalization Services*, 362 F.3d 1144, 1146-47 n.3 (9th Cir. 2004) (party's lack of an

2   opposition to a motion is "tantamount to a concession that its position in the litigation is

3   not substantially justified.").

4      This gamesmanship is an improper use of Rule 11, and would not be condoned

5   by a Court of Appeals and should not be condoned by this Court.  The Advisory Notes

6   to the Rule expressly state that Rule 11 motions should not "be prepared to …intimidate

7   an adversary into withdrawing contentions that are fairly debatable."  Advisory Notes to

8   Rule, 1993 Amendments, Subdivisions (b) and (c).  Although Defendant has convinced

9   this Court that its rulings on preemption and standing are correct, there is no

10  conceivable argument that the Plaintiffs' position on those issues is not "fairly

11  debatable."  If Plaintiffs were forced to withdraw the opposition to the dismissal of the

12  SAC to avoid Rule 11 sanctions, instead of the SAC itself, Defendant could have argued

13  to the Court of Appeals that Plaintiffs had abandoned their "fairly debatable"

14  contentions, contrary to the purpose of Rule 11.  The rule was designed to promote the

15  avoidance of sanctions motion practice, not to create litigation traps for the unwary.

16     In support of its motion to strike, Reunion.com cites a single case that actually

17  establishes Plaintiffs' conduct was entirely proper.  In quoting *Smith v. Simmons*, No.

18  1:05-CV-01187, 2009 WL 1835187 (E.D. Cal. June 23, 2009), Defendant claims that

19  "Plaintiffs are not given an 'unflinching mandate' by Rule 11 to unilaterally dictate the

20  procedural posture of this case."  Def. Mot. at 17.  However, Reunion.com's selective

21  quotation of *Simmons* is egregiously deceptive.  In *Simmons*, the Plaintiff sought to file,

22  *not withdraw*, an amended complaint pursuant to Rule 11's safe harbor provision.

23  Moreover, the proposed amended complaint did not even address the allegations that

24  were the subject of the Rule 11 motion and instead included additional allegations that

25

26  order, Defendant offered to abandon and waive such arguments in exchange for the
    Plaintiffs' agreement to withdraw their opposition memorandum to the dismissal of the

27  SAC.  (*See* Heyman Decl. ¶¶2-7 & Exs.13-15, 16 ¶4).  When Plaintiffs did not take the
    bait, Defendant resorted to its back-up argument to eliminate Plaintiffs' appellate rights

28  – the filing of the present motion asserting unsupported arguments that Defendant was,
    not surprisingly, willing to waive.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

were "unrelated to the motion for sanctions." *Simmons*, 2009 WL 1835187 at *5. In pointing out this defect with the filing (not withdrawal) of the amended complaint at issue, the *Simmons* court made clear that it would have been an appropriate use of Rule 11's safe harbor to withdraw the allegedly offending pleading rather than to continue to litigate the same allegations (and unrelated new allegations in the proposed amended complaint). *Id.* Reunion.com fails to mention this in its submission here.

**B. Reunion.com's Rule 41(b) Arguments Are Frivolous.**

**1. Rule 41(b) Is Only To Be Used in Extreme Circumstances Which Are Not Present Here.**

Involuntary dismissal under Rule 41(b) "is a harsh penalty and is to be imposed only in extreme circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). The cases cited by Reunion.com reflect as much. None address the situation here, where Plaintiffs willingly agreed to halt litigation before the District Court and proceed directly to appellate review without any need for dismissal under Rule 41(b).[4] That is not surprising, as the Court "should first consider less drastic alternatives" before dismissing under Rule 41(b). *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). Here, the obvious less drastic alternative is to enter final judgment based on the dismissal of the FAC with prejudice under R. 12(b)(6), without leave to replead. This

