**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
hank@KBInternetLaw.com
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

**SHAPIRO, HABER & URMY LLP**
Edward F. Haber (admitted *pro hac vice*)
Todd S. Heyman (admitted *pro hac vice*)
Ian J. McLoughlin (admitted *pro hac vice*)
Robert E. Ditzion (admitted *pro hac vice*)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
theyman@shulaw.com
imcloughlin@shulaw.com
rditzion@shulaw.com

Attorneys for Plaintiffs

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VIOLETTA HOANG, LIVIA HSIAO, MICHAEL BLACKSBURG,** and **MATTHEW HALL**, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>**REUNION.COM, INC.**, a California corporation,<br><br>Defendant. | Case No. 08-CV-03518-MMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927**<br><br>DATE:  September 25, 2009<br>TIME:  9:00 a.m.<br>DEPT:  Courtroom 7, 19th Floor<br>JUDGE:  The Hon. Maxine Chesney |

**PLAINTIFFS' OPP. TO DEFENDANT'S MOTION FOR SANCTIONS**

1

**TABLE OF CONTENTS**

2

I. INTRODUCTION..............................................................................................1

3

II. STATEMENT OF ISSUES TO BE DECIDED.............................................2

4

III. STATEMENT OF FACTS AND PROCEDURAL HISTORY.......................2

5

A. Violations Of Professional Conduct Rules Regarding Decorum And Civility ....3

6

B. Improper Sanctions Threats Since the Outset Of This Litigation......................6

7

IV. ARGUMENT ...............................................................................................9

8

A. Defendant's Motion is Devoid of Record Support and Untimely Under Local Rule 7-8(c) .........................................................................................9

9

10

B. Defendant Confuses the Applicable Legal Standard For §1927 Motions.........9

11

C. Defendant Has Not Met Its Burden Under §1927...........................................11

12

D. Defendant's Request For *Sua Sponte* Rule 11 Sanctions is Wholly Inappropriate ...................................................................................................16

13

14

V. CONCLUSION ...........................................................................................16

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

**TABLE OF AUTHORITIES**

2

*B.K.B. v. Maui Police Dep't,* 276 F.3d 1091 (9th Cir. 2002)............................................ 10

3

*Barber v. Miller,* 146 F.3d 707 (9th Cir. 1998) ............................................................. 9, 16

4

*Buster v. Greisen*, 104 F.3d 1186 (9th Cir. 1997)............................................................ 11

5

*Chatham Partners, Inc. v. Fidelity And Deposit Co. of Maryland,* 2001 WL 1262960,

6
   (S.D.N.Y. Oct. 19, 2001) ............................................................................................ 14

7

*China Healthways Institute, Inc. v. Hsin Ten Enterprise USA, Inc.,* Nos. CV 02-5493

8
   LGB (JWJx), CV 02-7520 LGB (JWJx), 2003 WL 21982477

9
   (C.D.Cal. Mar. 12, 2003) ............................................................................................ 10

10

*Cook v. Peter Kiewit Sons Co.,* 775 F.2d 1030 (9th Cir. 1985) ...................................... 11

11

*Estate of Blas Through Chargualaf v. Winkler,* 792 F.2d 858, 860

12
   (9th Cir. 1986) ........................................................................................................ 11, 14

13

*Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.,* 515 F.3d 1019

14
   (9th Cir. 2008) ............................................................................................................ 11

15

*Friedlander v. Nims,* 755 F.2d 810 (11th Cir. 1985) ...................................................... 11

16

*G.C. and K.B Investments v. Wilson,* 326 F.3d 1096, 1110 (9th Cir. 2003)................... 11

17

*In re Keegan Mgmt. Co., Sec. Lit.,* 78 F.3d 431, 436 (9th Cir. 1996)............................ 10

18

*In re Peoro,* 793 F.2d 1048 (9th Cir. 1986).................................................................... 15

19

*Maddox v. Shroyer,* 302 F.2d 903 (D.C. Cir. 1962) ....................................................... 11

20

*Montgomery v. City of Ardmore,* 365 F.3d 926 (10th Cir. 2004) .................................... 11

21

*New England Surfaces v. E.I. DuPont de Nemours and Co.,* 558 F.Supp.2d 116

22
   (D. Me. 2008) ............................................................................................................. 14

23

*Roundtree v. U.S.,* 40 F.3d 1036 (9th Cir. 1994) ............................................................ 11

24

*Star Navigation Systems Group, Ltd. v. Aeromechanical Services Ltd.,* No. C-07-4820

25
   MMC, 2009 WL 1313208 (N.D. Cal. May 12, 2009)................................................... 10

26

*Trulis v. Barton,* 107 F.3d 685 (9th Cir. 1997) .............................................................. 15

27

*United States v. Blodgett,* 709 F.2d 608 (9th Cir. 1983) ................................................ 10

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBinternetLaw.com

*Wages v. Internal Revenue Svc.,* 915 F.2d 1230 (9th Cir. 1990) .................................. 15

*Walker v. Mueller Industries, Inc.,* No. 05 C 2174, 2006 WL 2024338,
    (N.D. Ill. July 13 2006) ............................................................................... 14

*Yagman v. Republic Ins.,* 987 F.2d 622 (9th Cir. 1993).................................. 11

*Zaldivar v. City of Los Angeles,* 780 F.2d 823 (9th Cir. 1986) ....................... 11

### Federal Statutes and Other Authorities

28 U.S.C. §1927.......................................................................................*passim*

Bus. & Prof. C. §17529.5.......................................................................... 13

State Bar of CA, Litigation Section's Mod. C. of Civ. & Prof Sec. 3(a)......................... 3

N.D.Cal. Local Rule 7-3, *et seq.* ..................................................................... 12

