**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
hank@KBInternetLaw.com
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

**SHAPIRO, HABER & URMY LLP**
Edward F. Haber (admitted *pro hac vice*)
Todd S. Heyman (admitted *pro hac vice*)
Ian J. McLoughlin (admitted *pro hac vice*)
Robert E. Ditzion (admitted *pro hac vice*)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
theyman@shulaw.com
imcloughlin@shulaw.com
rditzion@shulaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **VIOLETTA HOANG, LIVIA HSIAO, MICHAEL BLACKSBURG, and MATTHEW HALL**, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>**REUNION.COM, INC.**, a California corporation,<br><br>Defendant. | Case No. 08-CV-03518-MMC<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF RECONSIDERATION OF COURT'S ORDER DISMISSING FIRST AMENDED COMPLAINT** |

Pursuant to the Court's October 20, 2009 Order Denying in Part and Deferring in Part Ruling on Defendant's Motion to Strike and for Involuntary Dismissal; Deferring Ruling on Motion for Sanctions; Affording Parties Opportunity to Submit Supplemental Briefing (the "Order"), plaintiffs hereby submit this supplemental brief arguing that, in light of the Ninth Circuit's recent opinion in *Gordon v. Virtumundo*, 575 F.3d 1040 (9th Cir. 2009), this Court should reconsider and ultimately vacate its December 23, 2008 Order (the "Dismissal Order") dismissing Plaintiffs' First Amended Complaint (the "FAC").

**PRELIMINARY STATEMENT**

This Court dismissed the FAC, now the operative complaint, for two reasons, both of which have been called into question by the Ninth Circuit's recent decision in *Gordon*. In the Dismissal Order, this Court first found Plaintiffs' claims under section 17529.5 of the California Business & Professions Code preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM") because Plaintiffs did not allege that they had relied to their detriment on allegedly false statements made in the e-mails at issue. (Dismissal Order at 4.) Second, this Court found plaintiffs did not adequately allege standing because they did not allege that they were injured by the e-mails. (*Id.*)

The Ninth Circuit's decision in *Gordon* undermines both of this Court's reasons for issuing the Dismissal Order. As this Court recognized in its more recent Order (p. 4), *Gordon* expressly considered: (1) whether the plaintiffs there had standing to allege claims under a Washington state statute substantially similar to section 17529.5; and (2) whether the plaintiffs' claims under such statute were preempted by CAN-SPAM.

On the issue of standing, as this Court suggested in the Order (p. 5), by addressing the merits of the plaintiffs' state law claims, the Ninth Circuit in *Gordon* acknowledged that it had subject matter jurisdiction over these claims, and thus that the plaintiffs had Article III standing. Indeed, the Ninth Circuit recognized the plaintiffs' Article III standing even though neither plaintiff had submitted any evidence of any actual

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

harm. Thus, plaintiffs here also have Article III standing under section 17529.5, even if they have not alleged any actual harm resulting from the emails.

On the issue of preemption, the Ninth Circuit held in *Gordon* that to avoid preemption under CAN-SPAM, a state law claim must arise out of or relate to a "traditional tort theor[y] such as claims arising from fraud or deception." The Ninth Circuit did not rule that the claim must allege each and every element of a traditional common law fraud claim. Indeed, as this Court suggested in its Order (pp. 5-6), the Ninth Circuit in *Gordon* did not state that the lack of a showing of detrimental reliance had any bearing on the issue of preemption. As set forth below, if the Ninth Circuit believed that a showing of detrimental reliance were necessary to avoid preemption, it would never have issued the opinion it did in *Gordon*. Accordingly, Plaintiffs here need not allege all of the elements of a fraud claim, such as detrimental reliance, in order to avoid preemption under CAN-SPAM.

