LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
1644 North Orange Grove Avenue
Los Angeles, CA 90046
TELEPHONE: (323) 882-8225
FACSIMILE: (323) 882-8208
lawofcsrjp@aol.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Carole E. Handler (CA Bar No. 129381)
9665 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90212
TELEPHONE: (310) 860-8705
FACSIMILE: (310) 860-3805
handler@wildman.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Peter N. Moore (admitted *pro hac vice*)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
TELEPHONE: (312) 201-2000
FACSIMILE: (312) 201-2555
pmoore@wildman.com

Attorneys for Defendant
REUNION.COM, INC.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIOLETTA HOANG, LIVIA HSIAO, and MICHAEL BLACKSBURG, and MATTHEW HALL, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>  v.<br><br>REUNION.COM, INC., a California corporation,<br><br>    Defendant. | No. 3:08-cv-3518 MMC<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF DISMISSAL OF PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**Judge:**  Hon. Maxine Chesney<br>             Courtroom 7 (19th Floor) |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iii

FACTUAL BACKGROUND ........................................................................................ 3

ARGUMENT ................................................................................................................. 6

    I.    *Virtumundo* Establishes Conclusively that Plaintiffs' Claims are Preempted by Can Spam ............................................................... 6

        A.    Pursuant to *Virtumundo*, an Individual Plaintiff Must Assert a Claim of Fraud or Deception to Avoid Preemption Under CAN SPAM .................................................. 6

        B.    *Virtumundo* Mandates that Plaintiffs Claims Remain Dismissed and that Judgment be Entered in Favor of the Defendant ........................................................................... 8

            1.    Plaintiffs' Failure to Plead Detrimental Reliance, Causation, or Injury Mandates Dismissal Under Virtumundo ........................................... 8

            2.    Virtumundo Also Establishes that the Invitation E-mails Were Not Deceptive as a Matter of Law ........................................................................... 10

    II.   The *Virtumundo* Decision Does Not Affect Plaintiff's Lack of Standing ................................................................................ 12

    III.  Defendant Renews its Pending Motions for Sanctions ....................... 14

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Aitken v. Commc'ns Workers of Am.*, 496 F.Supp.2d 653, 667
 (E.D.Va.2007)............................................................................................................12

*Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009).................................passim

*Hafiz v. Greenpoint Mortg. Funding, Inc.*, --- F.Supp.2d ---, 2009 WL
 2137393, *8 (N.D. Cal. July 16, 2009) ..........................................................6, 10

*Hypertouch, Inc. v. Valueclick, Inc.*, No. LC081000 (Los Angeles Super.
 Ct. May 2009)..............................................................................................................9

*Kleffman v. Vonage Holdings Corp.*, No. 07-2406, 2007 WL 1518650
 (C.D. Cal. May 23, 2007).............................................................................................9

*OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157
 Cal.App.4th 835, 860 (2d Dist. 2007) ............................................................6, 10

*Omega World Travel v. Mummagraphics*, 469 F.3d 348 (4th Cir. 2006) ..................2, 6

**Statutes**

15 U.S.C. § 7706..................................................................................................................7

15 U.S.C. § 7707..................................................................................................................2

Cal. Bus. & Prof Code § 17529.5 .......................................................................................5

**Other Authorities**

*Registrar Advisory Concerning Whois Data Accuracy*, Internet
 Corporation for Assigned Names and Numbers......................................................8

The Internet Society Network Working Group, *Internet Message Format*
 (RFC 2822) (April 2001) ..........................................................................................11

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This Court has correctly found, on three separate occasions, all for the same reasons, that Plaintiffs' claims are preempted absent allegations of all of the elements of common law fraud and, thus, that Plaintiffs' claims should be dismissed as a matter of law pursuant to Fed.R.Civ.P. 12(b)(6). As the Court may recall, after being given a third opportunity to amend to allege all the elements of common law fraud, Plaintiffs' counsel instead made yet a fourth attempt to persuade this Court otherwise in the form of their Second Amended Complaint ("SAC"); however, after threat of Rule 11 sanctions, Plaintiffs' counsel sought to withdraw the SAC and asked for an appealable judgment, but on legally improper unilateral conditions set by them, and by them alone.

These actions catalyzed Defendant's current motions for sanctions (one for involuntary dismissal under Rule 41(b), the other for attorney fees under 28 U.S.C. § 1927), which remain pending before this Court and which should still be granted, now especially in light of the *Virtumundo* decision.

