**KRONENBERGER BURGOYNE, LLP**
Henry M. Burgoyne, III (CA Bar No. 203748)
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
hank@KBInternetLaw.com
karl@KBInternetLaw.com
jeff@KBInternetLaw.com

**SHAPIRO, HABER & URMY LLP**
Edward F. Haber (admitted *pro hac vice*)
Todd S. Heyman (admitted *pro hac vice*)
Ian J. McLoughlin (admitted *pro hac vice*)
Robert E. Ditzion (admitted *pro hac vice*)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com
theyman@shulaw.com
imcloughlin@shulaw.com
rditzion@shulaw.com

Attorneys for Plaintiffs

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VIOLETTA HOANG, LIVIA HSIAO, MICHAEL BLACKSBURG, and MATTHEW HALL**, individually and on behalf of a class of similarly situated persons,<br><br>        Plaintiffs,<br><br>    vs.<br><br>**REUNION.COM, INC.**, a California corporation,<br><br>        Defendant. | Case No. 08-CV-03518-MMC<br><br>**PLAINTIFFS' SUPPLEMENTAL RESPONSE BRIEF IN SUPPORT OF RECONSIDERATION OF COURT'S ORDER DISMISSING FIRST AMENDED COMPLAINT AND IN OPPOSITION TO STAY** |

**PLAINTIFFS' SUPPLEMENTAL RESPONSE
BRIEF RE RECONSIDERATION AND STAY**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................... 1

ARGUMENT.................................................................................................... 2

    I. This Court Should Not Stay This Litigation ........................................... 2

    II. The Ninth Circuit's Decision in Gordon Demonstrates That Plaintiffs Have

        Article III Standing ............................................................................ 5

    III. Plaintiffs' Claims Are Not Preempted Under Gordon ......................... 8

        A. Plaintiffs Need Not Plead Detrimental Reliance To Avoid

           Preemption ................................................................................ 9

        B. Plaintiffs' Counsel's Arguments From Another Case Are Irrelevant..... 10

        C. The FAC Adequately Pleads That The E-mails Were Deceptive......... 12

    IV. The Court Should Deny Defendant's Sanctions Motions............................. 16

CONCLUSION ........................................................................................... 17

**TABLE OF AUTHORITIES**

*ASIS Internet Services v. Azoogle.com, Inc.,* No. 08-15979, 2008 WL 4205286
(Appellant's Opening Brief, Aug. 1, 2008) at 12-21 .................................................... 7

*ASIS Internet Services v. Azoogle.com, Inc.,* No. 08-15979, 2008 WL 5458495 at
4, 12-13 (Appellant's Reply Brief, Nov. 14, 2008) ...................................................... 7

*ASIS Internet Services v. Azoogle.com, Inc.,* No. 08-15979, 2009 WL 4841119
(9th Cir. Dec. 2, 2009) .................................................................................................. 7

*Asis Internet Services v. Consumer Bargaingiveaways, LLC,* 622 F.Supp.2d 935,
941-42 (2009) ............................................................................................................... 10

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ............................. 5

*Bird v. Lewis & Clark Coll.,* 303 F.3d 1015, 1019 (9th Cir. 2002) ................................... 5

*Carlyle Towers Condo. Assoc., Inc. v. Crosland Savings, FSB,* 944 F.Supp. 341, 352
(D.N.J. 1996) ................................................................................................................ 11

*DePasquale v. Allstate Ins. Co.,* 179 F.Supp.2d 51, 61 (E.D.N.Y. 2002) ...................... 11

*Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1147 (9th Cir. 2006) ............... 5

*Fulfillment Services Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618
(9th Cir. 2008) ............................................................................................................... 5

*Geraci v. Senkowski,* 23 F.Supp.2d 246, 269 (E.D.N.Y. 1998) ..................................... 11

Gordon v. Virtumundo, *575 F.3d 1040 (9th Cir. 2009) ........................................passim*

*Housing Auth. Of the City of Dallas, Texas v. Northland Ins. Co.,* 333 F.Supp.2d
595, 602 n. 5 (N.D.Tex. 2004)................................................................................... 10-11

*Hypertouch, Inc. v. Azoogle.com, Inc.,* Case No. 09-15943 ............................................. 2

*Joint Apprenticeship & Training Comm. of the Plumbing and Pipefitting Ind. of San
Mateo v. Div. of Apprenticeship Standards, St. of Cal.,* No. 95-4122 MMC,
1996 WL 449176, * 1-2 (N.D.Cal. Aug. 1, 1996) ...................................................... 4

*N. Plains Res. Council v. Lujan,* 874 F.2d 661, 668 (9th Cir. 1989) ................................ 5

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

ii

*Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006)....*passim*

*Ortega v. J.B. Hunt Transport, Inc.,* 258 F.R.D. 361, 371 (C.D.Ca. 2009).......................4

*Rico Records Distributor, Inc. v. Ithier,* No. 04 Civ. 9782 (JSR), *2 (S.D.N.Y. Sept. 8, 2005)........................................................................................................................ 11

*Sacks v. Office of Foreign Assets Control,* 466 F.3d 764, 771 (9th Cir. 2006) ...............5

*Superior Beverage Co., Inc. v. Owens-Illinois, Inc.,* No. 83 C 512, 1988 WL 87038, *3 n. 1 (N.D.Ill. Aug. 16, 1988) ................................................................................ 10

## Federal Statutes and Other Authorities

28 U.S.C. §1927....................................................................................................*passim*

Controlling the Assault of Non-Solicited Pornography and Marketing Act ............*passim*

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**PLAINTIFFS' SUPPLEMENTAL RESPONSE BRIEF RE RECONSIDERATION AND STAY**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

