LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
1644 North Orange Grove Avenue
Los Angeles, CA 90046
TELEPHONE: (323) 882-8225
FACSIMILE:   (323) 882-8208
lawofcsrjp@aol.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Carole E. Handler (CA Bar No. 129381)
9665 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90212
TELEPHONE: (310) 860-8705
FACSIMILE:   (310) 860-3805
handler@wildman.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Peter N. Moore (admitted *pro hac vice*)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
TELEPHONE: (312) 201-2000
FACSIMILE:   (312) 201-2555
pmoore@wildman.com

Attorneys for Defendant
REUNION.COM, INC.

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLETTA HOANG, LIVIA HSIAO, and MICHAEL BLACKSBURG, and MATTHEW HALL, individually and on behalf of a class of similarly situated persons,<br><br>    Plaintiffs,<br><br>    v.<br><br>REUNION.COM, INC., a California corporation,<br><br>    Defendant. | No. 3:08-cv-3518 MMC<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING THE *VIRTUMUNDO* DECISION**<br><br>**Judge:**   Hon. Maxine Chesney<br>          Courtroom 7 (19th Floor) |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ............................................................................1

ARGUMENT ...................................................................................5

   I.    *Virtumundo* Decisively Disposes of Plaintiffs' State Law
      Claims ..................................................................................6

      A.    *Virtumundo* Confirms Plaintiffs' Lack of Standing in
           this Case ..................................................................... 6

      B.    *Virtumundo* Requires that an E-mail Recipient Allege
           Detrimental Reliance and Resulting Damage to State a
           Claim that is Not Preempted ...................................... 8

   II.   The Case Should Not be Stayed Pending *Hypertouch* or Any
      Other Decision ...................................................................11

      A.    A Decision by the Ninth Circuit in *Hypertouch* is
           Unlikely to Bear on this Case ................................... 12

      B.    A Stay Would Not Be in the Interests of Justice or
           Further an Efficient Resolution to this Case ........................... 14

      C.    A Stay is Totally Inappropriate in Light of Plaintiffs'
           Counsels' Bad Faith .................................................... 16

   III.   If the Court Were Inclined to Permit Plaintiffs' Claims to
      Proceed, it Should Certify the Central Legal Issues for
      Interlocutory Appeal ..........................................................18

CONCLUSION ...............................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ....................................................15

*Asis Internet Services v. Azoogle.com, Inc.*, No. 08-17779 (9th Cir. Dec. 2, 2009) .........................................................................................................7

*Asis Internet Services v. Vistaprint USA, Inc.*, 617 F.Supp.2d 989, 992-93 (N.D.Cal. 2009) ..........................................................................................11

*Asis v. Subscriberbase*, Case No. 09-cv-03503-SC (Dec. 4, 2009) (slip op) ...........................................................................................................11

*Bell Atlantic Corp. v Twombly*, 550 U.S. 544 (2007)..................................15

*Gordon v. Virtumundo*, 575 F.3d 1040, 1055 (9th Cir. 2009)............6, 7, 8, 9

*In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 (9th Cir. 1996) ......................................................................................................10

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003) ...10

**Statutes**

28 U.S.C. § 1292 ..........................................................................................18

**Other Authorities**

Cal. Ethics Op. No. 1989-108 .........................................................................1

**Rules**

Cal. RPC 5-200 ........................................................................................1, 17

Fed.R.Civ.P. 11 ...............................................................................................1

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The ability to argue both sides of an issue can demonstrate effective and zealous advocacy. Simultaneously taking diametrically opposed positions in two pending cases, however, on the same question of law, in the same circuit, and even before the same District Court, is not zealous advocacy at all. At best it is sheer opportunism and, at worst, it is outright deception.[1] Yet that is precisely what has occurred here.

As discussed in Defendant's initial brief regarding the *Gordon v. Virtumundo* decision (Docket No. 102 (incorporated by reference herein)), Plaintiffs' counsel continue to commit a fraud on multiple courts in this Circuit, and even in this District, by arguing, in *Asis v. Subscriberbase*, No. CV 09-3503-SC (N.D. Cal. 2009), that the *Virtumundo* decision holds that claims lacking all the elements of common law fraud are preempted under CAN SPAM, while simultaneously arguing in ***this*** case that the opposite is true. Amazingly, in *Hypertouch v Azoogle,* No. 09-15943 (9th Cir. 2009), where Plaintiffs' counsel represent another alleged spammer defendant, they have again represented the state of the law to be one thing, yet have taken a legal position in direct conflict with the representations that they have made to ***this*** Court in ***this*** case. Plaintiffs' counsels' appellate brief in *Hypertouch* expressly, and quite correctly, represents that claims lacking allegations of reliance or damage are preempted by CAN SPAM – exactly as Defendant argues here, and exactly as this Court has three

---

[1] Plaintiffs' counsel will undoubtedly argue that it is generally acceptable for lawyers to take different positions in different cases. However, the Federal Rules and ethical rules all expressly prohibit attorneys from making representations about the law that they know or believe to be wrong. Fed.R.Civ.P. 11(b); Cal. RPC 5-200(B). Further, as the California State Bar has held, while it may not be a disciplinable offense to represent clients with diametrically adverse interests on a legal issue, it is strongly discouraged, and candor both to the clients and the tribunal is essential. See Cal. Ethics Op. No. 1989-108 (available at http://calbar.ca.gov/calbar/html_unclassified/ca89-108.html (last accessed Jan. 7, 2010) (considering such conduct "egregious.") ). As detailed herein, Plaintiffs' counsel  not only failed in that  duty of candor; it is respectfully submitted that they have misled this tribunal, or others, as to the state of the law in a quest for personal financial gain in cavalier disregard of the impact of that behavior.  Although such behavior may not be grounds for discipline by the California Bar, it certainly serves as a compelling ground for the sanctions requested by Defendant in its two motions pending before this Court.

