IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLETTA HOANG, et al., <br><br> Plaintiffs, <br><br> v. <br><br> REUNION.COM, INC., <br><br> Defendant | No. C-08-3518 MMC <br><br> **ORDER RECONSIDERING AND VACATING IN PART DECEMBER 23, 2008 ORDER; DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT; SETTING CASE MANAGEMENT CONFERENCE** |

    By order filed December 23, 2008, the Court dismissed with leave to amend the First Amended Complaint ("FAC") filed by plaintiffs Violetta Hoang, Livia Hsiao, Michael Blacksburg, and Matthew Hall. By order filed October 20, 2009, the Court afforded the parties leave to file supplemental briefing to address whether, in light of the Ninth Circuit's recent ruling in Gordon v. Virtumundo, Inc., 575 F.3d 1040 (9th Cir. 2009), the Court should reconsider its December 23, 2008 order. In response thereto, on December 3, 2009, plaintiffs filed a Supplemental Brief in Support of Reconsideration of Court's Order Dismissing First Amended Complaint, and defendant Reunion.com, Inc. filed a Supplemental Brief in Support of Dismissal of Plaintiffs' First Amended Complaint. Thereafter, on January 8, 2010, plaintiffs and defendant each filed a supplemental responsive brief.

Having read and considered the parties' supplemental submissions, the Court rules as follows.

In the FAC, plaintiffs allege claims under § 17529.5(a) of the California Business & Professions Code.[1] In its December 23, 2008 order, the Court agreed with plaintiffs that they had adequately alleged the e-mails they received from defendant contained false statements, that defendant knew the statements would convey false representations to the recipients, that the statements were material, and that defendant intended the recipients to rely on the statements. The Court, however, granted defendant's motion to dismiss and dismissed the FAC for two reasons. First, the Court found plaintiffs' claims were preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"), specifically, by 15 U.S.C. § 7707(b)(1), discussed infra, because plaintiffs did not allege they had relied on and were damaged by the allegedly false statements in the subject e-mails. Second, the Court found plaintiffs had failed to adequately allege standing, because plaintiffs did not allege they had suffered any injury resulting from their receipt of the e-mails.

//

---

[1] Section 17529.5(a) provides as follows:

(a) It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

    (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.

    (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.

    (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

See Cal. Bus. & Prof. Code § 17529.5(a).

Thereafter, on August 6, 2009, the Ninth Circuit announced its decision in <u>Gordon v. Virtumundo, Inc.</u>. In <u>Gordon</u>, the Ninth Circuit considered whether the plaintiff therein had standing to allege claims under a Washington state statute substantially similar to § 17529.5(a), and whether such plaintiff's claims under that statute were preempted by CAN-SPAM.

This Court, now having available the Ninth Circuit's reasoning as set forth in <u>Gordon</u>, finds it appropriate to reconsider its December 23, 2008 order granting defendant's motion to dismiss the FAC, and, as discussed below, to deny the motion to dismiss.[2]

**A. Standing**

In <u>Gordon</u>, the plaintiff alleged he had received "materially misleading or otherwise unlawful" commercial e-mails from the defendant, <u>see Gordon</u>, 575 F.3d at 1045, and sought relief under CAN-SPAM, as well as under a Washington state statute. As explained in <u>Gordon</u>, CAN-SPAM, in relevant part, prohibits the "transmi[ssion] [of] messages with 'deceptive subject headings' or 'header information that is materially false or materially misleading'," <u>see id.</u> at 1048 (quoting 15 U.S.C. §§ 7704(a)(1), (2)), and requires that a commercial e-mail include the sender's address, <u>see id.</u>; the Washington state statute, in relevant part, prohibits the transmission of a commercial e-mail that contains "'false or misleading information in the subject line'" or that "'misrepresents or obscures any information in identifying the point of origin'." <u>See id.</u> at 1057 (quoting Wash. Rev. Code § 19.190.020(1).)

Addressing first the issue of whether the plaintiff had standing to seek relief under

---

[2] Defendant correctly observes that counsel for plaintiffs, in the context of representing other clients in other cases, have made arguments inconsistent with that made on behalf of plaintiffs herein, specifically, that a plaintiff cannot state a claim under § 17529.5 in the absence of an allegation of reliance and resulting injury. (<u>See</u>, <u>e.g.</u>, Def.'s Supp. Brief, filed December 3, 2009, Ex. A at 7.) Defendant argues such conduct is in violation of ethical rules prohibiting an attorney from knowingly making an incorrect representation concerning the law. The necessity of a showing of reliance and resulting injury is not, however, a settled issue, and, in any event, the Court finds, irrespective of whatever questions may be raised by counsel's arguments in other cases, such matters have no bearing on the issue of whether plaintiffs in the instant case have stated a claim.

