LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
1644 North Orange Grove Avenue
Los Angeles, CA 90046
TELEPHONE: (323) 882-8225
FACSIMILE: (323) 882-8208
*lawofcsrjp@aol.com*

WILDMAN, HARROLD, ALLEN & DIXON LLP
Carole E. Handler (CA Bar No. 129381)
9665 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90212
TELEPHONE: (310) 860-8705
FACSIMILE: (310) 860-3805
*handler@wildman.com*

WILDMAN, HARROLD, ALLEN & DIXON LLP
Peter N. Moore (admitted *pro hac vice*)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
TELEPHONE: (312) 201-2000
FACSIMILE: (312) 201-2555
*pmoore@wildman.com*

Attorneys for Defendant
REUNION.COM, INC.

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIOLETTA HOANG, LIVIA HSIAO, and MICHAEL BLACKSBURG, and MATTHEW HALL, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>REUNION.COM, INC., a California corporation,<br><br>Defendant. | No. 3:08-cv-3518 MMC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 31, 2010 ORDER FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B)**<br><br>**Date:** June 11, 2010<br>**Time:** 9:00 a.m.<br>**Judge:** Hon. Maxine Chesney<br>Courtroom 7 (19th Floor) |

1

## **TABLE OF CONTENTS**

2
**Page**

3
ARGUMENT...........................................................................................................4

4
I. SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION EXIST AS
5
RECOGNIZED BY THIS COURT, PLAINTIFFS' OWN ARGUMENTS
BEFORE THE NINTH CIRCUIT, AND BETWEEN THE STATE AND
6
FEDERAL COURTS.........................................................................................4

7
II. CERTIFICATION OF THE CORE LEGAL ISSUES WILL LEAD TO A
SPEEDIER RESOLUTION THAN PROCEEDING WITH PROLONGED
8
POTENTIALLY UNNECESSARY CLASS DISCOVERY ...............................9

9
CONCLUSION ...................................................................................................11

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 31, 2010 ORDER FOR
INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B)                    No. 3:08-CV-3518 MMC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*APCC Servs., Inc. v. AT & T Corp.*,
297 F. Supp. 2d 101 (D.D.C. 2003)....................................................................... 10

*Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*,
No. 01-2821, 2004 WL 838160 (N.D. Cal. April 19, 2004) ................................. 8

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2010)..................................................................... passim

*Hightower v. Schwarzenegger*,
No. 04-06028, 2009 WL 3756342 (E.D. Cal. Nov. 6, 2009) ............................... 9

*Hypertouch v Azoogle*, No. 09-15943 (9th Cir. 2009) ................................................ 1, 5

*In re Cement Antitrust Litigation*,
673 F.2d 1020 (9th Cir.1982)............................................................................... 10

*In re Cintas Corp. Overtime Pay Arbitration Litigation*,
2007 WL 1302496 (N.D. Cal. May 2, 2007)....................................................... 10

*Milbert v. Bison Laboratories*,
60 F.2d 431 (3d Cir. 1958)................................................................................... 10

*Omega World Travel v. Mummagraphics, Inc.*,
469 F.3d 348 (4th Cir. 2006)........................................................................ 1, 3, 6

*S.A. ex rel. L.A. v. Tulare County Office of Educ.*,
No. 08-1215, 2009 WL 331488 (E.D. Cal. Feb. 10, 2009) .................................. 9

*Stuart v. RadioShack Corporation*,
No. C-07-4499 EMC, 2009 WL 1817007 (N.D. Cal. June 25, 2009) .............. 4, 5

*United States Rubber Co. v. Wright*,
359 F.2d 784 (9th Cir. 1966)............................................................................... 10

**Statutes**

15 U.S.C. § 7706(g)(1) ................................................................................................. 5

15 U.S.C. § 7707........................................................................................................... 3

17 U.S.C. § 7706........................................................................................................... 6