---

[4] *See Yourish v. Cal. Amplifier*, 191 F.3d 983 (9th Cir. 1999) (after voluntarily agreeing to dismissal and convincing Court to provide much longer time period to amend than initially offered, Plaintiffs deliberately ignored the Court's order, failed to meet amendment deadline, and without explanation for this misconduct, subsequently sought leave for state discovery to assist in filing an amended complaint); *McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) (sprawling and incoherent third amended complaint against Mayor, City Attorney, Chief of Police and other San Francisco officials dismissed under Rule 41(b) only after District Court Judge sought report from Magistrate Judge that determined that viable claims were not being masked by "counsel's ineptitude."); *Von Poppenheim v. Portland Boxing and Wrestling Comm'n*, 442 F.2d 1047 (9th Cir. 1971) (professional wrestler alleging conspiracy against trade unable to state factual basis for claims after two years of litigation and multiple hearings attempting to clarify claims; SAC dismissed in earlier similar state case – affirmed by Oregon Supreme Court) *O'Brien v. Sinatra*, 315 F.2d 637 (9th Cir. 1963) (Plaintiff filed an amended complaint that breached an agreement with the District Court made on the record in which Plaintiff expressly assented to plead only specific facts and assert specific claims). As this Court is well aware, Plaintiffs' conduct in the case at bar bears no resemblance to that described in the above cases.

1   would spare the Court the need to consider Reunion.com's prolix Rule 41(b) motion,

2   and would avoid the peculiar and improper procedural gymnastics sought by Defendant:

3   strike the Plaintiffs' withdrawal of the SAC, then dismiss that same SAC under Rule

4   41(b), but back-date that order to a wholly unrelated and irrelevant date, the date that

5   the FAC should have been amended.

6        Rule 41(b) dismissal is especially inappropriate here.  Plaintiffs' pleadings in this

7   action evidence their one single goal: to convince the Court that they have asserted

8   claims for which they have standing, and that are not preempted by federal law.  While

9   Plaintiffs will not extensively re-hash the basis for their litigation decisions here,[5]  one

10  important point must be made.  In the pleadings leading up to the Court's substantive

11  orders in this case, Reunion.com consistently asked the Court to dismiss Plaintiffs'

12  complaints with prejudice and/or without leave to amend.  In asking for this result,

13  Reunion.com made the same arguments that it now makes here: that Plaintiffs'

14  pleadings were frivolous, were legally defective, and/or violated the Court's earlier

15  orders.  In each case, the Court rejected Reunion.com's request and allowed Plaintiffs

16  to file their submissions and continue litigating before the Court.  The notion that

17  Plaintiffs' conduct was in such blatant disregard of this Court's orders and rules, even

18  though the Court permitted the filings and did not mention any issue with respect to the

19  propriety of Plaintiffs' conduct, is simply not tenable.

20      **2.  The Five Factors Considered in Rule 41(b) Decisions Favor Plaintiffs.**

21      As Reunion.com notes, the Ninth Circuit has identified five factors that this Court

22  should weigh in determining whether involuntary dismissal is appropriate under Rule

23  41(b).  *See* Def.'s Mot. at 15 (citing *Yourish v. Cal. Amplifier*, 191 F.3d 983 (9th Cir.

24  1999)).  These factors are: "(1) the public's interest in expeditious resolution of litigation;

25  (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4)

26  _____

27  [5] Plaintiffs' good faith conduct is discussed in much more detail in the Statement of
    Facts above, as well as in Plaintiffs' Opposition to Reunion.com's companion motion for
28  U.S.C. §1927 sanctions.  In order to minimize redundancy in the Plaintiffs' filings,
    Plaintiffs incorporate that memorandum by reference, in full, to support Plaintiffs'
    arguments made throughout this memorandum.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    the public policy favoring disposition of cases on their merits; and (5) the availability of

2    less drastic alternatives." *Yourish*, 191 F.3d at 990 (citations omitted).  *Not noted* by

3    Reunion.com was the Ninth Circuit's further guidance that dismissal is only appropriate

4    "where at least four factors support dismissal, ... or where at least three factors 'strongly'

5    support dismissal." *Id.* (citations omitted).  Here, none of the five factors favor dismissal,

6    let alone four factors (or even three factors strongly).