N.D.Cal. Local Rule 7-8(c) ................................................................... 2,7,9

N.D.Cal. Local Rule 7-9, *et seq.* ..................................................................... 12

N.D.Cal. Local Rule 11, *et seq.* ............................................................*passim*

Advisory Committee Notes to 1993 Amendments to Rule 11...................................... 6, 7

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.   INTRODUCTION

Defendant Reunion.com's Motion For Sanctions Pursuant to 28 U.S.C. §1927 In The Minimum Sum of $300,000, Jointly And, Severally Against Counsel For Plaintiffs, Henry M. Burgoyne, III, Karl S. Kronenberger, Jeffrey M. Rosenfeld, Edward F. Haber, Todd S. Heyman, Ian J. McLoughlin, And Robert E. Ditzion ("Def.'s Mot.") has no basis in law, fact, or equity and should be summarily rejected by this Court.  This motion is simply the culmination of a year's worth of unprofessional personal attacks and threats – including an escalating string of threatening emails – intended to intimidate Plaintiffs into dropping their claims so that Defendant can avoid an adjudication of this case on the merits.   These transparent attempts to use sanction threats and motions as a litigation tactic are barred by the Local Rules of this Court, condemned by the advisory notes to Rule 11, and, most importantly, completely unwarranted as Plaintiffs' have conducted themselves in good faith throughout this litigation with a single-minded focus of appropriately convincing this Court that Reunion.com's email marketing practices – condemned by consumers, watchdog groups, and others – violate applicable and enforceable state law.   Although Plaintiffs have been unsuccessful in their efforts and respectfully disagree with this Court's decisions, Defendant's contention that Plaintiffs have acted vexatiously and in bad faith has absolutely no record support, and Defendant cites none.

At Defendant's request, the Court withheld entry of final judgment so that Defendant could file, *inter alia*, a promised Rule 11 sanctions motion.  The Defendant did not do so and instead brings this sanctions motion pursuant to 28 U.S.C. §1927, which sets forth a much higher bar before sanctions may be awarded.  Defendant must show Plaintiffs' acted in subjective bad faith – demonstrating at a minimum reckless intent.  In an attempt to lower that bar, Defendant only pays lip service to the applicable standard, and relies primarily on cases involving Rule 11's more lenient standard for the award of sanctions.  Regardless, Plaintiffs' conduct would not warrant sanctions under //

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    either standard.[1]

2    However, because this motion seeks sanctions exclusively under §1927, the

3    focus must be on the Defendant's failure to make any showing whatsoever as to the

4    state of mind of Plaintiffs' Counsel.  That is hardly surprising, as Plaintiffs and their

5    counsel have prosecuted this case honestly and in good faith since its inception.

6    Defendant's contrary view is that Plaintiffs' misdeeds date back to the "inception of this

7    case" (*see* Def. Mot. at 13).  If Defendant is correct, then this motion is plainly barred

8    under Local Rule 7-8(c) which requires that sanctions motions be brought as soon as

9    the party learns the "circumstances that it alleges make the motion appropriate."  L.R. 7-

10   8(c).  That alone is grounds to deny the Defendant's untimely motion.

## II.   STATEMENT OF ISSUES TO BE DECIDED

12   The sole issue to be decided is: Whether Plaintiffs, in bad faith, "have so

13   multipli[ed] the proceedings in [this] case unreasonably and vexatiously" as to merit

14   sanctions under 28 U.S.C. §1927.

## III.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

16   The basic facts and procedural history of this case are set forth in Plaintiffs'

17   Opposition to Defendant's Motion to Strike Plaintiffs' Notice and For Involuntary

18   Dismissal Pursuant to Fed. R. Civ. P. 41(b).[2]  In addition, however, Plaintiffs must share

19   with this Court an aspect of the case which places the present motions in context, and,

---

[1] It should be emphasized that Defendant has made a perplexing and unusual decision by seeking sanctions under §1927 without also seeking sanctions under the more lenient standard of Rule 11.  First, it is inconsistent with its year-long campaign of threats and pronouncements to Plaintiffs' counsel and this Court, as described in detail *infra*.  Second, it cannot be explained by the Plaintiffs' withdrawal of their Second Amended Complaint ("SAC") pursuant to Rule 11's safe harbor provision because Defendant's draft Rule 11 motion targeted conduct that went well beyond the filing of the SAC.  *See* Exhibit 1 to the Declaration of Todd S. Heyman in Support of Plaintiffs' Oppositions to Defendant's Motion to Strike and For Involuntary Dismissal and Motion for Sanctions ("Heyman Decl.").  Plaintiffs note that Rule 11(c)(2) provides that "[i]f warranted, the court may award to **the prevailing party** the reasonable expenses, including attorney's fees, incurred for the motion."  (emphasis added).  There is no counterpart to this provision in §1927.

[2] In order to minimize redundancy in the Plaintiffs' filings, Plaintiffs incorporate that memorandum by reference, in full, to support Plaintiffs' arguments made throughout this memorandum.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   until now, the Court has had little occasion to observe.  Specifically, from the very

2   beginning of this case, Plaintiffs' counsel have been subject to a torrent of sanctions

3   threats and unfounded, unprofessional, and abusive accusations from one of

4   Defendant's counsel, Ronald Jason Palmieri, in both private correspondence and (in a

5   few limited instances) pleadings with the Court.  This conduct has not only been

6   upsetting to Plaintiffs' counsel and disruptive to their prosecution of this case; it also

7   violates the Court's rules and standards in several important ways: 1) It violates the

8   standards of decorum expected of attorneys practicing before this Court; 2) It violates

9   requirements that sanctions threats not be used as a litigation tactic; and 3) It affirms

10  that Defendant's counsel is fully aware of how untimely their own sanctions motions

11  now are.   Ironically, it is Mr. Palmieri who leads Defendant's sanctions charge.