## ARGUMENT

**I. The Ninth Circuit has retained subject matter jurisdiction over section 17529.5 claims even where the plaintiff has alleged no actual harm, demonstrating that such a plaintiff has standing.**

It is axiomatic that, under Ninth Circuit precedent, standing is a threshold issue central to the Court's subject matter jurisdiction, and that the Court must assure that the constitutional standing requirements of Article III are satisfied before proceeding to the merits.[1] In *Gordon*, the Ninth Circuit noted that the defendant had not contested the

---

[1] *See e.g.*, *Fulfillment Services Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618 (9th Cir. 2008) ("Standing is a threshold matter central to our subject matter jurisdiction [and] [w]e must assure ourselves that the constitutional standing requirements are satisfied before proceeding to the merits.") (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)); *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006) ("'Standing is a threshold question which we must resolve before proceeding to the merits.'") (citations omitted); *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1147 (9th Cir. 2006) ("Before we reach the merits of the claim, we must first consider whether the plaintiff has standing to bring suit."); *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1019 (9th Cir. 2002) ("Before we reach the merits of Bird's challenges, we must resolve the threshold issue of standing."); *N. Plains Res. Council v. Lujan*, 874 F.2d 661, 668 (9th Cir. 1989) ("[T]he standing issue is jurisdictional and must be addressed before this court can reach the merits of the claim.").

plaintiffs' standing to pursue claims under the Washington statute, expressly indicating that, in contrast to CAN-SPAM, the Washington statute at issue, like section 17529.5, "authorizes a recipient of a commercial e-mail message . . . to bring a private action." *Gordon*, 575 F.3d at 1058. The Ninth Circuit then addressed the merits of the plaintiffs' state law claims. Because the Ninth Circuit was required to ensure Article III standing as a threshold matter (irrespective of whether the issue was raised by the defendants), and because the Ninth Circuit addressed the merits of the plaintiffs' state law claims, the Ninth Circuit must have determined that the plaintiffs had Article III standing to bring their state law claims. *See e.g.*, *United States v. Hays*, 515 U.S. 737, 742 (1995) (requiring federal courts to evaluate Article III standing even if not addressed by the parties or the lower courts).[2] Accordingly, under *Gordon* and other controlling precedent, Plaintiffs here have standing.

//

//

---

[2] This analysis is further reinforced by Supreme Court and Ninth Circuit case law that the violation of a legally protected interest, without more, is sufficient to confer Article III standing. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing . . .'") (citations omitted); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 617, n3. (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) (affirming "the principle that '[t]he . . . injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"); *DeMando v. Morris*, 206 F.3d 1300 (9th Cir. 2000) (receipt of letter with inaccurate disclosure of credit card terms is sufficient to create injury for Article III standing to assert Truth in Lending Act claims even though credit card holder did not suffer any damages as a result of receipt of such letter); *Baker v. G.C. Services Corp.*, 677 F.2d 775 (9th Cir. 1982) (debtor who did not receive notice of right to contest portion of debt but suffered no harm as a result of failure to receive notice still had Article III standing to assert claims under Fair Debt Collection Practices Act). *See also Beam v. Mukasey*, No. 07-1227, 2008 WL 4614324 at *6 (N.D.Ill. Oct. 15, 2008) (finding plaintiff has standing to assert a claim under the Right to Financial Privacy Act against the Federal Elections Commission for obtaining financial records in violation of the act because the statute "creates for private citizens a right to sue and recover actual or statutory damages for violations; the statute thus by its own terms creates a legally-protected interest."); *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1166 (D. Kan. 2008) (plaintiff had standing to prosecute Fair and Accurate Credit Transactions Act claim for defendant's printing of a credit card receipt with plaintiff's expiration date on it, even without suffering actual harm, because defendant's conduct "invaded the legal rights statutorily conferred on plaintiff . . .").