The Ninth Circuit's recent unanimous decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), which was published prior to, but ignored in Plaintiffs' briefs in Opposition to Defendant's currently pending sanctions motions, reiterated what this Court has been ruling for over the last year and affirmed the correct state of the law that this Court relied upon in its prior three Orders dismissing Plaintiffs' claims and on which Plaintiffs' counsel have refused to relent. Since the case was obviously known to Plaintiffs' counsel, but ignored by them, and discussed only briefly by Defendant, this Court has allowed, but not required, supplemental briefing on the impact of that case to Plaintiffs' claims.

## ISSUES TO BE DECIDED

Put simply, *Virtumundo* reiterates all of this Court's prior legal findings and requires the dismissal of Plaintiffs' state law claims pursuant to the preemption

provision of CAN SPAM, 15 U.S.C. § 7707(b).  It also establishes why Plaintiffs' counsel's prior position cannot be advanced in good faith, if it ever could. *Virtumundo* has settled the question of the scope of CAN SPAM's preemption, adopting the position of the Fourth Circuit in *Omega World Travel v. Mummagraphics*, 469 F.3d 348 (4th Cir. 2006), and that of this Court, that only claims targeting "traditionally tortious or wrongful conduct" are exempted.  *Virtumundo*, 575 F.3d at 1061.  Plaintiffs have not pled, and will never be able to truthfully plead, such a claim, because they have suffered no harm in reliance on any alleged deception.

It is inconceivable that Plaintiffs' counsel can continue to argue that they need not allege all elements of common law fraud.  Indeed, recently arguing for a defendant in a very similar case, Plaintiffs' own lawyers stated the governing law as follows: "Plaintiffs couldn't have been damaged by the alleged misrepresentations in the Emails, as would be required under any tort theory."  *See* Mem. in Support of Def.'s Motion to Dismiss at 2-3, *Asis Internet Svcs. v. Subscriberbase, Inc.*, Case No. CV-09-3503 (Sept. 21, 2009) ("Asis Brief") (attached hereto as Exhibit A).  They specifically asserted in *Asis*, just as is the case here, as follows:

> Plaintiffs do not allege that they relied on or otherwise suffered any damages from the Emails. Plaintiffs … argue that reliance and damages are not required for a section 17529.5 claim. The case law, however, has held the opposite…. Both CAN-SPAM's preemption clause and section 17529.5 require that Plaintiffs adequately plead fraud.

(*Id.* at 3).  Citing both *Virtumundo* **<u>and this Court's own opinion</u>**, Plaintiffs' counsel correctly argued in *Asis* that "section 17529.5 plaintiffs [must] plead ***all five elements of fraud***—i.e. misrepresentation, knowledge, intent, ***detrimental reliance, and damages***."  (*Id.* at 6) (emphasis added).  For once, Defendant and Plaintiffs' counsel are in total agreement.

As Fed.R.Civ.P. 11 requires the signing attorney to certify that all papers filed are "warranted by existing law", Plaintiffs' attorneys cannot in good faith take two totally opposite interpretations of the law in virtually identical cases. If Plaintiffs'

counsel actually file a supplemental brief taking a position as to the state of the law contrary to what they have said to another Court, combined with their other duplicitous representations when they promised to plead actual damages and reliance in their Motion for Reconsideration, there should be no question left in this Court's mind that the sanctions sought in Defendant's pending motions are not only warranted, but compelled by such conduct.

The *Virtumundo* case establishes that each of the Court's prior rulings dismissing Plaintiffs' claims as a matter of law were, and are, correct. (*See, e.g.,* Order Granting Def.'s Motion to Dismiss (Docket No. 55) ("Second Dismissal")). The Second Dismissal was based upon two related but independently fatal defects in the FAC – federal preemption, and lack of standing. While *Virtumundo* does not address Article III standing at all, it fully affirms the preemption aspect of this Court's prior rulings, which this Court consistently and correctly applied on three separate occasions, despite numerous attempts by Plaintiffs' counsel to persuade it to reconsider. Each time, the issue was thoroughly briefed, and despite three opportunities to amend their pleading, Plaintiffs were unable or unwilling to frame their allegations in a way that addressed these defects.[1]

Defendant stands by its prior briefing for all the reasons stated therein, but pursuant to the Court's recent October 10, 2009 Order, offers this analysis of the *Virtumundo* decision specifically as it relates to the FAC. In sum, the Ninth Circuit's holding fully affirms this Court's prior decisions, precluding Plaintiffs' claims. Final judgment should thus be entered in favor of the Defendant but on the terms requested in Defendant's sanction motions.