In its October 20, 2009 Order Denying in Part and Deferring in Part Ruling on Defendant's Motion to Strike and for Involuntary Dismissal; Deferring Ruling on Motion for Sanctions; Affording Parties Opportunity to Submit Supplemental Briefing (Dkt #100) (the "Order") at 3-6, this Court recognized that the Ninth Circuit's recent decision in *Gordon v. Virtumundo*, 575 F.3d 1040 (9th Cir. 2009) raises doubts about the validity of the Court's December 23, 2008 Order (the "Dismissal Order") dismissing Plaintiffs' First Amended Complaint (the "FAC").    Accordingly, this Court gave the parties the opportunity to address, in essence, two questions.  (Order at 3-6).  First, if plaintiffs asserting state law claims such as those in *Gordon* and here must demonstrate "actual injury" from receiving false and deceptive emails to establish standing, why did *Gordon* hold the plaintiff there had standing to pursue his state law claims, given that the Court had just held that the plaintiff had not suffered any actual injury for purposes of his federal claim?    Second, if plaintiffs asserting such a state law claim must prove detrimental reliance to avoid preemption under the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"), why did *Gordon* not expressly preempt such claims on that basis?

Defendant's Supplemental Brief (Dkt #102) ("Defendant's Brief") does not even try to answer these questions.  Instead, in a transparent effort to distract from the weakness of its position on the merits, Defendant resorts, once again, to making personal attacks on Plaintiffs' attorneys (calling Plaintiffs' attorneys, among other things, "duplicitous" and "arrogant," Defendant's Brief at 3, 14), and citing some purportedly inconsistent arguments that they made in a different case on behalf of a different client.  The case law is clear, however, that such attorney argument from a different case is entirely irrelevant to this case.

Defendant's Brief also argues matters that plainly go far beyond the scope of the Order, which gave the parties the opportunity to submit supplemental briefing "limited to the issue of whether, in light of the Ninth Circuit's opinion in *Gordon*, the Court should

**PLAINTIFFS' SUPPLEMENTAL RESPONSE
BRIEF RE RECONSIDERATION AND STAY**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   reconsider its prior order dismissing the FAC…."   (Order at 6).   Ignoring the Order,

2   Defendant's Brief tediously rehashes its arguments from previous motions as to why it

3   asserts that this Court should sanction Plaintiffs' attorneys.   Ironically, Defendant ignores

4   the fact that this Court's recognition that *Gordon* raises questions about the validity of its

5   Dismissal Order further demonstrates that sanctions are inappropriate.

6        As set forth in Plaintiffs' Supplemental Brief (Dkt #101) ("Plaintiffs' Brief"), *Gordon*

7   demonstrates that Plaintiffs have Article III standing to pursue claims under section

8   17529.5 of the California Business & Professions Code, even if they have not alleged

9   actual harm.   Furthermore, the Ninth Circuit's preemption analysis in *Gordon* also

10  establishes that Plaintiffs need not allege detrimental reliance to avoid preemption under

11  CAN-SPAM.   Finally, unlike in *Gordon*, as this Court recognized in its Dismissal Order,

12  the FAC alleges sufficient facts demonstrating that the subject emails were materially

13  false and deceptive and that Defendant intended Plaintiffs and other recipients to rely on

14  those materially false and deceptive emails.

15       After the parties filed Plaintiffs' Brief and Defendant's Brief, this Court entered its

16  December 11, 2009 Order Affording Parties Opportunity to Address Whether Action

17  Should be Stayed (Dkt #103) ("Order Inquiring about a Potential Stay"), in which the

18  Court invited the parties to address, in their responsive briefs to be filed pursuant to the

19  Order, whether the present case should be stayed until the Ninth Circuit reaches a

20  decision in *Hypertouch, Inc. v. Azoogle.com, Inc.*, Case No. 09-15943.   As detailed

21  below, it is highly unlikely that the Ninth Circuit will resolve either the standing or

22  preemption issues raised here in deciding the *Hypertouch* appeal.   Accordingly, Plaintiffs

23  respectfully submit that this case should not be stayed until the Ninth Circuit rules in

24  *Hypertouch.*

25                              **ARGUMENT**

26       **I.      This Court Should Not Stay This Litigation.**

27       The Court should not stay this litigation pending the Ninth Circuit's decision in

28  *Hypertouch* for the simple reason that that decision is extremely unlikely to resolve the

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1    two issues before this Court–whether Plaintiffs have standing to pursue their claims and

2    whether those claims are preempted under CAN-SPAM.  In *Hypertouch*, a case filed in

3    this Court, the plaintiff, an internet service provider, sued various defendants for, among

4    other things, purportedly violating section 17529.5 based on certain emails that the

5    plaintiff had received.  Unlike the present case, in which Defendant authored and sent

6    the e-mails at issue, the specific connection between the defendants in *Hypertouch* and

7    the e-mails there was far from clear.  Indeed, because the plaintiff in *Hypertouch* was

8    unable to link the e-mails directly to the defendant, it is not surprising that that the

9    plaintiff failed to plead fraud, including intent to deceive, with particularity.  Here, in

10   contrast, because Reunion.com admittedly authored and sent the e-mails at issue, it is

11   plain, as this Court held, that Plaintiffs adequately pled intent to deceive.

12        This Court dismissed the *Hypertouch* complaint for two reasons.  (Order Granting

13   Defendant's Motion to Dismiss, Case No. 08-cv-04970-MMC, March 19, 2009 (Dkt #99)

14   (the "*Hypertouch* Dismissal Order"), attached hereto as Exhibit A).  First, the plaintiff's

15   claims sounded in fraud, but the plaintiff had failed to plead such claims with particularity

16   as required by Federal Rule of Civil Procedure 9(b).  *Id.* at 1-2.  Second, certain aspects

17   of the plaintiff's claims were barred by the statute of limitations.  *Id.* at 2-4.  While this

18   Court gave the plaintiff leave to amend, the plaintiff chose not to do so, and the Court

19   dismissed the operative complaint.  (Order Dismissing Action, Case No. 08-cv-04970-

20   MMC, April 23, 2009 (Dkt #101), attached hereto as Exhibit B).  While this Court briefly

21   discussed preemption under CAN-SPAM in its *Hypertouch* Dismissal Order (which had

22   been raised by Defendants as an alternative basis for dismissal), this Court expressly

23   did *not* dismiss the *Hypertouch* complaint on grounds of preemption.  *Hypertouch*

24   Dismissal Order at 5.  And this Court did not discuss the issue of standing at all in the

25   *Hypertouch* Dismissal Order.