1    times ruled.

2         Even more remarkably, this Janus-like conduct did not merely begin after

3    *Virtumundo* was decided. Plaintiffs' counsel have actually taken these fundamentally

4    incompatible positions on these dispositive legal issues ***from the inception*** of each of

5    these cases.  On August 1, 2008, a week before Defendant was served in ***this case***

6    (August 8)[2], Plaintiffs' counsel moved to dismiss the *Hypertouch* complaint, which

7    had been served on July 3, 2008 (*see* Docket, *Hypertouch v. Azoogle*, No. CV-08-

8    03739(GHK) (C.D. Cal.) (Declaration of Peter N. Moore ("Moore Dec."), Ex. 1)[3]),

9    arguing that the *Hypertouch* plaintiff's "claims brought under Section 17529.5(a)(1)

10   and (a)(2) are expressly preempted by CAN-SPAM because they do not sound in

11   fraud," **citing *Omega World Travel v. Mummagraphics*.**  (*See* Azoogle.com's Motion

12   to Dismiss, *Hypertouch v. Azoogle*, No.CV-08-03739(GHK) (C.D. Cal. August 1,

13   2008) (Docket No. 24) ("Hypertouch MTD") (Moore Dec., Ex. 2)).

14        Thus, during July 2008, while drafting their first pleading in this case,

15   Plaintiffs' counsel were planning their Motion to Dismiss in *Hypertouch*, and

16   undoubtedly conferring with the plaintiff's counsel in that case per Central District

17   rules requiring that the parties "meet and confer" at least twenty days prior to the

18   filing of a dispositive motion.  (*See* C.D. Cal. LR 7-3).  In short, before Plaintiffs'

19   counsel even filed the present action, they were strategizing their opposition to the

20   *Hypertouch* claims on diametrically opposed legal grounds.  Shockingly, barely a

21   month later, on September 12, 2008, Plaintiffs' counsel represented to ***this*** Court, in

22   ***this*** case, directly at odds with what they said in *Hypertouch*, that their Section

23   17529.5 claims here, which do not sound in fraud as Plaintiffs' counsel concede, were

24   ***not preempted***, with no mention at all of *Mummagraphics*.  (*See* Docket No. 25).

---

[2]    As discussed in Defendant's two sanctions motions, Defendant's counsel actually met with Plaintiffs' counsel on August 8, 2008, after Plaintiffs' counsel moved to dismiss the *Hypertouch* complaint on preemption grounds, asserting those precise grounds in an attempt to persuade Plaintiffs' counsel not to pursue the instant case.  (*See, e.g.*, Docket No. 86-2 (Oct. 2008 e-mail from Mr. Palmieri to Plaintiffs' Counsel) (courtesy copy attached hereto as Exhibit 8)).

[3]    Exhibits are attached to the accompanying Declaration of Peter N. Moore.

After this Court dismissed Plaintiffs' first Complaint, based, in part, on *Mummagraphics*, Plaintiffs' counsel filed their First Amended Complaint in this case, (Docket No. 36), which went to great lengths to argue that this Court's interpretation of *Mummagraphics* was misplaced, stating:

> The *Mummagraphics* decision of the Fourth Circuit did not hold that state law claims prohibiting falsity or deception are preempted unless they also require that the plaintiff plead and prove reliance and actual damages.

(Docket No. 36 ¶ 56), a position, once again, in clear conflict with the one they took in *Hypertouch*. Amazingly, even after *Hypertouch* was transferred to this Court from the Central District, Plaintiffs' counsel, on January 21, 2009, resubmitted the same motion to dismiss the *Hypertouch* complaint, again arguing, contrary to what they said in this case, that CAN SPAM preempts all but claims for fraud. (Hypertouch MTD at 13-14 (Moore Dec., Ex. 2)).

Meanwhile, at the same time they were telling this Court that the *Hypertouch* claims were preempted (January 21, 2009), Plaintiffs' counsel on January 15, 2009 asked this Court for leave to file a motion for reconsideration of its dismissal of the First Amended Complaint ("FAC"), in which the Court had rejected Plaintiffs' claims on preemption grounds (Docket No. 56). Then, on March 27, 2009, in their supplemental brief requesting reconsideration (Docket No. 66), they expressly represented, again, exactly opposite to their representations about the state of the law they made to this Court in the *Hypertouch* case, that the true state of existing law was that Plaintiffs "need not plead all elements of common law fraud, including reliance and injury, to avoid preemption." (Docket No. 66 at 1).

Now, with *Hypertouch* on appeal and their victory in that case at stake, Plaintiffs' counsel have again asserted their position, in that case, that the law is clear that a plaintiff does, in fact, need to plead all elements of common law fraud, including reliance and injury, to avoid preemption. In their Appellee's Brief, filed October 21, 2009, Plaintiffs' counsel represented, citing *Virtumundo* and *Mummagraphics*, that:

> CAN-SPAM's preemption clause was intended to bar states from regulating commercial email other than pursuant to "traditional tort theories such as claims arising from fraud or deception." *Gordon*, 575 F.3d at 1063, citing *Omega*, 469 F.3d at 356. The FAC does not come close to stating a cause of action for fraud or any other tort. Accordingly, it would properly have been dismissed as preempted by CAN-SPAM.