3

1  CAN-SPAM, the Ninth Circuit noted that the statute limited relief to plaintiffs "adversely
2  affected by a violation of [CAN-SPAM]," see id. at 1048, and found the plaintiff lacked
3  standing to bring a claim thereunder because the plaintiff had not "suffered any real harm"
4  from the e-mails, see id. at 1055.  With respect to the Washington state statute, the Ninth
5  Circuit, after first acknowledging that the defendant had not contested the plaintiff's
6  standing to pursue a claim thereunder, observed that such state statute allowed a "recipient
7  of a commercial e-mail message" to bring a claim for relief.  See id. at 1058; see also
8  Wash. Rev. Code § 19.190.040 (providing "recipient of a commercial electronic mail
9  message or a commercial electronic text message sent in violation of [§ 19.190.020]" is
10 entitled to "damages" of "five hundred dollars, or actual damages, whichever is greater").
11 Without expressly stating the plaintiff had standing to bring a claim under the state statute,
12 the Ninth Circuit next proceeded to address the merits of the plaintiff's state law claim, see
13 Gordon, 575 F.3d at 1058-64.

14       A federal court lacks subject matter jurisdiction to consider the merits of any claim
15 unless the plaintiff has standing, irrespective of whether the issue is raised by the
16 defendant.  See United States v. Hays, 515 U.S. 737, 742 (1995) (holding "[t]he question of
17 standing is not subject to waiver").  Indeed, the Supreme Court has expressly rejected the
18 "doctrine of hypothetical jurisdiction," under which a court "'assum[es]' jurisdiction for the
19 purpose of deciding the merits."  See Steel Co. v. Citizens For A Better Environment, 523
20 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any case."); see
21 also Newdow v. Lefevre, — F.3d — , 2010 WL 816971, *5 (9th Cir. 2010) (holding "a court
22 cannot . . . address the merits of a case without ensuring it has jurisdiction over the case";
23 citing Steel Co.).

24       In light of the above authority, this Court concludes the Ninth Circuit necessarily
25 found the plaintiff in Gordon had standing to seek relief under the Washington state
26 statute, even if it did not make an express finding to that effect.  In particular, because the
27 Ninth Circuit, immediately after noting the defendant's lack of dispute as to the issue of
28 standing, observed that the state statute required only that the plaintiff receive a covered

4

e-mail to bring a claim under such statute, the Court reads Gordon as implicitly finding such statute was intended to confer standing based solely on such receipt. See Gordon, 575 F.3d at 1046, 1058.

Further, although not explicitly stated, the Ninth Circuit appears to have concluded that by providing a private cause of action to a recipient of a commercial e-mail sent in violation of § 19.190.020, the Washington State Legislature created a "legal right[ ], the invasion of which creates [Article III] standing." See Warth v. Seldin, 422 U.S. 490, 500 (1975); see, e.g., Alston v. Countrywide Fin. Corp., 585 F.3d 753, 762-63 (3rd Cir. 2009) (holding where statute "vested consumers with the right to a kickback-free real estate settlement," plaintiff who "receive[d] a loan accompanied by a kickback or unlawful referral" had standing to seek award of statutory damages, even though plaintiff had no "resultant monetary injury"); Sisley v. Sprint Communications Co., 284 Fed. Appx. 463, 466 (9th Cir. 2008) (reversing district court's dismissal of state statutory claim "for lack of a cognizable injury," because "[the plaintiff] alleged a violation of her state statutory rights which can constitute a cognizable injury sufficient to withstand a Rule 12(b)(1) motion"); Ramirez v. Midwest Airlines, Inc., 537 F. Supp. 2d 1161, 1166 (D. Kan. 2008) (holding where statute "conferred upon plaintiff the legal right to receive a point-of-sale receipt . . . with the expiration date of her credit card omitted," plaintiff whose receipt included credit card's expiration date had standing to seek award of statutory damages "even in the absence of actual monetary damages").