28 U.S.C. 1292(b) ........................................................................................................ 3

1

### REPLY

2  In their opposition, Plaintiffs misinterpret case law and distort the parties'

3  positions and arguments, all to obfuscate and confuse the fact that, as they themselves

4  have recognized, there is substantial disagreement as to the core legal issues raised by

5  Defendant's motion.[1]   Contrary to Plaintffs' gross oversimplifications, the controlling

6  legal issues are far from settled in federal or in state court.  Most tellingly, Plaintiffs'

7  own counsel recognizes that fact when, in their own brief to the Court of Appeals for

8  the Ninth Circuit, they argue that Plaintiffs' complaint in another case "does not come

9  close to stating a cause of action for fraud or any other tort," and must be preempted

10  because "CAN-SPAM's preemption clause was intended to bar states from regulating

11  commercial email other than pursuant to 'traditional tort theories such as claims arising

12  from fraud or deception,' *Gordon*, 595 F.3d at 1063), citing *Omega*, 459 F.3d at 156."

13  (*See* Declaration of Carole Handler, Exhibit A (Appellees' Joint Answering Brief in

14  *Hypertouch v. Azoogle*, No. 09-15943 (9th Cir. Oct. 21, 2009)), at 41, hereinafter

15  "*Hypertouch* Brief").  Even more remarkably, in *Azoogle*, Plaintiffs' counsel adopt the

16  identical interpretation of the leading cases which support Defendant, an interpretation

17  which they oppose here.   Nothing could better demonstrate the existence of the

18  substantial disagreement that cries out for an interlocutory determination.

19  Contrary to Plaintiffs' arguments in their opposition, this is not posturing, nor a

20  renewed attempt to get sanctions.  When the Court reviewed Defendant's Sanctions

21  Motion, it found that "because no circuit court, to date, has addressed the primary issue

22  presented herein, specifically, whether a state statute prohibiting the making of a

23  materially false statement in a commercial e-mail, but not requiring a showing of actual

24  reliance on such statement, is preempted," no sanctions were appropriate.  In fact, this is

25  the core issue before this Court as to whether a controversy exists as to the law.  That

26

27  ---

[1] Plaintiffs apparently concede that the issues raised by Defendant's motion are controlling questions
28  of law and do not oppose this portion of Defendant's motion.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 31, 2010 ORDER FOR
INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B)        NO. 3:08-CV-3518 MMC

1    issue should be resolved before this case needlessly proceeds further.

2         Plaintiffs' own counsel simply cannot argue in this Court that the law is

3    sufficiently clear to defeat Defendant's motion and simultaneously argue to the Ninth

4    Circuit in their briefs that the law is in question.  It is simply impossible that both

5    arguments can be advanced at the same time, in the same circuit, before the same court,

6    and presented by the same lawyers.  If Defendant did not prove its point as to a

7    substantial difference of view in its own arguments, Plaintiffs' counsel's contradictions

8    prove it.  *See* F.R.C.P. 11(b)(2) ("By presenting to the court a pleading, written motion,

9    or other paper…an attorney…certifies that...the claims defenses, and other legal

10   contentions are warranted by existing law or by a nonfrivolous argument for extending,

11   modifying, or reversing existing law or for establishing new law").  As Plaintiffs'

12   counsel say, as officers of this Court and the Ninth Circuit, in their own recently filed

13   brief, the issue is far from resolved:

14              "CAN-SPAM's preemption clause was intended to bar states
15              from regulating commercial email other than pursuant to
                'traditional tort theories such as claims arising from fraud or
16              deception,' *Gordon*, 595 F.3d at 1063), citing *Omega*, 459
                F.3d at 156."

17   *See Hypertouch* Brief, at 41.