7         The first, fourth, and fifth factors unequivocally *disfavor* dismissal under Rule

8    41(b).  As to the first factor, this case would be more expeditiously resolved (and

9    certainly not less so) if Reunion.com had not objected to the Court entering judgment on

10   the FAC under Rule 12(b)(6) consistent with its previous opinion, as Plaintiffs proposed,

11   so appellate proceedings could commence immediately.  Forcing the Court to resolve

12   all of the issues presented in Reunion.com's lengthy sanctions motions is hardly the

13   path of expeditious resolution.  As to the fourth factor, Reunion.com's only goal of

14   seeking dismissal by sanction under Rule 41(b) (as opposed to Rule 12(b)(6)) would be

15   to argue to the Court of Appeals that it should not address the merits of Plaintiffs' case

16   but solely whether dismissal by sanction under Rule 41(b) was an abuse of discretion.

17   Accordingly, this factor clearly disfavors involuntary dismissal under Rule 41(b).  Finally,

18   as noted above, the availability of the obvious alternative of dismissal under Rule

19   12(b)(6) without leave to amend makes the fifth factor also disfavor dismissal.

20        The second factor (docket management) also disfavors involuntary dismissal.

21   Reunion.com's unnecessary motion has "consumed large amounts of the court's

22   valuable time that it could have devoted to other major and serious criminal and civil

23   cases on its docket." *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992).  As the Ninth

24   Circuit has noted, "This factor is usually reviewed in conjunction with the public's interest

25   in expeditious resolution of litigation to determine if there is unreasonable delay." *In re*

26   *Eisen*, 31 F.3d 1447 (9th Cir. 1994).  Thus, this factor also disfavors dismissal under

27   Rule 41(b) for the same reasons that apply to the first factor.

28        Finally, the third factor (risk of prejudice to defendants) also does not favor

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

involuntary dismissal.   As described above, Reunion.com has not been improperly prejudiced by Plaintiffs' conduct except to the extent the pendency of any case is inherently "prejudicial," and the only current delay in the case being dismissed arises out of the Court needing to resolve Reunion.com's pending motions. *See Yourish*, 191 F.3d at 991 ("'Limited delays and the prejudice to a defendant from the pendency of a lawsuit are realities of the system that have to be accepted. . . .'") (quoting *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir.1984)).   In the context of Rule 41(b) motions, "'[a] defendant suffers prejudice if the plaintiff's actions . . . threaten to interfere with the rightful decision of the case.'" *Shumye v. Felleke*, No. C-06-3322 MMC, 2008 WL 4679920, at *7 (Oct. 21, 2008 N.D. Cal.) (quoting *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990)).   Here, despite Plaintiffs' allegedly sanctionable conduct, Reunion.com has already managed to win the Rule 12(b)(6) dismissal that it has sought.   Having to appeal that dismissal on the merits surely cannot be said to "interfere with the rightful decision of the case."

### 3.   Reunion.com's Rule 41(b) Motion Is Untimely.

Reunion.com's Rule 41(b) motion is an untimely effort to obtain dismissal by sanction.  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004) ("[A] Rule 41(b) dismissal is deemed a sanction for disobedience . . . .").  It was filed in violation of Local Rule 7-8(c), which states: "Any motion for sanctions, regardless of the sources of authority invoked, . . . must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate."   Specifically, Reunion.com argues that the Court should sanction Plaintiffs with dismissal for a laundry list of alleged violations dating back to the filing of the allegedly frivolous FAC in October of last year.[6]  Indeed, Defendant did not even move for sanctions immediately

---

[6] Reunion.com alleges that Plaintiffs violated several Local Rules, including 7-9(a), 7-9(c), and 7-3(d). *See* Def.'s Mot. at 3.   These untimely accusations are completely frivolous.   For example, Plaintiffs allegedly violated Local Rule 7-9(c) by seeking reconsideration of the Second Dismissal Order based upon no new relevant authority. *See* Def.'s Mot. at 3. In fact, Plaintiffs' Motion For Leave To File A Motion For Reconsideration (filed on January 15, 2009) was based on a new certification order by the Ninth Circuit in the *Kleffman* case. (*See* D.E. No. 56 at 2).   Indeed, in its Order of

1  after the filing of the SAC, which it contends constituted an act of fraud on the Court.

2  Instead, Defendant waited until after it filed its motion to dismiss and Plaintiffs filed their

3  opposition, to ensure that Plaintiffs' opposition would not contain arguments that would

4  undercut any sanctions motion.  As noted extensively in Defendant's own pleadings to

5  this Court, Reunion.com has not been shy about informing Plaintiffs that it believes their

6  conduct to be improper.  Yet Reunion.com improperly delayed seeking sanctions well

7  beyond the date upon which it knew the basis for its sanctions motions.