12  Astonishingly, Mr. Palmieri even complains in the Defendant's sanctions motion that

13  Plaintiffs' counsel did not respond to these abusive communications.

14  **A.  Violations Of Professional Conduct Rules Regarding Decorum And Civility**

15  Local Rule 11-4(a)(4) states: "Every member of the bar of this Court and any

16  attorney permitted to practice in this Court under Civil L.R. 11 must:  . . . Practice with

17  the honesty, care, and *decorum* required for the fair and efficient administration of

18  justice." (emphasis added).  Further, the State Bar of California Litigation Section's

19  Model Code of Civility and Professionalism[3] sets forth aspirational guidelines for civility.

20  Section 3(a) of this Model Code states: "A lawyer should be courteous and respectful in

21  all of his/her oral and written communications. A lawyer should avoid hostile,

22  demeaning, abusive, threatening or humiliating words in oral and written

23  communications with other counsel. . . ."  The following emails from Defendant's primary

24  counsel, Ronald Jason Palmieri, which were written almost entirely in capital letters as

25  they appear below, repeatedly violated these important professional norms:

26  • On August 28, 2008, in response to an email from Plaintiffs' Counsel Hank

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

---

28  [3] Available at http://www.calbar.ca.gov/calbar/pdfs/sections/litigation/2006-01_model-code.pdf.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Burgoyne asking for the courtesy of a scheduling adjustment, Mr. Palmieri refused this request, accusing Plaintiffs' Counsel of simply trying to "MAKE A FAST BUCK," and ending with the warning to "PLEASE HAVE YOUR OPPOSITION TIMELY SERVED OR, IN THE ALTERNATIVE, PLEASE DISMISS THIS FIRVILOUS [sic] AND EXTORTIONISTIC ACTION OR PROCEED AT YOUR OWN RISK.  IF YOU DECIDE TO MOVE THE COURT FOR A CONTINUANCE AND ARGUE [THAT] WE DECLINED YOUR REQUEST, WE INSIST YOU ATTACH THIS EMAIL SO THE COURT IS PROPERLY INFORMED OF ALL OF OUR REASONS THEREFOR."  (Heyman Decl. ¶9, Ex. 2.)

- On October 23, 2008, Mr. Palmieri sent via email to all of Plaintiffs' counsel a rambling two-page "NOTICE TO COUNSEL UNDER FRCP RULE 11(b)" lecturing Plaintiffs' counsel on his view of the law and accusing Plaintiffs' counsel of substantial unprofessional behavior and numerous rules violations (including Rule 11).  This "Notice" ended with:

> As I told you at the close of our meeting on August 6. 2008 in San Francisco, I believed then, and more firmly believe now, that this case is nothing but an attempt at a financial shakedown of my client.  I told you then, and I am telling you again, we will not succumb to such tactics.  I strongly urge you not file a First Amended Complaint in light of all of the foregoing and, if you are so inclined to continue this type of practice, seek another, less principled, victim.

(Heyman Decl. ¶9, Ex. 3.)

- On October 23, 2008 and October 24, 2008, Plaintiffs' counsel attempted to reach agreement on a Joint Case Management Statement.  As the attached email chain demonstrates, while Plaintiffs' counsel politely attempted to reach a consensus, Mr. Palmieri changed the email subject header to "YOUR PROPOSED ABSURD STATEMENT" and provided comments such as: "ARE YOU OUT OF YOU MIND WITH THAT STATEMENT ABSURD STATEMENT [sic]. . . IT IS RIDDLED WITH MISTATEMENTS."; "YOUR EMAIL AFTER 4:00

PM ON MONDAY SHOULD HAVE INCLUDED YOUR DRAFT, IT DID NOT. WHY IS THAT, I WONDER?  CAN YOU SPELL SANDBAG?"; and "FINALLY, I ASSUME, DESPITE MY NOTICE UNDER TULE [sic] 11(b), THAT YOU INTEND TO FILE A FIRST AMENDED COMPLAINT.  I AGAIN REITERATE THE POSITIONS TAKE [sic] IN MY NOTICE THAT YOU DO SO AT YOUR OWN SIGNIFICANT FINANCIAL RISK."  (Heyman Decl. ¶9, Ex. 4.)

- On October 27, 2008, in response to a continuing effort to draft the Joint Case Management Statement, Mr. Palmieri wrote: "HANK – HOW CAN YOU PRESENT ME WITH AN 11 PAGE STATEMENT AND IN GOOD FAITH, WITHOUT SMIRKING TO YOURSELF, TELL ME TO KEEP IN MIND WE HAVE TO DO CUTTING." (Heyman Decl. ¶9, Ex. 5.)

- In several emails exchanged on October 29, 2008, while Plaintiffs' counsel was still trying to coordinate the same Joint Case Management Statement, Mr. Palmieri added "MORE PLAINTIFFS' GAMES" to the email subject line and noted: "YOU STILL WANT US TO RESPOND IN A VACUUM, WHICH I GUESS YOU TRICK YOUR OTHER VICTIMS INTO DOING.  BUT NOT US." (Heyman Decl. ¶9, Ex. 6.)  Mr. Palmieri subsequently accused Plaintiffs' counsel of lying to him and then added a lecture on bar rules noting: "VIOLATION OF THIS DIRECTIVE WILL HAVE SEVERE CONSEQUENCES INCLUDING COMPLAINTS TO THE COURT AND BAR." (*Id.*)

- On November 19, 2008, in response to a routine scheduling question, Mr. Palmieri sent the following email: "AS USUAL, ANDNOT [sic] AT ALL SURPRISING TO ME, YOUR PURPORTED EXTENSTSION [sic] OF COURTESY, AS REQUESTED BY MR. HOFFMAN [another attorney for Defendant], APPEARS NOT TO BE A COURTESY, BUT A QUID PRO QUO...LIKE BLACKMAIL OR EXTORTION TO DISMISS A SUIT WITH NO MERIT FOR BLOOD MONEY."  (Heyman Decl. ¶9, Ex. 7.)  It ended with another reference to Plaintiffs' "FRIVILOUS [sic] ACTION" and, "LET'S SEE IF YOU ARE

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    AS RUDE TO MR. HOFFMAN AS YOU ARE TO ME." (*Id.*)

2    • On May 12, 2009, in a series of emails regarding a routine logistical matter, Mr.