**II. The Ninth Circuit has not required a plaintiff to allege each element of a fraud claim to avoid preemption under CAN-SPAM.**

In *Gordon*, the Ninth Circuit held that "[t]he CAN-SPAM Act established a national standard, but left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communication." *Gordon*, 575 F.3d at 1063. As this Court recognized in its Order (pp. 5-6), nowhere did the Ninth Circuit say that a plaintiff must allege all of the elements of a fraud claim, such as detrimental reliance, to avoid preemption.[3] Critically, while the *Gordon* court noted that the plaintiffs there were "not in any way misled or deceived" by the emails they received, the court did <u>not</u> mention the plaintiffs' lack of reliance in its preemption analysis. *Gordon*, 575 F.3d at 1063. Rather, in finding that the plaintiffs' claims were preempted, the Ninth Circuit noted only that "technical allegations regarding the header information find no basis in traditional tort theories and therefore fall beyond the ambit of the exception language in the CAN-SPAM Act's express preemption clause." *Id.* at 1064. Had the Ninth Circuit believed that the plaintiffs' lack of detrimental reliance meant that their claims were preempted, the court would simply have found preemption on that basis, without having to issue the opinion it did, analyzing whether preemption was appropriate given that the plaintiff was not "misled or deceived."

In addition, *Gordon* confirms Plaintiffs' arguments with respect to the scope of the Fourth Circuit's decision in *Omega World Travel, Inc. v. Mummagraphics, Inc.,* 469 F.3d 348 (4th Cir. 2006), a decision upon which this Court relied in its Dismissal Order. Previously, Plaintiffs argued that the Court of Appeals for the Fourth Circuit in

---

[3] Courts have routinely found that a claim may "sound in fraud" even though it does not contain all of the elements of a fraud claim, including detrimental reliance. *See e.g., In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 n.2 (9th Cir. 1999); *see also Vess v. Ciba Geigy Corp. USA,* 317 F.3d 1097, 1105-06 (9th Cir. 2003) (finding that claims may sound in fraud even when they do not use the word "fraud"; whether the word "fraud" appears in a claim or complaint is not dispositive, or even necessarily relevant, to the inquiry). These cases, which arise under the federal securities laws, reflect that Congress may well intend to outlaw conduct that "sounds in fraud," without requiring a plaintiff to prove all the traditional elements of fraud, such as detrimental reliance or even an intent to deceive.

*Mummagraphics* interpreted CAN-SPAM's preemption provision to preempt state law actions prohibiting only "immaterial errors," and in no way required a plaintiff to plead all the elements of traditional common law fraud to avoid preemption. (Plaintiff's Opposition to Defendant's Motion to Dismiss FAC [Dkt No. 52] at 8 (citing *Mummagraphics*, 469 F.3d at 353).) This is entirely consistent with *Gordon*, which indicated that the *Mummagraphics* "court determined that the challenged e-mails could not be actionable under the Oklahoma statutes because allowing a state to attach liability to bare immaterial error in commercial e-mails would be inconsistent with the federal Act's preemption text and structure, and, consequently, with a fair understanding of congressional purpose." 525 F.3d at 1061 (internal quotation marks omitted).

*Gordon* also discusses various provisions of CAN-SPAM that further support Plaintiffs' position on preemption, including section 7707(b)(1) and 7701(b)(2). 575 F.3d at 1061. As discussed in *Gordon*, 575 F.3d at 1061, section 7701(b)(1) provides as follows:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, ***except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.*** (emphasis added).

As further discussed in *Gordon*, 575 F.3d at 1061, §7701(b)(2) describes two additional forms of state law that survive preemption: (A) "State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or (b) **other State laws to the extent that those laws relate to acts of fraud** or computer crime." 15 U.S.C. §7701(b)(2) (emphasis added). The first part of section 7701(b)(2) expressly preserves any state law of general applicability, such as tort (which obviously includes common law fraud), and the second part reaches beyond that to "other state laws" that merely "relate to acts of fraud." *Id.* If this Court's view of section 7701(b)(1) in the Dismissal Order were correct, any state law that would survive preemption under section 7701(b)(1)— including all five elements of common law fraud—would by definition already survive

Case No. 08-CV-03518-MMC      5      **PLAINTIFFS' SUPPLEMENTAL BRIEF RE RECONSIDERATION OF DISMISSAL**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  preemption under the more expansive language of §7701(b)(2)(B) which preserves
2  "other State laws . . . that relate to acts of fraud[.]" *Id.* As a result, §7701(b)(1) would be
3  rendered entirely superfluous, contrary to the most basic principles of statutory
4  construction. *See Golden West Refining Co. v. Sun Trust Bank*, 538 F.3d 1233, 1239
5  (9th Cir. 2008).