## FACTUAL BACKGROUND

While the facts of this case are presumably well known to the Court at this late

---

[1] As the Court is well aware from Defendant's sanctions briefs, Plaintiffs' counsel actually asked for – and were given – leave to amend to make these allegations, after falsely promising they would do so to be able to file their SAC but, then, repudiated that promise and, ultimately, and arrogantly, "decided not to." (Docket No. 77 at 6 n.2).

stage, Defendant offers this brief summary to highlight those aspects of the FAC that most clearly warrant dismissal under the holding in *Virtumundo*.

Defendant operates a social networking site (Reunion.com) used to reconnect and keep in touch with old friends, classmates, and colleagues. (FAC, ¶ 4). When a new member signs up, she is given the option of asking Reunion.com to utilize information stored in her electronic contact list to attempt to locate acquaintances on Reunion.com and, if the contacts are not already members, to invite them via email to join. (FAC, ¶¶ 27-29). If the member selects this option, e-mails are sent to the individuals in the member's contact list inviting them to join (the "Initiation E-mails") (*Id.*). As alleged in the FAC, a member must provide Reunion.com with the username and password to her e-mail account in order for her contact list to be scanned. (FAC, ¶¶ 26). Thus, the process cannot be initiated without the member's active participation and consent. (*Id.*).

Each of the Plaintiffs in this case purports to have received Invitation E-mails initiated by Reunion.com members. (FAC, ¶¶ 34, 38, 43, 48). They allege that these e-mails included all or some of the following supposedly deceptive content:

- in the "from" line, the name of the friend or colleague who had joined Reunion.com and initiated the Invitation E-mails;
- in the "from" line of some of the Invitation E-mails, the Reunion.com member's email address, including a third-party domain name; and
- in the "subject" line, a statement that a friend or colleague searched for or wished to "connect" with the plaintiff, or similar language.

(*See, e.g.*, FAC, ¶¶ 5, 9). Plaintiffs claim generally that the signup procedures are confusing or misleading, and therefore that the Invitation E-mails were actually sent without the Reunion.com members' knowledge or permission and that the members were not, in fact, intending to contact the Plaintiffs. (FAC, ¶¶ 31, 32). However, it is undisputed that the members signed up for Reunion.com and by taking deliberate actions caused the Invitation E-mails to be sent on their behalf. (*Id.*). The Court

nonetheless ruled these allegations sufficient at the pleading stage to support a claim that the Invitation E-mails contained materially false content, though Defendant respectfully disagrees, especially now in light of *Virtumundo*, as discussed below.

As to what happened after Plaintiffs received the Invitation E-mails, Plaintiffs have always been silent. The FAC alleges that the Invitation E-mails are *intended* to mislead recipients into opening e-mails they would otherwise delete, thinking them to be different messages from their friends. (FAC, ¶ 32). However, none of the named Plaintiffs claims that he or she was actually deceived by the "from" or "subject" lines, or that he or she was actually harmed as a result of receiving or reading the e-mails. Thus, the FAC contains no allegations establishing actual reliance by Plaintiffs on any false statement, or that the e-mails caused Plaintiffs any actual injury aside from the mere receipt of an unsolicited message.

At various stages of briefing, Plaintiffs' counsel have argued that the harm Plaintiffs suffered was the "loss of a statutory right" not to receive potentially deceptive e-mail. (*See, e.g.*, Plaintiffs' Supp. Br. in Support of Motion for Reconsideration at 4 (Docket No. 66) ("Pls.' Recon. Br.")). Yet Plaintiffs' counsel never argued that Plaintiffs *were* deceived by the Invitation E-mails, or that they relied on the content of the e-mails to their detriment. On the contrary, prior to *Virtumundo*, Plaintiffs' counsel had always argued that such elements were not necessary to avoid preemption, and declined multiple opportunities to amend their complaint to add these allegations. (Pls.' Recon. Br. at 3 n.2 (Plaintiffs' counsel asked for leave to amend as they were finally "prepared" to plead reliance and damages); *cf.* Pls.' Opp. to Def.'s Motion to Dismiss Second Am. Complt. at 6 n.2 (Docket No. 77) (Plaintiffs' counsel reconsidered and "ultimately decided not to plead such allegations," reverting to their earlier position that these elements were not required)).