26        The dismissal in *Hypertouch* is now on appeal before the Ninth Circuit.  In their

27   briefs, the parties focus on the issues of whether the plaintiff pled fraud with sufficient

28   particularity under Rule 9(b) and the statute of limitations, neither of which is an issue in

**PLAINTIFFS' SUPPLEMENTAL RESPONSE
BRIEF RE RECONSIDERATION AND STAY**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   the present case.  While preemption is also discussed in the *Hypertouch* briefs, as a

2   potential alternative basis for dismissal, the Ninth Circuit need not, and likely will not

3   (given the other infirmities of the operative complaint) reach that issue.  Nor is the Ninth

4   Circuit likely to address the *Hypertouch* Plaintiff's standing, as that was not a basis of

5   this Court's *Hypertouch* Dismissal Order and is not the focus of the parties' briefing.  It is

6   therefore highly unlikely that the Ninth Circuit will address or resolve either of the issues

7   before the Court here in the *Hypertouch* appeal.   Accordingly, Plaintiffs respectfully

8   submit that it would not be in the interests of the parties or the efficient administration of

9   justice for this action to be stayed due to the pendency of the *Hypertouch* appeal.

10          In this regard, the present case stands in stark contrast to *Ortega v. J.B. Hunt*

11  *Transport, Inc.*, 258 F.R.D. 361, 371 (C.D.Ca. 2009), cited in this Court's Order Inquiring

12  about a Potential Stay.  In *Ortega*, the District Court granted a stay because it was clear

13  that the California Supreme Court was about to rule on the very legal issue confronting

14  the District Court.  *Id.*  The present case is much more akin to *Joint Apprenticeship &*

15  *Training Comm. Of the Plumbing and Pipefitting Ind. Of San Mateo v. Div. of*

16  *Apprenticeship Standards, St. of Cal.*, No. 95-4122 MMC, 1996 WL 449176, * 1-2

17  (N.D.Cal. Aug. 1, 1996) ("*Joint Apprenticeship")*, in which this Court denied a request for

18  a stay pending the appeal of a separate case before the Ninth Circuit.   In *Joint*

19  *Apprenticeship*, this Court refused to stay the proceedings because the resolution of the

20  separate appeal before the Ninth Circuit was not "likely to impact" the case before this

21  Court.  *Id.*  This is the same as the situation at bar; the *Hypertouch* appeal is highly

22  unlikely to impact or resolve the issues before the Court in this case.

23          Plaintiffs understand that Defendant will also oppose a stay of these proceedings.

24  The present case was initially filed in July 2008 and, approximately a year and a half

25  later, remains in the motion to dismiss stage.  Prompt and expeditious adjudication of

26  this case on the merits is in the interests of judicial economy and fairness.

27  //

28  //

**II.    The Ninth Circuit's Decision in *Gordon* Demonstrates That Plaintiffs Have Article III Standing.**

On the merits, for the reasons set forth in Plaintiffs' Brief, this Court should reconsider and vacate the Dismissal Order in light of *Gordon*.  Defendant half-heartedly argues that *Gordon* "does not address Article III standing" (Defendant's Brief at 3), but it ignores the fact that *Gordon* devoted pages of analysis to finding the plaintiff there was not "aggrieved" under CAN-SPAM, while simultaneously holding that such plaintiff *did* have standing to pursue a claim under a Washington state statute substantially similar to section 17529.5.  Of course, Article III standing is a threshold question that must be addressed and decided by federal courts without regard to whether it is raised by the parties.[1]  Accordingly, the Ninth Circuit could not have, and would not have, ruled as it did in *Gordon* unless it believed that the plaintiff in *Gordon* had Article III standing to pursue his Washington state law claim.

As this Court recognized in the Order at 5, the Ninth Circuit in *Gordon* held that the plaintiff there was not "aggrieved" by the alleged violations of CAN-SPAM:

- "We conclude that Gordon also fails the 'adversely affected by' component [of CAN-SPAM]."  *Gordon*, 575 F.3d at 1055.

- "Gordon has failed to argue, let alone come forth with evidence, that, even if he was an IAS provider, he has suffered any real harm contemplated by the CAN-SPAM Act."  *Id.*

- "As the district court concluded, Gordon has 'suffered no harm related

---

[1] *See e.g.*, *Fulfillment Services Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618 (9th Cir. 2008) ("Standing is a threshold matter central to our subject matter jurisdiction [and] [w]e must assure ourselves that the constitutional standing requirements are satisfied before proceeding to the merits.") (quoting *Bates v. United States Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)); *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771 (9th Cir. 2006) ("'Standing is a threshold question which we must resolve before proceeding to the merits.'") (citations omitted); *Friery v. Los Angeles Unified Sch. Dist.*, 448 F.3d 1146, 1147 (9th Cir. 2006) ("Before we reach the merits of the claim, we must first consider whether the plaintiff has standing to bring suit."); *Bird v. Lewis & Clark Coll.*, 303 F.3d 1015, 1019 (9th Cir. 2002) ("Before we reach the merits of Bird's challenges, we must resolve the threshold issue of standing."); *N. Plains Res. Council v. Lujan*, 874 F.2d 661, 668 (9th Cir. 1989) ("[T]he standing issue is jurisdictional and must be addressed before this court can reach the merits of the claim.").