(Appellee's Joint Ans. Br. at 41, *Hypertouch v. Azoogle*, No. 09-15943 (9th Cir. Oct. 21, 2009) (Hypertouch Appellee Br.) (excerpts attached hereto as Moore Dec., Ex. 4)). In that brief, Plaintiffs' counsel appear as lead counsel for all the *Hypertouch* defendants, and the brief is signed by Henry Burgoyne, lead counsel for Plaintiffs here. Yet less than two months later, in this case, Mr. Burgoyne's name appears on a pleading unashamedly representing to this Court that *Virtumundo* supported no such conclusion. (*See* Docket No. 101 at 4 (*Virtumundo* does not require a plaintiff "allege all of the elements of a fraud claim, such as detrimental reliance, to avoid preemption."). It is respectfully submitted that a more glaring example of a fraud on the court cannot be imagined.

As discussed in Defendant's prior brief, and again herein, the *Virtumundo* decision, which is obviously unlikely to be overturned so soon by *Hypertouch*, completely supports this Court's prior dismissal orders, notwithstanding Plaintiffs' counsels' most recent disingenuous attempt to represent otherwise. Plaintiffs' counsels' duplicitous conduct in these respective cases is, in reality, an acknowledgement that this Court has been right all along, and Plaintiffs' counsel have known this from the start.

In this Court's December 11, 2009 Order (Docket No. 103), the Court granted, *sua sponte*, the parties leave to address, in their responsive briefs regarding the *Gordon v. Virtumundo* decision, the applicability to this case of the *Hypertouch v. Azoogle* case currently before the Ninth Circuit, and, in particular, whether this case ought to be stayed pending a decision by that Court. The undeniable answer is that no

stay is needed.[4]

The facts and posture of *Hypertouch* are so substantially different from those here that there is virtually no likelihood that the outcome of that case, even if the *Hypertouch* plaintiff prevails, will contradict this Court's previous dismissals of Plaintiffs' fatally flawed complaints here.  Also, as discussed above, any argument that Plaintiffs' counsel might now make to suggest that the *Hypertouch* decision will resolve this case in their favor – the only possible justification for a stay – would not only be unsupportable, but would be unethical, as it would require counsel to argue that their client, Azoogle.com, ***should lose its appeal***.

These significant facts should demonstrate to the Court that no stay is warranted, and that, without qualification, Plaintiffs' counsels' arguments in this case have been intentionally and knowingly made in bad faith from their inception. Ironically, this shameful illustration shows this more than any other example thus far. Thus, for this and all the other heretofore cited reasons, the Court's legally correct prior dismissals in this case should be reaffirmed now, for the last time, and with prejudice.

## ARGUMENT

The Court is faced with three possible alternatives given the current procedural posture of this case.  First, it could reinstate the First Amended Complaint ("FAC"), and allow Plaintiffs to proceed with their flawed case.  This, of course, would require this Court to reverse all of its prior holdings, including that Plaintiffs lack standing, despite the fact that the Ninth Circuit in *Virtumundo* adopted precisely the same preemption test this Court applied in those holdings.  Clearly no genuine basis has been offered by Plaintiffs for such a drastic outcome, and none exists.

Second, the Court could, as it noted in its most recent order, stay this matter on

---

[4]      In fact, in a January 4, 2010 conversation, Plaintiffs' counsel have advised Defendant that they, too, oppose a stay, although they have, of course, switched their positions before.  As such, this matter is fully briefed below.

the off-chance that a decision in the *Hypertouch* case might bear on the central issues of this case **and** contradict this Court's prior orders.   As explained herein, the *Hypertouch* case will not resolve all issues upon which this Court based its prior dismissals, and even Plaintiffs' counsel likewise oppose a stay in this case.

Finally, the Court could simply enter a final judgment based upon its prior dismissal orders,[5] on terms the Court deems legally appropriate in light of Defendant's pending motions.   Defendant respectfully submits that this is the best, indeed, the only permissible alternative given the Ninth Circuit's clear and unequivocal decision in *Virtumundo*, and Plaintiffs' counsels' acknowledgement of the same in *Hypertouch*.

# I.   *VIRTUMUNDO* DECISIVELY DISPOSES OF PLAINTIFFS' STATE LAW CLAIMS

The original purpose of these briefs was to address the impact of *Gordon v. Virtumundo* to the issues raised in this case.   Plaintiffs' brief on this issue (Docket No. 101) ("Plaintiffs' *Virtumundo* Brief"), besides taking positions directly at odds with those taken by their lawyers in *Hypertouch* and *Asis v. Subscriberbase*, totally misinterprets (and actually misrepresents) the facts of *Virtumundo* to try to rewrite the decision in their favor.   These efforts should be rejected.   The *Virtumundo* decision wholly affirms the Court's prior dismissal orders.

## A.   *Virtumundo* Confirms Plaintiffs' Lack of Standing in this Case

Plaintiffs' first argument, regarding standing, is a total fabrication.   Plaintiffs claim that, like them, the *Virtumundo* plaintiff alleged "no actual harm" to himself. (Plaintiffs' *Virtumundo* Brief at 2).   This is simply untrue.   As discussed in Defendant's brief, the *Virtumundo* plaintiff – a purported service provider – plainly alleged "clogg[ing]" of his e-mail system and other related harms.   *Gordon v. Virtumundo*, 575 F.3d 1040, 1055 (9th Cir. 2009).   This discussion of harm actually

---

[5]      The Court under no circumstances should grant further leave to amend, as Plaintiffs' counsel have clearly waived their right to any further amending of their complaint (especially by electing to "stand on" the FAC, which arguably requires the Court to enter final judgment, per *Edwards v. Marin Park, Inc.*, 356 F.3d 1058 (9th Cir. 2004)).