The Court finds unpersuasive defendant's argument that the Ninth Circuit found the plaintiff in Gordon had standing based on his assertion that the defendant's e-mails "'clogged' his service," see Gordon, 575 F.3d at 1055, rather than because of his receipt of e-mails allegedly containing materially false information. First, the Ninth Circuit discussed the issue of "clogging" solely in connection with its determination of the plaintiff's standing to bring a claim under CAN-SPAM, which statute differs significantly from the Washington state statute, both as to the type of conduct regulated thereby and the types of parties who may bring a suit thereunder. While the Washington state statute only prohibits the sending

1  of commercial e-mails that contain "misrepresent[ations]" as to the identity of the sender
2  and that contain "false or misleading information in the subject line," see Wash. Rev. Code
3  § 19.190.020(1), CAN-SPAM is significantly broader; for example, CAN-SPAM prohibits
4  the sending of a commercial e-mail that does "not contain a functioning return electronic
5  mail address or other Internet-based mechanism" that the recipient can use to "request[ ]
6  not to receive further commercial electronic mail messages from that sender," see 15
7  U.S.C. § 7704(a)(3)(A), and that does not contain "a valid physical postal address of the
8  sender," see 15 U.S.C. § 7704(a)(5)(A).  At the same time, although the Washington state
9  statute more broadly allows any "recipient of a commercial electronic mail message" to
10 bring a claim thereunder, see Wash. Rev. Code § 19.190.040(1), only a "provider of
11 Internet access service adversely affected by a violation of [CAN-SPAM]" can bring a
12 private cause of action under  CAN-SPAM, see 15 U.S.C. § 7706(g); Gordon, 575 F.3d at
13 1048.  Moreover, because the Ninth Circuit found, as a factual matter, that the plaintiff had
14 failed to offer evidence to support his "clogging" allegation, see id. at 1055, the Ninth Circuit
15 did not reach the issue of whether a showing of "clogging" would suffice to support standing
16 under CAN-SPAM, let alone under the Washington state statute.  Finally, even if it
17 reasonably could be argued that commercial e-mails in the aggregate cause cognizable
18 injury by "clogging" e-mail servers or individual in-boxes, any such injury cannot reasonably
19 be attributed to any false or misleading information contained therein.

20         Lastly, the Court finds Gordon instructive as to the issues pending herein.  As
21 noted, the Washington state statute prohibits the sending of commercial e-mails that
22 contain misrepresentations, see Wash. Rev. Code § 19.190.020(1), and provides that a
23 "recipient" may bring a cause of action thereunder, see Wash. Rev. Code § 19.190.040.
24 Section 17529.5 likewise prohibits the sending of a commercial e-mail containing
25 misrepresentations, see Cal. Bus. & Prof. Code § 17529.5(a), and provides that "[a]
26 recipient of an unsolicited commercial e-mail advertisement" may bring a cause of action
27 thereunder, see Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii).  Because the two statutes
28 regulate the same conduct and provide, as a statutory matter, standing to a recipient of an

6

e-mail, the Court finds the above analysis is equally applicable to a claim brought under § 17529.5(a) by a plaintiff who alleges he or she has received a covered e-mail.

Accordingly, the Court finds plaintiffs' allegation that each plaintiff received from defendant one or more commercial e-mails containing "false and deceptive" statements (see FAC ¶¶ 34-35, 38-39, 42, 45, 48, 50) is sufficient at the pleading stage to support each such plaintiff's standing to bring a claim under § 17529.5)(a). To the extent the Court found otherwise in its Order of December 23, 2008, the order will be vacated.

**B. Preemption**

Under § 7707(b)(1), CAN-SPAM "supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." See 15 U.S.C. § 7707(b)(1).

In its December 23, 2008 order, the Court found the phrase "falsity or deception," as used in § 7707(b)(1), refers to the common law torts of misrepresentation and fraud, and, consequently, that a plaintiff, in order to state a non-preempted claim under a state law regulating commercial e-mail messages, must plead each element of such common law claim, including the elements of reliance and resulting damage.

In Gordon, the Ninth Circuit found that Congress, by exempting from preemption state statutes prohibiting "falsity or deception" in commercial e-mails, was referring to state statutes prohibiting "traditionally tortious or wrongful conduct." See Gordon, 575 F.3d at 1062 (internal quotation and citation omitted). Specifically, the Ninth Circuit held, "the CAN-SPAM Act established a national standard, but left the individual states free to extend traditional tort theories such as claims arising from fraud or deception to commercial e-mail communications." See id. at 1063. The Ninth Circuit then considered the plaintiff's claim under the Washington state statute, which claim was based on the theory that the e-mails he received "misrepresent[ed]" the identity of the sender because the e-mails did not "clearly identify" the defendant as the sender. See id. Characterizing the plaintiff's claim

as one for, "at best, incomplete or less than comprehensive information regarding the sender," see id. at 1064 (internal quotations and citation omitted), the Ninth Circuit found the claim preempted because the allegations in support thereof had "no basis in traditional tort theories," see id. In other words, the plaintiff in Gordon lacked facts to establish the defendant therein had made a materially false or misleading statement, a prerequisite for pleading fraud or deception. See id. at 1062 (holding "Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies or omissions").