18        Next, Plaintiffs fail even to mention in passing the critical factual differences for

19   both standing and preemption between this case and every other such case decided to

20   date – namely that Plaintiffs are consumers and, as such, damages cannot be presumed

21   for them in the same way that they can for an Internet Service Provider.  Allegations of

22   damage by individual consumers obviously must be tested under a different standard

23   than claims from an ISP that unwanted mail is clogging its system.

24        Finally, Plaintiffs misapply and misinterpret this Court's March 31, 2010 Order

25   ("March 31 Order," Docket No. 107) and the Ninth Circuit's holding in *Gordon v.*

26   *Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2010) ("*Virtumundo*"), in an effort to

27   convince this court that no controlling legal issue remains to be addressed and that the

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 31, 2010 ORDER FOR
INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B)                    No. 3:08-CV-3518 MMC

1   latter ruling has already resolved all of the issues raised by the instant motion.  Contrary
2   to Plaintiffs' disingenuous distortions, neither the March 31 Order, nor *Virtumundo*
3   resolve the disagreement over the key issues presented here – whether Plaintiffs, who
4   are **consumers** and not **ISPs**, have standing to assert their state law claims in the
5   absence of allegations of reliance and resulting harm, and whether Plaintiffs' state law
6   claims are preempted by the CAN-SPAM Act (15 U.S.C. § 7707) ("CAN-SPAM") by
7   virtue of their failure to allege reliance and resulting harm.  Acting as if  the pleading
8   rules were infinitely elastic, Plaintiffs ignore the fact that their own counsel, by taking
9   contrary positions in an appeal to the Ninth Circuit in another case that they are
10  currently pursuing, recognize that difference.

11      Plaintiffs also misrepresent Defendant's brief as a focused attempt to challenge
12  *Virtumundo*, which it is anything but.  Far from it.  Indeed in its briefs regarding
13  *Virtumundo* (Docket Nos. 102, 105), Defendant candidly stated its belief, still held
14  today, and endorsed by Plaintiffs' counsel in *Azoogle*, that the Ninth Circuit's decision
15  supports, rather than undercuts, Defendant's position in this case.    After all,
16  Virtumundo adopted, to a word, the position of the Fourth Circuit in *Omega World*
17  *Travel v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006) which was the main
18  authority this Court relied upon in its pre-Virtumundo dismissal orders.    It was
19  *Virtumundo's* silence as to the controlling issues in this case, rather than its statements,
20  that caused this Court to reconsider its prior decision, thus further crystallizing the fact
21  that differences of opinion can and do exist as to the meaning of *Virtumundo* and CAN-
22  SPAM preemption in the consumer class action context and necessitating the
23  interlocutory review sought by Defendant here.

24      In sum, this Court must reject Plaintiffs' misreading of the applicable law and
25  distortion of the operative facts.  When that is done, Defendant respectfully submits,
26  this case becomes an exemplary candidate for certification under 28 U.S.C. 1292(b).

27
28

1

## ARGUMENT

2   **I.   SUBSTANTIAL GROUNDS FOR DIFFERENCE OF OPINION EXIST AS**

3   **RECOGNIZED BY THIS COURT, PLAINTIFFS' OWN ARGUMENTS**

4   **BEFORE THE NINTH CIRCUIT, AND BETWEEN THE STATE AND**

5   **FEDERAL COURTS**

6           Substantial grounds for difference of opinion do not exist solely by virtue of a

7   difference of opinion among judicial bodies, contrary to what Plaintiffs would have this

8   Court believe. (Plaintiffs' Opposition at 5); *but see Stuart v. RadioShack Corporation*,

9   No. C-07-4499 EMC, 2009 WL 1817007, *3 (N.D. Cal. June 25, 2009) (holding that it

10  is still possible to show substantial ground for a difference of opinion even when there

11  is no case law on the relevant legal issue before the Court). Here, Defendant has shown

12  that substantial grounds for difference of opinion exist by virtue of: (i) the Court's

13  reversal in its March 31, 2010 Order of **four** of its own prior decisions on these issues,

14  notwithstanding that the precedent upon which it had originally relied

15  (*Mummagraphics*) was adopted by the Ninth Circuit as its own; (ii) the Court's repeated

16  recognition that this area of law is "unsettled"; (iii) Plaintiffs' counsels' own conflicting

17  representations of "controlling" and "settled" law on this exact issue before different

18  courts; and (iv) conflicting decisions within the federal courts, within the state courts

19  and between the federal and state courts.   These disagreements require certification.