8          This requirement of promptly seeking sanctions is no mere formality.  It reflects

9  the official policy of this Court that disputes over misconduct by the parties or attorneys

10  to a case should not be permitted to fester and infect proceedings (as they have here)

11  and that parties should not be able to hold out the threat of sanctions (whether viable or

12  frivolous) throughout a case as a litigation tactic – as has happened here.   Rather,

13  parties must either promptly challenge conduct or waive their right to do so.  Because of

14  the poisonous nature of sanctions disputes, and because cases should be settled on

15  the merits rather than on the litigation conduct of the parties, this Court requires strict

16  adherence to its sanctions procedures. *See, e.g., Star Navigation Systems Group Ltd.*

17  *v. Aeromechanical Services Ltd.,* No. C-07-4820 MMC, 2008 WL 962150, at *1 (N.D.

18  Cal. Apr. 8, 2008) (denying sanctions motion as procedurally improper under Local Rule

19  7-8); *Pimentel v. Orloff*, No. C-08-0249 MMC, 2008 WL 4963049, at *2 (N.D. Cal. Nov.

20  19, 2008) (denying sanctions motion because it was not separately filed as required

21  under Local Rule 7-8(a)).   On grounds of untimeliness alone, most, if not all, of

22  Reunion.com's Rule 41(b) motion must be denied.[7]

23  _____

24  March 11, 2009, this Court granted Plaintiffs leave to file a motion for reconsideration
because of this new order. (D.E. No. 64 at 2).  Even if Plaintiffs did technically commit

25  the violations alleged (and Plaintiffs do not believe that they did), the law is clear that
not every violation of a Court Rule merits involuntary dismissal.  *See, e.g., Industrial*

26  *Bldg. Materials, Inc. v. Interchemical Corp.*, 278 F. Supp. 938, 949 (C.D. Cal. 1967).
("[D]ismissal of a case [under Rule 41(b)] is a drastic remedy which by its nature cannot
be appropriately applied to every case of failure to comply with an order of the Court.").

27  The Court has already stated that this case should be dismissed under Rule 12(b)(6).
That is more than remedy enough for the sort of hyper-technical violations alleged here.

28  [7] Even if the Court finds that Reunion.com was not untimely in challenging the SAC, that
pleading has now been withdrawn in compliance with Rule 11's safe harbor provision.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

### 4.   Reunion.com's *Nunc Pro Tunc* Argument Is Frivolous.

Not content with Rule 41(b) dismissal alone, Reunion.com asks that the Court back-date the dismissal order to be effective, *nunc pro tunc*, to the previous deadline for Plaintiffs to amend the First Amended Complaint. Not coincidentally, the *only* conceivable practical effect of such an action would be to give Reunion.com an argument, no matter how flawed, that Plaintiffs' deadline to appeal has passed. Reunion.com provides no legal authority for the issuance of such a *nunc pro tunc* order. Presumably this is because, as Reunion.com itself partially acknowledges, Ninth Circuit precedent does not support this request, and the courts that have considered this issue directly have rejected exactly this type of improper use of *nunc pro tunc* authority.

As Reunion.com itself acknowledges, the law in the Ninth Circuit is absolutely unambiguous that when a case is dismissed with leave to amend and the plaintiff does not amend, the dismissal is not subject to appeal until the Court places a separate entry of judgment on the docket.  *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).  In confirming this rule, the Ninth Circuit specifically rejected alternative rules in some other Circuits noting that such a rule is "easily applied . . . [,] requires only a modicum of diligence by the parties and the district court, avoids uncertainty, and provides for a final look before the arduous appellate process commences."  *Id.*  This is consistent with general Supreme Court precedent that rules relating to when a judgment is considered final and appealable should be clear and "should be interpreted to prevent loss of the right of appeal, not to facilitate loss." *Bankers Trust Co. v. Mallis*, 435 U.S.