3    Palmieri wrote: "AS USUAL HANK, ALWAYS A PLEASURE TO DEAL WITH

4    YOUR CANTANKEROUS POSITIONS. . . .PERHAPS YOU CAN PASS THIS

5    ON TO MR. HABER, WHO IS FAR MORE AMICABLE AND PROFESSIONAL

6    WITH THESE THINGS.  CHEERS...RJP." (Heyman Decl. ¶9, Ex. 8), and then

7    later commented, "DO AS YOU WILL, YOU ALWAYS DO.  I AM SURE YOU

8    TRIED TO POISON OUR RELATIONSHIP WITH THE CLERK, BUT VENOM IS

9    SOMETHING WHICH YOU COME BY NATURALLY IN YOUR PRACTICE IN

10   UNFOUNDED  CASES  LIKE  THIS.    AFTER  YOU  CONFER  WITH  THE

11   MULTIPLE ATTORNEYS YOU NEED TO IN ORDER TO MAKE A SIMPLE

12   DECISION, GET ME A DRAFT FOR MY REVIEW." (*Id.*)

13   • On June 24, 2009, Mr. Palmieri sent an additional "FURTHER AND FINAL

14   NOTICE TO COUNSEL UNDER FRCP RULE 11(b)." (Heyman Decl. ¶9, Ex. 9.)

15   This email repeated the previous accusations of Rule 11 violations and again

16   accused Plaintiffs' counsel of pursuing "nothing but an attempt at a financial

17   shakedown of my client." (*Id.*[4])

18   **B. Improper Sanctions Threats Since The Outset Of This Litigation**

19       As reflected in the emails quoted above and attached as Exhibits to the Heyman

20   Declaration, Defendant's counsel has repeatedly threatened to seek sanctions under

21   Rule 11 against Plaintiffs' counsel since the inception of this litigation.  It is improper to

22   use the threat of sanctions as a litigation tactic, as Defendant's counsel has clearly

23   done.  The Advisory Committee Notes to the 1993 Amendments to Rule 11 state:

24   _____

25   [4]  Defendant has made similar (if somewhat tamer) allegations in Court filings even
     before the outrageous allegations in the current motions before this Court.   For

26   example: In its reply in support of its motion to dismiss the First Amended Complaint,
     Defendant argued that Plaintiffs were engaging in a "litigation tactic, crafted to keep

27   damaging facts from coming to light until Plaintiffs could extort a hefty settlement
     through the threat of a needless and protracted discovery fishing expedition," (D.E. No.
     53 at 8); questioned Plaintiffs' compliance with Rule 11, *id.* at 9; and accused Plaintiffs

28   of filing a "nuisance suit to exact money for its [sic] attorneys." *Id.* at 13.

Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). . . . Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, [or] to increase the costs of litigation . . . .

Advisory Notes to Rule 11, 1993 Amendments, Subdivisions (b) and (c).  Moreover, the local rules of this Court effectively preclude a party from continuously holding out a threat of sanctions throughout the litigation to intimidate a party into dropping claims. Local Rule 7-8(c) requires that a party either file a sanctions motion "as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate" or waive any such contention.  Defendant unabashedly ignored these mandates throughout this litigation, repeatedly claiming conduct was sanctionable and threatening Plaintiffs that they must drop their claims, but never filing any sanctions motion until after it was clear that Plaintiffs would not abandon the good faith prosecution of their claims either before this Court or the Court of Appeals.

The chronology of Defendant's improper (written, not oral) sanctions threats is as follows:

- As noted above, Mr. Palmieri sent an email on October 23, 2008 in which he threatened to bring Rule 11 sanctions unless Plaintiffs' counsel dismissed this action. (*See* Heyman Decl. ¶9, Ex. 3.)  In that email, he indicates that he had threatened to file Rule 11 sanctions at a meeting on August 8, 2008. (*Id.*)

- As quoted above, Mr. Palmieri threatened Plaintiffs' counsel on August 28, 2008 to dismiss the case "OR PROCEED AT YOUR OWN RISK." (Heyman Decl. ¶9, Ex. 2.)

- On October 23, 2008, in response to a question regarding scheduling, Mr. Palmieri sent an email warning: "UNDER SEPARATE COVER, I WILL BE GIVING YOUR CO-COUNSEL NOTICE UNDER FRCP RULE 11(b) FOR YOUR SERIOUR CONSIDERATION BEFORE ANOTHER FRIVILOUS [sic] PLEADING IS FILED." (Heyman Decl. ¶9, Ex. 10.)

- As quoted above, On October 23, 2008 and October 24, 2008, Mr. Palmieri

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

threatened in a separate email exchange to bring Rule 11 sanctions. (Heyman Decl. ¶9, Ex. 4.)

- In its part of an October 28, 2008 Joint Case Management Statement, Defendant stated *to the Court*: "Plaintiffs' counsel has been given notice that Defendant shall also seek sanctions in accordance with FRCP, Rule 11(b) after notice and hearing thereon." (D.E. No. 41 at 8.)