6  Finally, as previously argued, this Court's reasoning on the preemption issue in
7  this action was subsequently rejected by two other district courts. As Judge Alsup,
8  whose reasoning was subsequently adopted by Judge Armstrong, and whose decision
9  was expressly cited in *Gordon*, 575 F.3d at 1059-60, explained:

> This order rejects the preemption challenge. The text and structure of the provision indicate that defendants interpret the savings clause too narrowly: "falsity or deception" is not limited *just* to common-law fraud and other similar torts. Statutory interpretation begins with the text of the statute. On its own terms, the savings clause exempts from preemption not only "fraud" claims but rather laws that proscribe "falsity or deception" in email advertisements. The Act does not define the words "falsity" and "deception." Congress, however, is certainly familiar with the word "fraud" and choose not to use it; the words "falsity *or* deception" suggest broader application. In fact, as plaintiffs emphasize, Congress utilized the word "fraud" in the very next subsection but not in the savings clause. *See* 15 U.S.C. 7707(b) (2).
>
> The structure of the Act also indicates that the phrase "falsity or deception" does not refer *just* to common-law fraud. The CAN-SPAM Act refers to falsity and deception not only in its preemption provision but also in its substantive provisions governing commercial electronic mail. One of those provisions expressly directs that the word "deceptive," for its part, should be understood not as referencing common-law fraud (nor the *tort* of deception) but rather deception as utilized in the FTC Act. U.S.C. 7704(a)(2) (prohibition on "deceptive subject headings" therein should be understood "consistent with the criteria used in enforcement of section 45 of this title [ *i.e.,* the FTC Act]"). A word used in different places within the same statute is generally given a consistent meaning. In fact, the section containing the preemption provision itself similarly references the FTC Act: "[n]othing in this chapter shall be construed to affect in any way the Commission's authority to bring enforcement actions under FTC Act for materially *false or deceptive representations* or unfair practices in commercial electronic mail messages." 15 U.S.C. 7707(a)(2). The subsection immediately thereafter contains the savings clause here at issue. The CAN-SPAM Act's repeated references to the FTC Act definition of "deceptive" practices strongly suggest that Congress intended the phrase "falsity or deception" in Section 7707(b)(1) to refer to, or at least encompass, that definition, not *just* state tort law. *Asis Internet Services v. Consumer Bargaingiveaways, LLC,* 622 F.Supp.2d 935, 942 (2009) *6 (emphasis in original; footnotes omitted); *Asis Internet Services v. Vistaprint USA, Inc.*, 617 F.Supp.2d 989, 992-93 (N.D.Cal. 2009).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

Case No. 08-CV-03518-MMC     6     **PLAINTIFFS' SUPPLEMENTAL BRIEF RE RECONSIDERATION OF DISMISSAL**

Nothing in *Gordon*, which cited Judge Alsup's opinion, is inconsistent with the preemption analysis in either of these decisions, further reflecting that Plaintiffs' claims here are not preempted.

## CONCLUSION

For the reasons set forth above, the Court should reconsider and vacate its decision dismissing Plaintiffs' FAC.

Respectfully submitted,

DATED: December 3, 2009        **KRONENBERGER BURGOYNE, LLP**

By: /s/ Karl S. Kronenberger

Henry M. Burgoyne, III
Karl S. Kronenberger
Jeffrey M. Rosenfeld
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

**SHAPIRO HABER & URMY LLP**

Edward F. Haber (admitted *pro hac vice*)
Todd S. Heyman (admitted *pro hac vice*)
Ian J. McLoughlin (admitted *pro hac vice*)
Robert E. Ditzion (admitted *pro hac vice*)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134