Rather, Plaintiffs' theory has always been that the State Statute under which they are suing, Cal. Bus. & Prof Code § 17529.5, makes the *mere receipt* of e-mails containing content that may have the potential to mislead an actionable cause, and

therefore they refuse to plead any actual reliance or injury. (*Id.*). Accordingly, each of the three times the Court has been presented with this issue, it has consistently ruled that these claims are preempted by CAN SPAM absent other allegations associated with traditional fraud or deceit, *i.e.*, detrimental reliance, causation, and damages. (Second Dismissal at 3-5, 7, 9). The fourth time the issue arose – in the SAC – Plaintiffs' counsel withdrew their pleading in response to a sanctions motion, rather than defend their position. Yet Plaintiffs have never, on any of these occasions, made these allegations, and there now can be no dispute that these allegations are required. Therefore, the dismissal of the FAC was and remains correct.

## ARGUMENT

**I.   *VIRTUMUNDO* ESTABLISHES CONCLUSIVELY THAT PLAINTIFFS' CLAIMS ARE PREEMPTED BY CAN SPAM**

**A.   Pursuant to *Virtumundo*, an Individual Plaintiff Must Assert a Claim of Fraud or Deception to Avoid Preemption Under CAN SPAM**

In its prior Dismissal Orders, before there was Ninth Circuit precedent directly on point, this Court adopted the reasoning of the Fourth Circuit in *Mummagraphics*, 469 F.3d at 348, finding, based on the text of the statute and the legislative history, that CAN SPAM's preemption carve-out for claims of "falsity or deception" was limited to "the common law tort of misrepresentation or fraud." (Second Dismissal at 3-4). Based on this finding, this Court correctly concluded that to avoid preemption, a claim brought by an e-mail recipient had to include allegations that the plaintiff "incurred … damage as a result of having relied on [an] asserted false statement." (*Id.* at 3). This requirement thus encompasses three essential and distinct elements of a claim for fraud: reliance, causation, and damages, which, it is well established, are all required for a claim for fraud. *Hafiz v. Greenpoint Mortg. Funding, Inc.*, --- F.Supp.2d ---, 2009 WL 2137393, *8 (N.D. Cal. July 16, 2009); *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal.App.4th 835, 860 (2d Dist. 2007) ("Deception without resulting loss is not actionable fraud.").

The *Virtumundo* decision fully affirms this holding. The plaintiff in that case

was an alleged e-mail provider who received and relayed thousands of unsolicited commercial e-mails to his users. 575 F.3d at 1045. The plaintiff brought claims as a purported Internet Service Provider directly under CAN SPAM, Washington State's Commercial Electronic Mail Act ("CEMA"), and other statutes. *Id.* at 1046. The Ninth Circuit first held that the plaintiff's CAN SPAM claims were barred for lack of statutory standing insofar as the plaintiff had not established the requisite "adverse effect" under 15 U.S.C. § 7706(g)(1), or that he was a genuine "Internet access service" as required by the statute. 575 F.3d at 1048-57.

The Ninth Circuit then turned to the plaintiff's state law claims. It first found that CEMA's broad prohibition on "misrepresent[ing] or obscur[ing] any information" in an e-mail header (similar to the State Statute at issue in this case) could be interpreted to encompass the defendant's conduct, *i.e.*, allegedly utilizing fictitious or fanciful domain names that concealed its identity. 575 F.3d at 1058, 1062. The Ninth Circuit thus addressed whether the state law claims were preempted by CAN SPAM, and in doing so expressly adopted the reasoning of the *Mummagraphics* Court (and therefore this Court) as to this issue:

- "Having independently analyzed the CAN-SPAM Act's text, structure, and legislative purpose, we reach the same conclusion as the district court and the Fourth Circuit…." 575 F.3d at 1061.
- "Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies or omissions…. [T]he CAN-SPAM Act prohibits only deceptive subject line headings or *materially false* or *materially misleading* header information." 575 F.3d at 1062 (emphasis added).
- CAN SPAM "save[s] from preemption only 'statutes, regulations, or rules that *target fraud or deception*.'" 575 F.3d at 1061 (quoting S.Rep. No. 108-102 at 21) (emphasis in original).
- "The CAN-SPAM Act established a national standard, but left the individual states free to extend *traditional tort theories* such as claims arising from fraud

or deception to commercial e-mail communication." 575 F.3d at 1063 (emphasis added).

- "To the extent that [] a content or labeling requirement may exist under state law, it is clearly subject to preemption." 575 F.3d at 1064 (quoting S.Rep. No. 108-102 at 21-22).