5

**PLAINTIFFS' SUPPLEMENTAL RESPONSE BRIEF RE RECONSIDERATION AND STAY**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

to bandwidth, hardware, Internet connectivity, network integrity, overhead costs, fees, staffing, or equipment costs.'" *Id.* at 1055-56.

- "The fact that Gordon… endures no real ISP-type harm from commercial e-mail… demonstrates that he has not been adversely affected by alleged violations of the federal act in any cognizable way." *Id.* at 1057.

- Plaintiff "is neither a *bona fide* IAS provider nor has he been adversely affected by alleged violations of the CAN-SPAM Act." *Id.*

- Gordon "admits he was not in any way misled or deceived…." *Id.* at 1064.

Having just dismissed the plaintiff's claim under CAN-SPAM for failure to establish such actual harm, the Ninth Circuit then held the plaintiff *did* have standing to pursue his state law claims. *Id.* at 1058. The Court noted that the defendant had not contested the plaintiff's standing to pursue claims under the Washington statute, expressly indicating that, in contrast to CAN-SPAM, the Washington statute, like section 17529.5, "authorizes a recipient of a commercial e-mail message… to bring a private action." *Id.* at 1058. Because the Ninth Circuit, as this Court pointed out in its Order at 5, was required to ensure Article III standing as a threshold matter (irrespective of whether the issue was raised by the defendants), and because the Ninth Circuit then addressed the merits of the plaintiff's state law claims, the Ninth Circuit must have determined that the plaintiff had Article III standing to bring his state law claims.[2]

Defendant speciously argues that the plaintiff in *Gordon* alleged that the e-mails at issue "clogged" his server system, and that such injuries "were certainly sufficient for Article III standing." (Defendant's Brief at 13). The *Gordon* court, however, never indicated that such allegations of "clogging" conferred Article III standing on the plaintiff. The fact is, the *Gordon* court had just gone to great lengths to explain why the plaintiff's allegations that his server was clogged were *not* sufficient to establish actual injury

---

[2] Tellingly, Defendant's Brief says nothing about the fact that Article III standing is a threshold issue of subject matter jurisdiction which must be addressed by the court even if it is not raised by the defendant, even though the Court expressly flagged that issue in its Order at 5.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   under CAN-SPAM.  *Gordon*, 575 F.3d at 1055-57.  The only coherent explanation of the

2   Ninth Circuit's contrary finding that plaintiff had standing to pursue his state law claims is

3   that the Ninth Circuit believed, as Plaintiffs here contend, that a showing of "actual harm"

4   is not required for a plaintiff to have Article III standing to pursue a claim under a state

5   statute such as section 17529.5.  (Plaintiffs' Brief at 3 n. 2).

6       This analysis is also echoed in the Ninth Circuit's recent unpublished decision in

7   *ASIS Internet Services v. Azoogle.com, Inc.*, No. 08-15979, 2009 WL 4841119 (9th Cir.

8   Dec. 2, 2009), a copy of which is attached as Exhibit C.  In *Azoogle*, as in *Gordon*, the

9   plaintiff asserted claims under both CAN-SPAM and section 17529.5, and the District

10  Court granted summary judgment for the defendant on both claims.  On appeal, the

11  parties extensively briefed the following issues: Article III standing; the merits of the

12  plaintiff's claims; and whether the section 17529.5 claim was preempted by CAN-SPAM.

13  *See e.g., ASIS Internet Services v. Azoogle.com, Inc.*, No. 08-15979, 2008 WL 4205286

14  (Appellant's Opening Brief, Aug. 1, 2008) at 12-21; *ASIS Internet Services v.*

15  *Azoogle.com, Inc.*, No. 08-15979, 2008 WL 5458495 at 4, 12-13 (Appellant's Reply

16  Brief, Nov. 14, 2008).

17      The Ninth Circuit affirmed the decision granting summary judgment for the

18  defendant.  *Azoogle*, 2009 WL 4841119 at *1.  First, as in *Gordon*, the Ninth Circuit held

19  that the plaintiff's CAN-SPAM claim failed because the "Plaintiff had not suffered a harm

20  within the meaning of the [CAN-SPAM] statute."  *Id.*  Second, as in *Gordon*, the Ninth

21  Circuit implicitly found that the plaintiff had Article III standing to pursue the section

22  17529.5 claim because it proceeded to address that claim on the merits.  The Ninth

23  Circuit ultimately held that the section 17529.5 claim failed because the "[d]efendant

24  neither sent nor procured the emails at issue, and therefore did not 'advertise' within the

25  meaning of the statute."  *Id.*

26      Because the Ninth Circuit in *Azoogle* had to ensure Article III standing as a

27  threshold matter, and because the Ninth Circuit addressed the merits of the plaintiff's

28  section 17529.5 claims, it must be the case, as in *Gordon*, that the Ninth Circuit

1    determined that the plaintiff had Article III standing to bring its section 17529.5 claim

2    even though it had "not suffered a harm within the meaning of the [CAN-SPAM] statute."

3    While this unpublished opinion in *Azoogle* is not binding precedent, it reinforces

4    Plaintiffs' interpretation of *Gordon*. *See* Ninth Circuit Rule 36-3; Fed. R. App. Proc. 32.1.

5    Indeed, the Ninth Circuit's decision to assess the merits of the section 17529.5 claims in

6    both *Gordon* and *Azoogle* demonstrates that it believes recipients of e-mails such as the

7    Plaintiffs have standing to pursue section 17529 claims, even though the Ninth Circuit

8    has yet to say so explicitly in its opinions.[3]

9        **III.   Plaintiffs' Claims Are Not Preempted Under *Gordon*.**

10       On the issue of preemption, Defendant's Brief advances three primary arguments,

11   each of which fails.  First, Defendant summarily asserts that *Gordon* "affirms" this Court's

12   holding in the Dismissal Order that, in order to avoid preemption under CAN-SPAM, a

13   claim brought under section 17529.5 must allege detrimental reliance.  (Defendant's

14   Brief at 1-2, 6).  This argument has no basis in reality.  In fact, the Ninth Circuit in

15   *Gordon* did not require the plaintiffs to establish detrimental reliance to avoid

16   preemption.  Second, Defendant cites some purportedly inconsistent arguments made

17   by some of Plaintiffs' attorneys in a different case on behalf of a different client.  As

18   demonstrated below, the law is clear that such attorney arguments from other cases are

19   irrelevant.  Finally, Defendant tries to use *Gordon* to revisit this Court's previous ruling in

20   the Dismissal Order that the FAC adequately alleges that the e-mails here were

21   materially false and deceptive.  There is nothing in *Gordon*, however, that would cause

22   the Court to alter its decision in this regard.