arose in the context of CAN SPAM's "adverse effect" requirement, and the Court found merely that these alleged harms were insufficient to satisfy the standing threshold established by the CAN SPAM as a ***statutory*** matter, primarily because Gordon had not established himself as a legitimate service provider.[6]

The Ninth Circuit never addressed ***Article III*** standing, undoubtedly because it was clear that Gordon, unlike Plaintiffs here, had suffered at least *some* injury. Further, the Ninth Circuit never addressed standing under the Washington State statute at issue in that case because the statute expressly vested any interactive service (not just full fledged ISPs) with the right to sue on behalf of its users.  (*Id.* at 1058) ("In contrast to the more restrictive standing requirement of the CAN-SPAM Act, CEMA authorizes … an 'interactive computer service' to bring a private action.").  The Court even noted that "the threshold of standing should not pose a high bar for the ***legitimate service operations*** contemplated by Congress."  (*Id.* at 1055) (emphasis added).  This is certainly not so for individual e-mail recipients such as Plaintiffs here.

Therefore, Plaintiffs' misguided and deceptive attempt to equate their own situation to that of the *Virtumundo* plaintiff, Gordon, an alleged service provider, or worse, to that of "legitimate service operators," collapses.  Plaintiffs, individuals who each allegedly received a ***single e-mail***, stand on an entirely different footing from a legitimate ISP or the more vague "interactive computer service."  In fact, Plaintiffs here obdurately refuse to allege ***any*** cognizable injury (such as the "clogged" systems as Gordon contended), even though they at one point promised the Court they would. (Docket No. 66 at 3 n.2).  That the Ninth Circuit presumably believed Gordon had standing thus has no bearing whatsoever on whether Plaintiffs have standing here.

Their remaining arguments (*i.e.* Plaintiffs' supposed loss of a "statutory right"

---

[6]     In a recent unpublished opinion, the Ninth Circuit addressed the issue of injury, noting that under CAN-SPAM, "the mere cost of carrying SPAM emails over Plaintiff's facilities does not constitute a harm as required by the statute," nor are lost employee time or ordinary filtering costs such harm.  *Asis Internet Services v. Azoogle.com, Inc.*, No. 08-17779, 2009 WL 4841119 (9th Cir. Dec. 2, 2009).  The same reasoning applies to the sufficiency of harm allegations under any fraud-related cause of action sounding in traditional tort law.

founded upon a preempted state law) are nothing but regurgitations of arguments made, and rejected by this Court, over and over.  (*See* Docket No. 66 at 2-6).  As discussed at length in Defendant's ***third*** Motion to Dismiss, these arguments have no merit.  (Docket No. 79 at 10-14).  Accordingly, the standing question raised by this Court remains unaffected by *Virtumundo*, and the Court should not revisit its earlier decisions on this issue.

### B.   *Virtumundo* Requires that an E-mail Recipient Allege Detrimental Reliance and Resulting Damage to State a Claim that is Not Preempted

The second argument raised by Plaintiffs, regarding the scope of CAN SPAM's preemption clause, is also based on a clear and deliberate mischaracterization of the *Virtumundo* decision.  Plaintiffs misleadingly state that "the Gordon court noted that the ***plaintiffs*** there were 'not in any way misled or deceived' by the emails ***they received***."  (*Plaintiffs' Virtumundo* Brief at 4) (emphasis added).  The implication is that the case involved a purported class of e-mail recipients, as here.  This, again, is simply untrue.

The *Virtumundo* plaintiff on appeal was one individual, Gordon, who, as noted, alleged he was a ***service provider***.  He claimed that he operated an e-mail system that relayed e-mails to other users.  *Virtumundo*, 575 F.3d at 1045.  While he had his own e-mail address, by all accounts he advanced his case ***as a service provider*** (likely in an attempt to state his claims under CAN SPAM directly).  Thus, the Ninth Circuit was plainly considering the preemption question in the context of ***a service provider*** plaintiff, not an individual recipient.  (*Id.* at 1045-46).  Accordingly, whether Gordon himself received or relied upon the e-mails would have been ***immaterial*** to the outcome of the case if his users, in fact, did so.

Rather than reach this question, however, the Ninth Circuit rightly based its disposition upon the fact that the e-mails were not deceptive (*id.* at 1064), another reason this Court can affirm its prior decision in this case, as discussed in Defendant's supplemental brief (Docket No. 102 at 10-12).  There consequently would have been

no reason for the Ninth Circuit to inquire whether Gordon's **users** detrimentally relied upon or suffered "injury" from the e-mails – a fact-intensive inquiry (which Plaintiffs' counsel do not wish this Court to make because it would defeat class certification, as discussed numerous times before).  Clearly, the fact that an appellate court bases a decision on one ground most assuredly does not mean that it can be argued that the Court thought all other grounds to be wrong.  At most, the argument was not reached and nothing more can be said.

Plaintiffs' related argument about other subsections of CAN SPAM's preemption provision, which have never been cited before now – namely §§7701(b)(2)(A) and (B) – is also fallacious.  The two preemption sections of CAN SPAM, §§7701(b)(1) and 7701(b)(2), respectively address two entirely different categories of state laws, and treat them very differently.

The first category of laws, those expressly directed to e-mail, are preempted **entirely except** to the extent that they prohibit "falsity or deception" (§ 7701(b)(1)), which, again, the Ninth Circuit has unequivocally held comprises only traditional tort-related theories.  (*Virtumundo*, 575 F.3d at 262).  This first subsection is therefore a broad preemption clause for statutes specific to e-mail, with limited exceptions for state laws addressing actual fraudulent misrepresentation or related conduct.