Given the absence of a fraudulent statement, Gordon did not address the issue presented herein, specifically, whether a plaintiff alleging the receipt of a commercial e-mail containing a materially false or misleading statement must, in order to avoid preemption, additionally allege he relied to his detriment on such statement. The legislative history identified in Gordon, however, suggests such additional showing is not required.

First, as the Ninth Circuit in Gordon observed, courts, in determining the "scope of preemption" based on a federal statute, must keep in mind the "presumption against supplanting the historical police powers of the States by federal legislation," and, consequently, must be guided by the "principle that express preemption statutory provisions should be given narrow interpretation." See id. at 1060 (internal quotations and citations omitted).

Second, the legislative history relevant to the instant issue supports a finding that Congress did not intend to preempt statutes that, like the Washington statute at issue in Gordon and the California statute at issue herein, provide a cause of action based solely on the receipt of e-mails containing false or deceptive information. In particular, as quoted by the Ninth Circuit, "the Committee explained that 'while a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted[,] . . . a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted.'" See id.

//

//

8

at 1062 (quoting S. Rep. No. 108-102, at 21) (emphasis omitted; alteration in original).[3] Here, as noted, § 17529.5 prohibits the sending of commercial e-mails containing "falsified, misrepresented, or forger header information" and/or having a "subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." See Cal. Bus. & Prof. Code § 17529.5(a). Section 17529.5 thus prohibits the dissemination of commercial e-mails containing, in the words of the above-quoted legislative history, "fraudulent or deceptive headers" and "subject lines." See Gordon, 575 F.3d at 1062.

        A review of the state laws in effect at the time Congress enacted CAN-SPAM provides further support for the above-discussed interpretation of CAN-SPAM's preemption provision. Historically, many states have enacted consumer protection laws prohibiting the dissemination of false or misleading statements made in connection with the advertising of products or services, and have not required the plaintiff to prove actual reliance on the false or misleading statement, but, rather, to prove that the false or misleading statement is, objectively, the type of statement likely to deceive a reasonable consumer. See, e.g., Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1089, 1092 (9th Cir. 2010) (holding Hawaii's Deceptive Practices Act, which prohibits "unfair or deceptive acts or practice in the conduct of any trade or commerce," does not require the plaintiff to prove "actual reliance" on the defendant's act, but, rather, to prove that, "objective[ly]," the act has "the capacity to deceive" consumers); Freeman v. Time, Inc., 68 F.3d 285, 288-89 (9th Cir. 1995) (holding California's Unfair Business Practices Act, which prohibits dissemination of "untrue or misleading" statements concerning the sale of property, requires the plaintiff to prove "only that members of the public are likely to be deceived" by the statement) (internal quotation and citation omitted); Dix v. American Bankers Life Assurance Co., 415 N.W. 2d 206, 418 (Mich. 1987) (holding Michigan Consumer

---

[3] Gordon cited the above-quoted legislative history, as well as other references in the legislative history to "fraud" and "deception," as confirmation that "Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies or omissions." See id.

Protection Act does not require class members to "prove reliance on the alleged misrepresentations"; finding it "sufficient" if class establishes that "a reasonable person would have relied on the representations").

The Washington statute at issue in Gordon, as well as similar statutes enacted by other states and likewise pertaining specifically to commercial e-mails, see, e.g., Minn. Stat. § 325F.694, subd. 2(2) (prohibiting transmission of commercial e-mail "contain[ing] false or misleading information in the subject line"), were in effect before Congress enacted CAN-SPAM, and, thus, Congress is presumed to have been aware of such laws at the time it enacted CAN-SPAM.[4] See Albernaz v. United States, 450 U.S. 333, 341-42 (1981) (holding that because "Congress is predominantly a lawyer's body," it is appropriate for courts "to assume that our elected representatives know the law") (internal quotations, citations, and alteration omitted). Consequently, this Court will presume Congress was aware of such statutes and the absence of any language therein requiring a showing of actual reliance, and finds the legislative history identified in Gordon, specifically, the statement that Congress did not intend to preempt state laws prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mails, is properly understood as exempting from preemption statutes such as § 17529.5.[5]

Accordingly, the Court finds plaintiffs' failure to allege they relied to their detrimental on the alleged false statements in defendant's e-mails does not constitute a ground for dismissal of their claims. To the extent the Court found to the contrary in its Order of

---

[4] Both § 17529.5 and CAN-SPAM became effective on January 1, 2004; § 17529.5 was enacted on September 24, 2003, several months before December 16, 2003, the date on which CAN-SPAM was enacted. Compare 2003 Cal. Legis. Serv. Ch. 487, with CAN-SPAM Act of 2003, Pub. L. 108-187, § 16, 117 Stat. 2699, 2719.