20          *First*, counsel for Plaintiffs' continued representations on both sides of the bar on

21  the controlling  legal issues does, contrary to their representations, support the existence

22  of substantial grounds for difference for opinion.  Plaintiffs argue that this is permitted

23  advocacy, but the issue is not simply their Janus-like adoption of two positions at once

24  or whether flexible loyalties on a dispositive issues raises ethical questions.  Plaintiffs

25  ignore that, at this stage, the question is not whether Plaintiffs' counsel's

26  representations are relevant to the ultimate issue, but whether they **tend to show**

27  **substantial grounds for difference of opinion**.  As noted above, counsel for Plaintiffs

28

4

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 31, 2010 ORDER FOR
INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B)                    No. 3:08-CV-3518 MMC

1   have appeared only recently before the Ninth Circuit in *Hypertouch v Azoogle*, No. 09-

2   15943 (9th Cir. 2009) (argued and submitted on April 13, 2010), to represent the exact

3   counter position to what they advocate here.  *See* Declaration of Peter Moore in Support

4   of Defendant's Response to Plaintiff's Supplemental Brief Regarding the *Virtumundo*

5   Decision, Exhibit 4 (Docket No. 106-4).  Plaintiffs' counsels' appellate brief in

6   *Hypertouch* expressly argues that claims lacking allegations of reliance or damage are

7   preempted by CAN-SPAM.  *Id.*  While the court's decision in *Hypertouch* remains

8   pending, there is clearly a difference of opinion within Plaintiffs' own attorneys, not to

9   mention the Court's.  Examples of such differences may be considered to determine

10  whether substantial grounds for difference of opinion exist.  *See Stuart v. RadioShack*

11  *Corporation*, 2009 WL 1817007, at *3.

12          *Second*, Plaintiffs make short shrift of one of the key distinctions between the

13  instant case and that of the other cases Plaintiffs parade before the Court, burying its

14  discussion in the middle of a paragraph to better mask its importance.  (Plaintiffs'

15  Opposition, at 7).  As Plaintiffs are well aware, this case involves consumer claims

16  asserted by ***individual consumers***, while all the other cases decided to date involve

17  ***service provider*** claims.  Service provider plaintiffs are treated differently under CAN-

18  SPAM (*see* 15 U.S.C. § 7706(g)(1), limiting standing to "Internet access service"

19  providers ("IAS providers")) and have at least a plausible likelihood of substantial

20  injury (*see* 15 U.S.C. § 7706(g)(1)).  Plaintiffs incorrectly argue that Defendant

21  provides no information about this "plausible likelihood of substantial injury."  In

22  *Virtumundo*, the service provider plaintiff alleged a "clogg[ing]" of his e-mail system

23  and other related harms.  575 F.3d at 1055.  This "clogging" of e-mail systems by virtue

24  of the alleged spam e-mails represents the type of injury that is conceivably plausible --

25  at least for Article III standing.  And, contrary to Plaintiffs' representation, the Court

26  merely noted that Gordon was not deceived by the e-mails, it never stated he suffered

27  no harm whatsoever.  Whether the analysis undertaken in prior cases differs for

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 31, 2010 ORDER FOR
INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B)          No. 3:08-CV-3518 MMC

1   **consumers** as compared to **service providers**, especially given that CAN-SPAM itself

2   expressly recognizes this distinction, is a controlling question of law about which a

3   difference of opinion may exist.  *See* 17 U.S.C. § 7706 (limiting standing under CAN-

4   SPAM to Federal Trade Commission, certain state and federal agencies, state attorneys

5   general, and IAS providers adversely affected by violations of the CAN-SPAM Act);

6   *Virtumundo*, 575 F.3d at 1049-50 (citing statute for same principle).