---

While the use of this provision technically means only that sanctions may not be entered under Rule 11, many courts have found that the policy behind this safe harbor should extend to other forms of sanctions as well.  *See, e.g., Walker v. Mueller Industries, Inc.*, No. 05 C 2174, 2006 WL 2024338, at *4 (N.D. Ill. July 13 2006) (declining to award sanctions under 28 U.S.C. §1927 for "the very costs and fees that Plaintiff and Mr. Okesanya sought to avoid by complying with Mueller's [Rule 11 withdrawal] demand."); *Chatham Partners, Inc. v. Fidelity And Deposit Co. of Maryland*, 2001 WL 1262960, at *2 (S.D.N.Y. Oct. 19, 2001) ("[G]iven the policy considerations that gave rise to the adoption of Rule 11's safe harbor provision, it seems inappropriate to use 28 U.S.C. § 1927 to do what the Court cannot do under Rule 11.").  Indeed, parties who have acted in good faith but wish to avoid unnecessary Rule 11 litigation, like Plaintiffs here, would have little, if any, incentive to use the safe harbor provision if they would still have to deal with Rule 41(b) sanctions motions for the same conduct.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

381, 386 (1978) (citation omitted).  Because no separate entry of judgment has ever been entered on the docket, most recently at the request of the Defendant itself, Reunion.com acknowledges, as it must, that under binding Ninth Circuit precedent, Plaintiffs' time to appeal has not yet begun.  Nonetheless, in reliance on cases from other Circuits that were specifically rejected by *WMX Technologies, see* Def.'s Mot. at 18-19; 104 F.3d at 1136 (rejecting each of the cases cited by Reunion.com), and misrepresentations as to the holding of an older Ninth Circuit case,[8] Reunion.com suggests that the proper date for dismissal is actually the deadline for Plaintiffs to have filed an appeal of dismissal of the FAC, because that is when Reunion.com contends this case was effectively dismissed.

Logical inconsistency aside[9], this argument has no legal basis whatsoever, as

_____

[8] Reunion.com states as follows:

> While ordinarily a dismissal of a complaint unaccompanied by dismissal of the action is not final, such an order can be considered final and appealable if "the action could not be saved by any amendment of the complaint which the plaintiff could reasonably expect to make, thereby entitling plaintiff to assume that he had no choice but to stand on his complaint." *Ruby v. Sec'y of United States Navy,* 365 F.2d 385, 388 (9th Cir. 1966).  Here, because of Plaintiffs' counsels' actions subsequent to the First Dismissal, it has become clear that Plaintiffs' complaint *could not* be "saved by amendment," a fact which was clearly known to them from the start.

Def.'s Mot. at 18 (emphasis in original).  Reunion.com attempts to mislead the Court by omitting the full context of its quote from *Ruby.*  The full relevant passage is:

> An order which dismisses a complaint without expressly dismissing the action is not, except under special circumstances, an appealable order. . . . The *special circumstances* which will permit this court to regard such an order as final and appealable must be such as to make it clear that *the court determined* that the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make, thereby entitling plaintiff to assume that he had no choice but to stand on his complaint. . . . Examination of the record indicates that such special circumstances *do not exist* in this case. . . .
> [The District Court's order] indicates to us that plaintiff could possibly have saved his cause of action by amending his complaint.

*Ruby*, 365 F.2d at 387 (emphasis added; citations omitted).  Thus, read in full, *Ruby* stands for exactly the *opposite* position for which Reunion.com quotes it.  In *Ruby*, the relevant question was whether *the Court* initially determined that the case could not possibly be saved – creating an unambiguous date from which the time to appeal could run.  In *Ruby* (as here), the Court not only did not make such a determination, but affirmatively determined the opposite – that an amended complaint might be viable.  Thus, in *Ruby* (as here), the dismissal would *not* be final until a "subsequently-filed final order." *Id.*

[9] Defendant's request is blatantly inconsistent with its separate request that the Court strike the Plaintiffs' withdrawal of the SAC.  The only conceivable reason to back-date

1   Defense Counsel well knows.  Other Circuits that addressed this precise issue have

2   uniformly ruled that "a judge cannot affect the timeliness of an appeal by backdating his

3   orders." *Chambers v. American Trans Air, Inc.*, 990 F.2d 317, 318 (7th Cir. 1993);

4   *Transamerica Ins. Co. v. South*, 975 F.2d 321, 325-26 (7th Cir. 1992) (providing in-