- As quoted above, on October 29, 2008, Mr. Palmieri threatened "COMPLAINTS TO THE COURT AND BAR" if Plaintiffs' counsel did not follow his directive. (Heyman Decl. ¶9, Ex. 6.)

- On November 24, 2008, Mr. Palmieri sent an email to Plaintiffs' counsel in which he threatened to file Rule 11 sanctions unless Plaintiffs' counsel dismissed this action. (Heyman Decl. ¶9, Ex. 11.)

- As noted above, in its December 3, 2008 reply in support of its motion to dismiss the First Amended Complaint, Defendant questioned Plaintiffs' counsel's compliance with Rule 11. (D.E. No. 53 at 9.)

- On February 24, 2009, in response to a routine question about a case management statement, Mr. Palmieri again threatened to bring Rule 11 sanctions unless Plaintiffs' counsel dismissed this action. (Heyman Decl. ¶9, Ex. 12.)

- In its part of a February 27, 2009 Joint Case Management Statement, Reunion.com stated *to the Court*: "Defendant has given multiple notices relating to its intention to file a Motion under Rule 11 relating to the filing and prosecution of this case." (D.E. No. 62 at 5.)

- On June 24, 2009, as quoted above, Mr. Palmieri again threatened Plaintiffs' counsel with Rule 11 sanctions. (Heyman Decl. ¶9, Ex. 9.)

While the advisory notes recommend informal notice be given to the adverse party before serving a Rule 11 motion, the repeated threats and demands made over the past year are in no way consistent with the "spirit of Rule 11's advisory committee notes" as

Defendant contends. (Def. Mot. at 13.[5]) Such threats are precisely what the Advisory Notes condemn as an improper use of Rule 11 as an intimidation tactic aimed at coercing a party into dropping fairly debatable contentions and claims. Moreover, such conduct was in violation of Local Rule 7-8(c) which requires a party to file a sanctions motion at the time it learns of the allegedly wrongful conduct, and not dangle such threats over its adversary's head throughout the litigation.

## IV.   ARGUMENT

### A. Defendant's Motion Is Devoid of Record Support and Untimely Under Local Rule 7-8(c)

Plaintiffs note at the outset of their argument that Defendant's sanctions motion has no record support, and also should be denied as untimely in violation of Local Rule 7-8(c), which states: "Any motion for sanctions, regardless of the sources of authority invoked, . . . must be made as soon as practicable after the filing party learns of the circumstances that it alleges make the motion appropriate." However, in an effort to minimize repetition in Plaintiffs' opposition memoranda to Defendant's sanctions motions, Plaintiffs refer this Court to Plaintiffs' Opposition to Defendant's Motion to Strike Plaintiffs' Notice and For Involuntary Dismissal Pursuant to Rule 41(b), which contains a detailed recitation of the procedural history of this action and accompanying legal argument that, in addition to the arguments in this brief, demonstrates Plaintiffs' conduct was always carried out in good faith, and that Defendant's sanctions motions are untimely under Local Rule 7-8(c).

### B. Defendant Confuses the Applicable Legal Standard For §1927 Motions

28 U.S.C. §1927 states: "Any attorney or other person admitted to conduct cases

---

[5] Moreover, the law is very clear that such "informal warnings" have no legal significance under Rule 11. *Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998) ("It would therefore wrench both the language and purpose of the amendment to the Rule to permit an informal warning to substitute for service of a motion"). The Defendant did not actually serve a draft Rule 11 motion on Plaintiffs, as required under the Rule, until after Plaintiffs had filed their opposition to Defendant's motion to dismiss the Second Amended Complaint. As Barber makes clear, that is the operative warning or notice for Rule 11 purposes.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[6]   As this Court has previously noted: "[A]n award of sanctions under §1927 must be supported by a finding of 'subjective bad faith.'" *Star Navigation Systems Group, Ltd. v. Aeromechanical Services Ltd.*, No. C-07-4820 MMC, 2009 WL 1313208 (N.D. Cal. May 12, 2009) (denying motion for sanctions under §1927 because requisite state of mind was not shown) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002)).   "'Subjective bad faith . . . is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.'"   *B.K.B.*, 276 F.3d at 1107 (quoting *In re Keegan Mgmt. Co., Sec. Lit.*, 78 F.3d 431, 436 (9th Cir. 1996)).   The requirement of subjective bad faith is extremely rigorous.   Indeed, even the pursuit of a frivolous action, which this case certainly is not, "'does not of itself establish bad faith'" sufficient to permit a district court to impose sanctions under section 1927."   *Estate of Blas Through Chargualaf v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986) (quoting *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983)).

Although Defendant acknowledges the "subjective bad faith" standard, it repeatedly confuses the standards for Rule 11 and §1927 in its briefing.   The distinction between the two is crucial because "[t]he standard for imposing sanctions under Rule 11 is different from the standard for imposing sanctions under Section 1927. Rule 11 sanctions are assessed under an objective standard. . . . A violation of Rule 11 does not require subjective bad faith. . . . By contrast, Section 1927 sanctions are subject to a higher standard: Section 1927 sanctions must be supported by a finding of subjective bad faith."   *China Healthways Institute, Inc. v. Hsin Ten Enterprise USA, Inc.*, Nos. CV

---

[6] Because this statute only refers to conduct that "multiplies the proceedings," it does not apply to initial pleadings in a case.   *In re Keegan Management Co., Securities Litigation*, 78 F.3d 431, 435 (9th Cir. 1996).   Defendant's request for fees since the inception of this case, Def.'s Mot. at 18, is thus improper.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