The Ninth Circuit thus left no room for doubt: only traditional, tort-based theories of common law fraud or deception survive preemption by CAN SPAM. Applying this holding to the plaintiff's CEMA claim, the Ninth Circuit concluded that the offending e-mails' use of fictitious domain names *could not have deceived* the recipients in a material way because they could have easily ascertained the identity of the sender, using utilities such as "WHOIS."[2] (*Id.* at 1064-65). The Ninth Circuit found that the e-mail headers were not rendered deceptive merely because an extra step was required to ascertain more precise information about the sender, noting further that the headers still allowed the recipients "to identify, locate, or respond to the person *who initiated the e-mail*." *Id.* at 1063 (emphasis added). The Ninth Circuit therefore affirmed summary judgment in favor of the defendant.[3]

**B.   *Virtumundo* Mandates that Plaintiffs Claims Remain Dismissed and that Judgment be Entered in Favor of the Defendant**

*1.   Plaintiffs' Failure to Plead Detrimental Reliance, Causation, or Injury Mandates Dismissal Under* **Virtumundo**

Since *Virtumundo* adopts the precise reasoning employed by this Court in each

---

[2] This is actually not a trivial task. A WHOIS search requires resort to a third party application or website, such as http://www.networksolutions.com/whois/index.jsp (last accessed November 25, 2009) and at least some understanding of concepts such as domain names. It is obviously not something an unsophisticated Internet user would ever think to do, and is clearly more of a burden than simply *reading* the e-mail, which, as discussed below, is all a recipient of a Reunion.com member's Invitation E-Mail would have to do to ascertain its precise nature. Moreover, a WHOIS search would not even identify a sender's actual identity if the sender registered a domain name using a pseudonym or third-party anonymous registrar service, but only provided limited contact information. *See, e.g.*, *Registrar Advisory Concerning Whois Data Accuracy*, Internet Corporation for Assigned Names and Numbers, http://www.icann.org/en/announcements/advisory-10may02.htm (last accessed Dec. 2, 2009).

[3] As set forth below, this aspect of the holding presents an independent reason to uphold the Court's prior dismissal orders.

of its prior Orders and, actually, establishes even further grounds to affirm those Orders, the decision provides no cause to question the multiple dismissals of Plaintiffs' claims. The Court nonetheless raised the following question in its October 20, 2009 Order: by noting that the *Virtumundo* plaintiff had admitted he did not rely on the e-mails or suffer any injury from their content, yet still addressing the remainder of the plaintiff's arguments, did the Ninth Circuit implicitly find that reliance and resulting damages were not required to state a claim that was not preempted? The clear answer is **NO**.

First, the *Virtumundo* plaintiff, Gordon, was suing as a "service provider," which the Washington statute (CEMA) allows, and not merely as an e-mail recipient. 575 F.3d at 1058, 1064. Consequently, whether Gordon himself was deceived by the e-mails would have been immaterial; the question would have been whether his *users* were deceived, and there would have been no reason to make this fact-intensive inquiry since the Ninth Circuit found as a matter of law there was no deception.

While *Virtumundo* does not squarely address whether reliance and damages would also have been required to be shown, the decision must, of course, be read in conjunction with state law authority defining the elements of fraud-based claims, just as this Court had previously done with *Mummagraphics*. When that is done, it becomes clear that waiving the requirements of reliance, causation, or damages would be wholly incompatible with the Ninth Circuit's holding that only claims based upon *traditional common law theories of fraud or deceit* survive preemption. Clearly the opinion does not hold that these elements are *not* required, and, **as even Plaintiffs' counsel are now arguing in another Court,** as cited herein, the law is settled that allegations that a plaintiff was "damaged by the alleged misrepresentations [] would be required under any tort theory." (Asis Br. at 2; *see also id.* at 6 (citing this Court's prior opinion, as well as *Kleffman v. Vonage Holdings Corp.*, No. 07-2406, 2007 WL 1518650 (C.D. Cal. May 23, 2007); *Hypertouch, Inc. v. Valueclick, Inc.*, No. LC081000 (Los Angeles Super. Ct. May 2009)). Indeed, it is elementary that fraud or

deceit requires reliance, causation, and damage.  *Hafiz,* 2009 WL 2137393 at *8; *OCM*, 157 Cal.App.4th at 860.  *See also Virtumundo*, 575 F.3d at 1068 (concurrence discussing necessity in law for allegations of actual injury).