23   _____

[3]  In this regard, *Azoogle* also counsels against a stay pending the Ninth Circuit's
24   decision in *Hypertouch*.  There is no reason to believe the Ninth Circuit would do
     anything different in *Hypertouch* on the issue of standing from what it has done in
25   *Gordon* or *Azoogle*, especially given that the focus of the *Hypertouch* Dismissal Order
     and the parties' briefing is not on standing, but on whether the operative complaint
26   satisfies Rule 9(b) and the statute of limitations.  It would be most unfortunate for this
     Court to stay the present case in anticipation of receiving explicit guidance on the issue
27   of standing from the Ninth Circuit in *Hypertouch*, only to have the Ninth Circuit do in
     *Hypertouch* what it did in *Gordon* and *Azoogle*, i.e. implicitly find that the plaintiff has
28   Article III standing to pursue a section 17529 claim without explicitly analyzing the issue.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**A. Plaintiffs Need Not Plead Detrimental Reliance To Avoid Preemption.**

Like a mantra, Defendant keeps repeating that *Gordon* "establishes that each of the Court's prior rulings dismissing Plaintiffs' claims as a matter of law were, and are, correct," (Defendant's Brief at 1-3, 6-10), as if saying it over and over again would somehow make it true. Defendant's argument seems to be as follows: (1) this Court, when ruling that Plaintiffs must allege all five elements of a traditional common law fraud claim to avoid preemption under CAN SPAM, relied in part on *Omega World Travel v. Mummagraphics*, 469 F.3d 348 (4th Cir. 2006); (2) *Gordon* cited *Mummagraphics* with approval, therefore (3) *Gordon* "affirms" this Court's holding that a plaintiff asserting a claim under a state statute such as section 17529.5 must allege all five elements of fraud, including detrimental reliance, to avoid preemption under CAN-SPAM. (Defendant's Brief at 1-3, 6-10). This hopelessly simplistic argument is riddled with several material flaws.

First, *Gordon* preempted the state law claims there <u>solely</u> because the plaintiff failed to establish the e-mails at issue were materially deceptive. *Gordon* in no way suggests that the plaintiff had to prove detrimental reliance to avoid preemption. Given that the *Gordon* court had just gone to great lengths to explain why the plaintiff had *not* established that he was either misled or had suffered any actual harm, the *Gordon* court would have preempted the plaintiffs' state law claims for failure to establish detrimental reliance if the Ninth Circuit believed that were required.

Similarly, a requirement to allege every element of a fraud claim appears nowhere in the Ninth Circuit's recent unpublished decision in *ASIS v. Azoogle*, 2009 WL 4841119, in which the parties extensively briefed preemption. In *Azoogle*, the Ninth Circuit addressed the merits of the plaintiff's section 17529.5 claim even though the court found that the plaintiff had not suffered any harm from relying on the emails at issue. If CAN-SPAM preempted claims that did not allege all of the elements of fraud (including

9        **PLAINTIFFS' SUPPLEMENTAL RESPONSE BRIEF RE RECONSIDERATION AND STAY**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  reliance and damages), the Ninth Circuit would not have addressed the merits of the

2  plaintiff's section 17529.5 claim.  Rather, the court would have found that the claim was

3  preempted by CAN-SPAM because the plaintiff had no evidence of reliance or damages.

4      Finally, as Judge Alsup explained in *Asis Internet Services v. Consumer*

5  *Bargaingiveaways, LLC*, 622 F.Supp.2d 935, 941-42 (2009), the concepts of "falsity and

6  deception," go beyond traditional common-law fraud and include, for example, false-

7  advertising claims under the Federal Trade Commission Act, which do not require proof

8  of actual reliance or injury.   The Ninth Circuit cited Judge Alsup's opinion, which

9  criticized this Court's view of *Mummagraphics* as overly expansive, in *Gordon*,  575 F.3d

10  at 1059-60.

11          **B.  Plaintiffs' Counsel's Arguments From Another Case Are Irrelevant.**

12      As part of its on-going campaign to smear Plaintiffs' counsel, Defendant devotes

13  substantial attention to quoting arguments made by some of Plaintiffs' attorneys on

14  behalf of a different client in a different case.  This is a transparent effort to distract the

15  Court from the weakness of Defendant's position on the merits and is entirely irrelevant

16  to the present proceedings.

17      There is nothing shocking or inappropriate about an attorney taking inconsistent

18  positions on behalf of different clients in different cases:

19          Even if there were such an inconsistency, however, the
            Court is unaware of any requirement that attorneys must
20          refrain from taking inconsistent legal positions in different
            cases.  Such inconsistencies may necessarily arise out of
21          attorneys' obligations to represent their clients.  **An
            argument that an attorney's position is inconsistent**
22          **with a position taken elsewhere by that attorney is**
            **merely an attempt to attack that attorney's integrity**
23          **rather than a discussion on the merits of the issue.**
            Because such arguments have no weight and will not be
24          considered by this Court, it is recommended that the
            parties not waste their resources on them.
25

26  *Superior Beverage Co., Inc. v. Owens-Illinois, Inc.*, No. 83 C 512, 1988 WL 87038, *3 n.