The next section of the statute (§ 7701(b)(2)), on the other hand, is a broad **savings** clause for laws **unrelated to e-mail**.  These statutes are expressly and broadly **saved**, with Congress choosing to specifically call out general tort, contract, and trespass laws as unaffected (§ 7701(b)(2)(A)), as well as fraud and computer crime (§ 7701(b)(2)(B)).  Congress' reference to "fraud" in § 7701(b)(2)(B) next to "computer crime" is, in all likelihood, a reference to criminal activity; otherwise, the reference would be entirely superfluous in light of the "tort" reference in § 7701(b)(2)(A).  Needless to say, Plaintiffs make none of the claims listed in § 7701(b)(2).

The statutory scheme, therefore, is clearly intended to broadly preempt state regulation of *e-mail* while preserving civil and criminal laws that do not target e-mail.

To argue, as Plaintiffs do, that CAN SPAM's reference to "fraud" in §7701(b)(2) warrants their broad and self-serving meaning for "falsity or deception" in §7701(b)(1) mixes apples and oranges and ignores the respective purposes of the two subsections. Both sections must be read as written to preserve Congress' intent: to prohibit states from imposing burdensome requirements on e-mail that are not present in other forms of commerce (such as the State Statute here), while preserving laws that relate to commerce generally and do not target e-mail.[7]   Interpreting §7701(b)(1)'s savings clause broadly, especially by citing terms out of context from a different subsection of the statute, ignores this clear intent.

Plaintiffs' confusing reference to cases involving claims that "sound in fraud," but are not fraud, is also wholly misplaced. *In re Stac Electronics Securities Litigation*, 89 F.3d 1399, 1405 (9th Cir. 1996), and *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003), both address whether Fed.R.Civ.P. 9(b) is applicable, not whether reliance and injury were required to state a cause of action. In fact, both cases hold that Rule 9(b) is broadly applied to all claims that "sound in fraud" even if the claim is not for "common law fraud," such as securities fraud. In other words, those cases stand for the unremarkable proposition that Rule 9(b) is applicable even if the claim is not labeled "fraud". Plaintiffs' counsels' linguistic manipulations simply ignore that, regardless of the applicability of Rule 9(b), *no* traditional tort theory supports a cause of action for an allegedly untrue statement that deceived no one and caused injury to no one, a critical difference between this case and *Hypertouch*, as discussed below. Plaintiffs' counsel even said, in their *Asis v. Subscriberbase* brief, that such allegations would be required of "any" claim in order

---

[7]   *See also* S. Rep. 108-102 at 21 (noting § 7701(b)(1) "supersede[s] State and local statutes, regulations, and rules that expressly regulate the use of e-mail to send commercial messages except for statutes, regulations, or rules that target ***fraud or deception*** in such email…. [§ 7701(b)(2)] clarifies that there would be no preemption of State laws that do not expressly regulate e-mail, such as State common law, general anti-fraud law, and computer crime law." (emphasis added)).

1   to avoid preemption.  (Asis Br. at 2 (Docket No. 102, Ex. A)).[8]

2       Finally, Plaintiffs' counsels' continued reliance on Judge Alsup's opinion in *Asis*

3   *Internet Services v. Vistaprint USA, Inc.*, 617 F.Supp.2d 989, 992-93 (N.D.Cal. 2009)

4   (*see* Plaintiffs' *Virtumundo* Brief at 6) is particularly disingenuous, if not unethical,

5   and therefore worthy of note.  In the practically indistinguishable *Subscriberbase* case,

6   where Plaintiffs' counsel, again, represented the defendant, Plaintiffs' counsel

7   specifically argued to a different judge of this very district that the *Vistaprint* decision

8   was unlikely "good law" in light of *Virtumundo*.  (*See* Asis Br. at 7 n.2) (Docket No.

9   102, Ex. A).

10      Plaintiffs' counsel were right when they so argued, and the fact that they have

11  changed their position solely for this case shows the appalling intellectual dishonesty

12  that has permeated this case from its inception.  The Court should afford Plaintiffs'

13  counsels' present arguments no weight, and instead read the plain language of

14  *Virtumundo* as it is written, and not as Plaintiffs would rewrite it for their own

15  purposes.  Only traditional tort-based claims for fraud and deceit are preserved from

16  preemption.  Plaintiffs' claims are not in that category.  They are therefore preempted,

17  as this Court has ruled time and again, and should remain dismissed.

18  ## II.    THE CASE SHOULD NOT BE STAYED PENDING *HYPERTOUCH* OR ANY OTHER DECISION

19

20      The Court is familiar with the facts of *Hypertouch* and, therefore, they will not

21  be summarized here.  However, the Court suggested that the preemption issue raised

22  in this case was "the focus of" the pending *Hypertouch* appeal and that, accordingly,

23

---

24  [8]     On December 4, 2009, after Plaintiffs' *Virtumundo* Brief was filed in this case, Judge Conti
granted the motion to dismiss in *Subscriberbase*, but held against the defendant on the issue of
25  whether it was necessary to plead reliance and damages to avoid preemption.  *Asis v.
Subscriberbase*, Case No. 09-cv-03503-SC (Dec. 4, 2009) (slip op) (attached hereto as Exhibit 6)).
26  Significantly, Judge Conti did not cite the Ninth Circuit's dispositive opinion in *Gordon v.
Virtumundo* at all, which is the controlling law on this issue as Plaintiffs' counsel argued in that case.
27  Moreover, *Subscriberbase* also deals with an institutional service-provider plaintiff, not a class of e-
mail recipients, and therefore bears no relevance to this case, since, as discussed before, and as CAN
28  SPAM expressly recognizes, what may be a "traditional tort-based theory of fraud" for an individual
plaintiff is clearly very different than for a legitimate service provider.

the issue in this case might well be resolved by that case.  Defendant respectfully disagrees with that articulation of the focus of *Hypertouch* and requests that no stay be imposed, and that Defendant not be burdened any longer with the injury caused by the extended pendency of this action.  The Court should, instead, uphold its prior orders, or, if it is inclined to revisit them, should certify the case for an interlocutory appeal so that these issues can be fully and decisively resolved by the Court of Appeals.