[5] Although not directly addressed therein, nothing in Gordon suggests the Ninth Circuit would resolve the issue differently. In Gordon, the Ninth Circuit observed that the plaintiff "was not in any way misled or deceived" by the emails he received, see Gordon, 575 F.3d at 1063, but did not suggest such deficiency provided an additional basis for its finding of preemption. Nor did the Ninth Circuit indicate any disagreement with the district court's statement that "some [ ] claims [under the Washington state statute] are not preempted," see Gordon v. Virtumundo, Inc., 2007 WL 1459395,* 12 (W.D. Wash. 2007), a proposition that would be incorrect if actual reliance were required to avoid preemption.

December 23, 2008, such order will be vacated.

**C. Materiality**

In its supplemental filings, defendant, for the first time, argues that even if plaintiffs have standing to allege claims under § 17529.5 and do not need to allege actual reliance and resulting damage in order to avoid preemption, plaintiffs' claims nonetheless fail by reason of plaintiffs' having failed to establish that any statement made by defendant was "materially deceptive." (See Def.'s Supp. Brief, filed December 3, 2009, at 10:25.) In particular, according to defendant, the finding in Gordon that the plaintiff therein could not establish a materially false statement likewise precludes plaintiffs herein from establishing materiality. The Court disagrees.

First, the claim made in Gordon and the claims made herein differ considerably. In Gordon, the plaintiff alleged the e-mails he received from the defendant, Virtumundo, Inc., stated they were from addresses such as "Criminal Justice@vm-mail.com" and "Public Safety Degrees@vmadmin.com," information that was, at most, "incomplete" or "less than comprehensive." See Gordon, 575 F.3d at 1063-64. Indeed, the use of such addresses is not markedly different from the common business practice of using a "dba." Here, by contrast, plaintiffs allege that each plaintiff received an e-mail indicating the sender was an actual person known to such recipient, when, in fact, the e-mails were sent by defendant. (See, e.g., FAC ¶ 48, 49 (alleging plaintiff Matthew Hall, whose former minister was Mike Klump, received from defendant an e-mail indicating it was sent by "mikeklumpp@yahoo.com").) Given such differences, the Court cannot find, at least at the pleading stage, the instant claims are barred by Gordon.

Further, in Gordon, the Ninth Circuit was reviewing an order granting summary judgment, which order was entered after the district court had considered "a dense record developed through substantial discovery." See Gordon, 575 F.3d at 1045. Consequently, and not surprisingly, the Ninth Circuit considered whether the plaintiff had offered sufficient "evidence" to support his claim that the defendant had engaged in a practice "aimed at misleading recipients as to the identity of the sender." See id. at 1064. After concluding

11

the plaintiff had failed to offer any such evidence, the Ninth Circuit determined that any remaining cause of action was preempted because it constituted, "at most," a claim based on non-deceptive statements. See id. Here, the matter remains at the pleading stage and discovery has not begun. Consequently, in contrast to Gordon, the issue of whether plaintiffs ultimately will be able to offer evidence to support their claim is not before the Court at this time.

**D. Certification of Order for Interlocutory Appeal**

In its response to plaintiffs' supplemental brief, defendant requests that any order reconsidering and vacating the Court's order dismissing the FAC be certified for interlocutory appeal. Because plaintiffs have not had the opportunity to respond to such request, and, further, because such request was made without either party having reviewed the instant order, the Court will not at this time certify the instant order. Defendant is not precluded, however, from filing hereafter a motion for such certification, should defendant be of the view that such a motion is appropriate.

**CONCLUSION**

For the reasons stated above:

1. To the extent the Court's Order of December 23, 2008 found plaintiffs had failed to sufficiently allege standing to plead claims under § 15729.5 and had failed to allege a claim that was not preempted by 15 U.S.C. § 7707(b)(1), the order is hereby VACATED, and defendant's motion to dismiss the First Amended Complaint is hereby DENIED.

2. A Case Management Conference is hereby SET for May 28, 2010. A Joint Case Management Statement shall be filed no later than May 21, 2010.

**IT IS SO ORDERED.**

Dated: March 31, 2010

MAXINE M. CHESNEY
United States District Judge