7        *Third*, Plaintiffs incorrectly argue that Defendant disapproves of *Virtumundo*.

8   (Plaintiffs' Opposition, at 1).  As observed, this is a deliberate misstatement.  Defendant

9   has always advanced that *Virtumundo* reaffirmed and bolstered the decision from the

10  Fourth Circuit in *Omega World Travel v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir.

11  2006) (hereinafter "*Mummagraphics*"), upon which this Court relied in its earlier

12  rulings, and therefore supported those rulings.  (*See* Defendant's Supp. Brief in Support

13  of Dismissal of Plaintiffs' First Amended Complaint, Docket No. 102, at 2).  As this

14  Court is aware, the Ninth Circuit in *Virtumundo* referred to, considered, and adopted the

15  analysis in *Mummagraphics* in reaching its own conclusions.  It is precisely this

16  discrepancy between this Court's prior rulings based on *Mummagraphics*, and the

17  Court's subsequent reliance on *Virtumundo* to reach the opposite conclusion, that serves

18  as one of the myriad examples of the differences of opinion on the controlling legal

19  issues.

20       *Finally*, Plaintiffs spill much ink purporting to explain how *Virtumundo* decides

21  the controlling legal issues presented by the instant motion and thus represents binding

22  precedent refuting Defendant's arguments.  (Plaintiffs' Opposition, at 5-7).  Plaintiffs

23  then argue that Defendant's failure to discuss *Virtumundo* in any detail or distinguish it

24  from the instant case renders Defendant's arguments toothless.  By holding up this

25  straw man argument, Plaintiffs hope to distract the Court from the fact that as

26  Defendant has argued, the issues resolved in *Virtumundo* **do not resolve the issues**

27  **raised in this case**.

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 31, 2010 ORDER FOR
INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B)                    No. 3:08-CV-3518 MMC

1
2
3
4
5
6
7
8
9
10
11
12
13

The plain fact is that *Virtumundo* did not address the controlling legal issues raised by this motion. Specifically, as the Court is well aware, *Virtumundo* decided the preemption question ***in favor*** of the defendant, yet did so based on the lack of materiality to the alleged deception, rather than on the lack of reliance and harm as this Court's prior orders had done. The Ninth Circuit commented, only in passing, that Gordon admitted he was not deceived by, and did not rely upon, the e-mails, but as Defendant has said at length, Gordon claimed he was a service provider, not a mere consumer, and thus his potential damage (and therefore his standing to sue) was derived not from personal deceit or loss but from harm to his business. Nothing more can be discerned from the Ninth Circuit's opinion. That Court had whatever reasons it had for resolving the case on the grounds that it chose, but to take this silence and conclude from it that the Ninth Circuit has already ruled for Plaintiffs, which is all but what Plaintiffs' counsel argue, is intellectually unsupportable.

14
15
16
17
18
19
20
21
22
23
24
25
26
27

Perhaps emboldened by the Court's March 31 Order, Plaintiffs stretch their misinterpretations and misrepresentations of *Virtumundo* even further than they did in their initial briefing. Plaintiffs claim that the *Virtumundo* plaintiff failed to demonstrate any harms from the emails there at issue, yet because the Ninth Circuit still addressed the merits of the plaintiff's claims, the Court must have recognized that standing existed in that case. (Plaintiffs' Opposition at 6). Plaintiffs also concede that, as this Court observed, while the *Virtumundo* Court never directly addressed Article III standing, had the *Virtumundo* plaintiff lacked standing, the *Virtumundo* court would not have proceeded to address the merits of the claim. As discussed in Defendant's previously submitted briefs, however, the critical difference with the *Virtumundo* plaintiff – a purported service provider – was that it plainly alleged "clogg[ing]" of his e-mail system and other related harms. 575 F.3d at 1055. This discussion of harm actually arose in the context of CAN SPAM's "adverse effect" requirement, and the Court found merely that these alleged harms were insufficient to satisfy the standing threshold

28

7

1
2
3

established by the CAN SPAM as a ***statutory*** matter, primarily because Gordon had not established himself as a legitimate service provider. Here, there can be no similar presumption of harm.