5   depth explanation of why *nunc pro tunc* authority cannot be used to back-date final

6   judgment); *Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989)  ("The Trustee's

7   argument that since the district court's October 30, 1987 order was designated as *nunc*

8   *pro tunc*, the effective date for accruing the appellate period was June 30, 1986 and not

9   October 30, 1987, is misplaced.").

10      The Ninth Circuit expressly followed *Transamerica Ins. Co.* in finding that the

11   Court's *nunc pro tunc* powers are quite limited:

12      "Nunc pro tunc signifies now for then, or in other words, a thing is done
         now, which shall have the same legal force and effect as if done at [the]
13      time when it ought to have been done." *United States v. Allen*, 153 F.3d
         1037, 1044 (9th Cir.1998) (quoting Black's Law Dictionary 964 (5th
14      ed.1979)). The doctrine is considered part of the "inherent power of the
         court to make its records speak the truth." *Id.* We have emphasized that
15      the power is

16
17         a limited one, and may be used only where necessary to
           correct a clear mistake and prevent injustice. It does not
18         imply the ability to alter the substance of that which actually
           transpired or to backdate events to serve some other
19         purpose. Rather, its use is limited to making the record
           reflect what the ... court actually intended to do at an earlier
20         date, but which it did not sufficiently express or did not
           accomplish due to some error or inadvertence.
21

22      *United States v. Sumner*, 226 F.3d 1005, 1009-10 (9th Cir.2000) (internal
         quotation marks and citations omitted); *see also Transamerica Ins. Co. v.*
23      *South*, 975 F.2d 321, 325 (7th Cir.1992) (noting that "a nunc pro tunc
         order is typically used to correct clerical or ministerial errors," but as a
24      general rule does not enable the court to make "substantive changes
         affecting parties' rights").
25

26   *Singh v. Mukasey*, 533 F.3d 1103, 1110 (9th Cir. 2008).  Here, Reunion.com asks the

27   _____

28   such an order to a deadline linked to the FAC would be if the SAC were to be withdrawn
     – something steadfastly opposed by Defendant.  Defendant's frivolous and improper
     requests for relief are not even internally consistent.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   Court to use its *nunc pro tunc* power to remove Plaintiffs' rights to appeal. This is exactly

2   the sort of "substantive change[] affecting parties' rights" that the Ninth Circuit and other

3   Courts of Appeals have rejected. Defendant cites no case granting such relief, and fails

4   to bring the pertinent authorities to the attention of this Court. Accordingly, Defendant's

5   extraordinary request for a *nunc pro tunc* order should be rejected.

6                           **V.    CONCLUSION**

7        For all of the above reasons, Plaintiffs respectfully request that this Court deny

8   Motion To Strike Plaintiffs' Notice And For Involuntary Dismissal Pursuant To Fed. R.

9   Civ. P. 41(b).

10

11                                              Respectfully submitted by the attorneys
                                                for the Plaintiffs,
12   DATED:  August 21, 2009                     SHAPIRO HABER & URMY LLP

13                                              By: ___/s/ Todd S. Heyman_____

14
                                                SHAPIRO HABER & URMY LLP
15                                              Edward F. Haber (admitted *pro hac vice*)
                                                Todd S. Heyman (admitted *pro hac vice*)
16                                              Ian J. McLoughlin (admitted *pro hac vice*)
                                                Robert E. Ditzion (admitted *pro hac vice*)
17                                              53 State Street
                                                Boston, MA 02109
18                                              Telephone: (617) 439-3939
                                                Facsimile: (617) 439-0134
19                                              ehaber@shulaw.com
                                                theyman@shulaw.com
20                                              imcloughlin@shulaw.com
                                                rditzion@shulaw.com
21

22   KRONENBERGER BURGOYNE, LLP
     Henry M. Burgoyne, III (CA Bar No. 203748)
23   Karl S. Kronenberger (CA Bar No. 226112)
     Jeffrey M. Rosenfeld (CA Bar No. 222187)
24   150 Post Street, Suite 520
     San Francisco, CA 94108
25   Telephone:  (415) 955-1155
     Facsimile:  (415) 955-1158
26   hank@ KBInternetLaw.com
     karl@ KBInternetLaw.com
27   jeff@KBInternetLaw.com

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com