02-5493 LGB (JWJx), CV 02-7520 LGB (JWJx), 2003 WL 21982477, at *12 (C.D.Cal. Mar. 12, 2003 (citing *Yagman v. Republic Ins.,* 987 F.2d at 628 and *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir. 1986)).   As one example of Defendant's inappropriate reliance on Rule 11 law, Defendant quotes *G.C. and K.B Investments v. Wilson*, 326 F.3d 1096, 1110 (9th Cir. 2003) for the proposition: "Whether a paper is filed for an improper purpose is 'tested by objective standards.'" (Def.'s Mot. at 11.) That case specifically dealt with Rule 11 and does not apply to §1927.[7]   As another example, Defendant argues: "The Ninth Circuit has held that, '[w]ithout question, *successive complaints based upon propositions of law previously rejected* may constitute harassment....' *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986)." (emphasis added by *Defendant*.)   **Defendant's "...." replaced the words "under Rule 11."** See *Zaldivar*, 780 F.2d at 832.  In fact, the law in the Ninth Circuit **covering §1927** is clear that the mere fact that a party is "rearguing previously rejected issues *is not sufficient evidence of bad faith*" to merit sanctions under §1927.  *Estate of Blas*, 792 F.2d at 861 n.4.[8]

**C. Defendant Has Not Met Its Burden Under §1927**

Defendant has not offered any evidence that Plaintiffs or their counsel acted in "subjective bad faith."[9]  Plaintiffs' counsel's conduct in this case suggests nothing other

---

[7] Indeed, the quotation 'tested by objective standards' comes from a section in *Zaldivar* that specifically explains that the "improper purpose" test of Rule 11 "is more comprehensive" than the test for violations of §1927. (780 F.2d at 83.)

[8] In fact, most of Defendant's argument is based on cases that purportedly provide examples of conduct meriting §1927 sanctions but in reality do not even address §1927 or its requirements: *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019 (9th Cir. 2008) (California state malicious prosecution law); *Buster v. Greisen*, 104 F.3d 1186 (9th Cir. 1997) (Rule 11 sanctions); *Roundtree v. U.S.*, 40 F.3d 1036 (9th Cir. 1994) (Rule 11 sanctions); *Cook v. Peter Kiewit Sons Co.*, 775 F.2d 1030 (9th Cir. 1985) (Rule 11 sanctions); *Montgomery v. City of Ardmore*, 365 F.3d 926 (10th Cir. 2004) (Rule 11 sanctions); *Friedlander v. Nims*, 755 F.2d 810 (11th Cir. 1985) (does not address sanctions standards under any Rule or statute);  *Maddox v. Shroyer*, 302 F.2d 903 (D.C. Cir. 1962) (does not address sanctions standards under any Rule or statute).

[9] At one point, Defendant even concedes that it has not made the required showing when commenting that the record evidence would support a finding that Plaintiffs'

1  than a vigorous (albeit unsuccessful) effort to convince the Court of the merits of

2  Plaintiffs' arguments.[10]   Plaintiffs' pleadings have all been prompted by the need to

3  address new arguments.  Indeed, both of the two bases on which dismissal now lies –

4  failure to plead all of the elements of common law fraud, particularly reliance and harm

5  (and thus avoid preemption) and lack of standing – were raised *sua sponte* by the Court

6  over the course of several rounds of pleadings.  At each step, the Court appropriately

7  allowed Plaintiffs the chance to address these new arguments (which had never been

8  raised by Defendant).  Although Defendant repeatedly argued at each instance that

9  Plaintiffs' pleadings violated earlier orders of the Court, the Court (which would

10  presumably be sensitive to violations of its own orders) has always allowed Plaintiffs to

11  proceed and has never once even hinted that Plaintiffs were in any way out of line.

12      Whether because it fails to understand the legal standard, or it is deliberately

13  seeking to mislead the Court, Defendant never presents any facts or cogent argument

14  on the question of Plaintiffs' subjective bad faith.  To the extent that there is any

15  argument on intent at all, Defendant primarily points to the supposedly objectively

16  frivolous nature of Plaintiffs' pleadings as clear evidence of bad intent.[11]   However, as

17  _____

18  arguments may only "have been unreasonable."  (Def. Mot. at 13.)  Defendant is wrong
    in contending that Plaintiffs' conduct has been "unreasonable," but even if Defendant

19  were correct, that would plainly be insufficient to support an award of sanctions under
    §1927.

20  [10]  In addition to attacking the merits of Plaintiffs' pleadings, Defendant also alleges

21  hyper-technical violations of Local Rules 7-9(c), 7-3(d), and 7-9(a). (Def.'s Mot. at 2.)
    These arguments for sanctions are obviously in violation of Local Rule 7-8(c) given the

22  alleged misconduct occurred long ago.  Moreover, the Court did not take issue with any
    of Plaintiffs' filings, and always resolved the disputes at issue without any suggestion

23  that any conduct was improper.  Even if Plaintiffs' Counsel had committed a technical
    violations of one of these rules (which they do not believe they did), there is no evidence

24  in the record which would suggest that Plaintiffs' Counsel's  actions were not made in
    good faith in an effort to convince the Court of the merits of their contentions.  Plaintiffs

25  certainly did not intend to violate any rules of this Court, and, regardless, any such
    violation standing alone would not rise to the level that would merit an award of

26  sanctions under §1927, given its subjective bad faith requirement.

27  [11]  Defendant fails to offer any specific evidence of improper intent or motive.  The
    overarching theme of Defendant's brief is that Plaintiffs' counsel have intentionally

28  dragged out what they have always known to be a frivolous case for purposes of
    harassment as part of an economic shakedown.  However, there is no evidence

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   noted above, the standard is not objective bad conduct, but subjective bad faith.