Therefore, by adopting the traditional tort-based fraud standard first articulated in *Mummagraphics*, *Virtumundo* affirms that an individual plaintiff asserting a state law cause of action must assert all the elements of traditional common law fraud to state a claim that is not preempted by CAN SPAM, just as this Court first ruled over a year ago and has ruled several times since, and just as Plaintiffs' own counsel have now argued and advanced as the proper state of the law when representing a defendant in a practically identical situation.

Because there is no dispute that the FAC lacks the requisite elements of reliance, causation, and actual damages, and because there is now no dispute that these elements are required by Ninth Circuit precedent to be pled to avoid preemption, the Court's prior dismissal Orders were, and remain, correct.  Because of Plaintiffs' counsels self touted expertise in this field, and because they have now been seen to have affirmed this position as officers of the Court in other pleadings they have filed, there can be little doubt that their actions from the start of this case have been in bad faith or without substantial justification.  To have them claim otherwise now, after having been told by this Court of the requirements to plead these elements from the First Dismissal Order over a year ago, and refusing to do so, is simply not credible.

### 2. **Virtumundo** *Also Establishes that the Invitation E-mails Were Not Deceptive as a Matter of Law*

Although not necessary for the Court's consideration, Defendant wishes to place on the record that the Court can also reaffirm its prior dismissal of the FAC for the alternate and independent reason that, as now made clear by *Virtumundo*, Defendant's conduct was not materially deceptive as a matter of law.  There is no allegation that the recipients of the Invitation E-mails could not readily ascertain the identity of the sender or the nature of the message being conveyed.  *Cf. Virtumundo*, 575 F.3d at 1063 (headers not deceptive where recipients could still identify sender

using a third-party WHOIS application). On the contrary, the body of each of the Invitation E-mails quoted in the FAC states clearly that "You have received this e-mail because a Reunion.com member sent an invitation to this email address." (FAC, ¶¶ 34, 38, 43, 48). The e-mails also clearly contain Reunion.com trademarks, addresses, and other identifying information. (*Id.*).

No reasonable user could have failed to understand the nature of the e-mails upon reading them. Thus, even more so than in *Virtumundo*, where the Ninth Circuit held that the recipient's ability to ascertain the identity of the sender by accessing the Internet to find a *third-party identification utility* (WHOIS) was sufficient to negate claims of deception, Plaintiffs' claims that the Invitation E-mails here are deceptive can no longer stand as a threshold matter. The FAC's own allegations establish that the Invitation E-mails' are clearly labeled as invitations to join a social networking service. It is also undisputed that the Reunion.com members initiated the e-mails (notwithstanding that Plaintiffs allege that they did so accidentally) and provided their ***account passwords*** for this very purpose.[4]

As in *Virtumundo*, where fanciful domain names that merely made it difficult for the recipients to identify the sender were found not to be deceptive, the practice employed by Reunion.com (and many other social networking sites) to give users an easy way to grow their personal online network by inviting their friends to join, ***does not mislead*** the recipients in any material way; the Reunion.com member identified in the "from" line indisputably initiated the message, and the Reunion.com member

---

[4] Moreover, most of the e-mails' "from" lines actually contain Reunion.com return addresses. (*See* FAC, ¶¶ 34, 38). The ones cited in the FAC that do not show Reunion.com's name likely do not do so because of the recipients' own e-mail clients or servers, which ultimately choose which fields in an e-mail header a user is shown. In fact, there are *multiple* different fields associated with sender information in an e-mail header, and the FAC is not specific as to which field is actually being shown in the screen captures. (*See, e.g.*, The Internet Society Network Working Group, *Internet Message Format* (RFC 2822) (April 2001) at § 3.6.2 (discussing differences between "from", "sender", and "reply-to" fields, including appropriate standards for identifying authors, conveyors, and agents) (also available at http://www.ietf.org/rfc/rfc2822.txt (last accessed Nov. 25, 2009) (excerpts attached hereto as Exhibit B)). Regardless, it is clear from the face of the FAC that the identity of the sender – the Reunion.com member as initiator, and Reunion.com as the conveyor – is readily apparent to the recipient when opening the e-mail, if not sooner.

indisputably (if virtually) "looked for" the recipient by authorizing Reunion.com to scan his contact list to see if the recipient was already a member.[5] Whatever possible ambiguities might exist with regard to the "from" or "subject" lines are immaterial, as the precise nature of the messages is immediately clear from the message bodies. *See Virtumundo*, 575 F.3d at 1063.