27  1 (N.D.Ill. Aug. 16, 1988) (emphasis added).  *See also e.g.*, *Housing Auth. Of the City of*

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  *Dallas, Texas v. Northland Ins. Co.*, 333 F.Supp.2d 595, 602 n. 5 (N.D.Tex. 2004)

2  (noting "that Defendant's counsel took the opposite position in this case on the same

3  issue in another case," acknowledging "that counsel has a duty to zealously represent a

4  client" and reaching "the same result irrespective of counsel's two positions");

5  *DePasquale v. Allstate Ins. Co.*, 179 F.Supp.2d 51, 61 (E.D.N.Y. 2002) ("The court

6  wishes to make clear that it is not so naive as to presume that an attorney must always

7  argue the same side of a legal argument. Certainly, clients have different needs that

8  may require counsel to advance opposite sides of a legal argument."); *Geraci v.*

9  *Senkowski*, 23 F.Supp.2d 246, 269 (E.D.N.Y. 1998) ("Counsel have ethical obligations

10 to represent their client's interests zealously. The mere fact that, in so doing, they take

11 positions that conflict with those taken while representing other clients, or while writing

12 an article or treatise, does not create a potential conflict of interest."); *Carlyle Towers*

13 *Condo. Assoc., Inc. v. Crosland Savings, FSB*, 944 F.Supp. 341, 352 (D.N.J. 1996)

14 ("Nothing before this Court convinces me that an attorney may not take inconsistent

15 positions in different situations if that is what is needed to serve the interests of the

16 client."); *Rico Records Distributor, Inc. v. Ithier*, No. 04 Civ. 9782 (JSR), *2 (S.D.N.Y.

17 Sept. 8, 2005) ("[T]here is nothing improper about a lawyer's arguing opposite positions

18 for different parties in different cases: indeed, it is more or less inherent in an adversarial

19 system of justice.").  Significantly, Defendant's counsel have not cited any authority to

20 the contrary.

21       Furthermore, the factual differences between the present case and the one which

22 Defendant references, *Asis Internet Services v. Subscriberbase Inc.*, reinforce the

23 strength of the present case on the merits.  *Subscriberbase* was a suit in which the

24 plaintiffs, small internet service providers who had brought more than 20 such lawsuits

25 under CAN-SPAM and/or section 17529.5, sued defendant advertisers for advertising in

26 purportedly deceptive e-mails, <u>even though the defendants were not alleged to have</u>

27 <u>authored or sent the e-mails in question.</u>  (Ex. A to Defendant's Brief at 1-5, 11).[4]  Here,

28 _____

[4]  Some of plaintiff's attorneys have also represented defendants in other cases,

**PLAINTIFFS' SUPPLEMENTAL RESPONSE
BRIEF RE RECONSIDERATION AND STAY**

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1  in contrast, Reunion.com directly sent deceptive e-mails it had created to Plaintiffs and

2  others, but made it appear as if a personal contact of the recipient had sent the e-mails.

3  Contrary to appearances, Defendant's emails were not personal messages seeking to

4  "connect," but instead were unsolicited commercial advertisements from Defendant.

5  Plaintiffs' counsel agreed to represent the Plaintiffs and the putative class in this action

6  because they firmly believe that the Plaintiffs at bar, in contrast to the plaintiffs in other

7  cases such as *Subscriberbase*, have extremely meritorious claims against a culpable

8  defendant.

9  **C.  The FAC Adequately Pleads That The E-mails Were Deceptive.**

10  In the Dismissal Order at 2-3, 6-7, 8-9, this Court held that the FAC adequately

11  pled that the e-mails at issue were false and deceptive.  Reunion.com asserts that

12  *Gordon* should somehow change this analysis.  Nothing could be further from the truth.

13  As set forth in detail in the FAC, during or prior to the spring of 2008,

14  Reunion.com initiated an e-mail marketing campaign consisting of e-mails sent by

15  Reunion.com to the electronically harvested e-mail contacts of its new members.  (FAC

16  ¶¶ 5, 28.)  Reunion.com disguised the e-mails—in particular, the e-mails' "from" lines

17  and subject lines—to appear as personal requests from a known personal contact to

18  "connect" with the recipient.  (FAC ¶¶ 5-9.)  Neither the e-mails' "from" lines nor subject

19  lines gave any indication that the emails were actually commercial advertisements sent

20  by, and promoting, Reunion.com.  (FAC ¶ 9.)

21  The e-mails, examples of which appear in the FAC, contained a variety of false

22  and deceptive content, including but not limited to the following:

23  • The e-mails' "from" lines contained the names of the individual Reunion.com
24    members from whose email contacts the recipients' e-mail addresses were
       harvested, giving the false and deceptive impression that the e-mails were from
25    those individuals and not from Reunion.com.  (FAC ¶¶ 29, 36, 40, 45, 51.)

26  • In some cases, the e-mails' "from" lines also contained the personal email

27  including *Hypertouch*.  In these cases, like *Subscriberbase* and unlike the present case,
    the plaintiffs have sued defendants in connection with purportedly deceptive e-mails,
28  even though the defendants did not create or send the e-mails at issue.

Case No. 08-CV-03518-MMC                    12       **PLAINTIFFS' SUPPLEMENTAL RESPONSE
                                                     BRIEF RE RECONSIDERATION AND STAY**

addresses of individual Reunion.com members, including the domain name of the individual members' third party email services providers, giving the false and deceptive impression that the e-mails were sent from such members' personal email accounts and not by Reunion.com.  (FAC ¶¶ 29, 47, 52.)

• The e-mails' subject lines stated "Please Connect With Me :-)" or "[Member Name] Wants to Connect with You" or something substantially similar, giving the false and deceptive impression that the e-mails were personal invitations to "connect" independent of Reunion.com, rather than commercial advertisements by and for Reunion.com.  (FAC ¶¶ 30, 37, 41, 46, 51.)