A.   <u>A Decision by the Ninth Circuit in *Hypertouch* is Unlikely to Bear on this Case</u>

The most obvious reason the Court should not stay this case is that, as a review of the various issues raised in *Hypertouch* shows, a decision in that case has virtually no likelihood of affecting this case, and certainly not in a way that would favor Plaintiffs.

First, *Hypertouch* has no bearing on Plaintiffs' lack of standing in this case.  The *Hypertouch* plaintiff, as discussed below, alleged extensive injury to itself, unlike Plaintiffs here, who refuse to allege ***any*** cognizable injury.  This Court's prior orders can be reaffirmed solely for this reason alone.

Leaving aside standing, the preemption issue central to this case has already been decided by the Ninth Circuit in *Virtumundo* – only claims for falsity or deception sounding in traditional tort law survive preemption under CAN SPAM.  In fact, neither party in the *Hypertouch* case disputes that, under *Virtumundo*, actual deception and resulting injury are required to state a claim that is not preempted; the *Hypertouch* defendant expressly argues this, and the *Hypertouch* plaintiff disputes only whether Rule 9(b) applies to Section 17529.5 claims.  (*See* Reply Brief for Appellant Hypertouch, Inc. at 11-15, *Hypertouch, Inc. v. Azoogle.com, Inc.*, 09-15943 (9th Cir. Nov. 23, 2009) (Hypertouch Reply Br.) (attached hereto as Moore Dec., Ex. 5)).  In fact, unlike Plaintiffs here, who refuse to plead the elements of a fraud-related claim, the *Hypertouch* plaintiff contends that it ***has*** stated a claim sounding in fraud because it alleged fraudulent and injurious conduct that is prohibited by CAN SPAM.  (*Id.*).  All parties to *Hypertouch* thus appear to have taken as given the position that

Defendant has advanced and that this Court has affirmed three times – that a plaintiff must plead deception and injury to avoid preemption by CAN SPAM.  It is unlikely an appellate decision in *Hypertouch* will hold otherwise.

Next, it is dubious whether the *Hypertouch* decision, when issued, will even address the preemption question at all.  As this Court is aware, its dismissal in *Hypertouch* was based primarily upon the plaintiff's failure to plead with particularity under Rule 9(b).  (*See* March 19, 2009 Order at 2, *Hypertouch, Inc. v. Azoogle, Inc.*, 08-cv-04970-MMC (attached hereto as Moore Dec., Ex. 7)).  The Court expressly refused to dismiss with prejudice on the basis of preemption, finding that the plaintiff *did* allege "fraudulent" statements, but without the particularity required by Rule 9(b).  (*Id.* at 5).  The *Hypertouch* plaintiff refused to amend despite being given leave, and chose instead to appeal.  The Ninth Circuit may well affirm for this reason alone, without ever reaching the preemption question.

Even if the Ninth Circuit were to allow the *Hypertouch* plaintiff's claims to go forward as pled, such a precedent would have little bearing on Plaintiffs' claims here.  Notwithstanding the lack of specificity in the *Hypertouch* plaintiff's pleading, and in contrast to these Plaintiffs, the *Hypertouch* plaintiff *did* put forth a theory sounding in fraud, as this Court specifically noted in refusing to dismiss the *Hypertouch* case with prejudice.  The *Hypertouch* plaintiff alleged that the defendant intentionally forged e-mail headers and IP addresses to shield its identity, evade spam filters, and mislead customers by offering "free" handbags and the like.  (*See* Brief for Appellant Hypertouch Inc. at 11, *Hypertouch v. Azoogle*, No. 09-15943 (9th Cir. Aug. 17, 2009) (Moore Dec., Ex. 3)).  The *Hypertouch* plaintiff also set forth how it was injured; for example, it alleged it was required to purchase new hardware and spend time and money combating the unwanted e-mail.  (*Id.*).  Perhaps most importantly, the *Hypertouch* plaintiff alleged ***damage to its own reputation*** by virtue of the defendant's forgery of Hypertouch's own domain name in the spam e-mails.  (*Id.*).  Clearly these claims, unlike Plaintiffs' claims here, sound in traditional tort law and

involve actual deception and injury.

Moreover, as was the case in *Virtumundo*, the type of injury that would be cognizable for a service provider plaintiff, *i.e.* the *Hypertouch* plaintiff, is a far different matter than that of an individual e-mail recipient, *i.e.*, Plaintiffs here.   A service provider plaintiff clearly need not personally be deceived by a false statement in an e-mail in order to suffer a cognizable injury therefrom; such a plaintiff can suffer from business disruption or harmed reputation, as CAN SPAM recognizes and as the *Hypertouch* plaintiff argued it did.   On appeal, the *Hypertouch* defendant (represented by Plaintiffs' counsel in this case) did assert that, under *Virtumundo*, the *Hypertouch* plaintiff's 17529.5 claims are preempted simply because it did not allege common law fraud in the strictest sense.   (Hypertouch Appellee Br. at 41-42 (Moore Dec., Ex. 4)). This is a far more extreme position than even that taken by Defendant in this case, and even if rejected, would not change the fact that ***individual e-mail recipients***, such as Plaintiffs here, must actually be deceived by and suffer resulting injury from an e-mail in order to state a "traditional" tort-related claim that would not be preempted.