4
5
6
7
8
9
10
11
12
13
14
15

Similarly attenuated is Plaintiffs' claim that the *Virtumundo* decision somehow decisively supports their claim ***against*** preemption here, especially since the Ninth Circuit held that the *Virtumundo* plaintiff's claims ***were preempted***. 575 F.3d at 1064. In so holding, the Ninth Circuit focused correctly on the fact that the plaintiff's claims were for immaterial errors. *Id.* While the Ninth Circuit did note that Gordon was not deceived by the e-mails, they did not say that he suffered no harm whatsoever – which is why the Court decided the case on materiality grounds, rather than lack of damage. *Id.* at 1059-64. As this Court admitted, the Court in *Virtumundo* did not directly address squarely the issue whether Plaintiffs must allege they relied to their detriment on the alleged false statements in defendant's e-mails. (March 31 Order, at 10, n. 5). And surely, this inference by the Court here does not support Plaintiffs argument that *Virtumundo* represents controlling and precedential authority on the issue.

16
17
18
19
20
21
22
23
24
25
26
27

Not surprisingly, the cases Plaintiffs cite in support of its legal propositions on this issue – that controlling Ninth Circuit precedent renders any authority from other jurisdictions immaterial – are cited out of context and do not support Plaintiffs' ultimate proposition. (Plaintiffs' Opposition at 5). First, *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, No. 01-2821, 2004 WL 838160, *4 n.8 (N.D. Cal. April 19, 2004), does not support the proposition that in all instances a decision by the Ninth Circuit renders consideration of any other authority impossible. *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.* stands for the entirely underwhelming proposition that where the Ninth Circuit expressly disagrees with opinions from other circuits, the District Court is bound by that decision to ignore that authority. Here, *Virtumundo* cited *Mummagraphics* with approval and stated no express disagreement with any of the other sources cited by Defendant in support of its motion.

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 31, 2010 ORDER FOR
INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B)                No. 3:08-CV-3518 MMC

1    Similarly, *Hightower v. Schwarzenegger*, No. 04-06028, 2009 WL 3756342, \*4 (E.D. Cal. Nov. 6, 2009) and *S.A. ex rel. L.A. v. Tulare County Office of Educ.*, No. 08-1215, 2009 WL 331488, \*5 (E.D. Cal. Feb. 10, 2009) stand for a fairly obvious conclusion. If an appellate court when reviewing a request for certification completely and unequivocally agrees with the decision reached by the district court, there obviously can be no substantial grounds for disagreement. They do not support the proposition that the district court may itself, in advance, reach a determination that the Ninth Circuit would completely and unequivocally agree with its decision.

## II.   CERTIFICATION OF THE CORE LEGAL ISSUES WILL LEAD TO A SPEEDIER RESOLUTION THAN PROCEEDING WITH PROLONGED POTENTIALLY UNNECESSARY CLASS DISCOVERY

Plaintiffs argue that only by charging blithely ahead with assuredly costly and exhaustive ***class based*** discovery will the parties reach a speedy resolution to this case. Plaintiffs' hinging of their argument that speedy resolution comes only through costly and protracted class discovery cannot pass the straight face test.

In support of this position, Plaintiffs suggest that the delays inherent in any appeal may in fact lead to loss of documentation and memory as to the events at issue. Yet in the same breath they acknowledge Defendant's preservation obligations, and ignore that the factual issues in this case are unlikely to involve witness memories or deteriorating evidence. This argument is completely unmerited.