2   Equally important, while Plaintiffs' counsel's arguments on the merits may not ultimately

3   prevail, they are hardly frivolous, despite Defendant's relentless drum-beat to the

4   contrary.  Two sister Courts from the same bench have specifically disagreed with this

5   Court on the question of preemption and adopted the arguments advanced by Plaintiffs'

6   counsel. (*See* D.E. Nos. 69, 70.)  This fact alone irrefutably demonstrates that Plaintiffs'

7   counsel's arguments are at least colorable.  Moreover, Plaintiffs' counsel respectfully

8   note that this Court has never expressly addressed Plaintiffs' counsel's argument that,

9   like numerous other consumer protection statutes such as the Truth in Lending Act, Cal.

10  Bus. & Prof Code § 17529.5 itself creates Article III standing for those who are victims

11  of the activity that it prohibits, regardless of whether there was any additional injury

12  beyond the violation of their statutory rights.

13          Plaintiffs' counsel recognizes that there is conceivably one area where the Court

14  may have concerns: Plaintiffs' counsel's decision to not plead specific individualized

15  injury in the Second Amended Complaint despite having earlier said that they were

16  prepared to do so.  As explained in Plaintiffs' opposition to Defendant's Rule 41(b)

17  motion, Plaintiffs' counsel changed their minds.  They never lied to the Court, and they

18  did indeed intend to amend the complaint as they had said that they were prepared to

19  do.  However, they thereafter reconsidered and determined that such an amendment

20  would be not be the best course to follow.  Most importantly, as the Court pointed out

21  during the July 10, 2009 Case Management Conference, there would be no conceivable

22  motive for Plaintiffs' counsel to lie to the Court about their intent since the Court would

23  obviously see the Second Amended Complaint as filed.[12]

24  whatsoever to support this allegation.  Other than a genuine belief that they might
    convince the Court to change its mind on the merits of the arguments, Plaintiffs' counsel
25  would have no motive to extend a costly and time-consuming motion to dismiss
    practice.
26  [12] It is ironic that Defendant moves for sanctions for allegedly inappropriate changes of
27  mind as to intended pleadings to be filed when Defendant's counsel twice informed the
    Court in writing that it intended to file a Rule 11 motion, (*see* D.E. Nos. 41 at 8; 62 at 5,)
28  and also so advised the Court orally at the recent telephonic Case Management
    Conference.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   Plaintiffs' counsel also notes that they have withdrawn the Second Amended

2   Complaint under the safe harbor provisions of Rule 11.  While the use of this provision

3   technically only bars the imposition of Rule 11 sanctions related to the Second

4   Amended Complaint, many courts have frowned on parties using §1927 sanctions to

5   side-step the policies behind the Rule 11 safe harbor.  *See, e.g., New England Surfaces*

6   *v. E.I. DuPont de Nemours and Co.*, 558 F.Supp.2d 116, 124 (D. Me. 2008) (providing

7   lengthy analysis of why §1927 sanctions should not be used to side-step Rule 11's

8   procedural protections); *Walker v. Mueller Industries, Inc.*, No. 05 C 2174, 2006 WL

9   2024338, at *4 (N.D. Ill. July 13 2006) (declining to award under §1927 "the very costs

10  and fees that Plaintiff and Mr. Okesanya sought to avoid by complying with Mueller's

11  [Rule 11 withdrawal] demand."); *Chatham Partners, Inc. v. Fidelity And Deposit Co. of*

12  *Maryland*, 2001 WL 1262960, at *2 (S.D.N.Y. Oct. 19, 2001) ("[G]iven the policy

13  considerations that gave rise to the adoption of Rule 11's safe harbor provision, it

14  seems inappropriate to use 28 U.S.C. §1927 to do what the Court cannot do under Rule

15  11.")  Indeed, parties like Plaintiffs, who have acted in good faith but wish to avoid

16  unnecessary Rule 11 litigation by withdrawing pleadings, would have little, if any,

17  incentive to use the safe harbor provision if they might still face §1927 sanctions for the

18  same conduct.

19  The §1927 cases that Defendant cites do not advance its argument.  In fact, one

20  of their cases actually supports Plaintiffs' counsel's position.  In *Estate of Blas*, the Court

21  of Appeals reversed the granting of sanctions under §1927 for what the District Court

22  had deemed an unreasonable motion to reconsider an earlier order. 792 F.2d at 859.

23  The Ninth Circuit reviewed the record and found that "Plaintiff's motion to reconsider

24  was not frivolous, and there is no evidence that the motion was filed in bad faith." *Id.* at

25  860.  Of most relevance to Defendant's arguments here, the Ninth Circuit held:

26      The defendant contends that … advancing arguments previously raised
        and rejected constitutes harassment. On the contrary, that case held that
27      rearguing previously rejected issues is not sufficient evidence of bad faith.
        … Raising previously rejected arguments may be evidence of an intent to
28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> harass in some circumstances; however, such is not the case here. The parties had not addressed previously the first three arguments, and the fourth issue arose from the court's ambiguous order.

*Id.* at 861 n.1 (citations omitted).  Similarly, here, Plaintiffs' First Amended Complaint and motion for reconsideration were intended to address the issues of common law fraud (and the *Mummagraphics* case) and standing – neither of which was previously addressed by the parties.  Plaintiffs' Second Amended Complaint (since withdrawn) was intended to address the issue of standing based on the violation of a statutory right alone – which the Court appears to have rejected by implication but has never expressly explain why the authorities cited by Plaintiffs on this issue are not applicable. Defendant's other §1927 cases all involve conduct markedly different from that in this case.[13]

    Because an objective view of Plaintiffs' counsel's conduct suggests only that they have merely tried to convince the Court of the merits of their more than colorable arguments, and because Defendant does not offer any cogent analysis suggesting a different intent, Defendant has utterly failed to meet the requirements of §1927.[14]