Indeed, Plaintiffs' fundamental argument is that the Invitation E-mails allegedly fail to label themselves as authored or transmitted by Reunion.com. But as the Ninth Circuit found, "incomplete or less than comprehensive information regarding the sender … [are] technical allegations … [that] find no basis in traditional tort theories and therefore fall beyond the ambit of the exception language in the CAN-SPAM Act's express preemption clause." 575 F.3d at 1064. Plaintiffs' argument, that anything other than Reunion.com's name in the "from" line or a label stating that Reunion.com authored the contents of the message is deceptive, is a position specifically considered and rejected in *Virtumundo*. *Id.* Accordingly, the Court should uphold its prior dismissal of the FAC for this independent reason as well, pursuant to the recent holding in *Virtumundo* regarding what constitutes "material deception," as now it is clear that *none* of the requisite elements of fraud has been met by Plaintiffs.

## II. THE *VIRTUMUNDO* DECISION DOES NOT AFFECT PLAINTIFF'S LACK OF STANDING

Defendant also addresses the Court's question in its October 20, 2009 order whether the Ninth Circuit's declining to raise the issue of the *Virtumundo* plaintiff's

---

[5] This case is therefore **not** a matter of misleading recipients as to the identity of the sender, a practice cited in *Virtumundo* as deceptive, which Plaintiffs may argue. 575 F.3d at 1064 (citing *Aitken v. Commc'ns Workers of Am.*, 496 F.Supp.2d 653, 667 (E.D.Va.2007)). The defendants in *Aitken* set up fake e-mail addresses using the names of several Verizon managers in order to mislead recipients into believing that the managers supported pro-union, anti-management positions, hoping to establish legitimacy. 496 F.Supp.2d at 657. The e-mails gave no indication that they were sent by defendants, and more importantly, the plaintiffs neither authorized nor had anything to do with the sending of the e-mails. *Id.* That case stands in stark contrast to this one, where the new members undisputedly signed up for the Reunion.com service, **provided the passwords to their contact lists**, and authorized Reunion.com to send invitation e-mails on their behalf. The nature of the Invitation E-mails is thus readily ascertainable, and if the Reunion.com member did not mean to cause the e-mails to be sent, then there was simply a mistake – not an intentional fraud.

standing to make a state law claim implicitly means that a plaintiff can sue under a state statute prohibiting false or deceptive e-mail practices even without suffering "any real harm" as a result  575 F.3d at 1055.

Respectfully, Defendant submits that the standing issue in this case is not addressed by *Virtumundo*, implicitly or otherwise.  The Ninth Circuit's discussion of the plaintiff's alleged injury was limited to whether or not he had made a sufficient showing of being "adversely affected" to establish *statutory standing* for his direct claims under CAN SPAM, a high threshold.  *Id.* at 1052-57.  The Washington CEMA, by contrast, expressly vests any service provider plaintiff with statutory standing, and as for Article III standing, the plaintiff did allege the receipt of thousands of e-mails, and that the e-mails had "clogged" his server system.  *Id.* at 1055.  The Court ultimately did not believe his claimed injuries to be sufficient to give him a direct cause under CAN SPAM, but his alleged "injuries" were certainly sufficient for Article III standing, and sufficient for the state statute at issue in that case.

Here, on the other hand, Plaintiffs have alleged no "clogging" of their systems, nor any other colorable harm suffered as a result of reading or even receiving the Invitation E-mails.  In fact, they have offered *no* theory of injury to themselves that is anything other than a creature of statute and, on the contrary, have argued unwaveringly that they need not do so to state a claim or even establish standing, even after asking for and receiving the very opportunity to do so. (Docket No. 77 at 6 n.2).

Though Plaintiffs' lack of standing here is not addressed by *Virtumundo* directly, Judge Gould's concurring opinion is highly instructive.  The concurrence discusses at length the historic rationale for requiring actual, cognizable damage of *any* plaintiff, as a requirement of *any* claim, in part to prevent those incurring illusory harm, or only passively suffering economic loss, either of which could have been averted by reasonable efforts, from obtaining windfalls through litigation.  575 F.3d at 1068.  Judge Gould concluded that, by significantly limiting the universe of plaintiffs who could sue under CAN SPAM (and, *a fortiori*, under a non-preempted state

statute), Congress' main goal was to preclude precisely that kind of illusory or manufactured claim. *Id.* Judge Gould's admonishment clearly counsels against Plaintiffs being permitted to pursue their claims in this case – in any forum or under any statute – without having suffered any legally cognizable harm.