Based on the foregoing, this Court ruled in the Dismissal Order that the FAC adequately alleged that the e-mails were materially false and deceptive, and that Defendant intended the recipients to rely thereon.

> Contrary to defendant's argument, plaintiffs have sufficiently alleged, for purposes of § 7701(b)(1), that defendant's inclusion of a third-party domain name in the subject emails was a false representation and that defendant knew such emails would convey a false representation, in that, according to plaintiffs, the emails were not sent by the yahoo.com addresses identified in the email or with their permission, but, rather, were sent by defendant, which authored the entirety of the language in the email.  (See FAC ¶¶ 7, 9, 33, 45, 50.)  Further, plaintiffs have sufficiently alleged the above-referenced representations were material and defendant intended the recipients to rely thereon, in that, according to plaintiffs, defendant intended the recipients to believe the emails had been authored and sent by the individuals whose yahoo.com email addresses were identified and to act on such belief by "opening and reading" the emails, which, in fact, contained a commercial advertisement for defendant's services.  (See FAC ¶¶ 45, 47, 51, 52.)….
>
> Contrary to defendant's argument, plaintiffs have sufficiently alleged, for purposes of § 7701(b)(1), that defendant's inclusion of an individual's name, immediately next to the word "From" in each of the above-referenced emails was a false representation and that defendant knew it would convey a false representation, in that, according to plaintiffs, the emails were not sent by the named individuals, but were actually sent by defendant, which authored the entirety of the language in the e-mail.  (See FAC ¶¶ 9, 33, 35, 40, 45, 51.)  Further, plaintiffs have sufficiently alleged the above-referenced false representations were material and

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

defendant intended the recipients to rely thereon, in that, according to plaintiffs, defendant intended the recipient to believe the email had been authored and sent by the named individual and to act on such belief by "opening and reading" the emails, which, in fact, contained a commercial advertisement for defendant's services. (See FAC ¶¶ 35, 40, 45, 51.)….

Contrary to defendant's argument, plaintiffs have sufficiently alleged, for purposes of § 7701(b)(1), that the above-quoted subject lines were false representations, because, according to plaintiffs, none of the individuals identified wanted to 'connect' with the plaintiff to whom defendant sent the email, (see FAC ¶¶ 9, 35, 39, 46, 51), and defendant knew its representation was false because defendant "generated" the subject line "without providing the [individual identified in the email] any input or opportunity to review or approve the message before it was sent," (see FAC ¶ 9)….

Further, plaintiffs have sufficiently alleged the above-referenced asserted false representations were material and defendant intended the recipients to rely thereon, in that, according to plaintiffs, defendant intended the recipients to believe, based on the content of the subject line, that the emails were of a "personal nature and not an unsolicited commercial email from [defendant]," (see FAC ¶ 5), and to act on such belief by "opening and reading" the emails, which, in fact, contained a commercial advertisement for defendant's services, (see FAC ¶¶ 32, 37, 41, 46, 51.)

Dismissal Order at 2-3, 6-7, 8-9.

*Gordon* did not change any of the foregoing analysis or the state of the law in this regard. *Gordon*, following *Mummagraphics*, held simply that CAN-SPAM preempts state law claims against merely "immaterial errors." 575 F.3d at 1061, 1064. At the time of the Dismissal Order, this Court was fully aware of, and cited, *Mummagraphics*, yet still held that the FAC alleged more than "immaterial errors." *Gordon* creates no basis for the Court to revisit that ruling now.

In its initial argument in support of its motion to dismiss, Defendant repeatedly and stridently argued that it was *not* the sender of the e-mails at issue, but instead that the recipients' personal contacts "initiated" the e-mails. (Defendant's Motion to Dismiss Complaint (Dkt #14) at 11 ("Reunion.com did not 'initiate' the emails in question, but, in

1   fact, the Reunion.com member and friend of the recipient was the person initiating the

2   emails as a matter of law."); Defendant's Motion to Dismiss First Amended Complaint

3   (Dkt #.46) at 10 ("[T]he new members – not Reunion.com – initiated the emails."), 18

4   ("[T]he emails *were* indisputably sent at the new members' request and were, therefore,

5   indisputably from the new members").)   Now, in a sudden and complete about-face,

6   Defendant admits that it was the actual sender.  Indeed, Defendant's latest argument is

7   that, like the plaintiff in *Gordon*, Plaintiffs could identify Reunion.com as the actual

8   sender by doing a "WHOIS search."    This argument, however, highlights why

9   Defendant's e-mails, in contrast to those in *Gordon*, are materially false and deceptive.

10      At issue in *Gordon* was certain header information, which the plaintiff claimed

11   failed to identify defendant Virtumundo as the sender, because the header instead used

12   "fanciful domain names," such as "vmmail.com" or "vmadmin.com." Gordon, 575 F.3d at

13   1063-64.  The Ninth Circuit held that the plaintiffs' "alleged header deficiencies relate to,

14   at most, non-deceptive statements or omissions and a heightened content or labeling

15   requirement," noting that the plaintiff failed to "present evidence that Virtumundo's

16   practice is aimed at misleading recipients as to the identity of the sender."  *Id.* at 1064.

17      Here, in marked contrast, Plaintiffs allege that the header information

18   Reunion.com used was designed for the very purpose of creating the false impression

19   that the e-mails came from a *personal contact* of the recipient, and one who was seeking

20   to "connect" with the recipient, rather than from Reunion.com, in an effort to trick the

21   recipient into opening and reading the email containing its commercial advertisement.