Accordingly, of the many possible ways the *Hypertouch* case might be resolved, none of the likely outcomes would cast doubt on this Court's prior decisions, because of the difference between the two cases' respective parties and factual postures.   This is true regardless whether the *Hypertouch* decision is affirmed, or if the *Hypertouch* plaintiff ultimately prevails.   A stay would not further a resolution of ***this*** case and thus should not be granted.

### B.   A Stay Would Not Be in the Interests of Justice or Further an Efficient Resolution to this Case

A stay would also not be in the interests of justice or facilitate an efficient resolution to this case.   On the contrary, a stay may well be an abuse of this Court's discretion due to the great length of time it may last, and due to the prejudice this case continues to cause Defendant.

First, since *Hypertouch* has not been set for argument, and briefing was only completed on November 27, 2009, it is impossible to know when that case will be

resolved.  As the Court is aware, it could be anywhere from twelve to eighteen months, or more, before a decision is reached.  This case, already eighteen months old, might then be ***three years old*** before a *Hypertouch* decision is rendered.  Since that decision will not resolve all issues in this case, certainly not in Plaintiffs' favor, a stay will merely delay the inevitable appeal by Plaintiffs in this case, dragging this matter on even further with no real end in sight.

Meanwhile, this case would continue to loom over Defendant and damage its reputation.  The Court will recall that Plaintiffs' counsel, early on in this case, transmitted defamatory letters to Defendant's business partners regarding this case (*see, e.g.*, Declaration of Ronald Jason Palmieri in Support of Defendant's Sanctions Motions ¶ 9 (Docket No. 87-2)), which continue to harm Defendant, and fetter its ability to explore potential sale, licensing, financing, and other potential transactions, should it so desire.  That harm will continue as long as this case remains pending.  This case would also remain notwithstanding that Defendant successfully moved to dismiss three times and successfully opposed a motion for reconsideration.  Defendant is clearly entitled to some finality.

The burdening of a party with oppressive litigation, where a complaint shows little-to-no plausible likelihood of success as a matter of law, was the precise focus of the Supreme Court's decisions in *Bell Atlantic Corp. v Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), supporting dismissals at the pleading stage.  As the *Twombly* majority noted, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should …be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  550 U.S. at 558-59 (citations omitted).  Any further proceedings, including a stay, would be inconsistent with this dispositive precedent.

Far more efficient, and not prejudicial to either side, would be for the Court to affirm its prior rulings (and to grant a Rule 41(b) involuntary dismissal, *nunc pro tunc*, as Defendant has requested, upon which a future decision in *Hypertouch* would have

no bearing).   If Plaintiffs are ultimately permitted to appeal, notwithstanding Defendant's belief that they should not be, both sides can present their cases to the Ninth Circuit, ensuring that, if the case is ultimately remanded, it will proceed with the central legal issues having been decisively resolved (thus facilitating a far more efficient resolution).   If the Court is inclined to revisit its past orders – which Defendant urges it should  not  do – the Court should then at a minimum certify the case for interlocutory appeal, as discussed below, so that dispositive legal issues can be resolved without forcing the parties to expend further resources on a costly dispute over class certification, discovery, or potentially a trial, exactly as the Supreme Court has recently and consistently said should not happen.  *Twombly*, 550 U.S. at 558-59.

## C.   A Stay is Totally Inappropriate in Light of Plaintiffs' Counsels' Bad Faith

A stay would also be totally inappropriate given Plaintiffs' counsels' bad faith and duplicitous legal arguments.  Again, the only possible reason to stay this case would be if there were any likelihood that *Hypertouch* would result in a decision that supported Plaintiffs' positions in this case.  As Plaintiffs' counsel have taken positions in *Hypertouch* that are unabashedly opposed to those they have taken here, however, they have demonstrated that they, themselves, believe that their positions in this case are wrong.  Therefore, a stay would only reward Plaintiffs' counsels' opportunism and the "keep it alive" strategy they have employed in this case from the start.

As noted above, Plaintiffs' counsel served Defendant with this action on August 8, 2008, a week to-the-day after arguing to the Central District of California in *Hypertouch* that the very claims they were about to bring against Defendant were preempted by CAN SPAM.  Given Central District rules, Plaintiffs' counsel must have known of their position and conferred with the *Hypertouch* plaintiff's attorney about these issues at least 20 days in advance of that motion, *i.e.*, by July 11.  Yet, while preparing their legal defense in *Hypertouch* with their right hand, they were at the same time preparing claims against **this** Defendant with their left, claims which they, now indisputably, knew to be legally baseless in light of what they argued in

1   *Hypertouch*.

2          Moreover, even while knowing of and embracing *Mummagraphics* in their

3   *Hypertouch* briefs, they initially ignored *Mummagraphics* in this case, and then, after

4   this Court cited it in its First Dismissal, filed a First Amended Complaint in October

5   2008, offering an interpretation of *Mummagraphics* totally at odds with what they had

6   told the Central District in *Hypertouch* on August 1, 2008, blatantly ignoring their

7   duty of candor to this Court.  Cal. RPC 5-200(B).