The truly dispositive threshold issue of standing is conceded to be at issue. Yet, Plaintiffs would have Defendants engage in mass discovery on behalf of an uncertain number of putative class members in a Court that may not – and at one time believed it did not – have subject matter jurisdiction. In light of the alternatives, and with substantial grounds for difference of opinion as to the controlling legal issues, certification is the far superior and more efficient alternative. *See In re Cintas Corp.*

1    *Overtime Pay Arbitration Litigation*, No. M:06-cv-01781-SBA, 2007 WL 1302496, *1

2    (N.D. Cal. May 2, 2007) (certifying order for appeal on issue of subject matter

3    jurisdiction because cases would have to be dismissed for lack of jurisdiction if the

4    order was reversed by the Ninth Circuit, and because all future orders in the transferor

5    courts would have to be nullified); *In re Cement Antitrust Litigation,* 673 F.2d 1020,

6    1026 (9th Cir.1982) (certification is appropriate when "allowing an interlocutory appeal

7    would avoid protracted and expensive litigation,") (citing *United States Rubber Co. v.*

8    *Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam); *Milbert v. Bison Laboratories*,

9    260 F.2d 431, 433-435 (3d Cir. 1958)). *See also, APCC Servs., Inc. v. AT & T Corp.*,

10   297 F. Supp. 2d 101, 107 (D.D.C. 2003) ("where proceedings that threaten to endure for

11   several years depend on an initial question of jurisdiction ... certification may be

12   justified").

13          Finally, Plaintiffs imply that much of the blame for the delay in prosecuting the

14   instant action lies with Defendant, and that Defendant seeks nothing more than to

15   continue to delay this action. (Plaintiffs' Opposition, at 12).  The docket in this action

16   shows that the opposite is true.  It has been Plaintiffs tortured pleadings, frivolous

17   motions, and other procedural maneuvers that have led to the delay in moving forward.

18   Plaintiffs have continually refused to acknowledge their deficient pleadings and assert

19   the substantive allegations necessary to respond to the Court's repeated dismissal

20   orders, despite this Court's allowance of amendments with each such dismissal.  They

21   cannot now blame Defendant for their strategic choices.

22          In any event, this Court itself has suggested on its own motion that until the core

23   legal issues were resolved, this case should be stayed and invited briefing on the

24   subject.  We once again request that if this motion is not granted that such a stay be

25   imposed.

26

27

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 31, 2010 ORDER FOR
INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B)            No. 3:08-CV-3518 MMC

## CONCLUSION

For the foregoing reasons, the Court should certify its March 31, 2010 Order for interlocutory review, or issue a stay as prayed for in Defendant's moving papers.


**DATED:**     May 28, 2010           Respectfully submitted,


                             s/ Ronald Jason Palmieri
                             One of the Attorneys for Defendant

LAW OFFICES OF RONALD JASON PALMIERI, P.C.
Ronald Jason Palmieri (CA Bar No. 96953)
1644 North Orange Grove Avenue
Los Angeles, CA 90046
TELEPHONE: (323) 882-8225
FACSIMILE: (323) 882-8208
lawofcsrjp@aol.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Carole E. Handler (CA Bar No. 129381)
9665 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90212
TELEPHONE: (310) 860-8705
FACSIMILE: (310) 860-3805
handler@wildman.com

WILDMAN, HARROLD, ALLEN & DIXON LLP
Peter N. Moore (admitted *pro hac vice*)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
TELEPHONE: (312) 201-2000
FACSIMILE: (312) 201-2555
pmoore@wildman.com

Attorneys for Defendant
REUNION.COM, INC.

2078345

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY MARCH 31, 2010 ORDER FOR
INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(B)        No. 3:08-CV-3518 MMC