---

[13] *See Trulis v. Barton*, 107 F.3d 685 (9th Cir. 1997) (holding §1927 sanctions appropriate where attorney pursued a case on behalf of clients who directly asked him to dismiss the litigation and where the attorney also knew that continued litigation was explicitly barred by a Bankruptcy Court order); *In re Peoro*, 793 F.2d 1048 (9th Cir. 1986) (affirming §1927 sanctions issued in three separate Bankruptcy Court proceedings and affirmed in three separate District Court proceedings all addressing efforts to relitigate a bankruptcy matter that had previously been unambiguously and definitively resolved in yet a different separate case); *Wages v. Internal Revenue Svc.,* 915 F.2d 1230 (9th Cir. 1990) (affirming §1927 sanctions against plaintiff who: asserted that garnishment of paycheck violated her first, fourth, fifth, seventh, eighth, ninth, and fourteenth amendment rights by depriving her of liberty and property through extortion, theft, fraud, and coercion; had her case dismissed for failure to state a claim, defective service, sovereign immunity, and  other grounds; and then filed a substantially similar amended complaint despite explicit guidance from the Court that any amendment would be futile).

[14] Plaintiffs offer two final points.  First, should the Court disagree with Plaintiffs and find that Plaintiffs' counsel should be sanctioned, Plaintiffs counsel state here that Jeffrey M. Rosenfeld, Ian J. McLoughlin, and Robert E. Ditzion – Associates at the two firms representing Plaintiffs – had virtually no role in making the substantive decisions challenged by Defendant.  The remaining attorneys – Partners at these two firms – take full responsibility for these decisions.  Second, Defendant's submissions detailing their

**PLAINTIFFS' OPP. TO DEFENDANT'S MOTION FOR SANCTIONS**

### D. Defendant's Request For *Sua Sponte* Rule 11 Sanctions Is Wholly Inappropriate.

Too timid to move for sanctions under Rule 11, which unlike §1927 permits the Court to award the prevailing party attorney's fees, Defendant argues that that the Court "should" *sua sponte* issue an order under Rule 11(c)(3) to show cause why Plaintiffs' counsel should not pay all of Defendant's expenses and fees since the inception of this case. Aside from the fact that an order is hardly "*sua sponte*" if the Defendant requests it, this request is improper for at least two reasons.[15]   First, for all of the reasons discussed above, Plaintiffs' counsel have done nothing to merit sanctions under any rule, and the Court has specifically permitted all of the pleadings – over Defendant's objection – that Defendant contends were improper.

Second, in its request, Defendant focuses the Court's attention on Plaintiffs' conduct as to the Second Amended Complaint (which clearly does not date back to the "inception of this case"). (Def.'s Mot. at 17-18.)   However, Defendant itself could not move for sanctions under Rule 11(c)(2) related to the Second Amended Complaint because Plaintiffs took advantage of Rule 11(c)(2)'s safe harbor and withdrew the Second Amended Complaint. The safe harbor provision was designed to prevent Rule 11 litigation by providing parties who withdrew challenged pleadings protections from sanctions. *See Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998).   Sanctioning conduct under Rule 11(c)(3) that could not be sanctioned under Rule 11(c)(2) would be entirely contrary to the policies behind the safe harbor provision.

### V.   CONCLUSION

specific fee request under §1927 is premature. Should the Court disagree with Plaintiffs and find that Plaintiffs' counsel should be sanctioned and fees awarded, Plaintiffs' counsel reserve the right to contest the amount of any fee request and conduct appropriate discovery.

[15] Even if sanctions are appropriate (and they are not), Defendant is incorrect that it can recover fees under Rule 11(c)(3).   While the Court may order parties to pay a penalty into the Court without a Rule 11 motion, Rule 11(c)(4) allows for fees to be paid to other parties only if sanctions are "imposed on motion" – not if they are granted on the Court's own initiative. *Barber*, 146 F. 3d at 711.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    For all of the above reasons, Plaintiffs respectfully request that this Court deny

2  Defendant's Motion For Sanctions Pursuant to 28 U.S.C. §1927 In The Minimum Sum

3  of $300,000, Jointly And, Severally Against Counsel For Plaintiffs, Henry M. Burgoyne,

4  III, Karl S. Kronenberger, Jeffrey M. Rosenfeld, Edward F. Haber, Todd S. Heyman, Ian

5  J. McLoughlin, And Robert E. Ditzion, *in toto.*

6

7                                           Respectfully submitted by the attorneys
                                            for the Plaintiffs,

8  DATED:  August 21, 2009                  SHAPIRO HABER & URMY LLP

9                                           By:  ___/s/ Todd S. Heyman_____

10

11                                          SHAPIRO HABER & URMY LLP
                                            Edward F. Haber (admitted *pro hac vice*)
12                                          Todd S. Heyman (admitted *pro hac vice*)
                                            Ian J. McLoughlin (admitted *pro hac vice*)
                                            Robert E. Ditzion (admitted *pro hac vice*)
13                                          53 State Street
                                            Boston, MA 02109
14                                          Telephone: (617) 439-3939
                                            Facsimile: (617) 439-0134
15                                          ehaber@shulaw.com
                                            theyman@shulaw.com
16                                          imcloughlin@shulaw.com
                                            rditzion@shulaw.com
17

18  KRONENBERGER BURGOYNE, LLP
    Henry M. Burgoyne, III (CA Bar No. 203748)
19  Karl S. Kronenberger (CA Bar No. 226112)
    Jeffrey M. Rosenfeld (CA Bar No. 222187)
20  150 Post Street, Suite 520
    San Francisco, CA 94108
21  Telephone:  (415) 955-1155
    Facsimile:   (415) 955-1158
22  hank@KBInternetLaw.com
    karl@KBInternetLaw.com
23  jeff@KBInternetLaw.com

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com