Thus, *Virtumundo* does not affect the Court's prior holdings on the issue of standing and, if anything, it supports them.

### III. DEFENDANT RENEWS ITS PENDING MOTIONS FOR SANCTIONS

Finally, Defendant briefly reiterates its prior requests for sanctions and notes that the *Virtumundo* decision makes those requests even *more* merited than before. For over a year, since the First Dismissal Order, Plaintiffs' counsel were specifically advised by this Court of what was required to be pled to avoid dismissal of their claims. Each time, Plaintiffs' counsel arrogantly ignored the Court's directions and then promised to plead what was required, only to refuse to do so and, in the SAC, regurgitate their FAC with only three new non-substantive allegations.

Plaintiffs' counsel ultimately attempted to withdraw their SAC in response to a Rule 11 motion based in part upon the fact that Plaintiffs' counsels' false representations to the Court that they would allege actual damages if given the opportunity, yet refused to do so in the SAC. However, Plaintiffs' counsel *still* defended the proprietary of their earlier arguments rejected by this Court, even after *Virtumundo* was decided, in their most recent briefs. *See, e.g.*, Pls.' Opp. to Def.'s 41(b) Motion (Docket No. 88) at 4 ("Plaintiffs did not believe, and still do not believe, that they are required to plead common law fraud to avoid preemption."). Yet shortly thereafter, in *Asis*, when different interests were at stake, Plaintiffs' counsel, who usually couch themselves as defenders against frivolous lawsuits,[6] readily embraced the opposite view. The only conclusion to be reached is that Plaintiffs' counsel knew, or should have known, that their positions were wrong over a year ago and should

---

[6] *See Spam Legal Defense & Spam Law Compliance*, Kronenberger & Burgoyne, http://www.kbinternetlaw.com/spamlaw.html (last accessed Dec. 2, 2009).

have accepted the ruling in the First Dismissal and either appealed or abandoned their frivolous case. The reason they did not do so was self interest and the desire to exact substantial sums from the Defendant.

Whether Plaintiffs' counsel ultimately will change their position in this case, which the rules would suggest they must, is yet to be seen. Regardless, Plaintiffs' counsels' wasteful litigation tactics of repeatedly seeking that the Court reconsider its undeniably correct rulings remains a basis for awarding the sanctions sought in the pending motions. Accordingly, Defendant again asks the Court to grant the relief sought in its prior motions, namely involuntary dismissal under Rule 41(b) and attorney fees under 28 U.S.C. § 1927, for these reasons and all those stated therein.

## **CONCLUSION**

The recent *Virtunundo* holding wholly supports this Court's prior rulings, as well as Defendant's prior requests for sanctions, and mandates that Plaintiffs' counsel cannot advance their previous view of the law in good faith. This cannot be more clearly depicted than by quoting Plaintiffs' counsel's own words in their own brief filed in the **Asis** matter and, therefore, Defendant concludes with those words:

> "*Congress intended CAN-SPAM's preemption clause to avoid situations like this one: Where nominal plaintiffs, who have not suffered any harm, bring lawsuit-after-lawsuit under state email marketing laws in hopes of recovering windfall statutory damages. Both CAN-SPAM's preemption clause and section 17529.5 require that Plaintiffs adequately plead fraud. Plaintiffs' complaint does not come close to that standard, and in fact makes clear that Plaintiffs can't meet it. Accordingly, Plaintiffs' complaint should be [and should remain] dismissed with prejudice.*" (Asis Br. at 3-4).

**DATED:**   December 3, 2009            Respectfully submitted,

                                          s/ Ronald Jason Palmieri
                                          One of the Attorneys for Defendant

1
2 LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
3 1644 North Orange Grove Avenue
Los Angeles, CA 90046
4 TELEPHONE: (323) 882-8225
FACSIMILE: (323) 882-8208
5 lawofcsrjp@aol.com

6 WILDMAN, HARROLD, ALLEN & DIXON LLP
Carole E. Handler (CA Bar No. 129381)
7 9665 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90212
8 TELEPHONE: (310) 860-8705
FACSIMILE: (310) 860-3805
9 handler@wildman.com

10 WILDMAN, HARROLD, ALLEN & DIXON LLP
Peter N. Moore (admitted *pro hac vice*)
11 225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
12 TELEPHONE: (312) 201-2000
FACSIMILE: (312) 201-2555
13 pmoore@wildman.com

14 Attorneys for Defendant
REUNION.COM, INC.

15
16
17
18
19
20
21
22
23
24
25
26
27
28