22   The header information in *Gordon* would not have meant anything to the e-mail

23   recipient, which was why the Court indicated a recipient could have conducted a WHOIS

24   search – to find out the identity of the sender.  Here, however, because the e-mails'

25   header information contained the name (and sometimes the e-mail address) of a known

26   personal contact, the recipient had no reason to conduct such a WHOIS search.  On the

27   contrary, the recipient would have been deceived by Defendant into thinking that they

28   already knew the sender.  Indeed, as this Court recognized in the Dismissal Order, the

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1   header information here was deliberately designed to convey the false impression that

2   the emails were from a known personal contact of the recipient, and were of a personal

3   nature, and *not* unsolicited commercial email advertisements from Reunion.com, when

4   that is precisely what the e-mails were.  This is the very evil which section 17529.5 was

5   designed to combat.[5]  Accordingly, as this Court has already ruled, the FAC adequately

6   pleads that the subject e-mails were false and deceptive, that the false representations

7   contained therein were material and that Reunion.com intended the recipients to rely

8   thereon.

9       **IV.    The Court Should Deny Defendant's Sanctions Motions.**

10      Even though the Order expressly limited the parties to briefing the issue of

11  whether it should reconsider the Dismissal Order in light of *Gordon*, Defendant's Brief

12  regurgitates Defendant's arguments as to why it believes Plaintiffs' counsel should be

13  sanctioned.  It is ironic that Defendant should go beyond the scope of the Order to argue

14  in favor of its sanctions motions when one of the very bases of Defendant's sanctions

15  motions is that Plaintiffs argued issues beyond the scope of a prior order of the Court.

16  (Defendant's Motion for Sanctions (Dkt #87) at 2 (arguing Plaintiffs' counsel should be

17  sanctioned for "[a]rguing issues in their Supplemental Brief in Support of their Motion for

18  Reconsideration (Docket No. 68)… that they were *not* given leave to argue (namely,

19  federal preemption), violating L.R. 7.9(a)…."))   In any event, Plaintiffs have rebutted

20  Defendant's arguments at length already and will not repeat all those arguments here.

21  (Plaintiffs' Oppositions to Defendant's Motions for Sanctions (Dkt #88-89).)

22      That being said, the Order and *Gordon* make it even clearer that there is no merit

23  to Defendant's sanctions motions.  Those motions assert that Plaintiffs' counsel did not

24  have a good faith basis for asserting their claims, or a good faith basis for seeking

25

26  ────────────────
    [5] In any event, whether the e-mails are materially misleading is a question of fact,
    inappropriate for resolution on a motion to dismiss.  (Plaintiff's Opposition to Defendant's

27  Motion to Dismiss the FAC (Dkt #52) at 10 n. 3 (citing Ninth Circuit case law).)  *Gordon*,
    for example, like *Mummagraphics*, arose in the context of a motion for summary

28  judgment.

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

1 reconsideration of the Court's adverse rulings regarding standing or preemption.  The

2 Ninth Circuit's decision in *Gordon* and this Court's Order in light of *Gordon, however,*

3 demonstrate that Plaintiffs' arguments that they have Article III standing and state a non-

4 preempted claim, even in the absence of pleading detrimental reliance are, at the very

5 least, colorable and made in good faith.

6      The other principal basis Defendant has for seeking sanctions, which it harps on

7 incessantly, is that Plaintiffs represented in one brief that they would attempt to plead

8 additional allegations of injury, but then changed their mind.   Plaintiffs respectfully

9 request that the Court put this tired argument to rest.  There is nothing inappropriate or

10 unethical about such a change in litigation strategy.   At the time Plaintiffs' counsel

11 indicated that they would plead additional allegations regarding injury, that was in fact

12 Plaintiffs' intent.  That they subsequently determined not to do so does not convert their

13 prior assertion into a knowingly false statement when made, which is what is required for

14 sanctions under 28 U.S.C. §1927.  Defendant cites absolutely no evidence suggesting

15 that Plaintiffs or their counsel did not intend to plead additional allegations of injury at the

16 time they made that assertion.   Defense counsel's unfounded speculation is not

17 sufficient to warrant sanctions.  Moreover, as the Court pointed out during the July 10,

18 2009 Case Management Conference, there would be no conceivable motive for

19 Plaintiffs' counsel to lie to the Court about their intent since the Court would obviously

20 soon see the Second Amended Complaint as filed.   Defendant's sanctions motion

21 should be denied, *in toto*.  (Plaintiff's Opposition to Defendant's Motion for Sanctions

22 (Dkt # 89 at 1-2, 9-11).)

23                              **CONCLUSION**

24      For all of the reasons set forth herein, in Plaintiffs' Brief and in Plaintiffs' earlier

25 submissions concerning the adequacy of the FAC, it is respectfully submitted that the

26 Court should not stay these proceedings until the Ninth Circuit rules in *Hypertouch* and

27 the Court should reconsider the Dismissal Order, and upon reconsideration vacate the

28 Dismissal Order and deny Defendant's motion to dismiss because the FAC states claims

1    under section 17529.5, which claims Plaintiffs have Article III standing to prosecute in

2    this Court,  and which claims are not preempted by CAN-SPAM.

3

4    Respectfully submitted,

5    DATED:  January 8, 2009                          **KRONENBERGER BURGOYNE, LLP**

6

7                                                     By:___/s/ Karl S. Kronenberger____

8                                                     Henry M. Burgoyne, III
                                                      Karl S. Kronenberger
9                                                     Jeffrey M. Rosenfeld
                                                      150 Post Street, Suite 520
10                                                    San Francisco, CA 94108
                                                      Telephone:  (415) 955-1155
11                                                    Facsimile:   (415) 955-1158

12                                                    **SHAPIRO HABER & URMY LLP**

13                                                    Edward F. Haber (admitted *pro hac vice*)
                                                      Todd S. Heyman (admitted *pro hac vice*)
14                                                    Ian J. McLoughlin (admitted *pro hac vice*)
                                                      Robert E. Ditzion (admitted *pro hac vice*)
15                                                    53 State Street
                                                      Boston, MA 02109
16                                                    Telephone: (617) 439-3939
                                                      Facsimile: (617) 439-0134

17

18

19

20

21

22

23

24

25

26

27

28

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com