8          When *Hypertouch* was transferred to this Court, Plaintiffs' counsel in January

9   2009 filed the identical motion to dismiss in that case that they had filed the prior

10  August.  Yet when they concurrently filed their motion for leave to file a motion for

11  reconsideration in ***this*** case, in which they again told this Court that its prior orders

12  regarding preemption were wrong, they neglected to tell this tribunal that, as they

13  argued in *Hypertouch*, CAN SPAM's preemption provision actually means ***exactly***

14  what this Court had ruled twice before, in further clear violation of Cal. RPC 5-200(B)

15  (a lawyer "[s]hall not seek to mislead the judge, judicial officer, or jury by an artifice

16  or false statement of fact or law").  As Plaintiffs' counsels' respective representations

17  of the state of the law were ***mutually exclusive***, they knew one of their two positions

18  was not the law, yet, at least in this case, they failed to so inform the Court of this

19  incompatibility

20         Now, Plaintiffs' counsel have extended their self-serving tactics to the Ninth

21  Circuit, where they have taken positions that are guaranteed to be harmful to one of

22  their two sets of clients – to win in this case, they must lose in *Hypertouch*, an

23  inherently conflicting and unethical position.  The only thing a stay would accomplish

24  would be to let Plaintiffs' counsel avoid having to argue out of both sides of their

25  mouths to a higher court, where the possibility for public embarrassment, and possible

26  sanction, would be even greater than here.  Needless to say, little more could be

27  imagined to show why Plaintiffs' counsels' tactics here have been vexatious and

28  deserving of sanctions, and also mandates why the Court should ***not*** stay this case and

should instead dismiss, imposing the sanctions Defendant has requested.

## III.   IF THE COURT WERE INCLINED TO PERMIT PLAINTIFFS' CLAIMS TO PROCEED, IT SHOULD CERTIFY THE CENTRAL LEGAL ISSUES FOR INTERLOCUTORY APPEAL

Finally, if the Court were, for any reason, inclined to believe that its prior decisions are all wrong, and that Plaintiffs' claims should proceed, Defendant respectfully requests that Court certify such question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  No clearer evidence of "difference of opinion" as to the controlling legal issue in this case – whether reliance and resulting harm are required elements for a claim to avoid preemption by CAN SPAM – can be seen than in the fact that Plaintiffs' own attorneys have agreed with Defendant on this precise issue in other cases.  Clearer still is the fact that a dispositive resolution of this issue would materially advance the outcome of this case; should Defendant prevail, the case will end; in the unlikely event that Plaintiffs prevail, the case can proceed with far more efficiency and certainty than before.  The alternative, delaying such an appeal, would unfairly force Defendant to choose between exorbitant litigation costs, or an extorted settlement, after having already expended enormous legal fees in repeated motions practice.  In sum, an interlocutory appeal is clearly most efficient, prejudicial to no one, and would be entirely appropriate under the circumstances here.

## CONCLUSION

Defendant respectfully submits that the Court should not stay this action, as the *Hypertouch* case has virtually no likelihood of upsetting this Court's prior orders. Instead, for all the reasons set forth in Defendant's three prior motions to dismiss, their opposition to Plaintiffs' motion for reconsideration, their supplemental brief regarding *Virtumundo*, and this Court's *two* previous dismissal orders and its denial of Plaintiffs' motion for reconsideration, the Court should now and for the final time hold Plaintiffs' claims preempted, and DISMISSED, this time with prejudice, and enter final judgment for Defendant.

This Court should also award the sanctions Defendant has requested in its

pending motions, for all the reasons stated therein, as well as the clear evidence, shown through their briefs in *Hypertouch* and *Asis*, that Plaintiffs' counsel have made, and continue to make, representations to this Court that they knew, from the day they filed this case, to be contrary to clearly established law.  That conduct, as well as the other actions set forth in Defendant's sanctions motions, warrants granting of all sanctions prayed for by Defendant.

**DATED:**  January 8, 2010  Respectfully submitted,


s/ Ronald Jason Palmieri
One of the Attorneys for Defendant


LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
1644 North Orange Grove Avenue
Los Angeles, CA 90046
TELEPHONE: (323) 882-8225
FACSIMILE:  (323) 882-8208
lawofcsrjp@aol.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Carole E. Handler (CA Bar No. 129381)
9665 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90212
TELEPHONE: (310) 860-8705
FACSIMILE:  (310) 860-3805
handler@wildman.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Peter N. Moore (admitted *pro hac vice*)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
TELEPHONE: (312) 201-2000
FACSIMILE:  (312) 201-2555
pmoore@wildman.com

Attorneys for Defendant
REUNION.COM, INC.

1

## EXHIBITS

2

| Exhibit No. | Description |
|---|---|
| 1 | Docket, *Hypertouch v. Azoogle*, No. CV-08-03739(GHK) (C.D. Cal.) |
| 2 | Azoogle.com's Motion to Dismiss, *Hypertouch v. Azoogle*, No.CV-08-03739(GHK) (C.D. Cal. August 1, 2008) |
| 3 | Excerpts, Brief for Appellant Hypertouch Inc. at 11, *Hypertouch v. Azoogle*, No. 09-15943 (9th Cir. Aug. 17, 2009) |
| 4 | Excerpts, Appellee's Joint Answering Brief, *Hypertouch v. Azoogle*, No. 09-15943 (9th Cir. Oct. 21, 2009) |
| 5 | Excerpts, Reply Brief for Appellant Hypertouch, Inc., *Hypertouch, Inc. v. Azoogle.com, Inc.*, 09-15943 (9th Cir. Nov. 23, 2009) |
| 6 | Order, *Asis v. Subscriberbase*, Case No. 09-cv-03503-SC (Dec. 4, 2009) (slip op) |
| 7 | Order, *Hypertouch, Inc. v. Azoogle, Inc.*, 08-cv-04970-MMC (N.D. Cal. March 19, 2009) |
| 8 | October 2008 E-mail from Ronald Jason Palmieri to Plaintiffs' Counsel |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28